WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Robert J. Lemons
Kelly DiBlasi
Matthew P. Goren

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11** |
|  | : |  |
| **WAYPOINT LEASING** | : | **Case No. 18-13648 (SMB)** |
| **HOLDINGS LTD.**, *et al.*, | : |  |
|  | : | **(Jointly Administered)** |
| Debtors.[1] | : |  |

-------------------------------------------------------------x

## NOTICE OF HEARING AND MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND 6004 FOR ENTRY OF AN ORDER AUTHORIZING PRIVATE SALE OF HELICOPTER WITH MANUFACTURE SERIAL NUMBER 33156 FREE OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that a hearing on the annexed *Motion of Debtors Pursuant to 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002 and 6004 For Entry of an Order Authorizing Private Sale of Helicopter With Manufacture Serial Number 33156 Free of all Liens, Claims, Encumbrances and Other Interests, and Granting Related Relief*, dated December, 18 2018 (the "**Motion**"), of Waypoint Leasing Holdings Ltd. and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-

---

[1] A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is annexed hereto as **Exhibit A**.

captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), seeking entry of an order authorizing the Debtors to sell one (1) Bell 412SP helicopter with manufacturer serial number 33156, free and clear of all liens, claims, encumbrances, and other interests, to Agrarflug Helilift GMBH & Co. KG, will be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, in Room 723 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**"), on **January 10, 2019 at 10:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, and shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and the *Interim Order Pursuant to 11 U.S.C. §105(a) and Fed. R. Bankr. P. 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures* [ECF No. 86] so as to be received no later than January 3, 2019 at 4:00 p.m. (the "**Objection Deadline**").

WEIL:\96839462\2\79984.0003

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard.

Dated:  December 18, 2018
New York, New York

/s/ Robert J. Lemons
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Robert J. Lemons
Kelly DiBlasi
Matthew P. Goren

*Proposed Attorneys for Debtors
and Debtors in Possession*

WEIL:\96839462\2\79984.0003

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzman
Robert J. Lemons
Kelly DiBlasi
Matthew P. Goren

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                :
In re                                           :        **Chapter 11**
                                                :
**WAYPOINT LEASING**                            :        **Case No. 18-13648 (SMB)**
**HOLDINGS LTD.,** *et al.*,                    :
                                                :        **(Jointly Administered)**
            **Debtors.**[1]                     :
---------------------------------------------------------------x

### MOTION OF DEBTORS PURSUANT TO
### 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND 6004 FOR
### ENTRY OF AN ORDER AUTHORIZING PRIVATE SALE OF HELICOPTER
### WITH MANUFACTURE SERIAL NUMBER 33156 FREE OF ALL LIENS, CLAIMS,
### ENCUMBRANCES AND OTHER INTERESTS, AND GRANTING RELATED RELIEF

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

Waypoint Leasing Holdings Ltd. and certain of its subsidiaries and affiliates, as

debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter

11 cases (collectively, the "**Chapter 11 Cases**"), respectfully represent as follows in support of

this motion (the "**Motion**"):

---

[1] A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is annexed hereto as **Exhibit A**.

## Relief Requested

1.      By this Motion, pursuant to section 363(b), (f), and (m) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit B** (the "**Sale Order**"), (a) authorizing and approving Debtor Waypoint Asset Co 5 Limited (the "**Seller**") to consummate the private sale of one (1) Bell 412SP helicopter with manufacturer serial number 33156 ("**MSN 33156**" or the "**Helicopter**"), free and clear of all liens, claims, encumbrances, and other interests, to Agrarflug Helilift GMBH & Co. KG ("**Agrarflug**" or the "**Purchaser**") pursuant to that certain *Sale and Purchase Agreement*, dated October 11, 2018, between Seller and Purchaser (the "**SPA**"), attached hereto as **Exhibit C**, and (b) granting related relief.

2.      In support of this Motion, the Debtors rely on and incorporate the *Declaration of Oliver Althoff in Support of the Motion of Debtors Pursuant to 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002 and 6004 for Entry of an Order Authorizing Private Sale of Helicopter with Manufacture Serial Number 33156 Free of all Liens, Claims, Encumbrances and Other Interests, and Granting Related Relief* (the "**Althoff Declaration**"), filed contemporaneously herewith.

## Jurisdiction

3.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4.    On November 25, 2018 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

5.    The Debtors' Chapter 11 Cases have been jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

6.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Todd K. Wolynski Pursuant to L. Bankr. R. 1007-2*, sworn to on the date hereof and the *Declaration of Robert A. Del Genio in Support of First Day Motions and Applications*, sworn to on the date hereof (together, the "**First Day Declarations**"), which have been filed with the Court on the Petition Date and are incorporated herein by reference.[2]

## Proposed Sale of MSN 33156

### A.    The Debtors' Marketing Efforts

7.    In August 2015, the Debtors purchased MSN 33156 and its sister ship, a Bell 412SP model aircraft with manufacture serial number 33158 ("**MSN 33158**," and together with MSN 33156, the "**Aircraft**"), as part of a broader acquisition of helicopters from Lider Aviação, a Brazilian airline. The Debtors transported the Aircraft from Brazil to a hangar in Calgary, Canada, where the Aircraft were maintained and stored. The Aircraft have remained off-lease since being acquired by the Debtors.

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declarations.

WEIL:\96839462\2\79984.0003

8.      As set forth in the Althoff Declaration, the Debtors have extensively marketed the Aircraft for both sale and lease to various customers and aviation service providers. Despite the Debtors' efforts, they were unable to obtain any proposal that was economically feasible from any party other than the Purchaser. For instance, in 2017 the Debtors engaged in discussions with an aerial service provider, however, could not agree to commercial terms regarding a lease of the Aircraft. In 2018, the Debtors entered into a non-binding letter of intent with an Alaskan aviation service provider that was similarly unsuccessful. The Debtors also engaged in discussions with an Australian helicopter company regarding the purchase of the Aircraft, however, such discussions never materialized in a final agreement.

**B.      Sale of Aircraft to Purchaser**

9.      In early 2018, the Debtors began discussions with Agrarflug, a German lessor of utility helicopters, which expressed interest in acquiring the Aircraft. Thereafter, the Debtors engaged in arms' length negotiations with Agrarflug that lasted several months and culminated in the parties entering into the SPA on October 11, 2018.[3] As a result of negotiations, the Purchaser agreed to pay a final aggregate purchase price that was higher than Purchaser's initial offer. On October 11, 2018, Seller and Purchaser also entered into that certain *Side Letter* (the "**Side Letter**"), attached hereto as **Exhibit D**, which is an ancillary document to the SPA. Pursuant to the Side Letter, Seller and Purchaser agreed to, among other things, allocate a portion of the purchase price to MSN 33158.

10.     After the execution of the SPA, Purchaser provided Seller with a security deposit in an amount equal to ten percent (10%) of the aggregate purchase price. The Debtors

---

[3] The Debtors have filed the *Ex Parte Motion of the Debtors Pursuant to 11 U.S.C. 107(b) and 105(a) and Fed. R. Bankr. P. 9018 for Authority to (I) File Document Under Seal and (II) Redact Commercially Sensitive, Nonpublic Information* contemporaneously herewith requesting authority to redact commercially sensitive nonpublic information in the SPA and to file an unredacted version of the SPA under seal.

closed the sale of MSN 33158 to Purchaser in accordance with the terms of the SPA prior to the Petition Date.

