**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re                                                          :       Chapter 11
                                                               :
WAYPOINT LEASING                                               :       Case No. 18-13648 (SMB)
HOLDINGS LTD., *et al.*,                                       :
                                                               :       (Jointly Administered)
          Debtors.[1]                                          :
---------------------------------------------------------------x

### ORDER APPROVING (A) BIDDING PROCEDURES, (B) BID PROTECTIONS, (C) FORM AND MANNER OF NOTICE OF CURE COSTS, AUCTION, SALE TRANSACTION, AND SALE HEARING, AND (D) DATE FOR AUCTION, IF NECESSARY, AND SALE HEARING

Upon the motion (the "**Motion**")[2] of Waypoint Leasing Holdings Ltd. and certain

of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "**Debtors**")

in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 363,

365, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002,

6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules

2002-1, 6004-1, 6006-1, and 9006-1(b) of the Local Bankruptcy Rules for the Southern District of

New York (the "**Local Rules**"), and the *Amended Sale Guidelines for the Conduct of Asset Sales*

*Established and Adopted by the United States Bankruptcy Code for the Southern District of New*

*York* (the "**Sale Guidelines**") for:  (i) entry of an order approving (a) the Bidding Procedures

substantially in the form attached hereto as **Exhibit 1**; (b) authorizing and approving certain

bidding protections for Macquarie Rotorcraft Leasing Holdings Limited ("**Macquarie**"), including

---

[1] A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is attached to the Motion as **Exhibit A**.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Macquarie APA (as defined herein), as applicable.

an expense reimbursement and break-up fee on the terms set forth in the Macquarie APA (as defined below); (c) scheduling an auction (the "**Auction**") to be held on **January 8, 2019 at 10:00 a.m. (ET)**, if necessary; (d) scheduling one or more hearings with respect to the approval of the sale of the Purchased Assets (each, a "**Sale Hearing**"), subject to the Court's availability, and approving the notices related thereto; (e) authorizing and approving the procedures set forth in the Bidding Procedures Order (the "**Assumption and Assignment Procedures**") for the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases and the determination of cure costs related thereto; (f) approving various deadlines in connection with the foregoing; and (g) authorizing and approving the form and manner of (y) the notice of Auction, Sale Transaction, and Sale Hearing (the "**Sale Notice**"), substantially in the form attached hereto as **<u>Exhibit 2</u>** and (z) the notice to various counterparties of proposed cure costs and the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases (the "**Cure Notice**"), substantially in the form attached hereto as **<u>Exhibit 3</u>** ((a) through (g) collectively, the "**Bidding and Auction Process**"); and (ii) entry of one or more separate orders (each, a "**Sale Order**") approving (a) the sale of the Purchased Assets (directly or indirectly) free and clear of liens, claims, encumbrances, and other interests; (b) the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases in connection therewith (the "**Transferred Contracts**") ((a) and (b) collectively, the "**Sale Transaction**"); and (c) related relief, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice

of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and any objections to the requested relief having been withdrawn or overruled on their merits; and the Court having held a hearing on December 20, 2018 to consider the relief requested in the Motion as to the Bidding and Auction Process (the "**Hearing**"); and all of the proceedings had before the Court; and the Court having reviewed the Motion and the Niemann Declaration filed in support of the Motion; and the Court having addressed the objections raised to the Motion on the record at the Hearing and overruled all objections raised to the Motion; and the Court's findings and rulings set forth at the Hearing are incorporated herein; and the Court having found and determined that the relief sought in the Motion as to the Bidding and Auction Process is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT**:[3]

A.      The Court has jurisdiction to hear and determine the Motion and to grant the relief requested herein with respect to the Bidding and Auction Process pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The statutory and legal predicates for the relief requested in the Motion are
sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and
6006, Local Rules 2002-1, 6004-1, 6006-1, and 9006-1(b), and the Sale Guidelines.

C.      Good and sufficient notice of the Motion, the Bidding and Auction Process,
and the relief sought in the Motion has been given under the circumstances, and no other or further
notice is required except as set forth herein and in the Bidding Procedures.  A reasonable
opportunity to object or be heard regarding the relief provided herein has been afforded to parties
in interest.

D.      The Debtors and their advisors engaged in a robust and extensive marketing
and sale process before the Petition Date to solicit and develop the highest or best offer for the
Purchased Assets.

E.      Macquarie submitted a bid (the "**Macquarie Bid**") for the Purchased Assets
as reflected in that certain Stock and Asset Purchase Agreement (the "**Macquarie APA**"), as
annexed to the Motion, which represents the highest or best third party offer the Debtors have
received to purchase the Purchased Assets.  The Macquarie Bid shall be subject to higher or better
offers, including Credit Bids, in accordance with the Bidding Procedures.

F.      Pursuit of the Macquarie Bid reflects a sound exercise of the Debtors'
business judgment.  The Macquarie Bid provides the Debtors with the opportunity to sell the
Purchased Assets to preserve and realize their going concern value.  ~~Without the Macquarie Bid,
the Debtors would likely realize a lower price for the Purchased Assets, therefore, the contributions
of Macquarie to the process have indisputably provided a substantial benefit to the Debtors, their
estates, and creditors.~~  The Macquarie Bid will ~~enable the Debtors to continue their operations,
minimize disruption to the Debtors' business, and~~ secure a fair and adequate baseline price for the

Purchased Assets at the Auction and, accordingly, will provide a benefit to the Debtors' estates, their creditors, and all parties in interest.  **[SMB: 12/21/18]**

G.    The Bid Protections, including the Break-Up Fee and Expense Reimbursement, have been negotiated by Macquarie, the Debtors, and their respective advisors at arms' length and in good faith and are necessary to ensure that Macquarie will continue to pursue the Macquarie Bid and the Sale Transaction.  The Break-Up Fee and Expense Reimbursement, to the extent payable under the Macquarie APA, (a) is an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code and shall be treated as an allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b), and 507(a)(2) of the Bankruptcy Code; (b) is commensurate to the real and material benefits conferred upon the Debtors' estates by Macquarie; and (c) is fair, reasonable, and appropriate, including in light of the necessity to announce a sale transaction for the Purchased Assets at the outset of the Chapter 11 Cases, and the efforts that have been and will be expended by Macquarie.  The Bid Protections, including the Break-Up Fee and Expense Reimbursement, are material inducements for, and conditions of, Macquarie's execution of the Macquarie APA and are adequately designed to ensure that the highest or best offers are attained for the sale of the Debtors' assets.  Unless it is assured that the Bid Protections, including the Break-Up Fee and Expense Reimbursement, will be available, Macquarie is unwilling to remain obligated to consummate the Sale Transaction or otherwise be bound under the Macquarie APA (including the obligation to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Bidding Procedures).

H.    The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures; (ii) the Bid Protections, including the Break-Up Fee

and Expense Reimbursement (to the extent payable under the Macquarie APA); and (iii) the form

and manner of notice of Cure Costs, the Auction, Sale Transaction, and Sale Hearing.

I.      The Bidding Procedures were negotiated in good faith and at arms' length

and are reasonably designed to promote participation and active bidding and ensure that the highest

or best value is generated for the Purchased Assets, thus maximizing the value of the Debtors'

estates.

J.      Macquarie is not an "insider" or "affiliate" of any of the Debtors, as those

terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators,

directors, or controlling stockholders exists between Macquarie and the Debtors.

K.      The Sale Notice and Cure Notice are appropriate and reasonably calculated

to provide all interested parties with timely and proper notice of the Bidding Procedures,

Assumption and Assignment Procedures, Auction, Sale Hearing, and Sale Transaction free and

clear of any liens, claims, encumbrances, or other interests pursuant to section 363(f) of the

Bankruptcy Code (with such liens, claims, encumbrances or other interests attaching to the

proceeds of any such sale) and any and all objection deadlines related thereto, and no other or

further notice shall be required for the Motion, the Sale Transaction, or the assumption and

assignment of the Transferred Contracts except as expressly required herein.

L.      The agreement by each of the Debtors to sell its assets or equity (or transfer

such assets or equity) to the WAC Lenders pursuant to a Successful Credit Bid on the terms set

forth in this Order and the Bidding Procedures and to comply with the Bidding Procedures and

other obligations set forth in this Order is an integral component of the adequate protection

provided to the Participating WAC Secured Parties for the Debtors' use of such Participating WAC

Secured Parties' cash collateral and an inducement to obtain the consent of the Participating WAC

Secured Parties to the terms of the DIP Facility, including the granting of the DIP Claims and the DIP Liens (each as defined in the DIP Credit Agreement).

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Motion is granted to the extent set forth herein.

2.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, hereby are overruled and denied on the merits with prejudice.

**Bidding Procedures and Auction**

3.      The Bidding Procedures, attached hereto as **Exhibit 1**, are fully incorporated herein and approved and shall apply with respect to any bids for, and the auction and sale of, the Purchased Assets. ~~The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a Qualified Third Party Bid and a Credit Bid, are fair, reasonable and appropriate, and are designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and all parties in interest.~~ The Debtors are authorized to take all actions, including incurring and paying costs and expenses, consistent with the Approved Budget (as defined in the DIP Credit Agreement) and otherwise in accordance with the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552, Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014, and L. Bankr. R. 2002-1, 4001-2, 9013-1, 9014-1, and 9014-2 (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection, (III) Scheduling a Final Hearing; and*

*(IV) Granting Related Relief* (ECF No. 77), as are necessary or appropriate to implement the Bidding Procedures.  **[SMB: 12/21/18]**

