**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
: 
In re : **Chapter 11**
:
**WAYPOINT LEASING** : **Case No. 18-13648 (SMB)**
**HOLDINGS LTD.,** *et al.*, :
: **(Jointly Administered)**
Debtors.[1] :
----------------------------------------------------------------x

### ORDER (I) (A) APPROVING PURCHASE AGREEMENT AMONG DEBTORS AND SUCCESSFUL CREDIT BIDDER, (B) AUTHORIZING SALE OF CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (C) GRANTING RELATED RELIEF, AND (II) AUTHORIZING DEBTORS TO TAKE CERTAIN ACTIONS WITH RESPECT TO RELATED INTERCOMPANY CLAIMS IN CONNECTION THEREWITH

Upon the motion (the "**Sale Motion**"),[2] dated December 10, 2018 [ECF No. 64], of

Waypoint Leasing Holdings Ltd. and certain of its subsidiaries and affiliates, as debtors and

debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105, 363, 365, 503, and

507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, and 6006

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-1, 6004-1,

6006-1, and 9006-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern

District of New York (the "**Local Rules**"), and the *Amended Sale Guidelines for the Conduct of*

*Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern*

*District of New York* (the "**Sale Guidelines**"), seeking, among other things, entry of an order

---

[1] A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is annexed hereto as **Exhibit A**.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined herein) or, if not defined in the Purchase Agreement, the meanings ascribed to such terms in the Bidding Procedures Order (as defined herein). In the event of any inconsistency between a defined term in the Bidding Procedures Order and the Purchase Agreement, the defined term in the Purchase Agreement shall control.

authorizing and approving the sale of substantially all of the Debtors' assets and the assumption

and assignment of certain executory contracts and unexpired leases of the Debtors in connection

therewith; and this Court having taken into consideration this Court's prior order, dated December

21, 2018 [ECF No. 159] (the "**Bidding Procedures Order**"), approving bidding procedures for

the sale of substantially all of the Debtors' assets (the "**Bidding Procedures**") and granting certain

related relief; and Sumitomo Mitsui Banking Corporation, Brussels Branch, in its capacity as

Administrative Agent (the "**Administrative Agent**"), and Sumitomo Mitsui Banking Corporation

Europe Limited, in its capacity as Collateral Agent (the "**Collateral Agent**"), each of the

Administrative Agent and Collateral Agent acting on behalf of and at the instruction of the WAC12

Lenders (as defined in the DIP Order[3]),  as WAC Facility Agents for the WAC12 Lenders (jointly

the Administrative Agent and the Collateral Agent, "**Buyer**"), having submitted the highest and

best bid in the form of a Streamlined Credit Bid for (i) 100% of the equity interests of Waypoint

Asset Company 12 Limited, (the "**Transferred Equity Interests**"); (ii) all right, title, and interest

in, to and under all the profit participating notes issued by the Transferred Entities[4] (each a "**PPN**,"

and together with the Transferred Equity Interests, the "**Transferred Interests**"); and (iii) the PPN

Agreements at the direction of the applicable required percentage of WAC12 Lenders; and the

Debtors having designated such Streamlined Credit Bid as a Successful Credit Bid, as set forth in

the *Notice and Identities of Successful Credit Bids* [ECF No. 298]; and this Court having conducted

---

[3] *See* the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552, Fed. R. Bank. P. 2002, 4001, 6003, 6004, and 9014, and L. Bankr. R. 2002-1, 4001-2, 9013-1, 9014-1, and 9014-2 (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superiority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling Final Hearing; and (IV) Granting Related Relief* [ECF No. 231] (the "**DIP Order**").

[4] The Transferred Entities include the following Debtors: Waypoint Asset Co 1E Limited, Waypoint Asset Euro 1F Limited, Waypoint Asset Malta 1A Limited, Waypoint Leasing Singapore 1 Pte. Limited, Waypoint Leasing UK 1A Limited, MSN 20093 Trust, MSN 20042 Trust, MSN 41202 Trust, and MSN 920280 Trust.

a hearing to consider the Sale Transaction (as defined herein) on February 12, 2019 (the "**Sale Hearing**"), during which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; and this Court having reviewed and considered (i) the Sale Motion and the exhibits thereto; (ii) the *Amended and Restated Credit Bid Equity Purchase Agreement*, dated as of February 13, 2019 (as amended, supplemented or otherwise modified, the "**Purchase Agreement**") by and between Waypoint Leasing (Ireland) Limited, Waypoint Leasing (Luxembourg) Euro S.à.r.l., Waypoint Leasing (Luxembourg) S.à.r.l. and Buyer, a copy of which is attached hereto as **<u>Exhibit A</u>**, whereby the Debtors have agreed to, among other things, sell the Transferred Interests and the PPN Agreements to Buyer on the terms and conditions set forth in the Purchase Agreement (the "**Sale Transaction**"), (iii) the Bidding Procedures Order and the record of the hearing before this Court on December 20, 2018, at which the Bidding Procedures Order was approved, (iv) the *Declaration of Matthew R. Niemann in Support of Debtors' Motion to Approve Bidding Procedures in Connection with Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, and Related Relief* [ECF No. 67], the *Supplemental Declaration of Matthew R. Niemann in Support of Order (I) (A) Approving Purchase Agreement Among Debtors and Successful Credit Bidder, (B) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief, and (II) Authorizing Debtors to take Certain Actions With Respect to Related Intercompany Claims in Connection Therewith* [ECF No. 405], the *Declaration of Alistair Monk Pursuant to 11 U.S.C. § 363(m) in Support of Order (I) (A) Approving Purchase Agreement Among Debtors and Successful credit Bidder, (B) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief, and (II) Authorizing Debtors to take Certain Actions*

