**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| In re | : | **Chapter 11** |
| | : | |
| **WAYPOINT LEASING** | : | **Case No. 18-13648 (SMB)** |
| **HOLDINGS LTD.,** *et al.*, | : | |
| | : | **(Jointly Administered)** |
| Debtors.[1] | : | |

----------------------------------------------------------------x

**ORDER (I) APPROVING PURCHASE AGREEMENT
AMONG DEBTORS AND MACQUARIE, (II) AUTHORIZING SALE OF
CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS, (III) AUTHORIZING ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION THEREWITH, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "**Sale Motion**"),[2] dated December 10, 2018 [ECF No. 64], of

Waypoint Leasing Holdings Ltd. and certain of its subsidiaries and affiliates, as debtors and

debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105, 363, 365, 503, and

507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, and 6006

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-1, 6004-1,

6006-1, and 9006-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern

District of New York (the "**Local Rules**"), and the *Amended Sale Guidelines for the Conduct of*

*Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern*

*District of New York* (the "**Sale Guidelines**"), seeking, among other things, entry of an order

authorizing and approving the sale of substantially all of the Debtors' assets and the assumption

---

[1] A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is annexed to the Sale Motion as <u>Exhibit A</u>.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined herein) or, if not defined in the Purchase Agreement, the meanings ascribed to such terms in the Sale Motion.

and assignment of certain executory contracts and unexpired leases of the Debtors in connection therewith; and this Court having held a hearing on December 20, 2018 (the "**Bidding Procedures Hearing**") and having taken into consideration this Court's prior order, dated December 21, 2018 [ECF No. 159] (the "**Bidding Procedures Order**"), approving bidding procedures for the sale of substantially all of the Debtors' assets (the "**Bidding Procedures**") and granting certain related relief; and Macquarie Rotorcraft Leasing Holdings Limited ("**Macquarie**") having submitted the highest and best bid for the Transferred Equity Interests and Transferred Assets (together, and in each case not including any equity interests or assets sold or proposed to be sold in connection with an Exempt Transaction for with respect to which the Debtors have either consummated, or entered into an agreement as of the Closing Date to consummate such sale, the "**Acquired Assets**"); and this Court having conducted a hearing to consider the Sale Transaction (as defined herein) on February 12, 2019 (the "**Sale Hearing**"), during which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; and this Court having reviewed and considered (i) the Sale Motion and the exhibits thereto; (ii) the *Stock and Asset Purchase Agreement*, dated as of December 7, 2018 (as amended, supplemented or otherwise modified, including all exhibits, schedules and other attachments thereto, the "**Purchase Agreement**") by and between certain of the Debtors and Macquarie, a copy of which is attached hereto as **Exhibit A**, whereby the applicable Debtors have agreed to, among other things, sell or cause to be sold the Acquired Assets to Macquarie, including certain executory contracts and unexpired leases of the Debtors that will be assumed and assigned to Macquarie (excluding any executory contract or unexpired lease to which a Debtor subject to an Exempt Transaction, or any such Debtor's direct or indirect subsidiaries, is a party, the "**Transferred Contracts**"), on the terms and conditions set forth in the Purchase Agreement (collectively, the transactions contemplated by the Purchase

Agreement and the other Transaction Documents with respect to the Acquired Assets, the "**Sale Transaction**"); (iii) the Bidding Procedures Order and the record of the hearing before this Court on December 20, 2018, at which the Bidding Procedures Order was approved; (iv) the *Declaration of Matthew R. Niemann in Support of Debtors' Motion to Approve Bidding Procedures in Connection with Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, and Related Relief* [ECF No. 67], the *Declaration of Robert A. Del Genio in Support of Emergency Motion of Debtors Pursuant to 11 U.S.C. § 105(a) for Entry of an Order Approving Proposed Updated DIP Budget and Resolving Allocation Methodology for Winddown Account* [ECF No. 366], the *Supplemental Declaration of Matthew R. Niemann in Support of Order (I) Approving Purchase Agreement Among Debtors and Macquarie, (II) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (IV) Granting Related Relief* [ECF No. 404], the *Declaration of Robert A. Del Genio in Support of Proposed Order (I) Approving Purchase Agreement Among Debtors and Macquarie, (II) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (IV) Granting Related Relief* [ECF No. 418], and the *Declaration of Stephen Wesley Cook in Support of Debtors' Motion to Approve Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests* [ECF No. 414] (collectively, the "**Sale Declarations**"); and (v) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and due notice of the Sale Motion, the Sale Hearing, and the form of this Order (the "**Proposed Sale Order**") having been provided; and all objections

to the Sale Transaction and the Proposed Sale Order having been withdrawn, resolved, or overruled; and it appearing that the relief granted herein is in the best interests of the Debtors, their estates, creditors, and all parties in interest in these chapter 11 cases; and upon the record of the Sale Hearing and these chapter 11 cases; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.    **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings shall also include any oral findings of fact and conclusions of law made by this Court during or at the conclusion of the Sale Hearing.

B.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Sale Motion, the Purchase Agreement, the Sale Transaction and the property of the Debtors' estates, including the Acquired Assets, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.    **Statutory and Rule Predicates**.  The statutory and other legal predicates for the relief granted herein are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006 and Local Rules 6004-1 and 6006-1, and the Sale Guidelines.

D.    **Notice and Opportunity to Object**.  As evidenced by the affidavits and certificates of service and Publication Notice previously filed with the Court, in light of the exigent circumstances of these chapter 11 cases and the wasting nature of the Acquired Assets and based

on the representations of counsel at the Bidding Procedures Hearing and the Sale Hearing, a fair and reasonable opportunity to object to, and be heard with respect to, the Sale Motion and the Sale Transaction has been given to all Persons entitled to notice pursuant to the Bidding Procedures Order, including, but not limited to, the following: (i) all counterparties to the Transferred Contracts; (ii) all entities known or reasonably believed to have asserted any lien, claim, encumbrance, or other interest in the Acquired Assets; (iii) all affected federal, state and local regulatory and taxing authorities; (iv) all parties known by the Debtors to have expressed an interest in a transaction with respect to the Acquired Assets during the past twelve (12) months; (v) all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); and (vi) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

E.      **Final Order**.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

F.      **Sound Business Purpose**.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of and entry into the Purchase Agreement, and the other agreements, documents, and instruments deliverable thereunder or attached or referenced therein (collectively, the "**Transaction Documents**"), and approval of the Sale Transaction.  The Debtors' entry into and performance under the Transaction Documents (i) constitutes a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties, (ii) provides value to and are beneficial to the Debtors' estates, and are in the best interests of the Debtors and their stakeholders, and (iii) are reasonable and appropriate under the circumstances.  Business justifications for the Sale Transaction include, but are not limited to, the following: (i) the Purchase Price set forth in the Purchase Agreement constitutes the

5

highest or best offer received for the Acquired Assets; (ii) the Sale Transaction on the terms set forth in the Transaction Documents presents the best opportunity to maximize the value of the Acquired Assets on a going concern basis and avoids a potential piecemeal liquidation of the relevant Debtors' estates, which would result in significantly less value for all stakeholders of the relevant Debtors; and (iii) it is imperative that the Sale Transaction conclude expeditiously to preserve going concern value, avoid business disruptions, and maintain valuable customer relationships.

G.    **Compliance with Bidding Procedures Order**.  On December 21, 2018, this Court entered the Bidding Procedures Order approving the Bidding Procedures for the Acquired Assets. The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity or person to make an offer to purchase the Acquired Assets.  The Debtors and Macquarie complied with the Bidding Procedures **in all material respects**.  Macquarie subjected its bid to the competitive Bidding Procedures approved by this Court and, as the only bidder to submit a Qualified Third Party Bid by the Third Party Bid Deadline, was designated the Successful Third Party Bidder for the Acquired Assets in accordance with the Bidding Procedures.  **[SMB: 2/14/19]**

H.    **Marketing Process**.  As demonstrated by (a) the Motion, (b) the testimony and other evidence proffered or adduced at the Bidding Procedures Hearing and the Sale Hearing, and (c) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, in light of the exigent circumstances presented:  (i) the Debtors and their investment banker, Houlihan Lokey Capital, Inc., engaged in a robust and extensive marketing and sale process, both prior to the Petition Date and through the postpetition sale process pursuant to the Bidding Procedures Order and the Bidding Procedures, (ii) the Debtors conducted a fair and open sale process, (iii) the sale process and the Bidding Procedures were non-collusive, duly noticed,

and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets, and (iv) the process conducted by the Debtors pursuant to the Bidding Procedures Order and the Bidding Procedures obtained the highest and best value for the Acquired Assets, and there was no other transaction available or presented that would have yielded as favorable an economic result for the Acquired Assets.

I.    **Fair Consideration; Highest or Best Value.**  The consideration to be provided by Macquarie under the Purchase Agreement is fair and reasonable consideration for the Acquired Assets and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.  Such consideration constitutes the highest and best bid for the Acquired Assets.  No other person or entity, or group of persons or entities, has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors than Macquarie.  Prompt approval of the Sale Transaction is the only means to preserve and maximize the value of the Acquired Assets.