## Relief Requested Should Be Granted

### A.    The Sale of MSN 33156 is an Exercise of the Debtors' Sound Business Judgment

11.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   In order to approve the sale of property outside the ordinary course of business, a Bankruptcy Court must "find from the evidence presented before him at the hearing a good business reason to grant such an application."   *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Chateaugay Corp.*, 973 F.2d 141, 144–45 (2d Cir. 1992) (affirming that the Bankruptcy Court correctly approved an asset sale under 363(b) using the "good business reason" standard); *In re Borders Grp., Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011) ("a debtor often satisfies the business judgment standard if 'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'") (quoting *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992)); *In re MF Glob. Ltd.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) ("The business judgment of a trustee is entitled to great deference.").

12.    As set forth in the Althoff Declaration, the sale of MSN 33156 is a sound exercise of the Debtors' business judgment.   The Debtors have owned MSN 33156 for approximately three (3) years and have not been able to generate revenue for their business through leasing the Helicopter.   During this time, the Debtors have incurred significant storage, maintenance, and other costs associated with owning the Helicopter, which are typically passed on to lessees.   After several unsuccessful attempts at leasing and/or selling MSN 33156 to

various customers and aerial service providers, largely due to the failure to reach feasible economic terms, the Debtors procured a proposal to buy MSN 33156 from Agrarflug at a price and on terms that the Debtors believe to be the best and highest offer for the Helicopter.

13.    Moreover, the Helicopter is over 30 years old, and the Debtors do not consider it to be a part of their "core" fleet of revenue-generating aircraft nor do they propose to include the Helicopter in their proposed sale of substantially all of their assets to Macquarie Rotorcraft Leasing Holdings Limited.[4]  The proposed sale of the Helicopter offers the Debtors a means of exiting the aged Bell 412SP aircraft type, which has no prospects of profitability for Waypoint.  The board of directors of Waypoint Leasing (Ireland) Limited, the Debtors' primary operating entity and parent of Seller, has thoroughly reviewed and approved the proposed sale. Accordingly, the Debtors submit that the sale of MSN 33156 is a sound exercise of their business judgment and in the best interests of the estates.

**B.    A Private Sale Is Warranted Under the Circumstances**

14.    Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  Courts allow chapter 11 debtors to sell assets outside the ordinary course of business by private sale when the debtors demonstrate that the sale is permissible pursuant to section 363(b) of the Bankruptcy Code.  *See, e.g.*, *In re Dewey & Leboeuf LLP*, No. 12-12321 (MG), 2012 Bankr. LEXIS 5116, at *17 (Bankr. S.D.N.Y. Nov. 1, 2012) (holding that "the Debtor has established a good business reason," pursuant to section 363(b), to sell its artwork through a private auction to save costs, reduce

---

[4] *See Motion of Debtors for Entry of Orders Approving: (I)(A) Bidding Procedures, (B) Bid Protections,(C) Form and Manner of Notice of Auction, Sale Transaction, and Sale Hearing, and (D) Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (II)(A) Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Related Relief* [ECF No. 64].

WEIL:\96839462\2\79984.0003

delay, and maximize the sale price); *In re MF Glob. Ltd.*, 535 B.R. at 605-06, 608 (approving the private sale to a buyer already familiar with the debtors' assets as an exercise of "sound business judgment" under section 363(b)).

15.    Here, a sound business justification exists for a private sale.  Specifically, (i) the SPA contemplates the sale of both MSN 33156 and its sister aircraft MSN 33158 to Purchaser as a packaged transaction; (ii) Purchaser has provided a non-refundable security deposit to the Debtors for MSN 33156; (iii) the Debtors and Purchaser have already closed the sale of MSN 33158 in accordance with the terms of the SPA prior to the Petition Date; and (iv) the Debtors have incurred expenses in connection with the delivery MSN 33156 to Agrarflug, such as obtaining an export certificate of airworthiness for the Helicopter.  Moreover, as discussed, the Debtors have already rigorously marketed the Aircraft for several years without being able to obtain any other offer for the sale or lease of the Helicopter on terms that are economically feasible for Waypoint.  The purchase price proposed by Agrarflug is the highest and best offer for the Helicopter the Debtors have received, and a private sale will ensure that the Debtors are able to consummate a value-maximizing transaction for the benefit of all parties in interest.

## C.    The Sale of the Assets Free and Clear of Liens are Warranted Under Section 363(f)

16.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property under section 363(b) free and clear of any liens, claims, encumbrances, and other interests of an entity other than the estate if one of the following conditions is satisfied:

(1)    applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2)    such entity consents;

10

(3)     the interest is a lien and the sales price of the property exceeds the value of all liens on the property;

(4)     the interest is in bona fide dispute; or

(5)     the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

11 U.S.C. § 363(f)(1)-(5).  Section 363(f) is stated in the disjunctive; therefore, it is only necessary to meet one of the five conditions listed in that section when selling property of the estate.  *See In re Borders Grp., Inc.*, 453 B.R. at 483–84 (noting that the debtor can sell its property "free and clear of any interest" if "at least one" of the five conditions under section 363(f) is met); *see also In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) ("Satisfaction of any of those requirements [of section 363(f)(1)-(5)] suffices to permit the sale of the property free and clear of liens and interests.").

17.     The sale of the Helicopter to Purchaser free and clear of all liens, claims, encumbrances, and other interests is appropriate under section 363(f) of the Bankruptcy Code. The Debtors are permitted to sell MSN 33156, subject to Bankruptcy Court approval, under the terms of the Interim DIP Order[5] and DIP Credit Agreement (as defined therein).  MSN 33156 is owned by Waypoint Asset Co 5, whose equity is pledged as collateral to WAC 7.  The required lenders in WAC 7 provided their consent to the sale of MSN 33156 on October 21, 2018, and the proceeds of the sale will be placed in a segregated account of WAC 7 in accordance with the Interim DIP Order.

---

[5] *See Interim Order Pursuant to 11 U.S.C. 105, 361, 362, 363, 364, 507, and 552 Fed R. Bankr. P. 2002, 4001, 6003, 6004, and 9014, and L. Bankr. R. 2002-1, 4001-2, 9013-1, 9014-1, and 9014-2 (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [ECF No. 77] (the "**Interim DIP Order**").

18.     Further, any other entity holding liens on the Helicopter will have a corresponding security interest in the proceeds of the sale received therefrom (with all of the Debtors' claims, defenses and objections with respect to the amount, validity, or priority of each such interest and the underlying liabilities expressly preserved).  *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition.").  Therefore, any lien holders could be compelled to accept a monetary satisfaction of their interest.  As such, the requirements of section 363(f) of the Bankruptcy Code are satisfied for a sale of the Helicopter free and clear of all liens, claims, encumbrances, and other interests.

**D.     Purchaser Should Be Entitled to the Protections of Section 363(m)**

19.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  The Second Circuit has observed, "[a]lthough the Bankruptcy Code does not define the meaning of 'good-faith purchaser,' . . . most courts have adopted a traditional equitable definition:  'one who purchases the assets for value, in good faith and without notice of adverse claims.'"  *Licensing by Paolo v. Sinatra* (*In re Gucci*), 126 F.3d 380, 390 (2d Cir. 1997) (internal citations omitted).  Moreover, "[a] purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'"  *Id.*

WEIL:\96839462\2\79984.0003

20.     Agrarflug is a good faith purchaser for value and, as such, is entitled to the
protections afforded to such purchaser under section 363(m) of the Bankruptcy Code and has
otherwise acted in good faith in connection with the sale of MSN 33156.    Specifically,
(a) Purchaser is not an "insider" of the Debtors, as that term is defined in the Bankruptcy Code,
(b) the SPA was negotiated at arm's length and in good faith, and at all times each of Purchaser
and Seller were represented by competent counsel of their choosing, (c) Purchaser did not in any
way induce or cause the filing of the Debtors' chapter 11 cases, (d) the consideration to be paid
by Purchaser pursuant to the SPA is fair and reasonable, and (e) the SPA is not the result of fraud
or collusion.    Neither the Debtors nor Purchaser have engaged in any conduct that would cause
or permit the transaction contemplated by the SPA to be avoided or result in the imposition of
any costs or damages under section 363(n) of the Bankruptcy Code.    Accordingly, the Debtors
believe Agrarflug is entitled to the protections of Section 363(m) of the Bankruptcy Code.