4.     Notwithstanding anything herein to the contrary, each WAC Facility Agent shall have the absolute and irrevocable right to credit bid for its WAC Collateral, subject only to such WAC Facility Agent complying with the requirements of a Streamlined Credit Bid or 363(k) Credit Bid.  In the event that a WAC Facility Agent elects to make a Streamlined Credit Bid by January 14, 2019 and complies with the requirements of this Order and the Bidding Procedures, then subject only to a Successful Third Party Bidder's right to submit a Matching Bid (as defined in the Bidding Procedures), by no later than February 15, 2019, either (i) the Court shall have entered an order approving such Streamlined Credit Bid and authorizing the sale to such WAC Facility Agent, which order shall provide for a closing as soon as reasonably possible, or (ii) upon seven (7) calendar days' notice by the relevant WAC Facility Agent to the Debtors, in addition to all other remedies available to the WAC Facility Agent, the automatic stay imposed under section 362 of the Bankruptcy Code shall automatically and without further notice or action by any party or further order of the Court be lifted to permit such WAC Facility Agent to exercise rights and remedies with respect to its WAC Collateral.  Notwithstanding anything to the contrary herein or in the Bidding Procedures, if the WAC Facility Agent for WAC 9 submits a Credit Bid for the full amount of its claim under its WAC Facility, then Macquarie shall not submit a Matching Bid. Furthermore, notwithstanding anything to the contrary herein or in the Bidding Procedures, with respect to any WAC Facility in which Macquarie and/or any of its affiliates constitute the Required Lenders under such WAC Facility:

i.    neither Macquarie nor any of its affiliates will submit or direct a Credit Bid to be made under such WAC Facility unless either (i) the Macquarie APA

has been terminated under Article XI of the Macquarie APA; or (ii) a credit

bid has been made with respect to such WAC Facility or a Successful Third

Party Bid (other than the Macquarie Bid) has been selected as the highest

or best offer with respect to the applicable WAC at the Auction;

ii.  unless the Macquarie APA has been terminated under Article XI of the

Macquarie APA, neither Macquarie nor any of its affiliates will exercise

any rights to control or limit the use of cash collateral under such WAC

Facility as provided under the second interim order approving the *Motion*

*of Debtors Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552,*

*Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014, and L. Bankr. R. 2002-*

*1, 4001-2, 9013-1, 9014-1, and 9014-2 for Interim and Final Orders (I)*

*Authorizing the Debtors to (A) Obtain Senior Secured Priming*

*Superpriority Postpetition Financing (B) Grant Liens and Superpriority*

*Administrative Expense Status, and (C) Utilize Cash Collateral, (II)*

*Granting Adequate Protection, (III) Scheduling Final Hearing, and (IV)*

*Granting Related Relief*, filed on December 8, 2018 (ECF No. 51) or any

subsequent interim or final order relating to such use of cash collateral; and

iii.  if Macquarie or any of its affiliates exercise the right to make a Credit Bid

under any WAC Facility, then each other WAC Lender under such WAC

Facility can elect, in its sole discretion to either (i) participate in such Credit

Bid, or (ii) require that the Macquarie entity that exercised such credit

bidding right pay such WAC Lender its proportionate share of such credit

bid in cash in full satisfaction of such WAC Lenders' rights, claims and

interests in the collateral that is subject to such credit bid (and such Macquarie entity will then hold sole rights, title and interest in such other WAC Lender's proportionate share in the collateral that is subject to such credit bid).

5.    Subject to the Bidding Procedures and this Order, the Debtors shall have the right as they may reasonably determine to be in the best interests of their estates to carry out the Bidding Procedures, including, without limitation, to: (i) determine which bidders are Qualified Third Party Bidders; (ii) determine which bids are Qualified Third Party Bids; (iii) determine which bid is a Successful Third Party Bid and Back-Up Third Party Bid, each as it relates to the Auction; (iv) reject any Third Party Bid or Credit Bid that is (a) inadequate or insufficient and not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (b) contrary to the best interests of the applicable Debtors and their estates; (v) adjourn or cancel the Auction and/or the Sale Hearing as provided in the Bidding Procedures; and (vi) modify the Bidding Procedures consistent with their fiduciary duties and the Bankruptcy Code; in each case, solely to the extent consistent with the terms of the Macquarie APA, the Bidding Procedures, and this Order.

**Notice of Sale Transaction**

6.    The Sale Notice, substantially in the form attached hereto as **Exhibit 2** is approved.

7.    All parties in interest shall receive or be deemed to have received good and sufficient notice of (i) the Motion; (ii) the Assumption and Assignment Procedures, including the proposed assumption and assignment of the Transferred Contracts to Macquarie pursuant to the Macquarie APA or to bidders submitting a Successful Third Party Bid or Successful Credit Bid;

(iii) the Auction; and (iv) the Sale Transaction, including the sale of the Purchased Assets free and

clear of all liens, claims, encumbrances, and other interests and no further notice of the foregoing

shall be required, if:

a) Within three (3) business days[4] after entry of this Order or as soon as reasonably practicable thereafter, the Debtors shall cause the Sale Notice to be filed with the Court and served by email, mail, facsimile, or overnight delivery on:   (i) counsel for Macquarie; (ii) counsel for the Steering Committee; (iii) counsel for the DIP Agent; (iv) counsel for the WAC Facility Agents; (v) any official committee appointed in the Chapter 11 Cases; (vi) the Office of the United States Trustee for Region 2; (vii) all Persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Purchased Assets in whole or in part during the past twelve (12) months; (viii) all entities known by the Debtors to have asserted any lien, claim, encumbrance, or other interest in the Purchased Assets (for whom identifying information and addresses are available to the Debtors); (ix) all non-Debtor parties to the Transferred Contracts (for whom identifying information and addresses are available to the Debtors); (x) any Government Authority (as defined in the Macquarie APA) known to have a claim in the Chapter 11 Cases; (xi) the United States Attorney for the Southern District of New York; (xii) the Office of the Attorney General in each state in which the Debtors operate; (xiii) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (xiv) the Federal Trade Commission; (xv) the United States Attorney General/Antitrust Division of Department of Justice; (xvi) the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); (xvii) all affected federal, state, and local regulatory (including environmental) agencies; (xviii) the United States Environmental Protection Agency; (xix) the Internal Revenue Service; and (xx) all other Persons requesting notice under Bankruptcy Rule 2002 or as directed by the Court (for whom identifying information and addresses are available to the Debtors); and

b) Within seven (7) business days after entry of this Order or as soon as reasonably practicable thereafter, the Debtors shall cause the Sale Notice to be published on the website of the Debtors' claims and noticing agent and once in the national editions of each of *The New York Times*, *The Financial Times*, and *Aviation Week*.

---

[4] All reference to "days" shall be business days, unless expressly noted.

## Macquarie APA and Bid Protections

8.    The Bid Protections are approved in their entirety, including the Break-Up Fee and Expense Reimbursement, payable in accordance with, and subject to the terms of, the Macquarie APA and this Order.   Specifically, Macquarie shall be entitled to payment of (i) an expense reimbursement up to a cap of $3,000,000 (the "**Expense Reimbursement**") for the actual, documented and reasonable out of pocket costs, fees and expenses that are incurred or to be incurred by Macquarie in connection with or related to the authorization, preparation, investigation, negotiation, enforcement, execution, implementation and performance of the transactions contemplated by the Macquarie APA and (ii) a break-up fee in an amount equal to three percent (3%) of the Base Purchase Price, or $19,500,000 (the "**Break-Up Fee**"), in each case, subject and pursuant to the terms and conditions in the Macquarie APA and this Order.  Macquarie shall provide the Debtors and the U.S. Trustee with copies of all expense documentation for which they are requesting payment pursuant to the Expense Reimbursement.   Except as expressly provided for herein, no other break-up fee or expense reimbursements are authorized or permitted under this Order.  Except as set forth in the Macquarie APA, and subject to paragraph 10 of this Order, the Break-Up Fee and Expense Reimbursement shall not be subject to reduction for any reason.

9.    The Debtors are authorized and directed to pay the Break-Up Fee and Expense Reimbursement by wire transfer of immediately available funds in accordance with the terms and conditions set forth in the Macquarie APA, subject to paragraph 10 of this Order, and without further order of the Court.  The Break-Up Fee and Expense Reimbursement, to the extent payable under the Macquarie APA, and subject to paragraph 10 of this Order, shall constitute an

allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b), and 507(a)(2) of the Bankruptcy Code.

10.     Notwithstanding anything to the contrary in this Order, the Bidding Procedures or the Macquarie APA, no Break-Up Fee shall be due upon consummation of either: (i) any transaction that is effected by any WAC Facility Agent or Credit Bidco exercising credit bid rights or other remedies (including, without limitation, foreclosure of its collateral) under any or all WAC Facilities and related documentation; or (ii) any plan of reorganization for one or more of the Debtors that does not effectuate a Plan Sale and results in only the WAC Lenders obtaining the equity of the Debtors on account of their claims (or any rights offering or similar transaction related thereto).  Upon the consummation of a Successful Credit Bid and the Debtors' receipt of the Exit Payment (as defined in the Bidding Procedures) in full, the applicable WAC Facility Agent, the applicable WAC Lenders, and the entities the equity of which such WAC Lenders are (directly or indirectly) acquiring through such Successful Credit Bid, shall not be liable for any Expense Reimbursement payable pursuant to the Macquarie APA.

11.     Notwithstanding any other terms of the agreements and orders relating to any debtor-in-possession financing facilities for the Debtors, and subject to paragraph 10 of this Order, the Break-Up Fee and the Expense Reimbursement shall be paid by the Seller Parties (as defined in the Macquarie APA) and their bankruptcy estates when due and, as applicable, the Break-Up Fee and the Expense Reimbursement shall be paid from the sources (*e.g.*, the Break-Up Fee is payable as the initial uses of the proceeds obtained from any consummated sale transaction) and at the times specified in the Macquarie APA.

12.     All of the Debtors' pre-closing obligations under the Macquarie APA are hereby authorized and approved.

**Sale Hearing(s) and Sale Objection Deadline**

13.     At the **February 12, 2019** omnibus hearing at **10:00 a.m. (ET)** and, as needed, additional Sale Hearings before this Court, the Debtors will seek the entry of an order authorizing and approving, among other things, the applicable Sale Transaction.  The objection deadline for any Sale Transaction to be approved at the February 12, 2019 omnibus hearing will be **February 5, 2019** at **4:00 p.m. (ET)**.  The Debtors, in the exercise of their business judgment, may adjourn a Sale Hearing without notice or with limited and shortened notice to parties, including by (i) an announcement of such adjournment at a Sale Hearing or (ii) the filing of a notice of adjournment with this Court prior to the commencement of a Sale Hearing.