*with Respect to Related Intercompany Claims in Connection Therewith* [ECF No. 391], and

the *Supplemental Declaration of Alistair Monk Pursuant to 11 U.S.C. § 363(m) in Support of*

*Order (I) (A) Approving Purchase Agreement Among Debtors and Successful credit Bidder,*

*(B) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims,*

*Encumbrances, and Other Interests, and (C) Granting Related Relief, and (II) Authorizing Debtors*

*to take Certain Actions with Respect to Related Intercompany Claims in Connection Therewith*

[ECF No. 403] (collectively, the "**Sale Declarations**"), and (v) the arguments of counsel made,

and the evidence proffered or adduced, at the Sale Hearing; and due notice of the Sale Motion, the

Sale Hearing and the form of this Order (the "**Proposed Sale Order**") having been provided; and

all objections to the Sale Transaction and the Proposed Sale Order having been resolved; and it

appearing that the relief granted herein is in the best interests of the Debtors, their estates, creditors,

and all parties in interest in these chapter 11 cases; and upon the record of the Sale Hearing and

these chapter 11 cases; and after due deliberation and sufficient cause appearing therefor, it is

hereby

> **FOUND AND DETERMINED THAT:**

A.      **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein constitute

this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following

findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the

following conclusions of law constitute findings of fact, they are adopted as such.  The Court's

findings shall also include any oral findings of fact and conclusions of law made by this Court

during or at the conclusion of the Sale Hearing.

4

B.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Sale Motion, the Sale Transaction and the property of the Debtors' estates, including the Transferred Interests and the PPN Agreements pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.    **Statutory and Rule Predicates**.  The statutory and other legal predicates for the relief granted herein are sections 105, 362, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006 and Local Rules 6004-1 and 6006-1, and the Sale Guidelines.

D.    **Notice and Opportunity to Object**.  A fair and reasonable opportunity to object to, and be heard with respect to, the Sale Motion and the Sale Transaction has been given to all Persons entitled to notice pursuant to the Bidding Procedures Order, including, but not limited to, the following: (i) all entities known or reasonably believed to have asserted any lien, claim, encumbrance, or other interest in the Transferred Interests; (ii) all affected federal, state and local regulatory and taxing authorities; (iii) all parties known by the Debtors to have expressed an interest in a transaction with respect to the Transferred Interests during the past twelve (12) months; (iv) all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); and (v) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

E.    **Final Order**.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

F.    **Sound Business Purpose**.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of and entry into the Purchase Agreement, and the other agreements, documents, and instruments deliverable thereunder or attached or

referenced therein, (collectively, the "**Transaction Documents**"), and approval of the Sale Transaction. The relevant Debtors' entry into and performance under the Transaction Documents (i) constitutes a sound and reasonable exercise of such Debtors' business judgment consistent with their fiduciary duties, (ii) provides value to and are beneficial to the relevant Debtors' estates, and are in the best interests of such Debtors and their stakeholders, and (iii) are reasonable and appropriate under the circumstances. Business justifications for the Sale Transaction include, but are not limited to, the following: (i) the Purchase Price set forth in the Purchase Agreement constitutes the highest or best offer received for the Transferred Interests and the PPN Agreements; (ii) the Sale Transaction on the terms set forth in the Transaction Documents presents the best opportunity to maximize the value of the Transferred Interests and the PPN Agreements, and is the product of an affirmative direction by the WAC12 Lenders to exercise their rights under section 363(k) of the Bankruptcy Code and the Bidding Procedures Order to submit a Credit Bid for their WAC Collateral in accordance with the Bidding Procedures; (iii) the Sale Transaction is part of a larger sale process that avoids a potential piecemeal liquidation of the Debtors' estates, which would result in significantly less value for all stakeholders; and (iii) it is imperative that the Sale Transaction conclude expeditiously to preserve going concern value, avoid business disruptions, and maintain valuable customer relationships.

G.     **Compliance with Bidding Procedures Order**. **The submission of of the WAC 12 Credit Bid and the Debtors' acceptance of that Credit Bid** ~~The Debtors, the Buyer, and the WAC12 Lenders~~ complied with the Bidding Procedures and, pursuant thereto, ~~Buyer's~~ the **Credit Bid** was the Successful Credit Bid for the Transferred Interests and the PPN Agreements. **[SMB: 2/13/19]**

H.    **Marketing Process**.  (i) The Debtors and their investment banker, Houlihan Lokey Capital, Inc., engaged in a robust and extensive marketing and sale process, both prior to the Petition Date and through the postpetition sale process pursuant to the Bidding Procedures Order and the Bidding Procedures; (ii) the Debtors conducted a fair and open sale process; (iii) the sale process and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Transferred Interests and the PPN Agreements, including through a Credit Bid; and (iv) the process conducted by the Debtors pursuant to the Bidding Procedures Order and the Bidding Procedures obtained the highest and best value for the Transferred Interests and the PPN Agreements, and there was no other transaction available or presented that would have yielded as favorable an economic result for the Transferred Interests and the PPN Agreements.