J.    **No Successor or Other Derivative Liability**.  The **consummation of the** sale and transfer of the Acquired Assets to Macquarie, including the assumption by the Debtors and assignment, transfer and/or sale to Macquarie of the Transferred Contracts, will not subject Macquarie to any liability (including any successor liability) with respect to the Excluded Liabilities, *provided* that, upon Closing, Macquarie shall remain liable for the Assumed Liabilities. Macquarie (i) is not, and the consummation of the Sale Transaction will not render Macquarie, a mere continuation ~~and Macquarie is not holding itself out as a mere continuation~~ of any of the Debtors or their respective estates, enterprise, or operations, and there is no continuity or common

identity between Macquarie and the Debtors; (ii) the Sale Transaction does not amount to a consolidation, merger, or *de facto* merger of Macquarie with or into any of the Debtors or their estates; and (iii) Macquarie is not, and shall not be deemed to be, a successor to any of the Debtors or their estates as a result of the consummation of the Sale Transaction.

K.    **Good Faith**.    The Transaction Documents and the Sale Transaction were negotiated, proposed, and entered into, and are being undertaken by the Debtors and Macquarie in good faith, without collusion, and from arms'-length bargaining positions.  Likewise, the value that the relevant Debtors and their estates will receive on consummation of the Sale Transaction is the product of arm's-length negotiations between the Debtors, Macquarie and their respective representatives and advisors.  Macquarie is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code.~~in all respects in that, a~~A~~~~mong other things, (i) Macquarie agreed to subject the Acquired Assets to higher or better offers; (ii) Macquarie complied with the provisions of the Bidding Procedures Order, including compliance with confidentiality obligations and restrictions under the Bidding Procedures and any applicable non-disclosure or confidentiality agreement; (iii) Macquarie's bid was subjected to competitive Bidding Procedures as set forth in the Bidding Procedures Order; (iv) all payments to be made by Macquarie and all other material agreements or arrangements entered into by Macquarie and the Debtors in connection with the Sale Transaction have been disclosed and are appropriate; and (v) Macquarie agreed to permit the Debtors to sell certain assets to parties that submitted Credit Bids in compliance with the Bidding Procedures Order and the Bidding Procedures without triggering the Break-Up Fee and Expense Reimbursement.  Other than agreements among the Debtors, Macquarie, and certain of the WAC Secured Parties (as defined herein), as reflected in the Purchase Agreement and herein, the Purchase Price in respect of the Acquired Assets was not controlled by any agreement among

potential bidders.  Neither the Debtors nor Macquarie have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.  Neither Macquarie nor any of its members, partners, officers, directors, principals, or shareholders is an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code and no common identity of incorporators, directors, or controlling stockholders exists between Macquarie and the Debtors.  The Transaction Documents were not entered into and the Sale Transaction is not being consummated for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors.  All payments to be made by Macquarie in connection with the Sale Transaction have been disclosed. Neither the Debtors nor Macquarie is entering into the Transaction Documents, or proposing to consummate the Sale Transaction, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Colombia.

**[SMB: 2/14/19]**

L.      **Notice**.  As evidenced by the certificates of service filed with this Court: (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the Bidding Procedures (including the bidding process and the deadline for submitting bids at the Auction), the Sale Hearing, the Sale Transaction, and the Proposed Sale Order was provided by the Debtors; (ii) such notice was good, sufficient, and appropriate under the particular circumstances and complied with the Bidding Procedures Order; and (iii) no other or further notice of the Sale Motion, the Sale Transaction, the Bidding Procedures, the Sale Hearing, or the Proposed Sale Order is required.  With respect to Persons whose identities are not reasonably ascertained by the Debtors, publication of the notice in the national editions of *The New York Times*, *The Financial Times*, and *Aviation Week* on

December 28, 2018, January 3, 2019, and January 14, 2019, respectively, was sufficient and reasonably calculated under the circumstances to reach such Persons.

M.    **Cure Notice**.  As evidenced by the certificates of service filed with this Court, and in accordance with the provisions of the Bidding Procedures Order, the Debtors have served, prior to the Sale Hearing, the Cure Notice and Supplemental Cure Notice, which provided notice of the Debtors' intent to assume and assign the Transferred Contracts and of the related proposed Cure Costs upon each non-Debtor counterparty to the Transferred Contracts.  The service of the Cure Notice and Supplemental Cure Notice was timely, good, sufficient, and appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the assumption and assignment of the Transferred Contracts.  All non-Debtor counterparties to the Transferred Contracts have had a reasonable opportunity to object both to the Cure Costs listed on the applicable Cure Notice and Supplemental Cure Notice and to the assumption and assignment of the Transferred Contracts to Macquarie.  No defaults exist in the Debtors' performance under the Transferred Contracts as of the date of this Order other than the failure to pay the Cure Costs, as may be required, or such defaults that are not required to be cured.

N.    **Satisfaction of Section 363(f) Standards**.  The Debtors are authorized to sell the Acquired Assets to Macquarie free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), **interests and encumbrances against the Debtors' interests in the Acquired Assets to the maximum extent available under applicable law** ~~property interests, rights, liabilities, encumbrances, pledges, and other interests of any kind or nature whatsoever against the Debtors or the Acquired Assets, including, without limitation, any debts, claims, rights, causes of action, and/or suits arising under or out of, in connection with, or in any way relating to, any acts, omissions, obligations, demands, guaranties,~~

~~rights, contractual commitments, restrictions, product liability claims, environmental liabilities,~~ ~~employee retirement or benefit plan claims, workers' compensation claims, severance claims,~~ ~~retiree healthcare or life insurance claims, and/or claims for taxes of or against the Debtors and/or~~ ~~the Acquired Assets to the maximum extent available under applicable law, and any derivative,~~ ~~vicarious, transferee, or successor liability claims, rights, or causes of action (whether in law or in~~ ~~equity, under any law, statute, rule, or regulation of the United States, any state, territory, or~~ ~~possession thereof or the District of Columbia), whether arising prior or subsequent to the~~ ~~commencement of these chapter 11 cases, whether known or unknown, whether fixed or~~ ~~contingent, whether anticipated or unanticipated, whether yet accrued or not, and whether imposed~~ ~~by agreement, understanding, law, equity or otherwise~~ arising under or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the Acquired Assets, the operation of the Debtors' business before the Closing, or the transfer of the Debtors' interests in the Acquired Assets to Macquarie, all Excluded Assets and all Excluded Liabilities (collectively, all such liens, claims, interests ~~and other matters~~ **and encumbrances** described above in this paragraph N, but excluding any Assumed Liabilities and Permitted Liens, the "**Claims**"), because~~,~~ **each of the WAC Secured Parties (as defined in the DIP Order) that holds a security interest in the Acquired Assets[3] and any other holders of Claims that have not objected to the Sale Transaction or submitted a Successful Credit Bid are deemed to have consented to the sale of the Acquired Assets to Macquarie pursuant to the Purchase Agreement and the terms of this Order, free and clear of any Claims of such WAC Secured Parties or other holders of Claims against the Acquired Assets.** ~~in each case, one or more of the standards set forth in~~

---

[3]    The WAC Lenders with a security interest in the Acquired Assets include (i) the WAC1 Lenders, (ii) the WAC3 Lenders, (iii) the WAC6 Lenders, (iv) the WAC7 Lenders, and (v) the WAC8 Lenders, each as defined in the DIP Order.  [SMB: 2/14/19]

~~section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Except with respect to Assumed~~

~~Liabilities, Permitted Liens and Transferred Contracts, Macquarie shall not have any successor or~~

~~transferee liability, including, but not limited to (i) those that purport to give to any party a right~~

~~or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors'~~

~~or Macquarie's interest in the Acquired Assets, or any similar rights and (ii) (a) those arising under~~

~~all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements,~~

~~pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or~~

~~nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of~~

~~income, or other exercise of any attributes of ownership and (b) all claims arising in any way in~~

~~connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors'~~

~~predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising~~

~~prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by~~

~~agreement, understanding, law, equity or otherwise, including, but not limited to, claims otherwise~~

~~arising under doctrines of successor or transferee liability.  Those holders of Claims who did not~~

~~object (or who ultimately withdrew their objections, if any) to the Sale Transaction or the Sale~~

~~Motion have either consented to (on the terms provided for in the Plan & Sale Support Agreement~~

~~with respect to the WAC7 Credit Facility and WAC8 Credit Facility) or are deemed to have~~

~~consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.~~  In

addition, ~~one or more of the other subsections of section 363(f) of the Bankruptcy Code apply and,~~

~~therefore,~~ holders of Claims with an interest in the Acquired Assets are adequately protected by

having their Claims that constitute interests in the Acquired Assets attach solely to the proceeds of

the Sale Transaction in the same order of priority and with the same extent, validity, force, and

effect that such holders had prior to the Sale Transaction and by providing for the distributions

provided for herein.  All Persons having Claims of any kind or nature whatsoever against the Debtors or the Acquired Assets shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such Claims against Macquarie or any of its assets, property, Affiliates, successors, assigns, or the Acquired Assets.  **[SMB: 2/14/19]**

O.       Each lender (the "**DIP Lenders**" and together with the administrative agent and collateral agent acting on behalf of the DIP Lenders, the "**DIP Secured Parties**") under the Debtors' $49 million debtor-in-possession superpriority financing facility (the "**DIP Facility**") that has not objected to the Sale Transaction is deemed to have consented to the sale of the Acquired Assets to Macquarie pursuant to the Purchase Agreement free and clear of any Claims of such DIP Lenders against the Acquired Assets, subject to the terms and conditions of paragraph 10 of this Order, the DIP Credit Agreement, and the DIP Order.[4]

P.       ~~Each of the WAC Secured Parties (as defined in the DIP Order) that holds a security interest in the Acquired Assets[5] that has not objected to the Sale Transaction or submitted a Successful Credit Bid is deemed to have consented to the sale of the Acquired Assets to Macquarie pursuant to the Purchase Agreement and the terms of this Order, free and clear of any Claims of such WAC Secured Parties against the Acquired Assets.~~  **[SMB: 2/14/19]**

---

[4] *See* the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014, and L. Bankr. 2002-1, 4001-2, and 9013-1, 9014-1, and 9014-2 (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection; and (III) Granting Related Relief* [ECF No. 231] (the "**DIP Order**").