### Bankruptcy Rules 6004(h)

21.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale,
or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless
the court orders otherwise."    The Debtors believe that in order to maximize value, the sale of
MSN 33156 must be consummated as soon as practicable.    Accordingly, the Debtors request that
the Sale Order be effective immediately upon entry of each such order and that the fourteen (14)-
day stay period under Bankruptcy Rules 6004(h) be waived.

### Notice

22.     Notice of this Motion has been provided to (i) William K. Harrington,
U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New
York, NY 10014 (Attn:  Andrea B. Schwartz, Esq.); (ii) the Debtors' thirty (30) largest
unsecured creditors on a consolidated basis; (iii) the Internal Revenue Service; (iv) the United

13

States Attorney's Office for the Southern District of New York; (v) the attorneys for SunTrust Bank, as administrative agent under that certain Amended and Restated Credit Agreement, dated as of November 8, 2013, and that certain Amended and Restated Credit Agreement, dated as of April 28, 2017; (vi) the attorneys for Wells Fargo Bank, National Association, as administrative agent under that certain Credit Agreement, dated as of April 16, 2014, and that certain Note Purchase Agreement, dated as of July 29, 2015; (vii) the attorneys for Airbus Helicopters Financial Services Limited, as agent under that certain Euro Term Loan Facility Agreement, dated February 21, 2017; (viii) the attorneys for BNP Paribas, as administrative agent under that certain Credit Agreement, dated as of August 6, 2014; (ix) the attorneys for Bank of Utah, as administrative agent under that certain Credit Agreement, dated as of March 23, 2015; (x) the attorneys for Lombard North Central PLC, as administrative agent under that certain Credit Agreement, dated as of March 24, 2016; (xi) the attorneys for Sumitomo Mitsui Banking Corporation, Brussels Branch, as administrative agent under that certain Credit Agreement, dated as of August 2, 2017; (xii) the attorneys for the Steering Committee of WAC Lenders; (xiii) the attorneys for the Sponsors; (xiv) the attorneys for the DIP Agent; (xv) all parties that have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002; (xvi) the Purchaser; (xvii) all entities known or reasonably believed to have asserted any lien, claim, encumbrance, or other interest in the Helicopter; and (xviii) any other affected federal, state, and local regulatory and taxing authority; (collectively, the "**Notice Parties**").  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

23.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

14

WHEREFORE the Debtors respectfully request entry of the Sale Order granting

the relief requested herein and such other and further relief as the Court may deem just and

appropriate.

Dated: December 18, 2018
      New York, New York

          /s/ Robert J. Lemons
          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York  10153
          Telephone:  (212) 310-8000
          Facsimile: (212) 310-8007
          Gary T. Holtzer
          Robert J. Lemons
          Kelly DiBlasi
          Matthew P. Goren

          *Proposed Attorneys for Debtors*
          *and Debtors in Possession*

## Exhibit A

**Debtors**

| Debtor | Last 4 Digits of Tax ID Number | Debtor | Last 4 Digits of Tax ID Number |
|---|---|---|---|
| Waypoint Leasing Holdings Ltd. | 2899 | AE Helicopter (5) Limited | N/A |
| Waypoint Leasing (Luxembourg) S.à r.l. | 7041 | AE Helicopter (6) Limited | N/A |
| Waypoint Leasing (Ireland) Limited | 6600 | MSN 31141 Trust | N/A |
| Waypoint Asset Co 10 Limited | 2503 | MSN 31492 Trust | N/A |
| MSN 2826 Trust | N/A | MSN 36458 Trust | N/A |
| MSN 2879 Trust | N/A | MSN 760543 Trust | N/A |
| Waypoint Asset Co 11 Limited | 3073 | MSN 760551 Trust | N/A |
| MSN 2905 Trust | N/A | MSN 760581 Trust | N/A |
| Waypoint Asset Co 12 Limited | 0541 | MSN 760628 Trust | N/A |
| MSN 20042 Trust | N/A | MSN 760631 Trust | N/A |
| MSN 41202 Trust | N/A | MSN 760682 Trust | N/A |
| MSN 920280 Trust | N/A | MSN 920022 Trust | N/A |
| Waypoint Asset Co 1E Limited | 6089 | MSN 920062 Trust | N/A |
| Waypoint Asset Euro 1F Limited | 7099 | MSN 920125 Trust | N/A |
| MSN 20093 Trust | N/A | MSN 9229 AS | N/A |
| Waypoint Asset Malta 1A Limited | 2966 | Waypoint Asset Co 3A Limited | 6687 |
| Waypoint Leasing Singapore 1 Pte. Limited | 2403 | MSN 41371 Trust | N/A |
| Waypoint Leasing UK 1A Limited | 2226 | Waypoint Asset Euro 1A Limited | 9804 |
| Waypoint Asset Co 14 Limited | 1585 | MSN 4466 Trust | N/A |
| Waypoint Asset Co 15 Limited | 1776 | MSN 4469 Trust | N/A |
| Waypoint Asset Co 3 Limited | 3471 | MSN 6655 Trust | N/A |

| Debtor | Last 4 Digits of Tax ID Number | Debtor | Last 4 Digits of Tax ID Number |
|---|---|---|---|
| MSN 6658 Trust | N/A | Waypoint Asset Funding 6 LLC | 4964 |
| Waypoint 760626 Business Trust | N/A | Waypoint Asset Co 7 Limited | 9689 |
| MSN 7152 Trust | N/A | Waypoint Asset Euro 7A Limited | 2406 |
| MSN 7172 Trust | N/A | Waypoint Asset Co 8 Limited | 2532 |
| Waypoint Asset Funding 3 LLC | 4960 | MSN 31041 Trust | N/A |
| Waypoint Asset Malta Ltd | 5348 | MSN 31203 Trust | N/A |
| Waypoint Leasing Labuan 3A Limited | 8120 | MSN 31578 Trust | N/A |
| Waypoint Leasing UK 3A Limited | 0702 | MSN 760617 Trust | N/A |
| Waypoint Asset Co 4 Limited | 0301 | MSN 760624 Trust | N/A |
| Waypoint Asset Co 5 Limited | 7128 | MSN 760626 Trust | N/A |
| MSN 1251 Trust | N/A | MSN 760765 Trust | N/A |
| MSN 14786 Trust | N/A | MSN 920063 Trust | N/A |
| MSN 2047 Trust | N/A | MSN 920112 Trust | N/A |
| MSN 2057 Trust | N/A | Waypoint 206 Trust | N/A |
| Waypoint Asset Co 5B Limited | 2242 | Waypoint 407 Trust | N/A |
| Waypoint Leasing UK 5A Limited | 1970 | Waypoint Asset Euro 1B Limited | 3512 |
| Waypoint Asset Co 6 Limited | 8790 | Waypoint Asset Euro 1C Limited | 1060 |
| MSN 31042 Trust | N/A | MSN 20012 Trust | N/A |
| MSN 31295 Trust | N/A | MSN 20022 Trust | N/A |
| MSN 31308 Trust | N/A | MSN 20025 Trust | N/A |
| MSN 920119 Trust | N/A | MSN 920113 Trust | N/A |