14.     Objections to any Sale Transaction and entry of a Sale Order (each, a "**Sale Objection**") must:  (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Rules and the Local Rules; and (iii) be filed with the Court and served on (a) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Robert J. Lemons, and Kelly DiBlasi); (b) the attorneys for the official committee of unsecured creditors appointed in the Chapter 11 Cases, if any; (c) the attorneys for Macquarie, Vedder Price P.C., 1633 Broadway, 31st Floor, New York, New York 10019 (Attn: Douglas J. Lipke, Michael J. Edelman, and Geoffrey R. Kass); (d) the attorneys for the Steering Committee, Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, New York 10005 (Attn: Dennis Dunne and Tyson M. Lomazow); (e) the attorneys for SunTrust Bank, as administrative agent under that certain Amended and Restated Credit Agreement, dated as of November 8, 2013, and that certain Amended and Restated Credit Agreement, dated as of April 28, 2017, Alston & Bird LLP, 1201 West Peachtree Street, Atlanta, Georgia 30309 (Attn: David Wender); (f)  Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New

York 10036 (Attn: Renée M Dailey); (g) the attorneys for Wells Fargo Bank, National Association, as administrative agent under that certain Credit Agreement, dated as of April 16, 2014, and that certain Note Purchase Agreement, dated as of July 29, 2015, Mayer Brown LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Frederick Hyman and Scott Zemser); (h) the attorneys for Airbus Helicopters Financial Services Limited, as agent under that certain Euro Term Loan Facility Agreement, dated February 21, 2017, Dentons US LLP, 22 Little West 12th Street, New York, NY 10014 (Attn: Lee P. Whidden); (i) the attorneys for BNP Paribas, as administrative agent under that certain Credit Agreement, dated as of August 6, 2014, Mayer Brown LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Brian Trust and Scott Zemser); (j) the attorneys for Bank of Utah, as administrative agent under that certain Credit Agreement, dated as of March 23, 2015, Norton Rose Fulbright US LLP, 1301 Avenue of the Americas, New York, New York 10019 (Attn: Howard Beltzer); (k) the attorneys for Lombard North Central PLC, as administrative agent under that certain Credit Agreement, dated as of March 24, 2016, Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004 (Attn: Andrew G. Dietderich and Brian D. Glueckstein); (l) the attorneys for Sumitomo Mitsui Banking Corporation, Brussels Branch, as administrative agent under that certain Credit Agreement, dated as of August 2, 2017, Clifford Chance US LLP, 31 West 52nd Street, New York, New York 10019 (Attn: Jennifer C. DeMarco); and (m) William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Andrea B. Schwartz, Esq.) (collectively, the "**Objection Notice Parties**").

15.    The Debtors shall file a notice of a Sale Hearing and the deadline to file a Sale Objection (the "**Sale Objection Deadline**") at least seven (7) calendar days before a Sale

Hearing is scheduled to take place, substantially in the form attached hereto as **Exhibit 2**. Any timely Sale Objections will be heard by the Court at the Sale Hearing.

16.    The failure of any objecting person or entity to timely file and serve a Sale Objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, or to the consummation and performance of the Sale Transaction contemplated by the Macquarie APA, a Successful Third Party Bid (if an Auction is held), or a Successful Credit Bid, including the transfer of assets to Macquarie, a Successful Third Party Bidder, or Successful Credit Bidder, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code.

## Cure Objections and Adequate Assurance Objections

17.    The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved and is reasonably calculated to provide sufficient notice to the non-Debtor parties to the Transferred Contracts of the Debtors' intent to assume and assign the Transferred Contracts in connection with the Sale Transaction and constitutes adequate notice thereof. Within three (3) business days after the entry of this Order or as soon as reasonably practicable thereafter, the Debtors shall file the Cure Notice with the Court and serve such notice by first class mail on each non-Debtor party to the Transferred Contracts. Service of the Cure Notice in accordance with this Order on all non-Debtor parties to the Transferred Contracts is hereby deemed to be good and sufficient notice of the Cure Costs for, and the proposed assumption and assignment of, the Transferred Contracts. Within three (3) business days after the entry of this Order or as soon as reasonably practicable thereafter, the Debtors shall post a copy of the Cure Notice on the website for the Chapter 11 Cases maintained by the Debtors' claims and noticing agent.

16

18.     Objections, if any, to any proposed Cure Costs (each, a "**Cure Objection**") and to the provision of adequate assurance of future performance (each, an "**Adequate Assurance Objection**") must: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) with respect to a Cure Objection, state with specificity what Cure Costs the objecting party believes are required; and (iv) be filed with the Court and served on the Objection Notice Parties.

19.     Any Cure Objection in respect of a Transferred Contract must be filed and served by **January 16, 2019 at 5:00 p.m. (ET)**.  Any Adequate Assurance Objection in respect of a Transferred Contract must be filed and served by **February 1, 2019 at 5:00 p.m. (ET)**.  If a timely Cure Objection or Adequate Assurance Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at the Sale Hearing or such later date as the Debtors may determine.

20.     To the extent the Debtors identify, at any time after the Cure Notice is served, additional Transferred Contracts to be assumed and assigned to Macquarie, a Successful Third Party Bidder, or a Successful Credit Bidder, the Debtors shall file with the Court and serve by first class mail on the non-Debtor party to such Transferred Contract a supplemental Cure Notice (each, a "**Supplemental Cure Notice**," the form of which shall be identical to the form of Cure Notice attached hereto as **Exhibit 3**).  If such a related Cure Objection or Adequate Assurance Objection is timely received and cannot otherwise be resolved by the parties, such objection will be heard at an emergency hearing scheduled prior to any scheduled closing of the Sale Transaction.

21.     The assumption and assignment of the Transferred Contracts to Macquarie, a Successful Third Party Bidder, or a Successful Credit Bidder is subject to approval of the Court and the consummation of the Sale Transaction.  Accordingly, absent the closing of such sale, the

Transferred Contracts shall not be deemed assumed or assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

22.     The inclusion of a contract, lease, or other agreement on the Cure Notice or any Supplemental Cure Notice shall not constitute or be deemed a determination or admission by the Debtors, Macquarie, or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to each contract or other document listed on the Cure Notice or any Supplemental Cure Notice.

**General Provisions**

23.     All persons or entities that participate in the bidding process shall be deemed to have knowingly and voluntarily (i) consented to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (ii) waived any right to a jury trial in connection with any disputes relating to any of the foregoing matters.

24.     To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order (excluding exhibits) shall control; provided, however, that if the terms of this Order, the Macquarie APA and/or the Bidding Procedures (i) do not expressly resolve the issue under consideration or (ii) are ambiguous with regard to such issue, the Debtors, Macquarie, or other parties in interest, on such notice as may be appropriate, may seek such relief from this Court as may be necessary.

25.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this order.

26.     The requirements set forth in Local Rules 2002-1, 6004-1, 6006-1, 9006-1(b), and 9013-1 are hereby satisfied.

27.     Subject to this Order, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the parties to the Macquarie APA to allow the parties thereto to deliver any notices and/or take any actions as provided under the Macquarie APA in accordance with the terms, provisions, and conditions thereof.

28.     Nothing in the findings set forth herein shall be used or construed to limit the rights of any WAC Facility Agent to credit bid its claims in accordance with the terms of this Order, the Bidding Procedures, and applicable law.

29.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

30.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: December 21, 2018
      New York, New York

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge

## **Exhibit 1**

**Bidding Procedures**

# BIDDING PROCEDURES

## Overview

On November 25, 2018, Waypoint Leasing Holdings Ltd. and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). The chapter 11 cases have been consolidated for procedural purposes under the lead case, *In re Waypoint Leasing Holdings Ltd.*, *et al.*, Case No 18-13648 (SMB) (the "**Chapter 11 Cases**").

On [___], 2018, the Bankruptcy Court entered an order (ECF No. __) (the "**Bidding Procedures Order**"), which approved these procedures (the "**Bidding Procedures**") for the consideration of the highest or otherwise best bid for all or substantially all of the Debtors' assets, on the terms and conditions set forth herein.

Macquarie Rotorcraft Leasing Holdings Limited ("**Macquarie**") is the purchaser for substantially all of the Debtors' assets and executed that certain Stock and Asset Purchase Agreement (together with the exhibits thereto, and as may be amended, modified, or supplemented from time to time in accordance with the terms thereof, the "**Macquarie APA**"), dated as of December 7, 2018.[1]  The Macquarie APA contemplates, pursuant to the terms and subject to the conditions and purchase price adjustments contained therein, the sale of substantially all of the Debtors' assets (the "**Purchased Assets**") to Macquarie in consideration of approximately $650,000,000 (the "**Base Purchase Price**"), plus the assumption of the Assumed Liabilities (the "**Macquarie Bid**").

The Macquarie Bid is subject to higher or better offers submitted in accordance with the terms and conditions of these Bidding Procedures.  These Bidding Procedures describe, among other things: (i) the procedures for bidders to submit bids (including credit bids) for some or all of the Purchased Assets; (ii) the manner in which bidders and bids become Qualified Third Party Bidders and Qualified Third Party Bids; (iii) the process for evaluating bids (including credit bids) received; (iv) the conduct of the Auction if the Debtors receive Qualified Third Party Bids; (v) the procedure for the ultimate selection of a Successful Third Party Bidder at the Auction; and (vi) the procedure for establishing Successful Credit Bids; (vii) the procedures for approval of Successful Credit Bids at a Sale Hearing, and (viii) the process for approval of one or more sale transactions at the Sale Hearings (each as defined herein).