I.    **Fair Consideration; Highest or Best Value.**  The consideration to be provided by Buyer under the Purchase Agreement is fair and reasonable and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.  Such consideration constitutes the highest and best bid for the Transferred Interests and the PPN Agreements.  No other person or entity, or group of persons or entities, has offered to purchase the Transferred Interests and the PPN Agreements for an amount that would provide greater value to the relevant Debtors than Buyer. Such consideration constitutes the highest and best bid for the Transferred Interests and the PPN Agreements.  No other person or entity, or group of persons or entities, has offered to purchase the

Transferred Interests and the PPN Agreements for an amount that would provide greater value to the relevant Debtors than Buyer.

J.    **No Successor or Other Derivative Liability**.    Buyer (i) is not, and the consummation of the Sale Transaction will not render Buyer, a mere continuation~~, and Buyer is not holding itself out as a mere continuation,~~ of the Seller, the PPN Sellers, or their respective estates or operations (excluding, for the avoidance of doubt, the business of the Transferred Entities), and there is no continuity or common identity between Buyer and the Debtors (excluding, for the avoidance of doubt, the business of the Transferred Entities); (ii) the Sale Transaction does not amount to a consolidation, merger, or *de facto* merger of Buyer with the Seller, PPN Sellers or their respective estates; and (iii) Buyer is not, and shall not be deemed to be, a successor to Seller, PPN Sellers or their respective estates (excluding, for the avoidance of doubt, the business of the Transferred Entities) as a result of the consummation of the Sale Transaction.  **[SMB: 2/13/19]**

K.    **Good Faith**.    The Transaction Documents and the Sale Transaction were negotiated, proposed, and entered into by the Debtors and Buyer in good faith, without collusion, and from arms'-length bargaining positions.  Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  ~~Buyer and the WAC12 Lenders have proceeded in good faith in all respects in that,~~ ~~a~~**A**mong other things, (i) Buyer and the WAC12 Lenders complied with the provisions of the Bidding Procedures Order, including compliance **in all material respects** with confidentiality obligations and restrictions under the DIP Credit Agreement, the Bidding Procedures, and any applicable prepetition credit agreement, non-disclosure agreement, or confidentially agreement; and (ii) all consideration to be paid by Buyer and all other material agreements or arrangements entered into by Buyer and the Debtors in connection with the Sale Transaction have been disclosed

and are appropriate. The Purchase Price in respect of the Transferred Interests and the PPN Agreements was not controlled by any agreement among potential bidders. None of the Debtors, Buyer nor the WAC12 Lenders have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. None of Buyer, the WAC12 Lenders, nor any of their respective members, partners, officers, directors, principals, or shareholders is an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code and no common identity of incorporators, directors, or controlling stockholders exists between Buyer or the WAC12 Lenders, on one hand, and the Debtors, on the other hand. The Transaction Documents were not entered into and the Sale Transaction is not being consummated for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors. All payments to be made by Buyer in connection with the Sale Transaction have been disclosed. Neither the Debtors nor Buyer is entering into the Transaction Documents, or proposing to consummate the Sale Transaction, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Colombia. **[SMB: 2/13/19]**

L.      **Notice**. As evidenced by the certificates of service filed with this Court: (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the Bidding Procedures (including the bidding process and the deadline for submitting bids at the Auction), the Sale Hearing, the Sale Transaction, and the Proposed Sale Order was provided by the Debtors; (ii) such notice was good, sufficient, and appropriate under the particular circumstances and complied with the Bidding Procedures Order; and (iii) no other or further notice of the Sale Motion, the Sale Transaction, the Bidding Procedures, the Sale Hearing, or the Proposed Sale Order is required. With respect to

Persons whose identities are not reasonably ascertained by the Debtors, publication of the notice

in the national editions of *The New York Times*, *The Financial Times*, and *Aviation Week* on

December 28, 2018, January 3, 2019, and January 14, 2019, respectively, was sufficient and

reasonably calculated under the circumstances to reach such Persons.

M.    **Satisfaction of Section 363(f) Standards**.  Subject to the payment of the Exit

Payment, a portion of which shall be used to satisfy any Net WLIL Intercompany Claim, WLIL

Intercompany Protection Claim, and share of the Carve-Out allocated to their Participating WAC

Group (each as defined in the DIP Order), the Debtors are authorized to sell the Transferred

Interests to Buyer free and clear of all liens, claims (including those that constitute a "claim" as

defined in section 101(5) of the Bankruptcy Code) **interests and encumbrances,** ~~property~~

~~interests, rights, liabilities, encumbrances, pledges, and other interests of any kind or nature~~

~~whatsoever against the Transferred Interests, including, without limitation, any debts, claims,~~

~~rights, causes of action, and/or suits arising under or out of, in connection with, or in any way~~

~~relating to, any acts, omissions, obligations, demands, guaranties, rights, contractual commitments,~~

~~and/or restrictions,~~ against the Transferred Interests to the maximum extent available under

applicable law, arising prior to the Closing~~, whether known or unknown, whether fixed or~~

~~contingent, whether anticipated or unanticipated, whether yet accrued or not, and whether imposed~~