[5] ~~The WAC Lenders with a security interest in the Acquired Assets include (i) the WAC1 Lenders, (ii) the WAC3 Lenders, (iii) the WAC6 Lenders, (iv) the WAC7 Lenders, and (v) the WAC8 Lenders, each as defined in the DIP Order.~~ **[SMB: 2/14/19]**

Q.       Macquarie would not have entered into the Transaction Documents and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors and their estates and their creditors, (i) if the sale of the Acquired Assets was not free and clear of all Claims and other interests, including, without limitation, any rights or Claims based on any successor or transferee liability (other than, in each case, the Assumed Liabilities), or (ii) if Macquarie would, or in the future could, be liable for any such Claims, including, without limitation, any rights or Claims based on any successor or transferee liability (other than, in each case, the Assumed Liabilities).  Macquarie will not consummate the Sale Transaction unless this Court expressly orders that none of Macquarie, its affiliates, their present or contemplated members or shareholders, or the Acquired Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims and other interests, including rights or claims based on any successor or transferee liability, other than as expressly provided herein or in the Purchase Agreement **or this Order**.  A sale of the Acquired Assets, other than one free and clear of all Claims, would yield substantially less value for the Debtors' estates.  **[SMB: 2/14/19]**

R.       The total consideration to be provided under the Purchase Agreement reflects Macquarie's reliance on this Order to provide it with title to and possession of the Acquired Assets free and clear of all Claims pursuant to sections 105(a) and 363(f) of the Bankruptcy Code.

S.       **<u>Credit Bid</u>**.  The Acquired Assets shall not include WAC Collateral for any equity interests or assets sold or proposed to be sold in connection with an Exempt Transaction, or any assets of the entities sold pursuant to such Exempt Transaction or such entities' direct and indirect subsidiaries.  Such WAC Collateral shall be sold to the applicable Successful Credit Bidder pursuant to a separate Order of this Court.  In conjunction with all Successful Credit Bids, and in

accordance with Section 8.01(b)(ii) of the Purchase Agreement, the allocable portion of the Expense Reimbursement (calculated in accordance with such Section 8.01(b)(ii) of the Purchase Agreement) shall be payable to Macquarie on the Closing Date, as set-off against the Purchase Price. Further, in accordance with the Bidding Procedures, the Exit Payment (as defined therein) payable by each Successful Credit Bidder at the closing of its Credit Bid transaction will include such Successful Credit Bidder's allocable share of the Expense Reimbursement (calculated in accordance with such Section 8.01(b)(ii) of the Purchase Agreement).

T.    **Assumption and Assignment of Transferred Contracts**.  The assumption and assignment of the Transferred Contracts are integral to the Sale Transaction, are in the best interests of the Debtors and their estates, and represent the valid and reasonable exercise of the Debtors' sound business judgment.  Specifically, the assumption and assignment of the Transferred Contracts (i) is necessary to sell the Acquired Assets to Macquarie, (ii) is an integral part of the Acquired Assets being purchased by Macquarie, (iii) allow the Debtors to sell their business to Macquarie as a going concern, (iv) limit the losses suffered by non-Debtor counterparties to the Transferred Contracts, and (v) maximize the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Transferred Contracts; and, in light of the foregoing, such assumption and assignment of the Transferred Contracts are reasonable, enhance the value of the relevant Debtors' estates.

U.    With respect to each of the Transferred Contracts, the Debtors have met all requirements of section 365(b) of the Bankruptcy Code.  Further, the Debtors or Macquarie (as provided for herein) have cured or will cure on or before the Closing any monetary default required to be cured with respect to the Transferred Contracts under section 365(b)(1) of the Bankruptcy Code and Macquarie has provided adequate assurance of future performance under the Transferred

Contracts in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code to the extent that

any such assurance is required. ~~Accordingly, the Transferred Contracts may be assumed by the~~

~~Debtors and assigned to Macquarie as provided for in the Purchase Agreement and herein. The~~

~~assumption and assignment of each Transferred Contract is approved notwithstanding any~~

~~provision in such Transferred Contract or other restrictions prohibiting its assignment or transfer.~~

The applicable Cure Notice or Supplemental Cure Notice provided by the Debtors is sufficient to

advise the non-Debtor counterparties to the Transferred Contracts that, pursuant to the Purchase

Agreement, Macquarie's decision on which executory contracts and unexpired leases will be

assumed and assigned may not be made until five (5) days prior to Closing. **[SMB: 2/14/19]**

V.      The authority hereunder for the Debtors to assume and assign any Transferred

Contract to Macquarie includes the authority to assume and assign a Transferred Contract, as

amended.

W.      The assignments by the applicable Debtors of each of the Transferred Contracts are

made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

X.      **Validity of Transfer**. ~~As of the Closing, the transfer of the Acquired Assets to~~

~~Macquarie will be a legal, valid, and effective transfer of the Acquired Assets, and will vest~~

~~Macquarie with all any legal, equitable and beneficial right, title, and interest of the applicable~~

~~Debtors in and to the Acquired Assets, free and clear of all Claims. The consummation of the Sale~~

~~Transaction is legal, valid, and properly authorized under all applicable provisions of the~~

~~Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b),~~

~~and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have~~

~~been complied with in respect of the Sale Transaction.~~ **[SMB: 2/14/19]**

Y.

Z.    ~~The Transaction Documents are valid and binding contracts between the Debtors and Macquarie and shall be enforceable pursuant to their terms. None of the Transaction Documents was entered into and none of the Debtors or Macquarie have entered into the Purchase Agreement or proposed to consummate the Sale Transaction for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, possession, or the District of Columbia. The Transaction Documents, the Sale Transaction itself, and the consummation thereof, shall be specifically enforceable against and binding upon (without posting any bond) the applicable Debtors, and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person. None of the Debtors nor Macquarie entered into the Purchase Agreement or proposed to consummate the Sale Transaction fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to any of the foregoing.~~ **[SMB: 2/14/19]**

AA.    **No Sub Rosa Plan**. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the sale of the Acquired Assets pursuant to the Sale Transaction prior to, and outside of, a plan of reorganization and for the immediate approval of the Purchase Agreement and the Sale Transaction because, among other things, the relevant Debtors' estates will suffer harm if the relief requested in the Sale Motion is not granted. In light of the exigent circumstances of these chapter 11 cases and the risk of deterioration in the going concern value of the Acquired Assets pending the Sale Transaction, consummating the Sale Transaction will preserve the viability of the relevant Debtors' businesses

as going concerns, and minimize the widespread and adverse economic consequences for the relevant Debtors, their estates, their creditors, and employees that would be threatened by protracted proceedings in these chapter 11 cases. Entry into the Purchase Agreement and the transactions contemplated thereby neither impermissibly restructure the rights of the relevant Debtors' creditors, nor impermissibly dictate the terms of a chapter 11 plan of reorganization for the relevant Debtors. Entry into and performance under the Purchase Agreement and this Order does not constitute a sub rosa chapter 11 plan.

BB.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**. The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets. Therefore, the Debtors and Macquarie intend to close the Sale Transaction as soon as reasonably practicable. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction as contemplated by the Purchase Agreement. ~~Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to the transactions contemplated by this Order.~~ **[SMB: 2/14/19]**

CC.    **Legal and Factual Bases**. The legal and factual bases set forth in the Sale Motion, the Sale Declarations, and at the Sale Hearing establish just cause for the relief granted herein.

DD.    **Plan and Asset Sale Support Agreement**. In furtherance of the Sale Transaction, and to resolve certain issues and potential objections to the sale of their collateral to Macquarie, the relevant Debtors~~, in their reasonable business judgement,~~ have entered into that certain Plan and Sale Support Agreement, dated January 14, 2019 (the "**Plan & Sale Support Agreement**"), with Macquarie and certain of the WAC 7 Lenders and WAC 8 Lenders (the "**Supporting WAC Lenders**" and the WAC 7 Facility and WAC 8 Facility (the "**Supporting WAC Facilities**"), a

18

copy of which is attached as Exhibit C to the *Notice of Filing Proposed Macquarie Sale Order*, dated February 3, 2019 [ECF No. 326]. ~~The Plan & Sale Support Agreement and the provisions set forth therein, are a reasonable resolution of the issues among the relevant Debtors, Macquarie, and the Supporting WAC Lenders including with respect to the PSAs (as defined in the Bidding Procedures Order) submitted by such lenders, the allocation of the Base Purchase Price to the Sellable Aircraft WAC 7 Group and the Sellable Aircraft WAC Group 8 (prior to any applicable adjustments contemplated pursuant to the Purchase Agreement), the Supporting WAC Lenders' right to submit credit bids for their collateral, and the parties' support for the Sale Transaction. The Plan & Sale Support Agreement was negotiated in good faith and modifies the Bidding Procedures and the Purchase Agreement consistent with paragraph 5 of the Bidding Procedures Order and pursuant to the terms of the Purchase Agreement.~~ **[SMB: 2/14/19]**

**NOW THEREFORE, IT IS ORDERED THAT**:

1. **Motion is Granted**. To the extent not already approved pursuant to the Bidding Procedures Order, the Sale Motion and the relief requested therein is granted and approved as set forth herein.