WEIL:\96839462\2\79984.0003

| Debtor | Last 4 Digits of Tax ID Number | Debtor | Last 4 Digits of Tax ID Number |
|---|---|---|---|
| Waypoint Asset Funding 8 LLC | 4776 | Waypoint Asset Co Germany Limited | 5557 |
| Waypoint Leasing UK 8A Limited | 2906 | MSN 31046 Trust | N/A |
| Waypoint Leasing US 8A LLC | 8080 | MSN 41511 Trust | N/A |
| Waypoint Asset Co 9 Limited | 6340 | MSN 760608 Trust | N/A |
| MSN 20052 Trust | N/A | MSN 89007 Trust | N/A |
| MSN 31312 Trust | N/A | MSN 920141 Trust | N/A |
| MSN 41329 Trust | N/A | MSN 920152 Trust | N/A |
| MSN 760538 Trust | N/A | MSN 920153 Trust | N/A |
| MSN 760539 Trust | N/A | MSN 920273 Trust | N/A |
| MSN 760541 Trust | N/A | MSN 920281 Trust | N/A |
| MSN 760542 Trust | N/A | MSN 9205 Trust | N/A |
| Waypoint Asset Co 1B Limited | 5795 | MSN 9229 Trust | N/A |
| MSN 41272 Trust | N/A | Waypoint Asset Co 1A Limited | 1208 |
| Waypoint Asset Co 5A Limited | 4148 | Waypoint Leasing Labuan 1A Limited | 2299 |
| MSN 69052 Trust | N/A | Waypoint Asset Co 1C Limited | 0827 |
| Waypoint Asset Euro 9A Limited | 2276 | Waypoint Asset Co 1D Limited | 7018 |
| Waypoint Asset Euro 1E Limited | 6050 | Waypoint Asset Co 1F Limited | 6345 |
| Waypoint Leasing UK 9A Limited | 5686 | Waypoint Asset Co 1G Limited | 6494 |
| Waypoint Asset Sterling 9A Limited | 1161 | Waypoint Asset Co 1H Limited | 7349 |
| Waypoint Asset Company Number 1 (Ireland) Limited | 6861 | Waypoint Asset Co 1J Limited | 7729 |
| Waypoint Asset Euro 1D Limited | 1360 | MSN 20159 Trust | N/A |

WEIL:\96839462\2\79984.0003

| Debtor | Last 4 Digits of Tax ID Number | Debtor | Last 4 Digits of Tax ID Number |
|---|---|---|---|
| Waypoint Asset Co 1L Limited | 2360 | MSN 31431 Trust | N/A |
| Waypoint Asset Co 1M Limited | 5855 | MSN 760734 Trust | N/A |
| Waypoint Asset Co 1N Limited | 3701 | MSN 920024 Trust | N/A |
| Waypoint Asset Euro 1G Limited | 4786 | MSN 920030 Trust | N/A |
| Waypoint Asset Funding 1 LLC | 7392 | Waypoint Asset Funding 2 LLC | 7783 |
| Waypoint Leasing UK 1B Limited | 0592 | Waypoint Asset Co 1K Limited | 2087 |
| Waypoint Leasing UK 1C Limited | 0840 | Waypoint Leasing Services LLC | 8965 |
| Waypoint Asset Company Number 2 (Ireland) Limited | 7847 | Waypoint Leasing (Luxembourg) Euro S.à r.l. | 8928 |
| Waypoint 2916 Business Trust | N/A | | |

WEIL:\96839462\2\79984.0003

**Exhibit B**

**Sale Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                             :

In re                               :        **Chapter 11**

                                             :

**WAYPOINT LEASING**         :        **Case No. 18-13648 (SMB)**

**HOLDINGS LTD.,** *et al.*,       :

                                             :        **(Jointly Administered)**

                 **Debtors.**[1]    :

---------------------------------------------------------------x

## ORDER PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND 6004 AUTHORIZING PRIVATE SALE OF HELICOPTER WITH MANUFACTURE SERIAL NUMBER 33156 FREE OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS AND GRANTING RELATED RELIEF

Upon the motion (the "**Motion**"),[2] dated December 18, 2018 [ECF No. [__]], of

Waypoint Leasing Holdings Ltd. and certain of its subsidiaries and affiliates, as debtors and

debtors in possession (collectively, the "**Debtors**"), pursuant to section 363 of title 11 of the

United States Code (the "**Bankruptcy Code**") and Rules 2002 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry an order (a) authorizing and

approving Debtor Waypoint Asset Co 5 Limited (the "**Seller**") to consummate the private sale of

one (1) Bell 412SP helicopter with manufacturer serial number 33156 ("**MSN 33156**" or

the "**Helicopter**"), free and clear of all liens, claims, encumbrances, and other interests, to

Agrarflug Helilift GMBH & Co. KG ("**Agrarflug**" or the "**Purchaser**") and (b) granting related

relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the

Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are set forth on Exhibit A to the Motion.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and

due and proper notice of the Motion having been provided to the Notice Parties; and such notice

having been adequate and appropriate under the circumstances, and it appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and the Court

having held a hearing, if necessary, to consider the relief requested in the Motion

(the "**Hearing**"); and upon the Althoff Declaration, filed contemporaneously with the Motion,

the First Day Declarations, filed on the Petition Date, and the record of the Hearing; and the

Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and it appearing that the relief requested in the Motion is in

the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of

the proceedings had before the Court and after due deliberation and sufficient cause appearing

therefor,

### IT IS HEREBY ORDERED THAT

1.      The Motion is granted as set forth herein.

2.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are

authorized to take any and all actions necessary and appropriate to effectuate, implement, and

close the transaction set forth in the SPA and all other ancillary documents with respect to the

sale of the Helicopter to Purchaser.

3.      Pursuant to section 363(f) of the Bankruptcy Code, the sale of the

Helicopter to Purchaser is hereby granted free and clear of all liens, claims, encumbrances, and

other interests.  The Purchaser shall have no obligations with respect to any liabilities of the

Seller other than solely to the extent provided in the SPA.

4.      All liens, claims, encumbrances, and other interests in or on the Helicopter shall attached solely to the proceeds of the sale of the Helicopter pursuant to the SPA in accordance with the terms of the Interim DIP Order,[3] with the same validity, priority, force, and effect that they now have against the Helicopter, subject to any and all claims and defenses the Debtors and their estates may possess with respect thereto.

5.      The DIP Agent (as defined in the Interim DIP Order) and SunTrust Bank, as administrative agent under the WAC 7 Credit Agreement, are authorized and directed to release any and all liens on the Helicopter that secure the DIP Obligations and Debtors' obligations under the WAC 7 Credit Agreement.  The proceeds of the sale of MSN 33156 shall be placed in a segregated account of WAC 7 in accordance with the provisions of the Interim DIP Order.

6.      This Order shall be sole and sufficient evidence of the transfer of title to Purchaser, and the sale transaction consummated pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as

---

[3] *See Interim Order Pursuant to 11 U.S.C. 105, 361, 362, 363, 364, 507, and 552 Fed R. Bankr. P. 2002, 4001, 6003, 6004, and 9014, and L. Bankr. R. 2002-1, 4001-2, 9013-1, 9014-1, and 9014-2 (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [ECF No. 77] (the "**Interim DIP Order**").

sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the sale transaction.