## Summary of Important Dates

| Key Event | Deadline |
|---|---|
| Deadline to Object to Macquarie Bid | **January 3, 2019 at 5:00 p.m. (ET)** |
| Deadline to Submit Third Party Bids | **January 4, 2019 at 5:00 p.m. (ET)** |

---

[1] Unless otherwise indicated, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures Order, as applicable.

| | |
|---|---|
| Deadline for Debtors to Notify Third Party Bidders of Status as Qualified Third Party Bidders | **January 7, 2019 at 9:00 a.m. (ET)** |
| If No Auction Is Held, Deadline for Debtors to Provide Purchase Price Allocation to WAC Facility Agents | **January 8, 2019 at 12:00 p.m. (ET)** |
| Auction to be held if the Debtors receive Qualified Third Party Bids, to be conducted at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 | **January 8, 2019 at 10:00 a.m. (ET)** |
| Deadline to File Notice and Identities of Successful Third Party Bid and Back-Up Third Party Bid | **January 9, 2019 at 5:00 p.m. (ET) or promptly following conclusion of the Auction** |
| If Auction Is Held, Deadline for Debtors to Provide Purchase Price Allocation to WAC Facility Agents | **January 10, 2019 at 5:00 p.m. (ET)** |
| Deadline to Submit Credit Bids | **January 14, 2019 at 5:00 p.m. (ET)** |
| Deadline for Requisite Lenders to Deliver PSA[2] | **January 14, 2019 at 5:00 p.m. (ET)** |
| Deadline to Object to Successful Third Party Bid and Cure Costs | **January 16, 2019 at 5:00 p.m. (ET)** |
| If Requisite Lenders Collectively Holding Security Interests In Less Than 110 Aircraft Submit PSA, Deadline for Successful Third Party Bidder to Elect to Accept That Conversion Condition Has Been Met | **January 18, 2019 at 5:00 p.m. (ET)** |
| Deadline for Successful Third Party Bidder to Submit Matching Bid to Qualified Credit Bids | **January 22, 2019 at 5:00 p.m. (ET)** |
| If Requisite Lenders under the PSA Collectively Hold Security Interests In Less Than 110 Aircraft and Conversion Condition Is Not Otherwise Satisfied, Deadline for Such Requisite Lenders to Submit Credit Bids | **January 22, 2019 at 5:00 p.m. (ET)** |
| If Qualified Credit Bids Are Timely Submitted and Debtors Do Not Receive Matching Bids, Deadline to File Notice and Identities of Successful Credit Bids | **January 23, 2019 at 5:00 p.m. (ET)** |
| If Requisite Lenders Collectively Holding Security Interests In Less Than 110 Aircraft Submit Credit Bids and the Conversion Condition Is Not Otherwise Satisfied, Deadline for Successful Third Party Bidder to Submit Matching Bid to Requisite Lender Credit Bid | **January 28, 2019 at 5:00 p.m. (ET)** |
| Deadline to Object to Adequate Assurance of Future Performance | **February 1, 2019 at 5:00 p.m. (ET)** |

---

[2] "**PSA**" means an executed plan support agreement, in form and substance reasonably acceptable to the Debtors and Macquarie (the lenders thereunder, the "**Requisite Lenders**") and in compliance with the Conversion Condition (as defined in the Macquarie APA).

| | |
|---|---|
| If Requisite Lenders Collectively Hold Security Interests In 110 or More Aircraft, Deadline for Successful Third Party Bidder to Notify Debtors of Intent to Pursue Plan Sale | **February 4, 2019 at 5:00 p.m. (ET)** |
| If Successful Third Party Bidder Rejects Plan Sale, Deadline for Requisite Lenders to Submit Requisite Lender Credit Bids | **February 11, 2019 at 5:00 p.m. (ET)** |
| Sale Hearing | **February 12, 2019 at 10:00 a.m. (ET)** |
| Deadline for Entry of Order(s) Approving Successful Credit Bid(s) or the Automatic Stay May Be Lifted to Permit Successful Credit Bidder(s) to Foreclose on WAC Collateral[3] | **February 15, 2019** |
| Deadline for Successful Third Party Bidder to Submit Matching Bid to Requisite Lender Credit Bid | **February 19, 2019 at 5:00 p.m. (ET)** |
| Additional Sale Hearings[4] | **Subject to the Court's availability, on such date the Debtors request** |

## Assets To Be Sold

The Debtors' assets are primarily comprised of aircraft, which are owned by eight separate corporate entities or their wholly owned subsidiaries (each, a "**WAC**") consisting of different assets as follows:

| WAC | Number of Aircraft |
|---|---|
| WAC 1 | 30 |
| WAC 2 | 6 |
| WAC 3 | 45 |
| WAC 5 | 9 |
| WAC 6 | 7 |
| WAC 8 | 29 |
| WAC 9 | 17 |
| WAC 12 | 17 |
| **Total:** | 160 |

## Due Diligence

The Debtors have posted copies of all material documents related to the Debtors' assets to the Debtors' confidential electronic data room (the "**Data Room**"). To access the Data

---

[3] For the avoidance of doubt, this deadline shall not apply to WAC Facility Agents who deliver a PSA by the Credit Bid Deadline.

[4] If a sale transaction is consummated pursuant to a chapter 11 plan in accordance with a PSA, the Debtors will file a scheduling order setting forth the applicable deadlines in connection with confirmation of a chapter 11 plan.

Room, an interested party other than a WAC Facility Agent must submit to the Debtors or their advisors the following:

(A)     an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (unless such party is already a party to an existing confidentiality agreement with the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement shall govern); and

(B)     sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine that the interested party has the financial wherewithal to consummate a sale transaction.

An interested party that meets the above requirements to the satisfaction of the Debtors shall be a "**Potential Bidder**." As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room; provided, that such access may be terminated by the Debtors in their reasonable discretion at any time, including if a Potential Bidder does not become a Qualified Third Party Bidder or these Bidding Procedures are terminated.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate a sale transaction.

Until the Third Party Bid Deadline, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Debtors' advisors, Houlihan Lokey, Inc. ("**Houlihan Lokey**") at Project.Whiskey@HL.com. Unless prohibited by law or otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (a) the Potential Bidder does not become a Qualified Third Party Bidder or (b) these Bidding Procedures are terminated.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' assets (a) to any person or entity who (i) is not a Potential Bidder; (ii) does not comply with the participation requirements set forth above; or (iii) in the case of competitively sensitive information, is a competitor of the Debtors and (b) to the extent not permitted by law.

The Debtors also will provide access to the Data Room to the administrative agent under the DIP Credit Agreement (the "**DIP Agent**") and each WAC Facility Agent and WAC Lender (subject to any restrictions pursuant to applicable law) and, upon request to the Debtors, to such WAC Facility Agent's and WAC Lender's financing source only upon execution of a confidentiality agreement by such financing source, which confidentiality agreement shall be in form and substance reasonably acceptable to the Debtors; provided, that a WAC Lender, the applicable WAC Facility Agent, or such WAC Facility Agent and WAC Lender's financing sources access to information in the Data Room shall be limited to information regarding its applicable WAC Facility.

With respect to any party requested by a WAC Facility Agent or WAC Lender to manage such WAC Facility Agent's or WAC Lender's collateral upon consummation of a Successful Credit Bid (each, an "**Alternative Asset Manager**") that is restricted by agreement with the Debtors from engaging in discussions or negotiations with WAC Lenders, the applicable WAC Facility Agent, or an entity designated by the WAC Facility Agent (a "**Credit Bidco**"), the Debtors agree to release such restriction effective as of the date of entry of the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552, Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014, and L. Bankr. R. 2002-1, 4001-2, 9013-1, 9014-1, and 9014-2 (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection, (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (ECF No. 77); <u>provided</u>, that the Debtors, WAC Lenders, WAC Facility Agent, and Credit Bidco shall, prior to any disclosure to any such Alternative Asset Manager of any confidential information, agree (with each such party acting reasonably and in good faith) on the scope of information to be provided to such Alternative Asset Managers (taking into account commercial sensitivities and antitrust and other applicable law).

## Auction Qualification Procedures

### Third Party Bid Deadline

A Potential Bidder that desires to make a cash bid (a "**Third Party Bid**") on some or all of the Purchased Assets shall deliver electronic copies of the Third Party Bid so as to be received no later than **January 4, 2019 at 5:00 p.m. (ET)** (the "**Third Party Bid Deadline**"); <u>provided</u>, that the Debtors may extend the Third Party Bid Deadline without further order of the Bankruptcy Court subject to providing notice to all Potential Bidders and WAC Facility Agents. **The submission of a Third Party Bid by the Third Party Bid Deadline shall constitute a binding and irrevocable offer to acquire the assets specified in such bid.** Any party that does not submit a Third Party Bid by the Third Party Bid Deadline will not be allowed to (i) submit any offer after the Third Party Bid Deadline or (ii) participate in the Auction. Third Party Bids must be submitted by email to the following:

**Weil, Gotshal & Manges LLP**
Waypointbids@weil.com
Gavin Westerman (Gavin.Westerman@weil.com)
Kelly DiBlasi (Kelly.DiBlasi@weil.com)
Mariel E. Cruz (Mariel.Cruz@weil.com)

**Houlihan Lokey**
Project.Whiskey@HL.com

**Vedder Price P.C.**
GKass@VedderPrice.com
DLipke@VedderPrice.com
MJEdelman@VedderPrice.com

**Milbank, Tweed, Hadley & McCloy LLP**
TLomazow@milbank.com
MPrice@milbank.com

*Form and Content of Third Party Bids*

      A Third Party Bid must contain a signed document from a Potential Bidder received by the Third Party Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the Third Party Bid or the sale transaction, and includes, at a minimum, the following:

(A)    <u>Finalized Asset Purchase Agreement (the "APA")</u>.  Each Third Party Bid must include, in both PDF and MS-WORD format, an executed copy of the APA and a copy of same that has been marked against the Macquarie APA, a copy of which is located in the Data Room.

(B)    <u>Purchase Price; Minimum Bid</u>.  Each Third Party Bid submitted may include substantially all of the Purchased Assets or a portion thereof and must specify the purchase price, which purchase price must include the sum of the Minimum Overbid Amount <u>plus</u> the Break-Up Fee <u>plus</u> the Expense Reimbursement.  If the Third Party Bid includes assets from more than one WAC, such Third Party Bid must allocate the purchase price on a WAC-by-WAC basis.

(C)    <u>Unconditional Offer</u>.  A commitment that the Third Party Bid is formal, binding, and unconditional (except for those conditions expressly set forth in the APA), is not subject to any due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Third Party Bid is not a Successful Third Party Bid or a Back-Up Third Party Bid.

(D)    <u>Form of Consideration</u>.  A statement identifying the cash and non-cash components of the Third Party Bid, including confirmation that the cash component of the Third Party Bid is based in U.S. Dollars.

(E)    <u>Proof of Financial Ability to Perform</u>.  Each Third Party Bid must contain such financial and other information that allows the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the sale transaction, including, without limitation, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365 of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party.  Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments (if needed) to close the sale transaction, contact information for verification of such information, including any financing sources, and any other information reasonably

6

requested by the Debtors necessary to demonstrate that such Potential Bidder has the ability to close the sale transaction.

(F)     <u>Designation of Contracts and Leases</u>.  Each Third Party Bid must identify with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing the sale transaction; <u>provided</u>, that the APA may allow for the Potential Bidder to remove executory contracts and unexpired leases from the list of contracts to be assumed and assigned any time up to five business days prior to the closing of the sale transaction; <u>provided</u>, <u>further</u>, that to the extent the Debtors identify any additional executory contracts or unexpired leases after the Third Party Bid is submitted, the APA may allow for the Potential Bidder to add such executory contracts and unexpired leases to the list of contracts to be assumed and assigned any time from and after the Third Party Bid is submitted.