~~by agreement, understanding, law, equity or otherwise~~ arising under or out of, in connection with,

or in any way related to the Seller's, the PPN Seller's, or the Debtors' interests in the Transferred

Interests, the operation of the business before the Closing, or the transfer of Seller's or the PPN

Sellers' interests in the Transferred Interests to Buyer (collectively, excluding (i) the Credit

Agreement Obligations assumed pursuant to section 2.02 of the Purchase Agreement, (ii) any Lien

created by, or through, Buyer or its Affiliates, and (iii) all liabilities arising under the PPN

Agreements, the "**Claims**"), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Claims who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction or the Sale Motion are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code. All Persons having Claims of any kind or nature whatsoever against the Transferred Interests shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such Claims against the Transferred Interests. **[SMB: 2/13/19]**

N. By not having objected to the Sale Transaction, each of the lenders (the "**DIP Lenders**" and together with the administrative agent and collateral agent acting on behalf of the DIP Lenders, the "**DIP Secured Parties**") under the Debtors' $49 million debtor-in-possession superpriority financing facility (the "**DIP Facility**") is deemed to have consented to the sale of the Transferred Interests to Buyer pursuant to the Purchase Agreement free and clear of any Claims of such DIP Lenders against the Transferred Interests or the Transferred Entities, subject to the terms and conditions of paragraph 9 of this Order, the DIP Credit Agreement, and the DIP Order.

O. Buyer would not have entered into the Transaction Documents and would not consummate the transactions contemplated thereby, if the sale of the Transferred Interests was not free and clear of all Claims, or if Buyer would, or in the future could, be liable for any such Claims. A sale of the Transferred Interests, other than one free and clear of all Claims, would yield substantially less value for the Debtors' estates.

P. The total consideration to be provided under the Purchase Agreement reflects Buyer's reliance on this Order to provide it with title to and possession of the Transferred Interests free and clear of all Claims pursuant to sections 105(a) and 363(f) of the Bankruptcy Code.

Q.    **Validity of Transfer**.  As of the Closing, the transfer of the Transferred Interests and the PPN Agreements to Buyer will be a legal, valid, and effective transfer of the Transferred Interests and the PPN Agreements, will vest Buyer with all right, title, and interest of the Debtors in and to the Transferred Interests, free and clear of all Claims.  The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

R.    The Transaction Documents are valid and binding contracts between the Debtors and Buyer and shall be enforceable pursuant to their terms.  ~~None of the Transaction Documents was entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, possession, or the District of Columbia.~~  The Transaction Documents, the Sale Transaction itself, and the consummation thereof, shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.  **[SMB: 2/13/19]**

S.    **No Sub Rosa Plan**.  Entry into the Purchase Agreement and the transactions contemplated thereby neither impermissibly restructure the rights of the Debtors' creditors, nor impermissibly dictate the terms of a chapter 11 plan of reorganization for the Debtors.  Entry into and performance under the Purchase Agreement and this Order does not constitute a sub rosa chapter 11 plan.

T.    **Intercompany Claims**.  The intercompany obligations between the Debtors other than any Transferred Entity, on the one hand, and the Transferred Entities, on the other hand, other

12

than (i) obligations that will be satisfied in connection with the Exit Payment, and (ii) any Net WAC Group Intercompany Claim of the Transferred Entities, are worthless because there will be insufficient funds in the Debtors' estates, after taking into account monies received from the sale of substantially all of the Debtors' assets, for any distributions to be made on account of such obligations.

U.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  The sale of the Transferred Interests and the PPN Agreements must be approved and consummated promptly in order to preserve the value of the Transferred Interests and the PPN Agreements.  Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and Buyer intend to close the Sale Transaction as soon as reasonably practicable.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction as contemplated by the Purchase Agreement.  Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to the transactions contemplated by this Order.

V.    **Legal and Factual Bases**.  The legal and factual bases set forth in the Sale Motion, the Sale Declarations, and at the Sale Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS ORDERED THAT**:

1.    **Motion is Granted**.  To the extent not already approved pursuant to the Bidding Procedures Order, the Sale Motion and the relief requested therein is granted and approved as set forth herein with respect to the Transferred Interests and the PPN Agreements.

2.    **Objections Overruled**.  All objections, if any, and any and all joinders thereto, to the Sale Motion or the relief requested therein that have not been previously overruled, withdrawn with prejudice, waived, or settled as announced to this Court at the Sale Hearing, by stipulation

filed with this Court, or as provided in this Order, and all reservations of rights included therein, are hereby overruled on the merits and with prejudice.

3.      **Notice.**  Notice of the Sale Hearing was fair and equitable under the circumstances and complied ~~in all respects~~ with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.  **[SMB: 2/13/19]**

4.      **Fair Consideration**.  The consideration provided by Buyer under the Purchase Agreement is fair and reasonable and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.