2. **Objections Overruled**. All objections, if any, and any and all joinders thereto, to the Sale Motion or the relief requested therein that have not been previously overruled, withdrawn with prejudice, waived, or settled as announced to this Court at the Sale Hearing, by stipulation filed with this Court, or as provided in this Order, and all reservations of rights included therein, are hereby overruled on the merits and with prejudice.

3. **Notice**. Notice of the Sale Hearing was fair and equitable under the circumstances and complied ~~in all respects~~ with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006. **[SMB: 2/14/19]**

4.      **Fair Purchase Price**.  ~~The consideration provided by Macquarie under the Purchase Agreement is fair and reasonable, is the highest and best offer for the Acquired Assets, and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.~~ **[SMB: 2/14/19]**

5.      **Approval of the Purchase Agreement**.  The Transaction Documents, the transactions contemplated thereby, including the Sale Transaction, and all of the terms and conditions thereof, are hereby approved ~~in their entirety.  The failure specifically to include any particular provision of the Transaction Documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Transaction Documents, and the relevant Debtors' entry therein, be authorized and approved in their entirety~~.  **[SMB: 2/14/19]**

6.      **Consummation of Sale Transaction**.  Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors ~~are authorized and empowered to transfer the Acquired Assets in accordance with the terms of the Purchase Agreement and the terms of this Order.  The relevant Debtors,~~ as well as their directors, officers, employees, and agents, are authorized to execute, deliver, and perform their obligations under and comply with the terms of the Transaction Documents and to consummate the Sale Transaction~~, including by taking any and all actions as may be reasonably necessary or desirable to implement the Sale Transaction and each of the transactions contemplated thereby pursuant to and in accordance with the terms and conditions of the Transaction Documents and this Order.  For the avoidance of doubt, all persons~~

and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to Macquarie in accordance with the Purchase Agreement and this Order.  **[SMB: 2/14/19]**

7.    The relevant Debtors, their Affiliates, and their respective directors, officers, employees, and agents, are authorized to execute and deliver, and authorized to perform under, consummate, and implement all additional notices, assumptions, conveyances, releases, acquittances, instruments and documents that may be reasonably necessary or desirable to implement the Transaction Documents, including the transfer and, as applicable, the assignment of all the Acquired Assets, the assumption of the Assumed Liabilities, and the assumption and assignment of all the Transferred Contracts, and to take all further actions as may be (i) reasonably requested by Macquarie for the purpose of assigning, transferring, granting, conveying, and conferring to Macquarie, or reducing to Macquarie's possession, the Acquired Assets and/or (ii) necessary or appropriate to the performance of the obligations contemplated by the Transaction Documents, including entering into a Transition Services Agreement, pursuant to which Macquarie would provide to the Debtors certain ordinary course services and services necessary for the Debtors' ongoing administration of these Chapter 11 Cases, all without further order of this Court.  **[SMB: 2/14/19]**

8.    All Persons that are currently in possession of some or all of the Acquired Assets are hereby directed to surrender possession of such Acquired Assets to Macquarie upon the Closing Date, *provided*, that with respect to each Aircraft that is an Acquired Asset and is subject to an Aircraft Lease, such Aircraft will remain in the possession of the relevant Aircraft Lessee and no Debtor shall be required to effect physical delivery of such Aircraft to Macquarie, and

21

possession of each AOG Aircraft that is an Acquired Asset shall be delivered by such Persons to Macquarie at the location of such AOG Aircraft.

9.      Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Transaction Documents **subject to the payment of any filing or other fee imposed under non-bankruptcy law**. **[SMB: 2/14/19]**

10.      **Transfer of Assets Free and Clear**.  Upon the Closing, the transfer of the Acquired Assets to Macquarie shall: (i) be valid, legal, binding, and effective; (ii) vest Macquarie with all right, title, and interest of the Debtors in and to the Acquired Assets; and (iii) be free and clear of all Claims in accordance with section 363(f) of the Bankruptcy Code and, subject to paragraphs 32-37 of this Order, with any and all Claims in favor of the WAC Secured Parties that represent interests in the Acquired Assets to attach to the net proceeds of the Sale Transaction held by the Debtors, in the same amount and order of their priority, with the same extent, validity, force and effect which they have against the Acquired Assets, and subject to any claims and defenses the Debtors may possess with respect thereto, in each case immediately before the Closing.  In addition, upon the Closing, a portion of the net proceeds of the Sale Transaction shall be used to repay (the "**DIP Paydown**") a portion of the principal obligations outstanding under the DIP Facility on the Closing Date equal to the aggregate Maximum Intercompany Balance of the Affected Participating Lenders (together with any accrued and unpaid interest thereon, the "**DIP Paydown Amount**"), which shall be invoiced to the Debtors at least two (2) business days' prior to the Closing (or such later date as the Debtors may reasonably agree), and such DIP Paydown Amount shall be applied to the outstanding DIP Loans on a pro rata basis based on each DIP

Lender's share of the Term Loan Commitments.  Upon payment of the DIP Paydown Amount, the

Claims in respect of the DIP Loans (and any DIP Liens in respect thereof) shall be deemed satisfied

to the extent they are prepaid by the DIP Paydown Amount, *provided, that*, to the extent that any

transaction contemplated by a Streamlined Credit Bid does not close prior to the Closing Date, (i)

the Debtors reserve the right to seek court approval for the use of the Sale Transaction proceeds to

repay amounts in excess of the DIP Paydown Amount under the DIP Credit Agreement, and (ii)

all WAC Lenders with a security interest in the Acquired Assets reserve their rights to object to

such use.[6]  Upon payment in full (the "**DIP Payoff**") of the aggregate amount of the obligations

outstanding under the DIP Facility (the "**DIP Payoff Amount**"), automatically upon receipt by the

applicable DIP Secured Parties of the DIP Payoff Amount, (i) the balance of the Claims in respect

of the DIP Facility (the "**DIP Claims**"), including accrued but unpaid interest and any other

amounts due under the DIP Facility shall be deemed satisfied, (ii) the commitments under the DIP

Facility shall be terminated, (iii) each of the credit documents under the DIP Facility shall be

terminated and of no further force and effect, and (iv) all Claims granted to secure the DIP Facility

shall be deemed released and of no further force and effect.

11.      Except as otherwise provided in the Purchase Agreement or herein, all Persons (and

their respective successors and assigns) including, without limitation, the Debtors, the Debtors'

estates, all debt security holders, equity security holders, governmental tax and regulatory

authorities, lenders, customers, vendors, employees, former employees, litigation claimants,

trustees, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do

hold Claims (whether legal or equitable, secured or unsecured, matured or unmatured, contingent

---

[6] "**Affected Participating Lender**" shall mean the Participating WAC Lenders (as defined in the DIP Order) with an interest in the Acquired Assets.

or noncontingent, senior or subordinated) against the Debtors, the Acquired Assets, and/or the

Debtors' business, arising under or out of, in connection with, or in any way relating to, the

Debtors, the Acquired Assets, the operation of the Acquired Assets prior to the Closing, or the

Sale Transaction, are hereby forever barred, estopped, and permanently enjoined from asserting or

pursuing such Claims against Macquarie, its Affiliates, successors, assigns, its property or the

Acquired Assets, including, without limitation, taking any of the following actions with respect to

any Claims: (i) commencing or continuing in any manner any action, whether at law or in equity,

in any judicial, administrative, arbitral, or any other proceeding, against Macquarie, its Affiliates,

successors, assigns, assets (including the Acquired Assets), and/or properties; (ii) enforcing,

attaching, collecting, or recovering in any manner any judgment, award, decree, or order against

Macquarie, its Affiliates, successors, assigns, assets (including the Acquired Assets), and/or

properties; (iii) creating, perfecting, or enforcing any Claim against Macquarie, its affiliates, any

of their respective successors, assigns, assets (including the Acquired Assets), and/or properties;

(iv) asserting a Claim as a setoff, right of subrogation, or recoupment of any kind against any

obligation due against Macquarie, its affiliates, any of their respective successors or assigns; or

(v) commencing or continuing any action in any manner or place that does not comply, or is

inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken

in respect thereof.  No such Person shall assert or pursue against Macquarie or its Affiliates,

successors or assigns any such Claim.  [SMB: 2/14/19]

12.     This Order (i) shall be effective as a determination that (a) all Claims have been

unconditionally released, discharged and terminated as to Macquarie and the Acquired Assets and