7.      Nothing in this Order or the SPA releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations (including but not limited to environmental laws or regulations), and any associated liabilities for penalties, damages, cost recovery, or injunctive relief that any entity would be subject to as the owner, lessor, lessee, or operator of the Helicopter after the date of entry of this Order.

8.      Nothing contained in this Order or in the SPA shall in any way diminish the obligation of any entity, including the Debtors, to comply with environmental laws.

9.      Nothing in this Order or the SPA authorizes the transfer to the Purchaser of any licenses, permits, registrations, or governmental authorizations and approvals without the Purchaser's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

10.      Purchaser shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

11.      Under the circumstances of these Chapter 11 Cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

12.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

13.      The Debtors are authorized to take all action necessary to the relief granted in this Order.

WEIL:\96839462\2\79984.0003

14.    The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

Dated: _____, 2018
      New York, New York

                      _____
                      HONORABLE STUART M. BERNSTEIN
                      UNITED STATES BANKRUPTCY JUDGE

WEIL:\96839462\2\79984.0003

## **Exhibit C**

Sale and Purchase Agreement

WEIL:\96839462\2\79984.0003

PRIVILEGED AND CONFIDENTIAL

Date: _____ $11, 10.$ _____ 2018


**WAYPOINT ASSET CO 5 LIMITED**

as **Seller**


**and**


**AGRARFLUG HELILIFT GMBH & CO. KG**

as **Purchaser**


**Sale and Purchase Agreement**

relating to two (2) Bell B412SP helicopters

with manufacturer's serial numbers 33156 & 33158



**CONTENTS**

| | | |
|---|---|---|
| 1 | Definitions and Interpretation | 3 |
| 2 | Security Deposit | 4 |
| 3 | Agreement to sell | 5 |
| 4 | Conditions precedent | 5 |
| 5 | Warranties and disclaimer | 6 |
| 6 | Completion | 6 |
| 7 | Delivery | 7 |
| 8 | Payments | 7 |
| 9 | Cost and Expenses, Taxes and Tax Indemnity | 7 |
| 10 | Assignment | 8 |
| 11 | Notices | 8 |
| 12 | Governing Law | 8 |
| 13 | Counterparts | 9 |
| 14 | Entire Agreement | 9 |
| 15 | Enforceability | 9 |
| 16 | Waiver | 9 |
| 17 | Confidentiality | 9 |
| 18 | Third Party Rights | 10 |

Schedule 1

Part A - Details of Helicopters ............................................................. 11

Schedule 2 Form of Certificate of Acceptance ............................................. 12

Schedule 3 Form of Bills of Sale ............................................................ 13



**PRIVILEGED & CONFIDENTIAL**

**SALE AND PURCHASE AGREEMENT (THE "AGREEMENT")**

**DATED**   _11, 10_   **2018**

**BETWEEN:**

(1)     **WAYPOINT ASSET CO 5 LIMITED**, a company organized and existing under the laws of Ireland with company no. 555761, whose registered office is at 8 Riverpoint, Bishops Quay, V94 WC6A, Limerick, Ireland (the "**Seller**"); and

(2)     **AGRARFLUG HELILIFT GMBH & CO. KG**, a company incorporated under the laws of Germany with company no. HRA 6389., whose registered office is at Warendorfer Str. 190, 59227 Ahlen, Germany (the "**Purchaser**").

**RECITALS:**

Seller has agreed to sell, and Purchaser has agreed to purchase, the Helicopters (as defined below) on the terms and subject to the conditions of this Agreement.

**IT IS AGREED:**

**1       DEFINITIONS AND INTERPRETATION**

1.1     In this Agreement and the Recitals:

      **Acceptance Location** means Calgary, Canada.

      **Bills of Sale** means the bills of sale, substantially in the form set out in Schedule 3 (*Form of Bills of Sale*), to be signed by Seller and delivered to Purchaser in respect of the Helicopters.

      **Cape Town Convention** means the Convention on International Interests in Mobile Equipment 2001.

      **Cape Town Protocol** means the Protocol to the Convention on International Interests in Mobile Equipment on matters specific to Aircraft Equipment 2001.

      **Certificates of Acceptance** means the certificates, substantially in the form set out in Schedule 2 (*Form of Certificate of Acceptance*) to be signed by or on behalf of Purchaser and delivered to Seller.

      **Completion** shall have the meaning given in Clause 6 (*Completion*).

      **Conditions Precedent** means the conditions precedent set out in Clause 3 (*Conditions Precedent*) of this Agreement.

      **Convention** means the Cape Town Convention and the Cape Town Protocol.

      **Delivery Date** means on or before ~~October 31~~ November 30, 2018, or such other date as notified in writing by Seller to Purchaser.

      **Dollars** or **$** means United States Dollars.

      **Helicopters** means collectively:

(i)     one (1) Bell 412SP helicopter with manufacturer's serial number 33156 (including the two (2) Pratt & Whitney Canada PT6-3B engines bearing serial numbers CPPS-62517 and CPPS-TBO266 and all appurtenant equipment and parts installed thereon as more particularly described in Schedule 1 (*Details of Helicopters*) and where the content





permits, references to the Helicopter shall include all records, logs, manuals, technical data and other materials and documents relating to the Helicopter; and

(ii)    one (1) Bell 412SP helicopter with manufacturer's serial number 33158 (including the two (2) Pratt & Whitney Canada PT6-3B engines bearing serial numbers CPPS-TB0281 and CPPS-68028 and all appurtenant equipment and parts installed thereon as more particularly described in Schedule 1 (*Details of Helicopters*) and where the content permits, references to the Helicopter shall include all records, logs, manuals, technical data and other materials and documents relating to the Helicopter,

(each, a **Helicopter**).

**International Registry** means the international registration facilities established for the purpose of the Convention.

**Lien** means any encumbrance or security interest whatsoever, howsoever created or arising including (without prejudice to the generality of the foregoing) any right of ownership, security, mortgage, charge, lease, encumbrance, pledge, lien, assignment, statutory rights in rem, title retention, levy, claim, detention, hypothecation, right of set-off, right or any agreement or arrangement having the effect of creating a security interest, other than a right of set-off arising by operation of law.

**Purchase Documents** means each of this Agreement, the Bills of Sale, the Certificates of Acceptance, and any other document executed by Seller and Purchaser in connection with the sale and purchase of the Helicopters as contemplated by this Agreement.

**Purchase Price** means ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Security Deposit** means ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Shipping Location** means Germany.

**Taxes** means all present and future taxes, levies, imposts, duties or charges of any nature whatsoever, and wheresoever imposed, including (without limitation) corporation tax, value added tax (including, without limitation, VAT) or any similar tax and any franchise, transfer, sales, use, business, occupation, excise, real property, stamp, gross income, personal property, fuel, leasing, occupational, turnover, excess profits, excise, gross receipts, franchise, registration, licence, corporation, capital gains, export/import, income, levies, imposts, withholdings or other taxes or duties of any nature whatsoever (or any other amount corresponding to any of the foregoing) now or hereafter imposed, levied, collated, withheld or assessed by any national, regional or local taxing or fiscal authority or agency, governmental or otherwise, together with any penalties, additions to tax, fines or interest thereon, and **Tax** and **Taxation** shall be construed accordingly.

2    **SECURITY DEPOSIT**

2.1    The Security Deposit is payable by Purchaser in cash to be received by Seller in full (without deduction or set-off) by no later than 12 October 2018.