(G)     <u>Required Approvals</u>.  A statement or evidence (i) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or other Antitrust Laws (as defined in the Macquarie APA), as applicable, and pay the fees associated with such filings and (ii) of the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the APA.

(H)     <u>No Entitlement to Break-Up Fee, Expense Reimbursement, or Other Amounts</u>.  A statement that the Third Party Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

(I)     <u>Joint Third Party Bids</u>.  The Debtors will be authorized to approve joint Third Party Bids in their reasonable discretion on a case-by-case basis.

(J)     <u>Agreement to Terms of the Bidding Procedures</u>.  A statement that the Potential Bidder agrees to be bound by these Bidding Procedures.

A Potential Bidder must also accompany its Third Party Bid with:

(K)     a Deposit (as defined herein);

(L)     the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Third Party Bid submitted by the Potential Bidder;

(M) written evidence of available cash, a commitment for financing (not subject to any conditions other than those expressly set forth in the APA) and such other evidence of ability to consummate the transaction contemplated by the APA, the Bidding Procedures Order, and the Bidding Procedures, as acceptable in the Debtors' business judgment;

(N) the identity of each entity that will be participating in connection with such Third Party Bid and taking ownership of the assets (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the sale transaction) and a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed and to consummate the transaction contemplated by the APA;

(O) a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements; and

(P) if the value of a Third Party Bid includes additional non-cash components, a detailed analysis of the value of any additional non-cash component of the Third Party Bid and back-up documentation to support such value.

### *Review of Third Party Bids; Designation of Qualified Third Party Bids*

The Debtors will evaluate Third Party Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Third Party Bids as the Debtors deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Third Party Bid and determination as to whether such Third Party Bid provides greater consideration than the Macquarie Bid for the assets included in such Third Party Bid. The Debtors will provide a copy of each Third Party Bid received within one (1) day of receipt thereof to Macquarie and each WAC Facility Agent. Macquarie is a Qualified Third Party Bidder and the Macquarie Bid represents a Qualified Third Party Bid.

The Debtors shall determine, in their reasonable judgment, which of the Third Party Bids received by the Third Party Bid Deadline qualifies as a "**Qualified Third Party Bid**" (each Potential Bidder that submits such a Qualified Third Party Bid being a "**Qualified Third Party Bidder**") and shall notify each Qualified Third Party Bidder of its status as a Qualified Third Party Bidder by no later than **January 7, 2019 at 9:00 a.m. (ET)** (the "**Qualified Third Party Bid Deadline**"). The Debtors shall provide copies of such notice to Macquarie and each WAC Facility Agent by no later than **January 7, 2019 at 12:00 p.m. (ET)**.

Without the written consent of the Debtors, a Qualified Third Party Bidder may not modify, amend, or withdraw its Qualified Third Party Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Third Party Bid for the Debtors during the period that such Qualified Third Party Bid remains binding as specified herein; provided, that any Qualified Third Party Bid may be improved at the Auction as set forth

in these Bidding Procedures.  The Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Third Party Bid that is not initially deemed a Qualified Third Party Bid and to clarify or otherwise improve such Third Party Bid.

*Failure to Receive Qualified Third Party Bids*

If no Qualified Third Party Bid other than the Macquarie Bid is received by the Third Party Bid Deadline, the Debtors will not conduct the Auction and shall file a notice with the Bankruptcy Court by **January 7, 2019 at 5:00 p.m. (ET)** indicating that the Auction has been cancelled.  The Debtors shall also publish such notice on the website of their claims and noticing agent, Kurtzman Carson Consultants LLC (www.kccllc.net/waypointleasing).  If no Qualified Third Party Bid is received, Macquarie shall be deemed the Successful Third Party Bidder and the Macquarie Bid shall be deemed the Successful Third Party Bid.

The Debtors shall promptly notify each WAC Facility Agent and Macquarie if no Qualified Third Party Bid other than the Macquarie Bid is received by the Third Party Bid Deadline.  In such event, by **January 8, 2019 at 9:00 a.m. (ET)**, Macquarie shall provide the Debtors with an allocation of its purchase price on a WAC-by-WAC basis.  By **January 8, 2019 at 10:00 a.m. (ET)**, the Debtors shall inform the advisors to the Steering Committee of such allocation and by **January 8, 2019 at 12:00 p.m. (ET)**, the Debtors shall inform each WAC Facility Agent the portion of Macquarie's purchase price that Macquarie allocates to such WAC's assets on a WAC-by-WAC basis, which such WAC Facility Agent may in turn communicate to the respective WAC Lenders in such WAC Facility Agent's WAC Facility, subject to the applicable confidentiality provisions of the WAC Facility documentation.

*Deposit*

A Third Party Bid must be accompanied by a good faith cash deposit in the amount of ten percent (10%) of the cash purchase price (a "**Deposit**").  A Deposit must be deposited prior to the Third Party Bid Deadline with an escrow agent selected by the Debtors (the "**Escrow Agent**") pursuant to an escrow agreement to be provided by the Debtors.  To the extent a Qualified Third Party Bid is modified before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Third Party Bidder adjust its Deposit so that it equals ten percent (10%) of the cash purchase price.  The requirements set forth in this "Deposit" section do not apply with respect to Macquarie.  The deposit provided by Macquarie shall be governed by the Macquarie APA.  Other than the Debtors and Macquarie, no person or entity shall have any rights or interests in the deposit provided by Macquarie pursuant to the terms of the Macquarie APA.

## Auction Procedures for Qualified Third Party Bids

If there are two or more Qualified Third Party Bids (including the Macquarie Bid), the Debtors will conduct the Auction on **January 8, 2019**, **beginning at 10:00 a.m. (ET) at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153**.  Only a Qualified Third Party Bidder will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith.  In addition, each WAC Facility Agent and professionals and/or other representatives of the Debtors and each WAC Facility Agent will be permitted to attend and observe the Auction.  Each Qualified Third Party Bidder shall be required

to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction. The Debtors may, in the exercise of their business judgment, adjourn the Auction.

If the Debtors receive two or more Qualified Third Party Bids (including the Macquarie Bid), bidding for the Purchased Assets will start with the highest or otherwise best purchase price and/or terms received and will proceed thereafter in minimum cash bid increments of not less than $100,000 (a "**Minimum Overbid Amount**"). The minimum Qualified Third Party Bid also must meet the minimum bid requirements and other terms specified above. The Debtors reserve the right to and may increase or decrease the Minimum Overbid Amount at any time during the Auction. Macquarie and Qualified Third Party Bidders are authorized to increase their bids at the Auction, including with cash, cash equivalents, or other forms of consideration (such as contractual terms).

The Debtors may adopt rules for the Auction consistent with these Bidding Procedures and the Bidding Procedures Order that the Debtors reasonably determine to be appropriate to promote a competitive auction. Any rules adopted by the Debtors will not unilaterally modify any of the terms of the Macquarie APA (as may be consensually modified at the Auction) without the consent of Macquarie. Any rules developed by the Debtors will provide that all bids in the Auction will be made and received on an open basis, and all other bidders participating in the Auction and each WAC Facility Agent observing the Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and each WAC Facility Agent observing the Auction and that all material terms of each Qualified Third Party Bid submitted in response to any successive bids made at the Auction will be disclosed to all other bidders and each WAC Facility Agent observing the Auction. Each Qualified Third Party Bidder will be permitted what the Debtors reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded, and the Qualified Third Party Bidders and each WAC Facility Agent observing the Auction will be informed of the material terms of the previous bid.

The Debtors shall (i) review each Qualified Third Party Bid on the basis of the amount of cash, contractual terms, or other consideration to be paid or delivered, the speed and certainty of consummating a sale transaction, and any other relevant factor and (ii) identify the highest or otherwise best Qualified Third Party Bid (a "**Successful Third Party Bid**" and the bidder making such bid, a "**Successful Third Party Bidder**"). The Debtors shall also identify a Qualified Third Party Bidder that submitted the next highest or otherwise best Qualified Third Party Bid (a "**Back-Up Third Party Bid**" and the bidder making such bid, a "**Back-Up Third Party Bidder**"). A Back-Up Third Party Bid shall remain open and irrevocable until the earliest to occur of (i) the applicable outside date for consummation of the sale transaction, (ii) consummation of the sale transaction with a Successful Third Party Bidder, and (iii) the release of such bid by the Debtors in writing (such date, the "**Back-Up Third Party Bid Expiration Date**"). If a sale transaction with a Successful Third Party Bidder is terminated prior to the Back-Up Third Party Bid Expiration Date, the Back-Up Third Party Bidder shall be deemed a Successful Third Party Bidder and shall be obligated to consummate the Back-Up Third Party Bid as if it were a Successful Third Party Bid.

By **January 10, 2019 at 5:00 p.m. (ET)**, the Debtors shall inform the applicable WAC Facility Agent the portion of the Successful Third Party Bidder's purchase price that such bidder allocates to the WAC's assets on a WAC-by-WAC basis, which such WAC Facility Agent may in turn communicate to the respective WAC Lenders in such WAC Facility Agent's WAC Facility, subject to the applicable confidentiality provisions of the WAC Facility documentation. To the extent that the Debtors receive from the Successful Third Party Bidder such bidder's allocation of its purchase price on a WAC-by-WAC basis prior to the applicable deadline, the Debtors shall, upon the later of four (4) hours after (i) the Debtors declaring such bidder the Successful Third Party Bidder or (ii) receipt of such allocation, inform the applicable WAC Facility Agent of the portion of the Successful Third Party Bidder's purchase price that such bidder allocates to the applicable WAC's assets.

Within one (1) day after the Auction, a Successful Third Party Bidder shall submit to the Debtors a fully executed APA and such other documentation memorializing the terms of a Successful Third Party Bid. A Successful Third Party Bid may not be assigned to any party without the consent of the Debtors.

At any time before entry of an order approving the applicable sale transaction envisioned by a Qualified Third Party Bid, the Debtors reserve the right to and may reject such Qualified Third Party Bid if such Qualified Third Party Bid, in the Debtors' judgment, is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable sale transaction; or (iii) contrary to the best interests of the Debtors and their estates. No attempt by the Debtors to reject a Qualified Third Party Bid under this paragraph will modify any rights of the Debtors or Macquarie under the Macquarie APA (as may be consensually modified in writing by the Debtors and Macquarie at the Auction).