5.      **Approval of the Purchase Agreement**.   The Transaction Documents, the transactions contemplated thereby, including the Sale Transaction and all of the terms and conditions thereof, are hereby approved.~~ in their entirety. The failure specifically to include any particular provision of the Transaction Documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Transaction Documents, and the Debtors' entry therein, be authorized and approved in their entirety.~~  **[SMB: 2/13/19]**

6.      **Consummation of Sale Transaction**.  Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the applicable Debtors ~~are authorized, and empowered to transfer the Transferred Interests and the PPN Agreements in accordance with the terms of the Purchase Agreement and the terms of this Order. The Debtors,~~ as well as their directors, officers, employees, and agents, are authorized to execute, deliver, and perform their obligations under and comply with the terms of the Transaction Documents and to consummate the Sale Transaction~~, including~~

by taking any and all actions as may be reasonably necessary or desirable to implement the Sale Transaction and each of the transactions contemplated thereby pursuant to and in accordance with the terms and conditions of the Transaction Documents and this Order.  For the avoidance of doubt, all persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Transferred Interests and the PPN Agreements to Buyer in accordance with the Purchase Agreement and this Order.  **[SMB: 2/13/19]**

7.     The Debtors, their Affiliates, and their respective directors, officers, employees, and agents, are authorized to execute and deliver, and authorized to perform under, consummate, and implement all additional instruments and documents that may be reasonably necessary or desirable to implement the Transaction Documents, including the transfer and, as applicable, the assignment of all the Transferred Interests and the PPN Agreements and to take all further actions as may be (i) reasonably requested by Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to Buyer, or reducing to Buyer's possession, the Transferred Interests and the PPN Agreements and/or (ii) necessary or appropriate to the performance of the obligations contemplated by the Transaction Documents, including with respect to certain transition services that may be provided by the Debtors in connection with the Sale Transaction, all without further order of this Court.  **[SMB: 2/13/19]**

8.     Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Transaction Documents**, subject to the payment of any filing or other fee imposed under non-bankruptcy law.  [SMB: 2/13/19]**

9.      **Transfer of Assets Free and Clear**.  Upon the Closing, the transfer of the Transferred Interests and the PPN Agreements to Buyer shall: (i) be valid, legal, binding, and effective; (ii) vest Buyer with all right, title, and interest of the Debtors in the Transferred Interests and the PPN Agreements; and (iii) be free and clear of all Claims in accordance with section 363(f) of the Bankruptcy Code and subject to any claims and defenses the Debtors may possess with respect thereto, in each case immediately before the Closing.

10.     Except as otherwise provided in the Transaction Documents (including the right to enforce any remedies of the Debtors thereunder) or herein, all Persons (and their respective successors and assigns) including, without limitation, the Debtors, the Debtors' estates, all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do hold Claims against the Transferred Interests are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against Buyer, its Affiliates, successors, assigns, its property or the Transferred Interests, including, without limitation, taking any of the following actions with respect to any such Claims: (i) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against Buyer, its Affiliates, successors, assigns, assets (including the Transferred Interests), and/or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Buyer, its Affiliates, successors, assigns, assets (including the Transferred Interests), and/or properties; (iii) creating, perfecting, or enforcing any such Claim against Buyer, its successors, assigns, assets (including the Transferred Interests), and/or properties; (iv) asserting such Claim as a setoff, right of subrogation, or recoupment of any kind against any obligation due

against Buyer or its successors or assigns; or (v) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof.

11.    This Order (i) shall be effective as a determination that, except as provided herein, all Claims have been unconditionally released, discharged and terminated as to the Transferred Interests, and that the conveyances and transfers described herein have been effected, and (ii) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Transferred Interests free and clear of all Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "**Recording Officers**").  All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, liens, pledges, and other interests against the Transferred Interests recorded prior to the date of this Order.  A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens and other interests against the Transferred Interests recorded prior to the date of the Closing.  All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary, advisable or appropriate to consummate the transactions contemplated by the Purchase Agreement**, subject to the payment of any filing or other fee imposed under non-bankruptcy law**.  **[SMB: 2/13/19]**

12.     Notwithstanding any provision of the Transaction Documents or any provision of this Order to the contrary, nothing in this Order or any Transaction Document releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations (including, but not limited to, environmental laws or regulations), and any associated liabilities for penalties, damages, cost recovery, or injunctive relief that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order.  Nothing contained in this Order or any Transaction Document shall in any way diminish the obligation of any entity, including the Debtors, to comply with environmental laws.

13.     Subject to payment of the Exit Payment, a portion of which shall be used to satisfy any Net WLIL Intercompany Claim, WLIL Intercompany Protection Claim, and share of the Carve-Out allocated to their Participating WAC Group (each as defined in the DIP Order), the DIP Secured Parties are deemed to have released any Claims held by such Person on the Transferred Interests, the Transferred Entities or the assets of the Transferred Entities, and are authorized and directed to take any such actions as may be reasonably requested by the Debtors or Buyer to evidence the release of such Claims, including the execution, delivery and filing or recording of such releases as may be requested by the Debtors or Buyer or may be required in order to terminate any related financing statements, mortgages, mechanic's liens, or *lis pendens*.  If any DIP Secured Party or any other Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Claims shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, as applicable, termination statements, instruments of satisfaction, or releases of all interests or Claims which the Person has with respect to the Debtors or the Transferred Interests, the Transferred

18

Entities or the assets of the Transferred Entities, then (i) the Debtors are hereby authorized and directed to execute and file such statements, instruments, or releases on behalf of the Person with respect to the Transferred Interests, the Transferred Entities or the assets of the Transferred Entities and (ii) Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Transferred Interests, the Transferred Entities or the assets of the Transferred Entities. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

14.    On the Closing Date, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Transferred Interests, transferring good and marketable, indefeasible title and interest in all of the Transferred Interests to Buyer with effect at Closing of the Sale Transaction in accordance with the Transaction Documents.