(b) automatically upon receipt by the applicable DIP Secured Parties of the DIP Payoff Amount,

all DIP Claims have been unconditionally released, discharged and terminated, and that the

conveyances and transfers described herein have been effected, and (ii) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that Macquarie is the assignee and owner of the Acquired Assets free and clear of all Claims or who may be required to report or insure any title or state of title in or to any lease or the release of all of the DIP Claims (all such entities being referred to as "**Recording Officers**").   All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, liens, and other interests against the Acquired Assets (including (i) to the extent the DIP Paydown has occurred, any DIP Claims on the Acquired Assets and (ii) to the extent the DIP Payoff has occurred, any DIP Collateral which is not considered an Acquired Asset) recorded prior to the date of this Order.  A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens, pledges, and other interests against the Acquired Assets (including (i) to the extent the DIP Paydown has occurred, any DIP Claims on the Acquired Assets and (ii) to the extent the DIP Payoff has occurred, any DIP Collateral which is not considered an Acquired Asset) recorded prior to the date of this Order. All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary, advisable or appropriate, and appropriate to consummate the transactions contemplated by the Purchase Agreement and the termination of the DIP Facility **subject to the payment of any filing or other fee imposed under non-bankruptcy law.  [SMB: 2/14/19]**

13. ~~Following the Closing, no holder of any Claim shall interfere with Macquarie's title to or use or enjoyment of the Acquired Assets based on or related to any Claim or based on any actions or omissions by the Debtors, including any actions or omissions the Debtors may take in these chapter 11 cases.~~ **[SMB: 2/14/19]**

14. ~~Except as expressly set forth in the Purchase Agreement and the Transaction Documents, and except with respect to the Transferred Contracts, Macquarie and each of its Affiliates, successors, assigns, members, partners, officers, directors, principals, and shareholders shall have no liability whatsoever for any Claims, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether liquidated or unliquidated, whether asserted derivatively or vicariously, whether asserted based on Macquarie's status as a transferee, successor, or otherwise, of any kind, nature, or character whatsoever, including Claims based on, relating to, and/or arising under, without limitation: (i) any employment agreement; (ii) any welfare, compensation or other Employee Plan, agreements, practices, and programs, including, without limitation, any Employee Plan of or related to any of the Debtors or any Debtor's Affiliates or predecessors or any current or former employees of any of the foregoing; (iii) the Debtors' business operations or the cessation thereof; (iv) any litigation involving one or more of the Debtors; (v) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, any claims, rights, or causes of action that might arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the Worker Adjustment and Retraining Notification Act of 1988, (f) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act~~

of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, (i) state and local discrimination laws, (j) state and local unemployment compensation laws or any other similar state and local laws, (k) state workers' compensation laws, and/or (l) any other state, local, or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment, or termination of employment with any or all Debtors or any of their predecessors; (vi) any antitrust laws; (vii) any product liability or similar laws, whether state, federal, or otherwise; (viii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (ix) any bulk sales or similar laws; (x) any federal, state, or local tax statutes, rules, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xi) any common law doctrine of *de facto* merger, successor, transferee, or vicarious liability, substantial continuity liability, successor-in-interest liability theory, and/or any other theory of or related to successor liability. **[SMB: 2/14/19]**

15.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets sold, transferred, or conveyed to Macquarie on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction contemplated by the Purchase Agreement and the Transaction Documents.

16.     Notwithstanding any provision of the Transaction Documents or any provision of this Order to the contrary, nothing in this Order or any Transaction Document releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations (including, but not limited to, environmental laws or regulations), and any associated liabilities for penalties, damages, cost recovery, or injunctive relief that any

entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order. Nothing contained in this Order or any Transaction Document shall in any way diminish the obligation of any entity, including the Debtors, to comply with environmental laws.

17.     The DIP Secured Parties and the WAC Secured Parties and each of the Debtors' other creditors and any other holder of a lien, claim, encumbrance or other interest are deemed to have released any Claims held by such Person on the Acquired Assets (including (i) to the extent the DIP Paydown has occurred, any DIP Claims on the Acquired Assets and (ii) to the extent the DIP Payoff has occurred, any DIP Collateral which is not considered an Acquired Asset) and are authorized and directed to take any such actions as may be reasonably requested by the Debtors to evidence the release of such Claims, including the execution, delivery and filing or recording of such releases as may be reasonably requested by the Debtors or Macquarie or as may be required in order to terminate any related financing statements, mortgages, mechanic's liens, or *lis pendens*. If any DIP Secured Party, WAC Secured Party or any other Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Claims against the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, as applicable, termination statements, instruments of satisfaction, or releases of all interests or Claims which the Person has with respect to the relevant Debtors or the Acquired Assets (including (i) to the extent the DIP Paydown has occurred, any DIP Claims on the Acquired Assets and (ii) to the extent the DIP Payoff has occurred, any DIP Collateral which is not considered an Acquired Asset), then (i) the Debtors are hereby authorized and directed to execute and file such statements, instruments, or releases on behalf of the Person with respect to the Acquired Assets (including (i) to the extent

the DIP Paydown has occurred, any DIP Claims on the Acquired Assets and (ii) to the extent the

DIP Payoff has occurred, any DIP Collateral which is not considered an Acquired Asset) and

(ii) Macquarie is hereby authorized to file, register, or otherwise record a certified copy of this

Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of

the release of all Claims against the Acquired Assets (including (i) to the extent the DIP Paydown

has occurred, any DIP Claims on the Acquired Assets and (ii) to the extent the DIP Payoff has

occurred, any DIP Collateral which is not considered an Acquired Asset).  This Order is deemed

to be in recordable form sufficient to be placed in the filing or recording system of each and every

federal, state, or local government agency, department, or office.

18.    On the Closing Date, this Order shall be considered and constitute for any and all

purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets,

transferring good and marketable, indefeasible title and interest in all of the Acquired Assets to

Macquarie with effect at Closing of the Sale Transaction in accordance with the Transaction

Documents.

19.    To the maximum extent available under applicable law and to the extent provided

for under the Purchase Agreement, Macquarie shall be authorized, as of the Closing, to operate

under any license, permit, registration, and governmental authorization or approval of the Debtors

with respect to the Acquired Assets and, to the maximum extent available under applicable law

and to the extent provided for under the Transaction Documents, all such licenses, permits,

registrations, and governmental authorizations and approvals are deemed to have been transferred

to Macquarie as of the Closing.  All existing licenses or permits applicable to the business shall

remain in place for Macquarie's benefit until either new licenses and permits are obtained or

existing licenses and permits are transferred in accordance with applicable administrative procedures.

20.    **No Successor or Other Derivative Liability**. ~~By virtue of the Sale Transaction, neither Macquarie nor any of its Affiliates shall be deemed to: (i) be a legal successor, or otherwise deemed to be a successor, to any of the Debtors under any theory of law or equity; (ii) have, *de facto* or otherwise, merged with or into any or all Debtors or their estates; (iii) have a common identity or a continuity of enterprise with the Debtors; or (iv) be a mere continuation or substantial continuation, or be holding itself out as a mere continuation, of the Debtors or any business, enterprise, or operation of the Debtors.~~ Upon the Closing, to the maximum extent available under applicable law, Macquarie's acquisition of the Acquired Assets shall be free and clear of any "successor liability" claims and other types of transferee liability of any nature whatsoever, whether known or unknown and whether asserted or unasserted at the time of the Closing (other than, to the extent applicable, any Assumed Liabilities), and the Acquired Assets shall not be subject to any Claims arising under or in connection with any Excluded Asset, including any Excluded Contract or Excluded Liability. ~~The operations of Macquarie and its Affiliates shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Acquired Assets.~~ **[SMB: 2/14/19]**

21.    **Assumption and Assignment of Transferred Contracts**. The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Transferred Contracts to Macquarie free and clear of all Claims, and to execute and deliver to Macquarie such documents or other instruments as may be necessary to assign and transfer the Transferred Contracts to Macquarie as provided in the Purchase Agreement. Upon the Closing, Macquarie shall be fully and irrevocably vested with all right, title, and interest of the

relevant Debtors in, to, and under the Transferred Contracts and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Transferred Contracts.  Macquarie acknowledges and agrees that, from and after the Closing, it shall comply with the terms of each Transferred Contract ~~in its entirety~~, including, without limitation, any indemnification obligations expressly contained in such Transferred Contract that could arise as a result of events or omissions that occur from and after the Closing and any security deposit and/or maintenance reserve obligations pursuant to such Transferred Contracts.  For the avoidance of doubt, to the extent Waypoint Asset Company Number 2 (Ireland) Limited (and its subsidiaries) (the "**WAC2 Debtors**"), Waypoint Asset Co 9 Limited (and its subsidiaries) (the "**WAC9 Debtors**"), or Waypoint Asset Co 12 Limited (and its subsidiaries) (the "**WAC12 Debtors**") are parties to any Transferred Contract, only the contractual rights of the non-WAC2 Debtors, the non-WAC9 Debtors, or the non-WAC12 Debtors, as applicable, will be assumed and assigned to Macquarie.  **[SMB: 2/14/19]**

22.    All Cure Costs that have not been waived shall be determined in accordance with the Bidding Procedures Order or other applicable order of this Court and paid by the Debtors or Macquarie (as provided for herein) in accordance with the terms of the Purchase Agreement.[7] Payment of the Cure Costs shall be in full satisfaction and cure of any and all defaults under the Transferred Contracts and is deemed to fully satisfy the Debtors' obligations under sections 365(b)

---

[7] Notwithstanding anything to the contrary set forth in the Purchase Agreement, Macquarie acknowledges and agrees that (i) if there are any Cure Costs associated with the Debtors' assumption and assignment of any Transferred Contract between one or more of the Debtors and Leonardo S.P.A. (or any of its affiliates), Macquarie shall be responsible for satisfying any and all such Cure Costs and (ii) if there are Cure Costs associated with the Debtors' assumption and assignment of any Transferred Contract between one or more of the Debtors and Airbus Helicopters, S.A.S. (or any of its affiliates) in excess of $750,000, Macquarie shall be responsible for satisfying all such Cure Amounts that are in excess of $750,000.

and 365(f) of the Bankruptcy Code.  Upon the assumption by a Debtor and the assignment to Macquarie of any Transferred Contract, and the payment of any applicable Cure Costs, each non-Debtor counterparty to the Transferred Contracts is forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Macquarie, their Affiliates, successors, or assigns, or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing, and (ii) exercising any rights or remedies against any Debtor or non-Debtor party to such Transferred Contract based on an asserted default that occurred on, prior to, or as a result of, the Closing, including the type of default specified in section 365(b)(1)(A) of the Bankruptcy Code.  Macquarie has provided adequate assurance of future performance under the Transferred Contracts within the meaning of sections 365(b)(1)(c) and 365(f)(2)(B) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to Macquarie, of each of the Transferred Contracts.