2.2    Purchaser acknowledges that:

2.2.1    the Security Deposit is non-refundable (except as set out in Clause 2.3 below);

2.2.2    the Security Deposit may, at Seller's option, be commingled with other Seller funds. Any interest earned on the Security Deposit will accrue for the account of Seller;

2.2.3    to the extent permitted under applicable law, the Security Deposit is and shall be the sole and absolute property of Seller and Purchaser shall have no rights in any of the Security Deposit other than as set forth in Clause 2.3;

2.2.4    in the event that any court or other governmental authority shall determine that Purchaser has rights in the Security Deposit, Purchaser pledges and assigns to Seller



4

PRIVILEGED AND CONFIDENTIAL

and grant a first priority security interest in and a charge over the Security Deposit to secure the performance of its obligations hereunder and shall execute such documents and take such actions as required by Seller to create and perfect such first priority security interest.

2.3    Purchaser shall conduct an inspection of the Helicopters at the Acceptance Location by no later than 20 October 2018. Prior to such date, the Security Deposit paid to Seller by Purchaser shall be refundable subject to completion of a satisfactory inspection. On or after such date, the Security Deposit shall be non-refundable, regardless of whether the Purchaser has elected to inspect the Helicopters.

2.4    Notwithstanding anything to the contrary in this Clause 2, in the event the sale and purchase of the Helicopters is not completed for reasons solely attributable to Seller in its reasonable opinion (and not, for the avoidance of doubt, as a result of the rejection of the Helicopters by Purchaser), and otherwise not as a result of any action or omission of Purchaser, Seller shall return any pre-paid Security Deposit to Purchaser.

**3      AGREEMENT TO SELL**

3.1    Upon the terms and subject to the conditions of this Agreement, Seller agrees to sell to Purchaser and Purchaser agrees to purchase each Helicopter from Seller on the Delivery Date.

3.2    In consideration for the purchase of the Helicopters, Purchaser shall pay, or caused to be paid, to Seller the Purchase Price on or before the Delivery Date. The balance of the Purchase Price shall be paid by wire transfer by Purchaser to Seller in accordance with Clause 6 (*Completion*).

3.3    The Purchase Price must be received by Seller in full and for the avoidance of doubt shall be payable without set-off, withholding or other deduction, wheresoever such deduction is applied, and in the event of set-off, withholding or other deduction, Purchaser shall gross up the amount payable such that after such set-off, withholding or other deduction, Seller receives the Purchase Price in full.

**4      CONDITIONS PRECEDENT**

4.1    Purchaser shall:

4.1.1    have the right to inspect the Helicopters in accordance with Clause 2.3 by no later than 20 October 2018. Thereafter, even in the absence of Purchaser having exercised its right to inspect the Helicopters, Purchaser shall be deemed to have completed a satisfactory inspection of the Helicopters;

4.1.2    on the Delivery Date have received evidence that each Helicopter has an Export Certificate of Airworthiness in the Acceptance Location.

4.2    Seller shall have received from Purchaser prior to the Delivery Date:

4.2.1    a certificate of a duly authorised officer of the Purchaser, certifying the following documentation as a true copy and as being in full force and effect and not amended or rescinded:

(a)    a copy of the board minutes of the board of directors of the Purchaser (i) approving the transaction and (ii) authorising a person or persons to sign and deliver on behalf of the Purchaser any transaction documents to which Purchaser is a party;

(b)    the constitutional documents of the Purchaser

(c)    any powers of attorney for signatories (if applicable); and

(d)    specimen signatures of the duly authorised signatories; and

4.2.2    the Security Deposit in accordance with Clause 2 (*Security Deposit*).



5

**PRIVILEGED AND CONFIDENTIAL**

## 5    WARRANTIES AND DISCLAIMER

5.1    Seller warrants to Purchaser that:

5.1.1    immediately prior to and at Completion, Seller will have full power and lawful authority to transfer good and marketable title to Purchaser free from all Liens, except those Liens which shall be discharged concurrently with Completion;

5.1.2    on Completion, the Helicopters shall be located in the Acceptance Location;

5.1.3    on Completion and receipt by Seller of the Certificates of Acceptance, Seller will issue each Bill of Sale in order to transfer to Purchaser good and marketable title in and to the Helicopters.

5.2    Purchaser expressly agrees and acknowledges that save only as provided in Clause 5.1, no condition, warranty or representation is or has been given by or on behalf of Seller in respect of the Helicopters or any part thereof.

5.3    Each party represents and warrants to the other, which representations and warranties shall survive Completion, that on the date hereof and at Completion:

5.3.1    it is duly organised and validly existing under the laws of its jurisdiction of incorporation and to enter into and perform its obligations hereunder and to consummate the transactions contemplated hereby and thereby;

5.3.2    the documents which contain or establish its constitution, as well as any bylaws, operating agreements, or other applicable documents or agreements incorporate provisions which authorise, and all necessary corporate action has been taken to authorise, and all necessary authorisations of any governmental or other authority have been duly and unconditionally obtained and are now in full force and effect which are required to authorise it to sign and deliver, and perform the transactions contemplated by, this Agreement;

5.3.3    this Agreement constitutes its legal, valid and binding obligations which are enforceable against it in accordance with its provisions subject only to any bankruptcy, insolvency or other similar laws affecting creditors' rights generally; and

5.3.4    neither the execution and delivery of this Agreement nor the performance of any of the transactions contemplated herein will violate its constitutional documents, its bylaws, its operating agreement, or any other applicable documents or agreements, nor any applicable law, regulation, order or decree, either in its jurisdiction of incorporation or which may otherwise be applicable to this Agreement and the transactions contemplated hereby.

## 6    COMPLETION

Subject to satisfaction of the conditions precedent referred to in Clause 4 (*Conditions Precedent*), on the Delivery Date and upon receipt by Seller of the Purchase Price in accordance with Clause 8 *(Payments)*, the following shall occur (**Completion**):

6.1.1    Seller shall deliver the Helicopters to Purchaser whilst the Helicopters are situated in the Acceptance Location in an "as is", "where is" condition with all faults and liabilities, at a time to be agreed between Seller and Purchaser;

6.1.2    immediately upon delivery of the Helicopters to Purchaser, Purchaser shall deliver to Seller the Acceptance Certificates (one per Helicopter) duly executed by an authorised signatory of Purchaser;

6.1.3    Seller shall deliver the Bills of Sale (one per Helicopter) to Purchaser in duplicate; and

6

6.1.4    good and marketable title in and to the Helicopters shall, upon delivery of the applicable Bill of Sale by Seller, pass to Purchaser free from all Liens created by or through Seller.

## 7    DELIVERY

7.1    Risk of loss or damage to the Helicopters shall pass to Purchaser upon transfer of title in accordance with Clause 6 (*Completion*) hereof.

7.2    Seller shall provide to Purchaser evidence of the commencement of the deregistration of each Helicopter from the Canadian aircraft registry, which shall be evidenced by the provision to the Purchaser of a duly signed "request for deregistration" on the Delivery Date.

7.3    If requested by Purchaser, Seller shall co-operate with Purchaser and take such steps as Purchaser may require, at Purchaser's cost and expense, to allow Purchaser to be registered as the owner of the Helicopters on all relevant registers (including, without limitation and to the extent applicable, with the International Registry) or with all relevant authorities.

7.4    Seller shall perform (or procure the performance of) all further acts and things within its control, and execute and deliver (or procure the execution and delivery of) such further documents, as may be required by applicable law or as may be necessary or reasonably requested by the other party to implement or give effect to this Agreement and the transactions contemplated by this Agreement.