## Post-Auction Process

By **January 9, 2019 at 5:00 p.m. (ET)**, the Debtors shall file with the Bankruptcy Court notice of the Successful Third Party Bid, Successful Third Party Bidder, Back-Up Third Party Bid, and Back-Up Third Party Bidder. A Successful Third Party Bidder shall appear at the Sale Hearing and be prepared to have a representative(s) testify in support of the Successful Third Party Bid and the Successful Third Party Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and/or assigned as part of the proposed sale transaction.

Within seven (7) days after the Auction (or with respect to Macquarie, at the time required under the Macquarie APA), the Debtors shall direct the Escrow Agent to return the deposit of any bidder, together with interest accrued thereon, who is not declared a Successful Third Party Bidder or Back-Up Third Party Bidder. Within five (5) days after the Back-Up Third Party Bid Expiration Date, the Debtors shall direct the Escrow Agent to return the deposit of a Back-Up Third Party Bidder, together with interest accrued thereon (if any). Within five (5) days after consummation of a Successful Credit Bid for all of the assets subject to a Successful Third Party Bid, the Debtors shall direct the Escrow Agent to return the Deposit of such Successful Third Party Bidder. Upon the authorized return of any such deposit, the bid of such Potential or Qualified Third Party Bidder shall be deemed revoked and no longer enforceable.

A Successful Third Party Bidder's deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Third Party Bid upon the consummation of the sale transaction.  In addition to the foregoing, the deposit of a Qualified Third Party Bidder will be forfeited to the Debtors if (i) the Qualified Third Party Bidder attempts to modify, amend, or withdraw its Qualified Third Party Bid, except as permitted herein or with the Debtors' written consent, during the time the Qualified Third Party Bid remains binding and irrevocable or (ii) the Qualified Third Party Bidder is selected as a Successful Third Party Bidder and fails to enter into the required definitive documentation or to consummate a sale transaction according to these Bidding Procedures.

### Credit Bidding[5]

Each WAC Facility Agent is authorized to submit either a streamlined credit bid (a "**Streamlined Credit Bid**") or a standard credit bid (a "**363(k) Credit Bid**" and together with a Streamlined Credit Bid, a "**Credit Bid**") for the purchase of all of the collateral (other than, if applicable, any pledged equity interest in a 363(k) Credit Bid) (the "**WAC Collateral**") for which it holds a secured interest.  Subject to a WAC Facility Agent's right to submit a Requisite Lender Credit Bid as set forth herein, a WAC Facility Agent shall be required to submit a Credit Bid by **January 14, 2019 at 5:00 p.m. (ET)** (the "**Credit Bid Deadline**").  A WAC Facility Agent shall comply with all of the requirements set forth in this "Credit Bidding" section.  Other than as permitted by these Bidding Procedures, following the submission by a WAC Facility Agent of a timely filed PSA, a WAC Facility Agent that does not submit a Credit Bid by the Credit Bid Deadline in accordance with these Bidding Procedures will not be allowed to submit any offer after the Credit Bid Deadline.

A Credit Bid must include the following:

Unconditional Offer.  A commitment that the Credit Bid is formal, binding, and unconditional (except for those conditions expressly set forth in the Credit Bid Agreement or APA, as applicable), and is not subject to any due diligence or financing contingency.

Form of Consideration.  A statement identifying the cash and non-cash components of the Credit Bid, including confirmation that any cash component of the Credit Bid is based in U.S. Dollars.

Proof of Financial Ability to Perform.  Each Credit Bid must contain such financial and other information that allows the Debtors to make a reasonable determination as to the acquiring entity's financial and other capabilities to consummate the sale transaction, including, to the extent applicable, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365 of the Bankruptcy Code.

---

[5] Capitalized terms used in this Section but not otherwise defined herein shall have the meanings ascribed to such terms in the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552, Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014, and L. Bankr. R. 2002-1, 4001-2, 9013-1, 9014-1, and 9014-2 for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing (B) Grant Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling Final Hearing, and (IV) Granting Related Relief* (the "**DIP Motion**"), filed on December 8, 2018 (ECF No. 51).

Designation of Contracts and Leases.  To the extent applicable, a Credit Bid must identify with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing the sale transaction.

Required Approvals.  To the extent applicable, statement or evidence (i) that the necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or other Antitrust Laws (as defined in the Macquarie APA) will be made in a timely manner and any fees associated with such filings will be paid and (ii) of the acquiring entity's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for such entity to undertake the actions required to obtain such approvals.  The acquiring entity further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain such entity's regulatory analysis, strategy, and timeline for securing all such applicable approvals as soon as reasonably practicable.

No Entitlement to Break-Up Fee, Expense Reimbursement, or Other Amounts.  A statement that the Credit Bid does not entitle the acquiring entity to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code, in each case, related to the bidding process; provided, that this provision shall not limit any entitlement to fees or other amounts owed under the applicable WAC Facility or any related documentation.

Joint Credit Bids.  The Debtors will be authorized to approve joint Credit Bids in their reasonable discretion on a case-by-case basis.

Agreement to Terms of the Bidding Procedures.  A statement that the acquiring entity agrees to be bound by these Bidding Procedures, including the Credit Bidding section herein.

Direction Letter.  A Credit Bid shall include a copy of the direction by the applicable lenders under the WAC Facility to authorize the submission of such Credit Bid.  For the avoidance of doubt, Credit Bids may not be submitted by individual secured lenders under a WAC Facility.

Contact Information.  The contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Credit Bid.

Financing Commitment.  Written evidence of available cash, a commitment for financing (not subject to any conditions other than those expressly set forth in the Credit Bid Agreement or APA, as applicable) and such other evidence of ability to consummate the transaction contemplated by the Bidding Procedures Order and the Bidding Procedures, as reasonably acceptable in the Debtors' business judgment.

Regulatory Requirements.  A covenant to cooperate with the Debtors to provide pertinent factual information regarding the acquiring entity's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

Identity of Acquiring Entity or Designee.  The identity of each party submitting the Credit Bid; provided, that any such party shall have the right to designate an entity or designee that is formed

for the purpose of consummating the Sale Transaction and to take possession of the assets after the submission of the Credit Bid.

<u>Streamlined Credit Bid Requirements</u>.    In addition to the requirements set forth herein, a Streamlined Credit Bid submitted by a WAC Facility Agent must include:

a.  evidence of the amount of its prepetition secured claim, the assets constituting the WAC Collateral securing its prepetition secured claim, and evidence of the grant, perfection, priority, and validity of its lien (the "**Secured Claim Documentation**"); <u>provided</u>, that a WAC Facility Agent shall not be required to submit the Secured Claim Documentation to the Debtors unless a party in interest with standing timely challenges the validity, priority, enforceability, seniority, avoidability, perfection, or extent of its prepetition secured claim in the Chapter 11 Cases;

b.  the acquisition of all of the WAC Collateral that secures such WAC Facility Agent's WAC Facility;

c.  an executed copy of an Equity Purchase Agreement (a form of which is posted in the Data Room, the "**Credit Bid Agreement**" and which form shall be reasonably acceptable to the Debtors, Required DIP Lenders (as defined in the DIP Credit Agreement), and the applicable WAC Facility Agents), in both PDF and MS-WORD format, and a copy of same that has been marked against the form of such agreement, which shall include the following commitments:

a.  a credit bid for all or some portion of the obligations under the applicable WAC Facility (including but not limited to all accrued and unpaid prepetition and postpetition interest, fees, and other obligations under such WAC Facility); <u>provided</u>, that if a WAC Facility Agent credit bids less than the full amount of such obligations, then it must (i) specify the amount, if any, equal to the portion of the applicable WAC Facility debt it will assume as part of its Streamlined Credit Bid and (ii) release all guaranties issued to such WAC Facility by a Non-WAC Group Member, which release shall be effective upon consummation of such Streamlined Credit Bid (in which case the deemed value of the Streamlined Credit Bid shall equal the sum of (A) the secured claim amount of the credit bid <u>plus</u> (B) the assumed WAC Facility debt that is specified in the credit bid);

b.  payment of the Exit Payment (defined below)[6] at the closing of the sale transaction;

c.  a commitment to purchase all of the equity of the relevant WAC Facility;

---

[6] The Credit Bid Agreement shall require the applicable Debtors party thereto to provide to a Successful Credit Bidder for a Streamlined Credit Bid the amount of the Exit Payment, itemized as to each category thereof, no less than three (3) business days prior to the closing date of such Streamlined Credit Bid.

    d.  a mutual release between and among (i) the Debtors in the relevant WAC Group; (ii) the remaining Debtors; (iii) the relevant WAC Lenders; (iv) the WAC Facility Agent; (v) Credit Bidco; and (vi) such parties' respective related parties including their officers, directors, managers, partners, trustees, employees, attorneys, other professionals, and shareholders, which release (A) shall include any claim that could be brought by or on behalf of such releasing party; (B) will not release any Net WAC Group Intercompany Claim (to the extent not repaid at closing); (C) will not release any reversionary interest in the Carve Out or Winddown Account; and (D) will not waive the right of any party to object to any interim or final fee applications or the payment of any "success" or transaction fees;

    e.  the Debtors will use commercially reasonable efforts to assist the WAC Facility Agent to transition the operation and support of its WAC Collateral to Credit Bidco or an operator or manager of Credit Bidco's choice in a seamless manner (including by providing for the orderly transfer of all documentation and records consisting of or supporting such WAC Collateral); provided, that the third party costs associated with such transition shall be (a) agreed upon between the Debtors and the WAC Facility Agent; (b) borne by the WAC Facility Agent; and (c) paid in advance of the Debtors' incurring such costs; and

    f.  the Debtors, Credit Bidco, and/or a WAC Facility Agent may agree to enter into a reasonable transition services agreement (a copy of which shall be provided to the advisors to the Steering Committee) on reasonable terms without the need for further Bankruptcy Court approval as long as any expenses incurred by the Debtors in connection therewith are incurred in the ordinary course or reiumbursed by the WAC Lenders. For the avoidance of doubt, nothing in these Bidding Procedures relieves professionals retained by the Debtors from filing fee applications with the Bankruptcy Court for the approval of such professional's fees.