15.    **No Successor or Other Derivative Liability**. By virtue of the **consummation of the** Sale Transaction, neither Buyer nor its Affiliates shall be deemed to: (i) be a legal successor, or otherwise deemed to be a successor, to the Seller or PPN Sellers under any theory of law or equity; (ii) have, *de facto* or otherwise, merged with or into the Seller, PPN Sellers, or their respective estates; (iii) have a common identity or a continuity of enterprise with Seller or PPN Sellers; or (iv) be a mere continuation or substantial continuation, or be holding itself out as a mere continuation, of Seller or PPN Sellers. **[SMB: 2/13/19]**

16.    **Statutory Mootness**. ~~The transactions contemplated by the Purchase Agreement and the other Transaction Documents are undertaken by Buyer in good faith, as that term is used~~

~~in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor the transfer of the Transferred Interests to Buyer free and clear of Claims, unless such authorization is duly stayed before the Closing Date pending such appeal.  Buyer is a good faith purchaser of the Transferred Interests and the PPN Agreements and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.  The Debtors and the Buyer will be acting in good faith if they proceed to consummate the Sale Transaction at any time after entry of this Sale Order.~~  **[SMB: 2/13/19]**

17.    **No Avoidance of Purchase Agreement**.  ~~Neither the Debtors, Buyer, nor any WAC12 Lender has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.  Accordingly, the Purchase Agreement and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Purchase Agreement or the Sale Transaction.~~  **[SMB: 2/13/19]**

18.    **Intercompany Claims**.  Each of the relevant Debtors (including, for the avoidance of doubt, the Transferred Entities) are authorized to (i) minimize, reduce or eliminate the amounts of the intercompany obligations between any Debtor other than a Transferred Entity, on the one hand, and the Transferred Entities, on the other hand, other than (a) obligations that will be satisfied in connection with the Exit Payment and (b) any Net WAC Group Intercompany Claim of the Transferred Entities; and (ii) take further actions as necessary to effectuate the minimization, reduction or elimination of such intercompany obligations, in each case, subject to the Debtors'

(including, for the avoidance of doubt, the Transferred Entities') receipt of requisite approvals, without further notice, motion or application to, order of or hearing before, this Court.

19.    **Winndown Account**.  Upon the Closing, a portion of the Exit Payment shall be used by the Debtors to fund the WAC12 Lenders' share of a segregated winndown account (the "**Winndown Account**").  The Winndown Account shall include amounts sufficient to pay the WAC12 Lenders' allocable portion (based on the net book value of their Participating WAC Group) of (i) statutory employee severance and costs to wind down the Sellers and Non-WAC Group Members (as defined in the DIP Order); (ii) employee healthcare payments; (iii) key employee retention and incentive plans; (iv) employee transformation amounts; (v) Debtors' professionals' success fees (to the extent not already funded into the Fee Reserve Account by such WAC12 Lenders or paid upon Closing as set forth in paragraph 24 below); (vi) administrative expenses directly incurred by or on behalf of the relevant Participating WAC Group, in each case, to the extent that as of such date such amounts have not been paid; and (vii) costs directly related to the sale of the WAC12 Lenders' WAC Specific Collateral including any transfer taxes, filing fees, and costs to liquidate any remaining corporate shells under applicable law.  Notwithstanding anything to the contrary herein, the WAC12 Lenders' allocable share of the costs set forth in subsections (i)-(iv) of this paragraph 19 shall not exceed the amounts of such items set forth in the winndown budget attached as Annex F to that certain *DIP Facility and Cash Collateral Term Sheet* (the "**DIP Term Sheet**"), as updated to the extent applicable to the WAC12 Lenders, to take into account the fact that not all of the aircraft were transferred to the WAC lenders through equity assignments on January 18, 2019 (as was assumed in such Annex F).[5]

---

[5] The DIP Term Sheet is attached as Annex A to that certain *Amendment No 1 to Omnibus Consent Letter*, dated as of December 7, 2018, by and between Waypoint Leasing (Ireland) Limited and the Participating WAC Lenders.

20.     The Debtors may use collateral held in the Winddown Account only to pay the winddown costs set forth above. To the extent any of the foregoing winddown costs require Bankruptcy Court approval and such approval is not obtained or if such costs are otherwise not incurred by the earlier of (i) the time set forth for approval of such costs in a confirmed chapter 11 plan, (ii) dismissal of the Chapter 11 Cases, (iii) conversion of the Chapter 11 Cases to chapter 7, or (iv) with respect to any success fee, transformation amount, or key employee incentive plan, May 31, 2019, such funds to the extent funded by the WAC12 Lenders, shall be returned to the WAC12 Lenders. Moreover, the WAC12 Lenders shall have a reversionary interest in their allocated portion of the funds held in the Winddown Account, if any, after all winddown costs identified above have been paid in full. This reversionary interest shall constitute a superpriority administrative claim in favor of the applicable WAC12 Lenders.