23.     To the extent a non-Debtor counterparty to the Transferred Contracts fails to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined and any such non-Debtor counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time.  Consistent with the Bidding Procedures Order, the non-Debtor counterparty to a Transferred Contract is forever bound by the applicable Cure Cost and, upon payment of such Cure Cost as provided herein and in the Purchase Agreement, is hereby enjoined from taking any action against Macquarie with respect to any claim for cure under the Transferred Contract.  To the extent no timely Cure Objection or Adequate Assurance Objection has been filed and served with respect to a Transferred Contract, the non-Debtor

counterparty to such Transferred Contract is deemed to have consented to the assumption and assignment of the Transferred Contract to Macquarie.

24.      The assignments of each of the Transferred Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

25.      **Ipso Facto Clauses**. ~~Except as otherwise specifically provided for by order of this Court, the Transferred Contracts shall be transferred to, and remain in full force and effect for the benefit of, Macquarie in accordance with their respective terms, including all rights of Macquarie as the assignee of the Transferred Contracts, notwithstanding any provision in any Transferred Contract (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, including any provision that prohibits or conditions the assignment or sublease of a Transferred Contract (including without limitation, the granting of a lien therein) or allows the non-Debtor counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, which shall constitute an unenforceable anti-assignment provision that is void and of no force and effect.  There shall be no, and a~~All non-Debtor counterparties to any Transferred Contract are forever barred and permanently enjoined from raising or asserting against the Debtors or Macquarie any default, breach, termination, claim, penalty, pecuniary loss, rent or other acceleration of amount due thereunder, escalation, assignment fee, increase, or any other fee charged to Macquarie or the Debtors as a result of (i) any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Transferred Contracts; or (ii) the assumption or assignment of the Transferred Contracts **to the extent prohibited by the Bankruptcy Code**.  **[SMB: 2/14/19]**

26. ~~Any portion of any of the Debtors' unexpired leases of nonresidential real property that are Transferred Contracts that purport to permit the respective landlords thereunder to cancel the remaining term of any such leases if any Debtors discontinue their use or operation of the such lease real property are void and of no force and effect and shall not be enforceable against Macquarie, its assignees and sublessees, and the landlords under such leases shall not have the right to cancel or otherwise modify such leases or increase the rent, assert any Claim, or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of such leases to Macquarie, or the interruption of business activities at any of the leased premises.~~ **[SMB: 2/14/19]**

27. ~~The failure of the Debtors or Macquarie to enforce at any time one or more terms or conditions of any of the Transferred Contracts shall not be a waiver of such terms or conditions, or of the Debtors' and Macquarie's rights to enforce every term and condition of the Transferred Contracts.~~ **[SMB: 2/14/19]**

28. **Transition Services Agreement and Related Matters.** Consistent with the terms of the Purchase Agreement, the Debtors are authorized to (i) enter into and perform the obligations under the Transaction Services Agreement, and (ii) maintain and preserve, until the closing of these chapter 11 cases, the cash management system maintained by the Debtors prior to the Closing, as such system may be necessary to effect the orderly administration of the Debtors' estates. Notwithstanding the foregoing, upon the closing of an Exempt Transaction constituting a Streamlined Credit Bid, the cash management system shall not apply to or affect any accounts of any entity subject to an Exempt Transaction, or such entity's direct or indirect subsidiaries.

29. **Statutory Mootness.** ~~The transactions contemplated by the Purchase Agreement and the other Transaction Documents are undertaken by Macquarie without collusion and in good~~

~~faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the~~ ~~parties at arm's length and, accordingly, the reversal or modification on appeal of the authorization~~ ~~provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor~~ ~~the transfer of the Acquired Assets to Macquarie free and clear of Claims, unless such authorization~~ ~~is duly stayed before the Closing Date pending such appeal.  Macquarie is a good faith purchaser~~ ~~of the Acquired Assets and is entitled to all of the benefits and protections afforded by section~~ ~~363(m) of the Bankruptcy Code.  The Debtors and the Buyer will be acting in good faith if they~~ ~~proceed to consummate the Sale Transaction at any time after entry of this Sale Order.~~ **[SMB: 2/14/19]**

30.    ~~**No Avoidance of Purchase Agreement**.  Neither the Debtors nor Macquarie has~~ ~~engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs~~ ~~and damages to be imposed under section 363(n) of the Bankruptcy Code.  Accordingly, the~~ ~~Purchase Agreement and the Sale Transaction shall not be avoidable under section 363(n) of the~~ ~~Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to~~ ~~section 363(n) of the Bankruptcy Code in respect of the Purchase Agreement or the Sale~~ ~~Transaction.~~  **[SMB: 2/14/19]**

31.    **Termination of Exempt Transaction**.  To the extent that a Credit Bid Purchase Agreement[8] is terminated prior to the Closing Date, all parties' rights are fully reserved with

---

[8] "**Credit Bid Purchase Agreement**" shall refer to any of the following agreements: (i) that certain *Asset Purchase Agreement*, by and between Waypoint Asset Company Number 2 (Ireland) Limited and Wells Fargo Bank N.A., as WAC Facility Agent for the WAC2 Lenders; (ii) that certain *Equity and PPN Purchase Agreement*, dated as of January 25, 2019 by and between Waypoint Leasing (Ireland) Limited, Waypoint Leasing (Luxembourg) Euro S.à.r.l., Waypoint Leasing (Luxembourg) S.à.r.l. and Lombard North Central PLC, for itself and in its capacity as WAC Facility Agent for the WAC9 Lenders [ECF No. 301] (as amended); or (iii) that certain *Credit Bid Equity Purchase Agreement*, dated as of February 1, 2019, by and among Waypoint Leasing (Ireland) Limited, Waypoint Leasing (Luxembourg) Euro S.à.r.l., Waypoint Leasing (Luxembourg) S.à.r.l. and Sumitomo Mitsui Banking Corporation, Brussels Branch, and Sumitomo Mitsui Banking Corporation Europe Limited, as WAC Facility Agents for the WAC12 Lenders [ECF No. 320] (as amended).

respect to the treatment of the assets subject to such Credit Bid Purchase Agreement, including to seek a further order of the Court.

32.    **Winddown Account**.  Upon the Closing, a portion of the net sale proceeds of the Sale Transaction shall be used to fund the Affected Participating Lenders' share of a segregated winddown account (the "**Winddown Account**").  The Winddown Account shall include amounts sufficient to pay the Affected Participating Lenders' allocable portion (based on the net book value of each of their respective Participating WAC Groups and subject to the terms of the Plan & Sale Support Agreement) of (i) statutory employee severance and costs to wind down the Sellers and Non-WAC Group Members (as defined in the DIP Order); (ii) employee healthcare payments; (iii) key employee retention and incentive plans; (iv) employee transformation amounts; (v) Debtors' professionals' success fees (to the extent not already funded into the Fee Reserve Account by such Affected Participating Lenders or paid upon Closing as set forth in paragraph 37 below); (vi) administrative expenses directly incurred by or on behalf of the relevant Participating WAC Group, in each case, to the extent that as of such date such amounts have not been paid; and (vii) costs directly related to the sale of the Affected Participating Lenders' collateral including any transfer taxes, filing fees, and costs to liquidate any remaining corporate shells under applicable law.  Notwithstanding anything to the contrary herein, the Affected Participating Lenders' allocable share of the costs set forth in subsections (i)-(iv) of this paragraph 32 shall not exceed the amounts of such items allocated to such Affected Participating Lenders set forth in the winddown budget attached as Annex F to that certain *DIP Facility and Cash Collateral Term Sheet* (the "**DIP Term Sheet**"), as updated to take into account the fact that not all of the aircraft were

transferred to the WAC Lenders through equity assignments on January 18, 2019 (as was assumed in such Annex F).[9]

33.    The Debtors may use collateral held in the Winddown Account only to pay the winddown costs set forth above.  To the extent any of the foregoing winddown costs require Bankruptcy Court approval and such approval is not obtained or if such costs are otherwise not incurred by the earlier of (i) the time set forth for approval of such costs in a confirmed chapter 11 plan, (ii) dismissal of the Chapter 11 Cases, (iii) conversion of the Chapter 11 Cases to chapter 7, or (iv) with respect to any success fee, transformation amount, or key employee incentive plan, May 31, 2019, such funds, to the extent funded by the Affected Participating Lenders, shall be returned to such Affected Participating Lenders.  Moreover, the Affected Participating Lenders shall have a reversionary interest in their allocated portion of the funds held in the Winddown Account, if any, after all allocable winddown costs identified above have been paid in full.  This reversionary interest shall constitute a superpriority administrative claim in favor of the applicable Affected Participating Lenders.