7.5    Seller shall co-operate with Purchaser (at Purchaser's sole cost and expense) to assist Purchaser in promptly making any filings, recordings and registrations in any applicable state of registration which are necessary or desirable in order to protect the interests of Purchaser (as owner) under this Agreement or to ensure the validity, enforcement or priority thereof and to protect the rights of Purchaser.

## 8    PAYMENTS

Each of (i) the Security Deposit and (ii) the balance of the Purchase Price shall be paid by Purchaser to the following account, unless otherwise notified by Seller to Purchaser of such other account details:

| Waypoint Asset Co 7 Limited |
|---|
| Barclays Bank PLC |
| GB24 BARC 2000 0059 3362 88 |
| BARCGB22 |

## 9    COST AND EXPENSES, TAXES AND TAX INDEMNITY

9.1    Each party shall be responsible for its own costs and expenses; provided, however, that Purchaser shall pay on demand all Taxes which may be levied or imposed on either party in connection with the sale, purchase, delivery or transfer of the Helicopters or Seller's ownership of the Helicopters or in the performance of any services or the making of any payments hereunder by Purchaser or Seller.

9.2    Purchaser shall indemnify and hold Seller harmless from any and all Taxes referred to in Clause 9.1 and, for the avoidance of doubt, such provision shall survive Completion.

9.3    Seller shall be responsible for disassembly, freight preparation and deregistration from the Canadian registry of each Helicopter.

9.4    For the avoidance of doubt, Purchaser shall be responsible for any costs arising from transit (excluding the freight preparation, pursuant to Clause 9.3 above), insurance, exportation and importation, and registration in the Shipping Location, howsoever incurred in connection with the purchase and transit of the Helicopters from the Acceptance Location to the Shipping Location and shall procure that the Helicopters shall be insured from the time of Completion.

PRIVILEGED & CONFIDENTIAL

**10      ASSIGNMENT**

Neither party to this Agreement shall assign any of its respective rights and obligations under this Agreement without the prior written consent of the other party to this Agreement.

**11      NOTICES**

Save as otherwise expressly provided in this Agreement, every notice, request, demand or other communication under this Agreement shall:

11.1.1    be in writing delivered personally or by first class prepaid letter (airmail if available) or facsimile transmission or e-mail;

11.1.2    be deemed to have been received, subject as otherwise provided in this Agreement, in the case of facsimile, upon transmission provided that such transmission by fax is in legible form and is accompanied or generates a substantially simultaneous confirmation of transmission, and in the case of a letter when delivered personally or otherwise upon receipt and in the case of an email, when the sender receives a read receipt from the addressee; and

11.1.3    be sent:

(a)     to Seller at:

8 Riverpoint
Bishops Quay
V94 WC6A Limerick
Ireland

Fax No:        +353 61 445022
Email:         legal@waypointleasing.com
Attention:     Legal

(b)     to Purchaser at:

Warendorfer Str. 190
59227 Ahlen
Germany

Email:         d.beese@agrarflug-helilift.com
Attention:     Dennis Beese

or to such other contact person, address or facsimile number as is notified in writing in accordance with this Clause 11 at least two (2) Business Days before the service of notice under this Agreement.

For the avoidance of doubt, any e-mail delivered shall be followed up by first-class prepaid letter (or airmail if applicable) with affecting the deemed service provisions of this Clause 11.

**12      GOVERNING LAW**

12.1     English law governs this Agreement its interpretation and any non-contractual obligations arising from or connected with it.

12.2     Each party irrevocably agrees for the benefit of the other that the courts of England shall have jurisdiction to hear and determine any suit, action or proceeding, and to settle any disputes, which may arise out of or in connection with this Agreement and, for such purposes, irrevocably submits to the jurisdiction of such courts.

12.3     Each party irrevocably waives any objection which it might now or hereafter have to the courts referred to in Clause 12.2 (or in Clause 12.4) being nominated as the forum to hear and determine any suit, action or proceeding, and to settle any disputes, which may arise out of or



8

in connection with this Agreement and agrees not to claim that any such court is not a convenient or appropriate forum in each case whether on the grounds of venue or forum non conveniens or any similar grounds or otherwise.

12.4    The submission to the jurisdiction of the courts referred to in Clause 12.2 shall not (and shall not be construed so as to) limit the right of Purchaser to take proceedings against Seller or any other person in any other court of competent jurisdiction nor shall the taking of proceedings in any one or more jurisdictions preclude the taking of proceedings in any other jurisdiction, whether concurrently or not.

**13    COUNTERPARTS**

This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts shall together constitute one and the same Agreement.

**14    ENTIRE AGREEMENT**

This Agreement contains the entire agreement between Seller and Purchaser relating to the sale and purchase of the Helicopters and supersedes all previous statements, representations and agreements between the parties hereto in relation thereto and the terms and conditions of this Agreement shall not be varied otherwise than by an instrument in writing executed by the parties hereto.

**15    ENFORCEABILITY**

If any provision of this Agreement shall to any extent be invalid or unenforceable the remainder of this Agreement shall not be affected thereby and each other term and condition shall be valid and enforceable to the fullest extent permitted by law.

**16    WAIVER**

No failure or delay on the part of any party to exercise any power or right under this Agreement and no course of dealing between the parties to this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise by a party of any power or right hereunder preclude any other or further exercise thereof or any other such power or right. The remedies provided herein are cumulative and are not exclusive of any remedies provided by law.

**17    CONFIDENTIALITY**

17.1    Each party shall, and shall procure that their respective officers, employees and agents shall, keep confidential and shall not, without the prior written consent of the other party, disclose to any third party, this Agreement or any of the terms of this Agreement or any documents or materials supplied by or on behalf of a party in connection with this Agreement, save that any such party shall be entitled to make such disclosure:

17.1.1    in connection with any proceedings arising out of or in connection with this Agreement to the extent that such party may consider necessary to protect its interests;

17.1.2    if required to do so by an order of a court of competent jurisdiction whether in pursuance of any procedure for discovering documents or otherwise or pursuant to any law;

17.1.3    to its auditors or legal advisers or other professional advisers;

17.1.4    if required to do so by any applicable law or in order for such Party to comply with its obligations under this Agreement; or

17.1.5    to its affiliates provided that such party shall be responsible for ensuring that the relevant affiliate complies with the confidentiality undertaking provided in this Clause 17.

**PRIVILEGED AND CONFIDENTIAL**

## 18      THIRD PARTY RIGHTS

Unless expressly provided to the contrary in this Agreement a person who is not a party to this Agreement has no right under the Contracts (Rights of Third Parties) Act 1999 (the **Third Parties Act**) to enforce or to enjoy the benefit of any term of this Agreement, and the parties to this Agreement may rescind, vary, waive, release, assign, novate or otherwise dispose of all or any of their respective rights or obligations under this Agreement without the consent of any person who is not a party to this Agreement.