d.  the Debtors will use commercially reasonable efforts to cooperate with the WAC Facility Agent to (at the option of such Directing WAC Party) novate, transfer, cancel, or otherwise seek a tax efficient disposition of any profit participating notes issued by the members of such WAC Facility; provided, however, that the Debtors shall not be required to spend any money, incur any liabilities, or suffer any loss of value (other than any value of the profit participating notes that are to be novated, transferred, cancelled or otherwise dealt with);

e.  the Chapter 11 Cases of the Debtor entities subject to a Streamlined Credit Bid shall be severed from the joint administration of the remaining Chapter 11 Cases upon consummation of the Streamlined Credit Bid (or such other time as may be mutually agreed); after consummation of the Streamlined Credit Bid, the remaining Debtors shall not object to (and shall provide reasonable assistance with) the dismissal of the Chapter 11 Cases of the Debtor entities subject to a Streamlined Credit Bid; and

f.   With respect to WAC Facility Agents acting on behalf of Participating WAC Lenders (as defined in the DIP Credit Agreement), a cash deposit[7] in an amount equal to 50% of the sum of the following, eliminating any duplication as appropriate:  (A) the Net WLIL Intercompany Claim in respect of such WAC Group, if any, reduced by its Net WAC Group Intercompany Claim; (B) its allocated share of the Carve Out to the extent unfunded (which amount shall be transferred to the Fee Reserve Account); (C) its allocated share of the Winddown Account up to the amounts and in the allocable portion set forth in the Winddown Budget attached as Annex F to the Term Sheet; (D) the third party costs referenced in section  (c)(5) herein; (E) if applicable, its allocated share of the Expense Reimbursement; (F) any true-up of opening cash balances to reflect the cash sources and uses during the forbearance period that have not already been reflected in the Net WLIL Intercompany Claim and/or the Net WAC Group Intercompany Claim; and (G) its allocated share of the A&M transaction fee as set forth in the Approved Budget to the extent not included in (A), in each case, as set forth in the estimate of such Exit Payment delivered to such WAC Facility Agent.[8]  A WAC Facility Agent shall submit the Credit Bid Deposit to the Debtors by the Credit Bid Deadline, which shall be applied to the full amount of the Exit Payment payable upon closing a Successful Credit Bid.

g.   With respect to WAC Facility Agents who are acting on behalf of non-Participating WAC Lenders, a cash deposit in an amount equal to 50% of the sum of the following, eliminating any duplication as appropriate: (A) its allocated share of the Winddown Account up to the amounts and in the allocable portion set forth in the Winddown Budget attached as Annex F to the Term Sheet; (B) third party costs associated with the transition of the applicable WAC Collateral to an operator or manager; and (C) if applicable, its allocated share of the Expense Reimbursement.

Upon submission of a Streamlined Credit Bid and Credit Bid Deposit by a WAC Facility Agent, such Streamlined Credit Bid shall be deemed a "Qualified Credit Bid."  The Debtors shall accept such Streamlined Credit Bid if such bid complies with the requirements set forth in these Bidding Procedures unless the Debtors receive a Matching Bid as set forth herein.  In the event the Debtors accept a Matching Bid, the Credit Bid Deposit shall be returned to the applicable WAC Facility Agent no later than **January 31, 2019**.

By no later than **February 15, 2019**, either (i) the Court shall have entered an order approving such Streamlined Credit Bid and authorizing the sale to such WAC Facility Agent, which order shall provide for a closing as soon as reasonably possible, or (ii) upon seven (7) calendar days' notice by the relevant WAC Facility Agent to the Debtors, in addition to all other remedies available to the WAC Facility Agent, the automatic stay imposed under section 362 of the

---

[7] The cash deposit in subsections (f) and (g) herein shall each be referred to as a "Credit Bid Deposit."  With respect to subsection (f), the sum of (A)-(G) shall be referred to as an "Exit Payment."  With respect to subsection (g), the sum of (A)-(C) shall also be referred to as an "Exit Payment."

[8] Upon written request by a WAC Facility Agent and/or Macquarie, the Debtors shall provide such WAC Facility Agent a good faith estimate of the amount of the Exit Payment no later than **December 21, 2018 at 5:00 p.m. (ET)**.

Bankruptcy Code shall automatically and without further notice or action by any party or further order of the Court be lifted to permit such WAC Facility Agent to exercise rights and remedies with respect to its WAC Collateral.

363(k) Credit Bid Requirements.  In addition to the requirements set forth herein, a 363(k) Credit Bid submitted by a WAC Facility Agent must include:

     a.  the Secured Claim Documentation; provided, that a WAC Facility Agent shall not be required to submit the Secured Claim Documentation to the Debtors unless a party in interest with timely standing challenges the validity, priority, enforceability, seniority, avoidability, perfection, or extent of its prepetition secured claim in the Chapter 11 Cases;

     b.  the acquisition of all of the WAC Collateral that secures such WAC Facility Agent's WAC Facility (other than, if applicable, any pledged equity interests);

     c.  a commitment to pay the costs associated with winding down the applicable WAC Facility's operations at the closing of such bid, which costs shall be reasonably acceptable to the Debtors and the WAC Facility Agent and shall include, if applicable, its allocated share of the Expense Reimbursement;

     d.  a cash deposit in an amount equal to the lesser of $1,000,000 or ten percent (10%) of the debt included in such 363(k) Credit Bid.  A WAC Facility Agent shall submit the deposit to the Debtors by the Credit Bid Deadline, which shall be applied to the full amount of the applicable winddown costs payable upon closing a Successful Credit Bid; and

     e.  a written statement setting forth the amount of such WAC Facility Agent's 363(k) Credit Bid and attaching an executed copy of the APA as an exhibit to the statement in both PDF and MS-WORD format and a copy of same that has been marked against the Macquarie APA, a copy of which is located in the Data Room.

The Debtors shall determine whether a 363(k) Credit Bid constitutes a Qualified Credit Bid no later than **January 18, 2019**.

The Debtors shall promptly notify the WAC Facility Agent, Macquarie, and any other Successful Third Party Bidder of any Qualified Credit Bid as soon as reasonably practicable upon making such determination.  Such notice to Macquarie or any other Successful Third Party Bidder shall include the financial components of such Qualified Credit Bid, including, without limitation, the amount of the credit bid, the amount of the Debtors' good faith estimate of the Exit Payment, the obligations assumed by such Qualified Credit Bid, and any other cash or financial items included within such Qualified Credit Bid.

The Successful Third Party Bidder shall have until **January 22, 2019 at 5:00 p.m. (ET)** to submit a cash bid that provides for (i) a payment equal to such WAC Facility Agent's credit bid amount (including in the case of a Credit Bid for all of the obligations under the applicable WAC Facility, the satisfaction of all such obligations accrued through the closing date

of such bid) <u>plus</u> the Exit Payment (other than with respect to Macquarie, the portion thereof related to Expense Reimbursement) <u>plus</u> the Break-Up Fee (in the event the Successful Third Party Bidder is not Macquarie) and (ii) an outside date for termination and closing conditions that are substantially the same as those set forth in the Macquarie APA (other than with respect to requisite antitrust and other governmental approvals which shall be dictated by applicable law) (a "**Matching Bid**").

If the Debtors do not receive a Matching Bid with respect to a Streamlined Credit Bid or 363(k) Credit Bid by **January 22, 2019 at 5:00 p.m.  (ET)**, (i) such Streamlined Credit Bid or (ii) such 363(k) Credit Bid if determined by the Debtors to be a Qualified Credit Bid in accordance with these Bidding Procedures, shall, in each case, be deemed a successful credit bid (a "**Successful Credit Bid**" and the bidder making such bid, a "**Successful Credit Bidder**").  In such event, the Debtors shall work with the applicable WAC Facility Agent to consummate the Successful Credit Bid as promptly as possible.

If the Debtors receive a Matching Bid to a Qualified Credit Bid, such Matching Bid shall serve as the recovery amount distributed on account of the WAC Facility Agent's prepetition secured claim (net of such WAC Facility Agent's Exit Payment and the Break-Up Fee, if any).

## Plan Support Agreement

The deadlines set forth in this section shall apply to any WAC Facility for which a WAC Facility Agent does not submit a Credit Bid by the Credit Bid Deadline and instead, by the Credit Bid Deadline, the Debtors and the Successful Third Party Bidder receive either:

a. an executed PSA from Requisite Lenders who collectively hold (through their respective WAC Facility Agents) security interests in one hundred and ten (110) or more aircraft **and** the Conversion Condition (as defined in the Macquarie APA) has been satisfied; or

b. an executed PSA from Requisite Lenders who collectively hold (through their respective WAC Facility Agents) security interests in less than one hundred and ten (110) aircraft or who otherwise do not satisfy the Conversion Condition (as defined in the Macquarie APA) **and** the Successful Third Party Bidder elects to treat such non-conforming PSA as meeting the requirements for the Conversion Condition, which election is evidenced by the Successful Third Party Bidder filing a notice to such effect on or before **January 18, 2019 at 5:00 p.m. (ET)** with the Bankruptcy Court.

A Successful Third Party Bidder may pursue a sale transaction pursuant to a chapter 11 plan (the "**Plan Sale**") in accordance with the terms of the Successful Third Party Bidder's APA and shall notify the Debtors and the Requisite Lenders of its intent to pursue a Plan Sale by **February 4, 2019 at 5:00 p.m. (ET)**.  If a Successful Third Party Bidder does not elect to pursue a Plan Sale, the Requisite Lenders for any WAC Facility (through its WAC Facility Agent) may submit a Credit Bid in accordance with these Bidding Procedures by **February 11, 2019 at 5:00 p.m. (ET)** (such bid, a "**Requisite Lender Credit Bid**").  The Successful Third Party Bidder shall

18

have until **February 19, 2019 at 5:00 p.m. (ET)** to submit a Matching Bid. Any Requisite Lender who fails to submit a Requisite Lender Credit Bid by the foregoing deadline shall be deemed to accept the Successful Third Party Bid and the sale of the relevant Purchased Assets shall be consummated pursuant to the Successful Third Party Bidder's APA. If, on the other hand, the Successful Third Party Bidder elects to pursue a Plan Sale, notwithstanding the foregoing, the sale transaction with respect to the WAC Collateral (x) of any WAC Lender or, any WAC Facility Agent acting on behalf of a WAC Lender, that is not a Requisite Lender and (y) for which either a Matching Bid was accepted by the Debtors or with respect to which no Credit Bid was ever submitted by such WAC Facility Agent shall be consummated pursuant to the 363 sale transaction contemplated by the Successful Third Party Bidder's APA.