21.     Funds maintained in the Winddown Account shall be pledged to support the reversionary interest of the WAC12 Lenders and of other WAC Lenders to the extent of such WAC Lenders' funding of the Winddown Account, but shall not (i) be subject to any DIP Liens, any Adequate Protection Liens, or any Intercompany Protection Liens, (ii) constitute DIP Collateral (as defined in the DIP Order), (iii) constitute WAC Specific Collateral (as defined in the DIP Order), or (iv) constitute cash collateral. The Debtors shall report bi-weekly to the agent for the applicable WAC12 Lenders any payments made from the Winddown Account in accordance herewith.

22.     **Fee Reserve Account**. Upon the Closing, a portion of the Exit Payment shall be used by the Debtors to fund the WAC12 Lenders' remaining unfunded portion (based on the net book value of their Participating WAC Group) of the Carve Out (as defined in the DIP Order) into the Fee Reserve Account (as defined in the DIP Order). The funds in the Fee Reserve Account

shall be held in trust to pay Professional Fees (as defined in the DIP Order) and all amounts included in the Carve-Out in accordance with the DIP Order. The WAC12 Lenders shall have a reversionary interest in their allocated portion of the funds held in the Fee Reserve Account, if any, after all amounts included in the Carve-Out, including any allowed Professional Fees, have been paid in full pursuant to a final order of the Court (regardless of when such Professional Fees are allowed by the Court). This reversionary interest shall constitute a superpriority administrative claim in favor of the applicable WAC12 Lenders.

23.    Funds transferred to the Fee Reserve Account shall not (i) be subject to any Intercompany Protection Liens, Intercompany Protection Claims, DIP Liens, DIP Superpriority Claims, Adequate Protection Claims, Adequate Protection Liens (each as defined in the DIP Order) or any claim, liens or security interests granted to any other party (including the Non-Participating WAC Secured Parties (as defined in the DIP Order)), (ii) constitute DIP Collateral, (iii) constitute WAC Specific Collateral, (iv) constitute WAC Collateral (as defined in the DIP Order), or (v) constitute Cash Collateral (as defined in the DIP Order).

24.    **Sale Transaction Fees**. Upon the Closing, a portion of the Exit Payment shall be used by the Debtors to pay the applicable estate professionals and/or Alvarez & Marsal Securities, LLC to fund the WAC12 Lenders' allocable portion (based on the net book value of their Participating WAC Group) of (i) any success fees of Estate Professionals (as defined in the DIP Order) related to the Sale Transaction approved by order of the Court (regardless of when such fees are allowed by the Court), and (ii) the "Completion Fee" described in the engagement letter dated June 13, 2018, of Alvarez & Marsal Securities, LLC.

25.    **Exit Payment**. The payment by Buyer of the Exit Payment in accordance with the Bidding Procedures and the funding of the Winddown Account and the Fee Reserve Account as

set forth above shall be in full and final satisfaction of all Claims that may be allocated to the Transferred Entities in respect of the categories of Claims comprising the Exit Payment.  Upon the Closing and the funding of the Exit Payment, any holder of a Claim encompassed by the categories of claims comprising the Exit Payment, including but not limited to Claims in respect of the Carve-Out, the Winddown Account, the Fee Reserve Account, the Expense Reimbursement, the "Completion Fee" described in the engagement letter dated June 13, 2018, of Alvarez & Marsal Securities, LLC, or any Net WLIL Intercompany Claim against the Transferred Entities, shall in each case be forever barred, estopped, and permanently enjoined from pursuing or asserting such Claim against Buyer or the Transferred Entities, or any of their respective assets, property, Affiliates, successors, or assigns, or against the Transferred Interests.

26.    **Mutual Releases**.  The mutual releases set forth in the Transaction Documents are hereby approved.  The releases, as described in section 12.24 of the Purchase Agreement, are not intended to and do not release any third party (not affiliated with the Buyer, the Secured Parties or any Designated Transferee), including any manager or servicer of the Assets from any obligation they may have under any non-disclosure, confidentiality or similar type of agreement with the Seller, any of the other Debtors and/or Affiliates of such Debtors.

27.    **Outside Date**.  The Closing of the Sale Transaction shall occur as soon as reasonably practicable, but in no event later than the Outside Date (unless extended in accordance with the Purchase Agreement).

28.    **Cash Collateral and Cash Management**.  The consent of the WAC12 Lenders and the WAC12 Facility Agent to the use of cash collateral in accordance with the DIP Order shall terminate automatically and immediately upon the Closing Date without further action by any Person or the need for further order of the Court.  The cash management procedures applicable to

the Transferred Entities in accordance with the Final Cash Management Order[6] shall no longer be in effect automatically and immediately as of the Closing Date without further action by any Person or the need for further order of the Court.

29.     **Severance of Joint Administration of Bankruptcy Cases**.  Upon Closing, **and subject to further order of the Court,** the administration of the Bankruptcy Cases of the Transferred Entities shall be severed from the joint administration of the above-captioned chapter 11 cases, **and the Clerk shall make an appropriate docket entry**.  ~~A docket entry shall be made in each of the applicable chapter 11 cases of the Transferred Entities indicating that such Debtor's Bankruptcy Case is no longer being jointly administered pursuant to the *Order Pursuant to Fed. R. Bankr. P. 1015(b) Directing Joint Administration of Chapter 11 Cases* [ECF No. 25].~~ Subsequent to Closing, the Transferred Entities shall not make any payments of prepetition claims pursuant to orders entered by the Court in the Bankruptcy Cases prior to Closing to the extent that any such payments would count towards any caps or limits on such payment amounts imposed in such orders.  **[SMB: 2/13/19]**

30.     **Dismissal of Bankruptcy Cases**.  After the Closing, the Debtors (other than the Transferred Entities) shall not object to, and shall provide reasonable assistance with, any motion seeking the dismissal of the Bankruptcy Cases of the Transferred Entities.