34.    Funds maintained in the Winddown Account shall be pledged to support the reversionary interest but shall not (i) be subject to the Intercompany Protection Liens, the Intercompany Protection Claims, DIP Liens, the DIP Superpriority Claims, the Adequate Protection Claims, the Adequate Protection Liens (each as defined in the DIP Order), or any claim, liens or security interests granted to any other party (including the lenders and agents under the Non-Participating WAC Facilities), (ii) constitute DIP Collateral (as defined in the DIP Order), (iii) constitute WAC Specific Collateral (as defined in the DIP Order), (iv) constitute WAC

---

[9] The DIP Term Sheet is attached as Annex A to that certain *Amendment No 1 to Omnibus Consent Letter*, dated as of December 7, 2018, by and between Waypoint Leasing (Ireland) Limited and the Participating WAC Lenders.

Collateral, or (v) constitute Cash Collateral. The Debtors shall report bi-weekly to the agent for the applicable Affected Participating Lenders any payments made from the Winddown Account in accordance herewith.

35. **Fee Reserve Account**. Upon the Closing, a portion of the net sale proceeds of the Sale Transaction shall be used to fund the Affected Participating Lenders' allocable portion (based on the net book value of each of their respective Participating WAC Group) of the remaining unfunded portion of the Carve Out (as defined in the DIP Order) into the Fee Reserve Account (as defined in the DIP Order). The funds in the Fee Reserve Account shall be held in trust to pay Professional Fees (as defined in the DIP Order) and all amounts included in the Carve-Out in accordance with the DIP Order. The Affected Participating Lenders shall have a reversionary interest in their allocated portion of the funds held in the Fee Reserve Account, if any, after all amounts included in the Carve-Out, including any allowed Professional Fees, have been paid in full pursuant to a final order of the Court (regardless of when such Professional Fees are allowed by the Court).

36. Funds transferred to the Fee Reserve Account shall not (i) be subject to any Intercompany Protection Liens, Intercompany Protection Claims, DIP Liens, DIP Superpriority Claims, Adequate Protection Claims, Adequate Protection Liens or any claim, liens or security interests granted to any other party (including the Non-Participating WAC Secured Parties), (ii) constitute DIP Collateral, (iii) constitute WAC Specific Collateral, (iv) constitute WAC Collateral (as defined in the DIP Order), or (v) constitute Cash Collateral.

37. **Sale Transaction Fees and Other Expenses**. Upon the Closing, a portion of the net sale proceeds of the Sale Transaction shall be used to pay the Affected Participating Lenders' allocable share (based on the net book value of each of their respective Participating WAC Group)

of (i) any success fees of Estate Professionals (as defined in the DIP Order) related to the Sale Transaction approved by order of the Court (regardless of when such fees are allowed by the Court) and (ii) the "Completion Fee" described in the engagement letter dated June 13, 2018, of Alvarez & Marsal Securities, LLC. A portion of the net sale proceeds shall also be used to pay (i) the Seller Transaction Expenses set forth in the Purchase Agreement, including any employer portion of any payroll, social security or similar Taxes in respect thereof; and (ii) the Transaction Contract Expenses.

38.     **WAC 7 & WAC 8 Allocations**.  ~~Pursuant to the terms and conditions of the Plan and Sale Support Agreement, t~~The WAC SAPA Allocation Percentages (as defined in the Plan & Asset Support Agreement) for each of the Supporting WAC Facilities and their respective collateral are hereby approved.  The WAC SAPA Allocation Percentage for WAC 7 shall be 6.5% and the WAC SAPA Allocation Percentage for WAC 8 shall be 14.5% (the "**WAC 7 & 8 Allocations**").  The Debtors are authorized to take all actions reasonably necessary to implement the WAC 7 & 8 Allocations in connection with the Sale Transaction.

39.     **Other Affected Participating Lender Allocations**.  The percentage of the Base Purchase Price allocated to the Sellable Aircraft WAC Group (as defined in the Purchase Agreement) for each of the remaining Affected Participating Lenders, prior to any applicable adjustments contemplated pursuant to the Purchase Agreement or otherwise, as specified in the Allocation Letter delivered by Macquarie to the Debtors pursuant to Section 6.11(b) of the Purchase Agreement on January 8, 2019, is hereby approved, as follows:  27.2% for the WAC1 Lenders, 16.5% for the WAC3 Lenders, and 3.8% for the WAC6 Lenders.  The Debtors are authorized to take all actions reasonably necessary to implement the allocations set forth in this paragraph in connection with the Sale Transaction.

40.    **WAC 7 & WAC 8 Transfer Taxes**.    Notwithstanding any other terms or provisions in the Purchase Agreement, any other Transaction Agreement, or this Order, (i) Macquarie shall be solely responsible for any and all Transfer Taxes arising or accruing on account of the transfer of the collateral of the Supporting WAC Facilities under the Sale Transaction (the "**WAC 7/8 Transfer Tax Liabilities**") and such WAC 7/8 Transfer Tax Liabilities shall be for all purposes under the Purchase Agreement Assumed Liabilities, (ii) solely with respect to the Supporting WAC Facilities, and other than as set forth in paragraph 41 hereof, there shall be no adjustment for any Transfer Tax Escrow Amount, Segregated Transfer Tax Amount or other adjustments to the WAC Allocation Amount (as defined in the Plan and Sale Support Agreement) on account of Transfer Taxes with respect to the Supporting WAC Facilities; (iii) all Transfer Tax Refunds in respect of WAC 7/8 Transfer Tax Liabilities paid by Macquarie pursuant to the foregoing clause (i) in this paragraph shall belong to Macquarie, (iv) the Seller Parties shall have no obligation to deposit any portion of the Closing Payment into the Transfer Tax Escrow Account or the Segregated Transfer Tax Account with respect to the WAC 7/8 Transfer Tax Liabilities, (v) provisions of the Purchase Agreement dealing with the administration of Transfer Tax payments, preparation of Tax Returns and Transfer Tax Refunds shall apply *mutatis mutandis* to give effect to the agreements reflected in this paragraph, and (vi) to the extent the Debtors pay any of the WAC 7/8 Transfer Tax Liabilities on behalf of Macquarie, Macquarie shall promptly reimburse the Debtors to the extent such WAC 7/8 Transfer Tax Liability was not pre-funded by Macquarie.

41.    **Purchase Price Adjustment for WAC 7 and WAC 8**.    Notwithstanding anything in the Purchase Agreement, any other Transaction Document, or this Order to the contrary, as consideration for the assumption by Macquarie of the WAC 7/8 Transfer Tax Liabilities pursuant

to paragraph 40 hereof, the portions of the Purchase Price allocable to the Supporting WAC Facilities shall be reduced as follows:  the WAC Allocation Amount for the WAC7 Credit Facility shall be reduced by $1,040,000.00; and the WAC Allocation Amount for the WAC8 Credit Facility shall be reduced by $2,320,000.00.  For the avoidance of doubt, (y) such reduction in the Purchase Price payable by Macquarie shall solely affect the Supporting WAC Facilities and not any other WAC Facilities, and (z) the foregoing adjustments herein shall be deemed to be a Purchase Price adjustment under Section 3.01 of the Purchase Agreement that effects a reduction allocable, in the amounts specified above, solely to reduce the Closing Payment and the amounts paid on account of, respectively, the WAC7 Credit Facility and the WAC8 Credit Facility.

42.    **Rights Regarding Intentional Violations by Others of Bidding Procedures Preserved.**  Notwithstanding any other terms herein or in any other orders of the Court, any damages flowing from any ~~intentional~~ violations of the Bidding Procedures and/or the Bidding Procedures Order **arising from intentional misconduct** are hereby expressly reserved and preserved ~~for the benefit of Macquarie and the Debtors~~ and, upon the occurrence of the Closing, all such rights **held by the Debtors prior to the Closing** shall be assigned to and be held for the benefit of Macquarie pursuant to the terms of the Purchase Agreement.  **[SMB: 2/14/19]**

43.    **Partial Distribution to Affected Participating Lenders**.  Upon Closing and, with respect to the Supporting WAC Lenders, subject to the terms and conditions of the Plan & Asset Sale Support Agreement, the Debtors shall make a partial distribution to the Affected Participating Lenders, in full and final satisfaction and release of that portion of such Affected Participating Lenders' claims in an amount equal to such Affected Participating Lenders' allocable share of net proceeds (as set forth in paragraphs 38 and 39 herein), less (i) such lenders' allocable share of the Winddown Account (as set forth in paragraph 32 herein), (ii) such lenders' allocable share of the

Fee Reserve Account (as set forth in paragraph 35 herein), and (iii) such lenders' allocable share of a holdback in the aggregate amount of $22,857,000, as set forth on Schedule 1 hereto (the "**Holdback Amounts**"), which Holdback Amounts shall be deposited in such lenders' respective Cash Collateral accounts (which shall constitute cash collateral of such lenders and shall be subject to such lenders' rights under the DIP Order and section 363(c) of the Bankruptcy Code) and held for the benefit of such lenders, subject to limited rights of the Debtors to draw upon if the funds in the Winddown Account are insufficient to fund the Affected Participating Lenders' allocable share of the winddown and administrative costs of the Debtors' estates, and the amount to be withdrawn is reasonable, as determined by agreement by the relevant Affected Participating Lenders or an order of the Court. The balance of any Holdback Amounts that remain in the respective Cash Collateral accounts shall be distributed on the effective date of the chapter 11 plan. The Debtors' rights to use the Affected Participating Lenders' Cash Collateral terminates upon Closing.

44.    **Transfers of Certain Aircraft**.    In furtherance of the Sale Transaction and notwithstanding anything to the contrary in the Purchase Agreement, in advance of Closing, Wells Fargo Bank Northwest, a National Association, as owner trustee of the MSN 41371 Trust, is authorized to transfer legal title to the Aircraft held in such trust to the trustor of such trust, and upon the Closing, pursuant to the terms and conditions of the Transaction Documents, the trustor is authorized to transfer such Aircraft to Macquarie. In the alternative, the trustor is authorized, in its discretion, in advance of Closing, to direct the owner trustee to distribute the Aircraft to the trustor, such that, upon the Closing, pursuant to the terms and conditions of the Transaction Documents, the trustor may transfer the Aircraft to Macquarie.

45.    Additionally, in furtherance of the Sale Transaction, at the Closing, the trustor of the trust (the "**MSN 4466 Owner Trust**") that currently owns the Aircraft with manufacturer serial

number 4466 (the "**MSN 4466 Aircraft**"), pursuant to the terms and conditions of the Transaction

Documents, is authorized to transfer the beneficial interests in the MSN 4466 Trust to Macquarie.

The Debtors and their affiliates are further authorized to make such amendments to any and all

trust agreements pursuant to which the MSN 4466 Aircraft are held as may be deemed necessary

by the Debtors or Macquarie to efficiently effect the transfer of the beneficial interests in the MSN

4466 Owner Trust to Macquarie.  In this regard, upon the Closing, all parties holding any Claims

against the MSN 4466 Owner Trust and the MSN 4466 Aircraft are directed to release (and shall

do so in accordance with paragraph 17 hereof), and upon the Closing, all such Claims are hereby

released (with the liens attaching to the proceeds as contemplated under Findings of Fact paragraph

O hereof).

46.    Additionally, in furtherance of the Sale Transaction, at the Closing, the trustor of

the trust (the "**MSN 20184 Owner Trust**," and along with the MSN 446 Owner Trust, the "**Owner**

**Trusts**") that currently owns the Aircraft with manufacturer serial number 20184 (the "**MSN**

**20184 Aircraft**"), pursuant to the terms and conditions of the Transaction Documents, is

authorized to transfer the beneficial interests in the MSN 20184 Trust to Macquarie.  The Debtors

and their affiliates are further authorized to make such amendments to any and all trust agreements

pursuant to which the MSN 20184 Aircraft are held as may be deemed necessary by the Debtors

or Macquarie to efficiently effect the transfer of the beneficial interests in the MSN 20184 Owner

Trust to Macquarie.  In this regard, upon the Closing, all parties holding any Claims against the

MSN 20184 Owner Trust and the MSN 20184 Aircraft are directed to release (and shall do so in

accordance with paragraph 17 hereof), and upon the Closing, all such Claims are hereby released

(with the liens attaching to the proceeds as contemplated under Findings of Fact paragraph O

hereof).

47.    The Debtors are further authorized to (i) make such amendments to any and all trust agreements pursuant to which Aircraft are held as may be deemed necessary by the Debtors to efficiently effect the transfer of Aircraft to Macquarie; (ii) negotiate and implement any modifications to the Transaction Documents to give effect to the foregoing transfers set forth in paragraphs 44, 45, and 46; and (iii) implement any modifications, waivers, or amendments of the DIP Documents (as defined in the DIP Order) in connection with the transfer of certain Aircraft to Macquarie, as set forth in paragraphs 44, 45, and 46, without further notice, motion or application to, order of, or hearing before, this Court.

48.    **Modification of Purchase Agreement**.  Subject to the terms of the Transaction Documents, the Transaction Documents, including the Purchase Agreement, and any related agreements, documents, or other instruments, may be modified, amended, or supplemented by the parties thereto, in a writing signed by the party against whom enforcement of any such modification, amendment, or supplement is sought, and in accordance with the terms thereof, without further order of this Court; *provided* that (i) notwithstanding any such modification, amendment, or supplement, the sale of the Acquired Assets to Macquarie will still comply with the requirements of section 363 of the Bankruptcy Code, and (ii) any such modification, amendment, or supplement does not have a material adverse effect on the Debtors or their estates or the WAC Secured Parties.

49.    In accordance with the terms of the Purchase Agreement, and upon agreement of the Debtors and Macquarie, the Purchase Agreement is hereby amended as follows:

(a)    The "Transferred Equity Interests" under the Purchase Agreement shall be amended to include the following additional equity or beneficial interests: all equity or beneficial interests in, and Schedule A to the Purchase Agreement is hereby amended, to include each of the Owner Trusts.

(b)    The Debtors shall have no obligation to directly transfer to Macquarie any Aircraft owned by the Owner Trusts pursuant to the Purchase Agreement

and all corresponding provisions of the Purchase Agreement relating to the direct transfer of such Aircraft to Macquarie (including, among others, the closing deliverables in Section 3.03(a), and the covenants in Section 6.10, in each case of the Purchase Agreement) shall not be applicable to the Debtors or the Aircraft.

These amendments to the Purchase Agreement should reduce the transactions costs and related expenses to be incurred by or that are the responsibility of the relevant Debtors in effecting the transfers of the Aircraft related to such assets. Accordingly, these amendments are in the best interests of the Debtors, their estates, creditors, and all parties in interest in these chapter 11 cases. Accordingly, each of the foregoing amendments to the Purchase Agreement are hereby authorized and approved.

50.     **Additional Provisions**.

(a)     Any amounts that become payable by the Debtors to Macquarie pursuant to the Purchase Agreement (and related agreements executed in connection therewith) shall (a) constitute administrative expenses of the relevant Debtors' estates (excluding any entity subject to an Exempt Transaction, or any such entity's direct or indirect subsidiaries) under sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code and (b) be paid by such Debtors in the time and manner provided for in the Purchase Agreement without further Court order.

(b)     The Debtors shall comply with their tax obligations under 28 U.S.C. § 960, except to the extent that such obligations are Assumed Liabilities.

(c)     Nothing in this order is intended to, nor shall it, modify the rights of any party, including the Milestone Aviation Group, under any applicable engine substitution, replacement or pooling provision under any lease of such party or change or otherwise affect title and ownership matters that are addressed in such lease.

51.     **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local

Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale Transaction and the Debtors and Macquarie intend to close the Sale Transaction as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal will be foreclosed as moot.

52.    **Binding Effect of this Order**.    The terms and provisions of the Purchase Agreement and this Order shall be binding ~~in all respects~~ upon, or shall inure to the benefit of, the Debtors, their estates and their creditors, Macquarie and its Affiliates, successors, and assigns, and any affected third parties, including all Persons asserting Claims, notwithstanding any subsequent appointment of any trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, or receiver.  Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to (i) operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Transaction Documents and (ii) perform under the Transaction Documents without the need for further order of this Court.  **[SMB: 2/14/19]**

53.    **Conflicts; Precedence**.    In the event that there is a direct conflict between the terms of this Order and the terms of (i) the Transaction Documents, **or** (ii) the DIP Documents, the Participating WAC Loan Documents (each as defined in the DIP Order), ~~or (iii) any other order of~~

46

~~this Court,~~ the terms of this Order shall control. Nothing contained in any chapter 11 plan hereinafter confirmed in these chapter 11 cases, or any order confirming such plan, shall conflict with or derogate from the provisions of the Transaction Documents or the terms of this Order and, to the extent that there is any conflict among them, the terms of the Transaction Documents and/or this Order, as applicable, shall control. **[SMB: 2/14/19]**

54.    **Bulk Sales**. No bulk sales law, bulk transfer law, or similar law of any state or other jurisdiction (including those relating to Taxes other than Transfer Taxes) shall apply in any way to the Sale Transaction.

55.    **Automatic Stay**. Macquarie shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Transaction Documents or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Order.

56.    **Provisions Non-Severable**. The provisions of this Order are nonseverable and mutually dependent.

57.    **Discharge of Indebtedness**. Any discharge of indebtedness that might otherwise be recognized for U.S. income tax purposes as income from discharge of indebtedness by the Debtors as a result of the performance of any obligation or taking of any other action contemplated by the Purchase Agreement, and any discharge or release of indebtedness as result of the Purchase Agreement, is hereby granted by the Court.

58.    **Aid and Recognition of Foreign Courts**. This Court hereby requests the aid and recognition of any court or administrative body of the competent courts of Ireland, the district of

Luxembourg, Grand Duchy of Luxembourg, or any other foreign courts to act in aid of and to be complementary to this Court in carrying out the terms of this Order.

59.    **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among other things, (i) interpret, enforce, and implement the terms and provisions of this Order and the Purchase Agreement (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith) and (ii) adjudicate disputes related to this Order and the Purchase Agreement (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith).

Dated: February 14, 2019
       New York, New York

/s/ *Stuart M. Bernstein*
       STUART M. BERNSTEIN
       United States Bankruptcy Judge