**In witness whereof** this Agreement has been entered into the day and year first above written.

Signed by duly authorised for and on behalf of
**WAYPOINT ASSET CO 5 LIMITED**

Torsten Islei
Attorney-in-Fact

Signed by duly authorised for and on behalf of
**AGRARFLUG HELILIFT GMBH & CO. KG**

AGRARFLUG
HELILIFT
GmbH & Co. KG
Warendorfer Str. 190
59227 Ahlen/Germany
Tel. +49 (0) 2382 / 940530-0
Fax +49 (0) 2382 / 940530-80

10

**PRIVILEGED AND CONFIDENTIAL**

### Schedule 1
### Part A - Details of Helicopters

| Type | MSN | Engines | Engine Serial Number | Combined Purchase Price |
|------|-----|---------|----------------------|-------------------------|
| Bell 412SP | 33156 | Two (2) Pratt & Whitney Canada PT6-3B | CPPS-62517 and CPPS-TBO266 | ████████ (exclusive of VAT). |
| Bell 412SP | 33158 | Two (2) Pratt & Whitney Canada PT6-3B | CPPS-TB0281 and CPPS-68028 | |



11

PRIVILEGED AND CONFIDENTIAL

### Schedule 2
### Form of Certificate of Acceptance

To:    **WAYPOINT ASSET CO 5 LIMITED**

**One (1) Bell 412SP helicopter with manufacturer's serial number [33156 / 33158] as described below (the "Helicopter")**

| Type | MSN | Engines | Engine Serial Number |
|------|-----|---------|----------------------|
| Bell 412SP | [33156 / 33158] | Two (2) Pratt & Whitney Canada PT6-3B Engines | [CPPS-62517 and CPPS-TBO266][1] <br><br> [CPPS-TB0281 and CPPS-68028][2] |
| All parts, components, furnishings, equipment and accessories belonging to, installed in or appurtenant to such helicopter or engines | | | |
| Helicopter manuals and technical records | | | |

We hereby confirm and acknowledge that, pursuant to a sale and purchase agreement dated _____ and made between ourselves and yourselves (the "**Sale and Purchase Agreement**"), we have today accepted delivery of the Helicopter at _____ (UTC) at _____.

This Acceptance Certificate and any non-contractual obligations arising out of or in connection with this Acceptance Certificate shall be governed by and construed in accordance with English law.

Capitalised terms used but not defined in this Acceptance Certificate shall have the meaning given to them (including by way of reference) in the Sale and Purchase Agreement.

Dated:

Signed for and on behalf of

**AGRARFLUG HELILIFT GMBH & CO. KG**

...............................

(Authorised Signatory)

---

[1] For MSN 33156

[2] For MSN 33158



12

PRIVILEGED AND CONFIDENTIAL

### Schedule 3
### Form of Bills of Sale

By this Bill of Sale, WAYPOINT ASSET CO 5 LIMITED, a company organized and existing under the laws of Ireland with company no. 555761, whose registered office is at 8 Riverpoint, Bishops Quay, V94 WC6A, Limerick, Ireland (the "**Seller**"), hereby transfers all legal and beneficial rights, title and interest in and to the helicopter described below, with good and marketable title and free of all Liens created by or through Seller, to AGRARFLUG HELILIFT GMBH & CO. KG, a [company] incorporated under the laws of Germany with company no. [•], whose registered office is at Warendorfer Str. 190, 59227 Ahlen, Germany (the "**Purchaser**")   pursuant to a sale and purchase agreement dated _____ 2018 (the "**Sale and Purchase Agreement**") for the Purchase Price and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged:

| Type | MSN | Engines | Engine Serial Number |
|------|-----|---------|----------------------|
| Bell 412SP | [33156 / 33158] | Two (2) Pratt & Whitney Canada PT6-3B Engines | [CPPS-62517 and CPPS-TBO266][3]<br>[CPPS-TB0281 and CPPS-68028][4] |
| All parts, components, furnishings, equipment and accessories belonging to, installed in or appurtenant to such helicopter or engines | | | |
| Helicopter manuals and technical records | | | |

Seller does hereby warrant that, at the time of transfer indicated below, it transfers to Purchaser, with good and marketable title, all legal and beneficial right, interest and title in and to the Helicopter free and clear of all Liens created by or through Seller and Seller hereby agrees to warrant and defend such title forever against all claims and demands whatsoever.

This Bill of Sale and any non-contractual obligations arising out of or in connection with this Bill of Sale shall be governed by and construed in accordance with English law.

Capitalised terms used but not defined in this Bill of Sale shall have the meaning given to them (including by way of reference) in the Sale and Purchase Agreement.

.....................................................

for and on behalf

**WAYPOINT ASSET CO 5 LIMITED**

Date:

Time:

---

[3] For MSN 33156

[4] For MSN 33158

13



**Exhibit D**

Side Letter

## SIDE LETTER

**One (1) Bell 412SP helicopter with manufacturer's serial number 33158**

*06.11.*_____, 2018

(A)  **WAYPOINT ASSET CO 5 LIMITED**, a company organized and existing under the laws of Ireland with company no. 555761, whose registered office is at 8 Riverpoint, Bishops Quay, V94 WC6A, Limerick, Ireland (the "**Seller**"); and

(B)  **AGRARFLUG HELILIFT GMBH & CO. KG**, a company incorporated under the laws of Germany with company no. HRA 6389., whose registered office is at Warendorfer Str. 190, 59227 Ahlen, Germany (the "**Purchaser**").

1.  We refer herein to the Sale and Purchase Agreement dated October 11, 2018 between Seller and Purchaser in respect of the sale and purchase of two (2) Bell 412SP helicopters as defined more particularly therein (the "**SPA**").

2.  Capitalised words and phrases used but not defined herein shall have the meaning ascribed to such terms in the SPA.

3.  Each of Seller and Purchaser agrees to the following:

   (a)  the Purchase Price attributable to the Helicopter with manufacturer's serial number 33158 ("**MSN 33158**") is ███████████████████████████████████████, comprising (i) the portion of Security Deposit of ███████████████ and (ii) the balance to be paid, being ███████████████████████;

   (b)  accordingly, Purchaser shall pay to Seller, to be received by Seller by no later than November 8, 2018, an amount of ███████;

   (c)  upon receipt of the amount specified in sub-paragraph (b) above, Seller shall apply ███████ ████████████████████████████████ of the Security Deposit, which shall be the remainder of the Purchase Price attributable to MSN 33158;

   (d)  immediately following Seller's receipt of the above, and subject to Seller's satisfaction with the conditions precedent set out at Clause 4.2 of the SPA, Seller and Purchaser shall proceed with the provisions of Clauses 6 and 7 of the SPA in respect of MSN 33158 and effect the transfer of title in MSN 33158 to the Purchaser, provided that the Certificate of Acceptance to be executed by Purchaser in such process shall set out any outstanding return to service work to be performed on MSN 33158 after the completion of the purchase thereof.

4.  Notwithstanding the transfer of title in MSN 33158 from Seller to Purchaser, Seller shall nevertheless procure the completion of the return to service work required on MSN 33158 and shall procure the provision of an export certificate of airworthiness in respect of such Helicopter.

5.  Seller shall ensure that prior to the (ocean) freighting of each Helicopter from the Acceptance Location to the Shipping Location, each Helicopter shall be properly disassembled and prepared for (ocean) freight, including necessary cartages and transportation gears for each Helicopter and the subcomponents thereof. For the avoidance of doubt, this Paragraph is subject to the provisions of clause 9.4.

6.  This side letter shall form part of and shall be ancillary to the SPA.

7.  This side letter and any non-contractual obligations arising out of or in connection herewith shall be governed by and construed in accordance with English law.

*[Signature page overleaf]*

Agrarflug - MSN 33158 - Side Letter to SPA:252150_1

Signed by duly authorised for and on behalf of
**WAYPOINT ASSET CO 5 LIMITED**

Ken Dowling
Director

Signed by duly authorised for and on behalf of
**AGRARFLUG HELILIFT GMBH & CO. KG**

AGRARFLUG
HELILIFT
GmbH & Co. KG
Warendorfer Str. 190
59227 Ahlen/Germany
Tel. +49 (0) 23 82 / 94 05 30-0
Fax +49 (0) 23 82 / 94 05 30-80