If, on the other hand, (i) a PSA is delivered from Requisite Lenders who collectively hold (through their respective WAC Facility Agents) security interests in less than one hundred and ten (110) aircraft or which otherwise does not satisfy the requirements of the Conversion Condition (as defined in the Macquarie APA), and (ii) the Successful Bidder does not elect to treat such non-conforming PSA as meeting the requirements for the Conversion Condition, then such Requisite Lenders (through their respective WAC Facility Agents) may submit a Requisite Lender Credit Bid by **January 22, 2019 at 5:00 p.m. (ET)**. With respect to any such WAC Facility that submitted such a Requisite Lender Credit Bid, the Successful Third Party Bidder shall have until **January 28, 2019 at 5:00 p.m. (ET)** to submit a Matching Bid (as evidenced by a filing to such effect with the Bankruptcy Court). If a Successful Third Party Bidder does not submit a Matching Bid with respect to such WAC Facility, such Requisite Lender Credit Bid shall be deemed a Successful Credit Bid for the assets within such WAC Facility. Any such Requisite Lenders for any such WAC Facility who fails to submit a Requisite Lender Credit Bid by **January 22, 2019 at 5:00 p.m. (ET)** shall be deemed to accept the Successful Third Party Bid and the sale of the relevant Purchased Assets shall be consummated pursuant to the Successful Third Party Bidder's APA.

If the Debtors receive a Matching Bid to a Requisite Lender Credit Bid, such Matching Bid shall serve as the recovery amount distributed on account of the WAC Facility Agent's prepetition secured claim (net of such WAC Facility Agent's Exit Payment and the Break-Up Fee, if any).

### Sale Hearing(s) and Sale Order(s)

On February 12, 2019 at 10:00 a.m. (ET) and at such other additional hearings before the Bankruptcy Court, which shall be scheduled as soon as reasonably practicable (each such hearing, a "**Sale Hearing**"), the Debtors will seek the entry of one or more orders authorizing and approving, among other things, the applicable sale transaction or Credit Bid (each such order, a "**Sale Order**"). The Debtors, in the exercise of their business judgment, may adjourn a Sale Hearing without notice or with limited and shortened notice to parties, including by (i) an announcement of such adjournment at a Sale Hearing or at the Auction or (ii) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of a Sale Hearing; provided, that the Debtors shall proceed to a Sale Hearing with respect to any sale of any WAC (or the assets thereof), subject to the terms hereof, as expeditiously as possible.

### Consent to Jurisdiction and Authority as Condition to Bidding

All bidders (including Macquarie) that participate in the bidding process shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the sale transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the sale transaction; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the sale transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Exhibit 2

**Sale Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11
                                              :
WAYPOINT LEASING                              :    Case No. 18-13648 (SMB)
HOLDINGS LTD., et al.,                        :
                                              :    (Jointly Administered)
                  Debtors.¹                    :
-----------------------------------------------------------------x
```

## NOTICE OF SALE OF SUBSTANTIALLY ALL ASSETS

Waypoint Leasing Holdings Ltd. and certain of its subsidiaries and affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are seeking to sell all or substantially all of their assets pursuant to a motion, dated December 10, 2018 (ECF No. 64) (the "**Motion**").

Macquarie Rotorcraft Leasing Holdings Limited ("**Macquarie**") has already submitted a binding bid (the "**Macquarie Bid**") for substantially all of the Debtors' assets (the "**Purchased Assets**"), as set forth in a certain asset purchase agreement (the "**Macquarie APA**").  The Macquarie Bid remains subject to higher or better offers.

By order, dated [__], 2018 (ECF No. __) (the "**Bidding Procedures Order**"),² the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") approved bidding procedures (the "**Bidding Procedures**") that govern the sale of the Purchased Assets to the highest or best bidder.

The Debtors have requested the Bankruptcy Court enter one or more orders (each, a "**Sale Order**"), which provides, among other things, for the sale of the Debtors' assets free and clear of liens, claims, encumbrances, and other interests, to the extent permissible by law, and the assumption by one or more successful bidders of certain liabilities.  A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned.

Copies of the Macquarie APA, the Bidding Procedures Order, and the Bidding Procedures are available on the website of the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC (www.kccllc.net/waypointleasing).

---

¹ A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is attached to the Motion as **Exhibit A**.

² Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order or the Motion.

**ANY INTERESTED BIDDER SHOULD CONTACT THE DEBTORS' ADVISORS AT:**

**Houlihan Lokey Capital, Inc.**
Project.Whiskey@HL.com

**PLEASE TAKE NOTE OF THE FOLLOWING IMPORTANT DEADLINES:**

- The deadline to submit a Third Party Bid is **January 4, 2019 at 5:00 p.m. (ET)**. The deadline to submit a Credit Bid is **January 14, 2019 at 5:00 p.m. (ET)**. The failure to abide by the procedures and deadlines set forth in the Bidding Procedures Order and the Bidding Procedures may result in the denial of your Third Party Bid or Credit Bid.

- If there are two or more Qualified Third Party Bids, the Debtors will conduct the Auction on **January 8, 2019 at 10:00 a.m. (ET)**. The Auction may be cancelled if the Macquarie Bid is the only Qualified Third Party Bid received by the Debtors. If the Auction is adjourned or cancelled, the Debtors shall file a notice with the Bankruptcy Court by **January 7, 2019 at 5:00 p.m. (ET)** and publish such notice on the website of the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC (www.kccllc.net/waypointleasing).

- The deadline to file an objection to the proposed sale transaction is **February 5, 2019 at 4:00 p.m. (ET)** (the "**Sale Objection Deadline**"). Objections must be filed and served in accordance with the Bidding Procedures Order.

- The Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") to consider the proposed sale on **February 12, 2019 at 10:00 a.m. (ET)**. The Debtors may adjourn the Sale Hearing without notice or with limited and shortened notice to parties, including by (i) an announcement of such adjournment at the Auction or at the Sale Hearing or (ii) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing.

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE SALE OBJECTION DEADLINE SHALL BE A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO THE MOTION, THE SALE ORDER, THE SALE TRANSACTION, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE MACQUARIE APA (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF THE PURCHASED ASSETS AND ASSUMPTION AND ASSIGNMENT OF THE TRANSFERRED CONTRACTS, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).**

Dated: _____, 2018

_____

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Proposed Attorneys for Debtors and Debtors in Possession*

**<u>Exhibit 3</u>**

**Cure Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                              :
In re                              :        **Chapter 11**
                                        :
**WAYPOINT LEASING**        :        **Case No. 18-13648 (SMB)**
**HOLDINGS LTD.,** *et al.*,    :
                                        :        **(Jointly Administered)**
            Debtors.[1]        :
-------------------------------------------------------------x

## NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF DEBTORS

Pursuant to procedures approved by order of the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), dated _____, 2018 (ECF No. __) (the "**Bidding Procedures Order**"), Waypoint Leasing Holdings Ltd. and certain of its subsidiaries and affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are seeking to assume and assign certain of their executory contracts and unexpired leases in connection with the sale of substantially all of their assets (the "**Purchased Assets**").

Macquarie Rotorcraft Leasing Holdings Limited ("**Macquarie**") has already submitted a binding bid (the "**Macquarie Bid**") for substantially all of the Debtors' assets (the "**Purchased Assets**"), as set forth in a certain asset purchase agreement (the "**Macquarie APA**"), and the Debtors are seeking Bankruptcy Court approval of the Macquarie Bid (or such higher or better bid for the Debtors' assets) pursuant to a motion, dated December 10, 2018 (ECF No. 64) (the "**Motion**").[2]

**You are receiving this Notice because you may be a party to an executory contract or unexpired lease that is proposed to be assumed and assigned to Macquarie (collectively, the "Transferred Contracts"), or to such other bidder that submits a higher or better offer for the Purchased Assets**.

A list of the Transferred Contracts is attached hereto as **Exhibit A**.  A copy of the Macquarie APA is available on the website of the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC (www.kccllc.net/waypointleasing).

The Debtors have determined the current amounts owing (the "**Cure Costs**") under each Transferred Contract and have listed the applicable Cure Costs on **Exhibit A**.  The Cure Costs are

---

[1] A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is attached to the Motion as **Exhibit A**.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order or the Motion.

the only amounts proposed to be paid upon the assumption and assignment of the Transferred Contracts.

**To the extent that a non-Debtor party objects to the applicable Cure Cost, the non-Debtor party must file and serve an objection by January 16, 2019 at 5:00 p.m. (ET).**

**To the extent that a non-Debtor party objects to the assumption and assignment of such party's Transferred Contract on the basis of failure to provide adequate assurance of future performance, the non-Debtor party must file and serve an objection by February 1, 2019 at 5:00 p.m. (ET).**

**All objections must be filed and served in accordance with the Bidding Procedures Order (ECF No. __), copies of which are available for download at www.kccllc.net/waypointleasing.**

**If no objection is timely received, (i) the non-Debtor party to a Transferred Contract shall be deemed to have consented to the assumption and assignment of the Transferred Contract and shall be forever barred from asserting any objection with regard to such assumption or assignment and (ii) the Cure Costs set forth on <u>Exhibit A</u> attached hereto shall be controlling, notwithstanding anything to the contrary in any Transferred Contract, or any other document, and the non-Debtor party to a Transferred Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such Transferred Contract against the Debtors or the transferee, or the property of any of them.**

If one or more Qualified Third Party Bids are received, other than the Macquarie Bid, an auction for the Debtors' assets, including the Transferred Contracts, will be conducted on **January 8, 2019 at 10:00 a.m. (ET)** (the "**Auction**"). After the Auction, the Debtors will file a notice that identifies a Successful Third Party Bidder at the Auction.

The Debtors will seek to assume and assign the Transferred Contracts at one or more sale hearings before the Honorable Stuart M. Bernstein in the United States Bankruptcy Court for the Southern District of New York, 1 Bowling Green, New York, New York 10004 (the "**Sale Hearing**") as determined by the Debtors and in accordance with the Bidding Procedures Order. Objections, if any, will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors in accordance with the Bidding Procedures Order.

The inclusion of any contract or lease on <u>Exhibit A</u> shall not constitute or be deemed a determination or admission by the Debtors that such contract or other document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Notwithstanding the inclusion of any lease or contract on <u>Exhibit A</u>, Macquarie, a Successful Third Party Bidder, and a Successful Credit Bidder is bound to accept assignment of any Transferred Contract, and may amend the schedule of Transferred Contracts to remove any contract or lease at any time prior to the consummation of the Sale Transaction (each as defined in the Motion).

2

_____

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Proposed Attorneys for Debtors and Debtors in Possession*