31.     **Advisors**.  Automatically and immediately upon Closing without further action by any Person or the need for further order of the Court, the retentions and engagements by the Transferred Entities of all legal, financial, and other professionals in their Bankruptcy Cases shall

---

[6] *See* the *Final Order Pursuant to 11 U.S.C. §§ 105(a), 345(b), 363(c), 364(a), and 503(b) and Fed. R. Bankr. P. 6003 and 6004 (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System, (B) Honor Certain Prepetition Obligations Related to the Use Thereof, and (C) Continue Intercompany Transactions and Provide Administrative Expense Priority for Postpetition Intercompany Claims; (II) Extending the Time to Comply with 11 U.S.C. § 345(b); and (III) Granting Related Relief* [ECF No. 126] (the "**Final Cash Management Order**").

be terminated, regardless of any provisions in the applicable entities' retention orders or agreements.  After Closing, the Transferred Entities (x) shall have no liability for any fees, costs, or expenses of the Bankruptcy Cases of the Debtors (including with respect to any fees, costs and expenses incurred prior to the Closing which shall have been satisfied by the Exit Payment) other than such fees, costs, or expenses specifically incurred by the Transferred Entities after Closing, but (y) shall reasonably cooperate to enter into any agreements or provide other written evidence necessary to effectuate the termination of the professionals' engagements. Notwithstanding the foregoing, for the avoidance of doubt, after the Closing the Transferred Entities shall be authorized, but not directed, to employ professionals in the ordinary course of their business pursuant to the *Order Pursuant to 11 U.S.C. § 105(a), 327, 328, and 330 Authorizing Debtors to Employ Professionals Used in the Ordinary Course* Nunc Pro Tunc *to the Petition Date* [ECF No. 227].

32.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.    Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale Transaction and the Debtors and Buyer intend to close the Sale Transaction as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal will be foreclosed as moot.

33.    **Binding Effect of this Order**.    The terms and provisions of the Purchase Agreement and this Order shall be binding ~~in all respects~~ upon, or shall inure to the benefit of, the Debtors, their estates and their creditors, Buyer and its Affiliates, successors, and assigns, and any

affected third parties, including all Persons asserting Claims, notwithstanding any subsequent appointment of any trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, or receiver.  Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to (i) operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Transaction Documents and (ii) perform under the Transaction Documents without the need for further order of this Court.  **[SMB: 2/13/19]**

35.    **Conflicts; Precedence**.  In the event that there is a direct conflict between the terms of this Order and the terms of (i) the Transaction Documents; (ii) the DIP Documents, the Participating WAC Loan Documents, WAC2 Documents, or WAC10 Documents (each as defined in the DIP Order) or (iii) any other order of this Court, the terms of this Order shall control. Nothing contained in any chapter 11 plan hereinafter confirmed in these chapter 11 cases, or any order confirming such plan, shall conflict with or derogate from the provisions of the Transaction Documents or the terms of this Order, and, to the extent that there is any conflict among them, the terms of the Transaction Documents and/or this Order, as applicable, shall control.

35.    **Modification of Purchase Agreement**.  Subject to the terms of the Transaction Documents, the Transaction Documents, including the Purchase Agreement, and any related agreements, documents, or other instruments, may be modified, amended, or supplemented by the parties thereto, in a writing signed by the party against whom enforcement of any such modification, amendment, or supplement is sought, and in accordance with the terms thereof,

without further order of this Court; *provided* that (i) notwithstanding any such modification, amendment, or supplement, the sale of the Transferred Interests and the PPN Agreements to Buyer will still comply with the requirements of section 363 of the Bankruptcy Code, and (ii) any such modification, amendment, or supplement does not have a material adverse effect on the Debtors or their estates.

36.     **Bulk Sales**.  No bulk sales law, bulk transfer law, or similar law of any state or other jurisdiction (including those relating to Taxes other than Transfer Taxes) shall apply in any way to the Sale Transaction.

37.     **Automatic Stay**.  Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Transaction Documents or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Order.

38.     **Provisions Non-Severable**.  The provisions of this Order are nonseverable and mutually dependent.

39.     **Discharge of Indebtedness.**  Any discharge of indebtedness that might otherwise be recognized for U.S. income tax purposes as income from discharge of indebtedness by the Debtors as a result of the performance of any obligation or taking of any other action contemplated by the Purchase Agreement, and any discharge or release of indebtedness as result of the Purchase Agreement, is hereby granted by the Court.

40.     **Aid and Recognition of Foreign Courts**.  This Court hereby requests the aid and recognition of any court or administrative body of the competent courts of Ireland, the district of

Luxembourg, Grand Duchy of Luxembourg, or any other foreign courts to act in aid of and to be complementary to this Court in carrying out the terms of this Order.

41.    **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among other things, (i) interpret, enforce, and implement the terms and provisions of this Order and the Purchase Agreement (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith) and (ii) adjudicate disputes related to this Order and the Purchase Agreement (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith).

Dated: February 13, 2019
         New York, New York

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge