**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                     :

In re                               :         **Chapter 11**
                                       :

**WAYPOINT LEASING**       :         **Case No. 18-13648 (SMB)**
**HOLDINGS LTD.,** *et al.*,    :
                                       :         **(Jointly Administered)**

          Debtors.[1]        :
---------------------------------------------------------------x

**ORDER (I) (A) APPROVING PURCHASE AGREEMENT**
**AMONG DEBTORS AND SUCCESSFUL CREDIT BIDDER, (B) AUTHORIZING**
**SALE OF CERTAIN OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS,**
**ENCUMBRANCES, AND OTHER INTERESTS, (C) AUTHORIZING ASSUMPTION**
**AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED**
**LEASES IN CONNECTION THEREWITH, AND (D) GRANTING RELATED RELIEF,**
**AND (II) AUTHORIZING DEBTORS TO TAKE CERTAIN ACTIONS WITH RESPECT**
**TO RELATED INTERCOMPANY CLAIMS IN CONNECTION THEREWITH**

Upon the motion (the "**Sale Motion**"),[2] dated December 10, 2018 [ECF No. 64], of

Waypoint Leasing Holdings Ltd. and certain of its subsidiaries and affiliates, as debtors and

debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105, 363, 365, 503, and

507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, and 6006

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-1, 6004-1,

6006-1, and 9006-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern

District of New York (the "**Local Rules**"), and the *Amended Sale Guidelines for the Conduct of*

*Asset Sales Established and Adopted by the United States Bankruptcy Court for the Southern*

---

[1] A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is annexed hereto as **Exhibit A**.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined herein) or, if not defined in the Purchase Agreement, the meanings ascribed to such terms in the Bidding Procedures Order (as defined herein). In the event of any inconsistency between a defined term in the Bidding Procedures Order and the Purchase Agreement, the defined term in the Purchase Agreement shall control.

*District of New York* (the "**Sale Guidelines**"), seeking, among other things, entry of an order authorizing and approving the sale of substantially all of the Debtors' assets and the assumption and assignment of certain executory contracts and unexpired leases of the Debtors in connection therewith; and this Court having held a hearing on December 20, 2018 (the "**Bidding Procedures Hearing**") and having taken into consideration this Court's prior order, dated December 21, 2018 [ECF No. 159] (the "**Bidding Procedures Order**"), approving bidding procedures for the sale of substantially all of the Debtors' assets (the "**Bidding Procedures**") and granting certain related relief; and Wells Fargo Bank, N.A., in its capacity as the WAC Facility Agent for the WAC2 Lenders (as defined in the DIP Order)[3] (together with permitted successors and assigns, "**Buyer**"), having submitted a 363(k) Credit Bid for the Transferred Assets at the direction of the Required Lenders; and the Debtors having designated such 363(k) Credit Bid as a Successful Credit Bid, as set forth in the *Notice and Identities of Successful Credit Bids* [ECF No. 297]; and this Court having conducted a hearing to consider the Sale Transaction (as defined herein) on March 12, 2019 (the "**Sale Hearing**"), during which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; and this Court having reviewed and considered (i) the Sale Motion and the exhibits thereto, (ii) the *Asset Purchase Agreement* (as amended, supplemented or otherwise modified, including all exhibits, schedules and other attachments thereto, the "**Purchase Agreement**") by and between Waypoint Asset Company Number 2 (Ireland) Limited ("**Seller**") and Buyer, a copy of which was attached as **Exhibit B** to ECF No. 486 (and a final executed version of which will be filed on the docket), whereby the Seller has agreed to, among other things,

---

[3] *See* the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552, Fed. R. Bank. P. 2002, 4001, 6003, 6004, and 9014, and L. Bankr. R. 2002-1, 4001-2, 9013-1, 9014-1, and 9014-2 (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superiority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling Final Hearing; and (IV) Granting Related Relief* [ECF No. 231] (the "**DIP Order**").

sell the Transferred Assets to Buyer, including certain executory contracts and unexpired leases of the Seller that will be assumed and assigned to Buyer (the "**Transferred Contracts**"), and the beneficial interests (the "**Transferred Equity Interests**" and together with the Transferred Assets, the "**Acquired Assets**") of each of MSN 31431 Trust, MSN 760734 Trust, MSN 920024 Trust and MSN 920030 Trust (such entities, the "**Transferred Entities**," and together with Seller, the "**WAC2 Debtors**"), in each case, on the terms and conditions set forth in the Purchase Agreement (collectively, the transactions contemplated by the Purchase Agreement and the other Transaction Documents with respect to the Acquired Assets, the "**Sale Transaction**"), (iii) the Bidding Procedures Order and the record of the hearing before this Court on December 20, 2018, at which the Bidding Procedures Order was approved; (iv) the *Declaration of Matthew R. Niemann in Support of Debtors' Motion to Approve Bidding Procedures in Connection with Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, and Related Relief* [ECF No. 67], the *Supplemental Declaration of Matthew R. Niemann in Support of Order (I) (A) Approving Purchase Agreement Among Debtors and Successful Credit Bidder, (B) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (C) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (D) Granting Related Relief, and (II) Authorizing Debtors to Take Certain Actions with Respect to Related Intercompany Claims in Connection Therewith* [ECF No. 513], the *Declaration of Christos Kytzidis Pursuant to 11 U.S.C. § 363(m) in Support of Order (A) Approving Purchase Agreement Among Seller and Successful Credit Bidder, (B) Authorizing Sale of Certain of Seller's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (C) Granting Related Relief* [ECF No. 510], and the *Declaration of Robert A. Del Genio in Support of Proposed Order (I) (A) Approving*

*Purchase Agreement Among Debtors and Successful Credit Bidder, (B) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (C) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (D) Granting Related Relief, and (II) Authorizing Debtors to Take Certain Actions with Respect to Related Intercompany Claims in Connection Therewith* [ECF No. 514], (collectively, the "**Sale Declarations**"), and (v) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and due notice of the Sale Motion, the Sale Hearing and the form of this Order (the "**Proposed Sale Order**") having been provided; and all objections to the Sale Transaction and the Proposed Sale Order having been withdrawn, resolved, or overruled; and it appearing that the relief granted herein is in the best interests of the Debtors, their estates, creditors, and all parties in interest in these chapter 11 cases; and upon the record of the Sale Hearing and these chapter 11 cases; and after due deliberation and sufficient cause appearing therefor, it is hereby

## FOUND AND DETERMINED THAT:

A.      **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  The Court's findings shall also include any oral findings of fact and conclusions of law made by this Court during or at the conclusion of the Sale Hearing.

B.      **Jurisdiction and Venue**.  This Court has jurisdiction over the Sale Motion, the Purchase Agreement, the Sale Transaction and the property of the Seller's estate, including the

Acquired Assets, pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C. **Statutory and Rule Predicates**. The statutory and other legal predicates for the relief granted herein are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006 and Local Rules 6004-1 and 6006-1, and the Sale Guidelines.

D. **Notice and Opportunity to Object**. A fair and reasonable opportunity to object to, and be heard with respect to, the Sale Motion and the Sale Transaction has been given to all Persons entitled to notice pursuant to the Bidding Procedures Order, including, but not limited to, the following: (i) all counterparties to the Transferred Contracts; (ii) all entities known or reasonably believed to have asserted any lien, claim, encumbrance, or other interest in the Acquired Assets; (iii) all affected federal, state and local regulatory and taxing authorities; (iv) all parties known by the Debtors to have expressed an interest in a transaction with respect to the Acquired Assets during the past twelve (12) months; (v) all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); and (vi) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

E. **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

F. **Sound Business Purpose**. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of and entry into the Purchase Agreement, and the other agreements, documents, and instruments deliverable thereunder or attached or referenced therein (collectively, the "**Transaction Documents**"), and approval of the Sale Transaction. The Debtors' entry into and performance under the Transaction Documents (i) constitutes a sound and reasonable exercise of the Debtors' business judgment consistent with

their fiduciary duties, (ii) provides value to and are beneficial to the Seller's estate, and are in the best interests of Seller and its stakeholders, and (iii) are reasonable and appropriate under the circumstances.  Business justifications for the Sale Transaction include, but are not limited to, the following: (i) the Purchase Price set forth in the Purchase Agreement constitutes the highest or best offer received for the Acquired Assets; (ii) the Sale Transaction on the terms set forth in the Transaction Documents presents the best opportunity to maximize the value of the Acquired Assets, and constitutes the exercise of Buyer's rights under section 363(k) of the Bankruptcy Code and the Bidding Procedures Order to submit a 363(k) Credit Bid for its WAC Collateral instead of selling such assets to the Successful Third Party Bidder pursuant to the terms and conditions of the Macquarie APA; (iii) the Sale Transaction is part of a larger sale process that avoids a potential piecemeal liquidation of the Debtors' estates, which would result in significantly less value for all stakeholders; and (iv) it is imperative that the Sale Transaction conclude expeditiously to preserve going concern value, avoid business disruptions, and maintain valuable customer relationships.

G.    **Compliance with Bidding Procedures Order**.  Buyer's submission of a 363(k) Credit Bid and the Debtors' acceptance of such Credit Bid complied with the Bidding Procedures in all material respects and, pursuant thereto, Buyer's bid was the Successful Credit Bid for the Acquired Assets.

H.    **Marketing Process**.  (i) The Debtors and their investment banker, Houlihan Lokey Capital, Inc., engaged in a robust and extensive marketing and sale process, both prior to the Petition Date and through the postpetition sale process pursuant to the Bidding Procedures Order and the Bidding Procedures, (ii) the Debtors conducted a fair and open sale process, (iii) the sale process and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets,

including through a 363(k) Credit Bid, (iv) the process conducted by the Debtors pursuant to the

Bidding Procedures Order and the Bidding Procedures failed to generate an offer from a third party

in an amount equal to, or greater than, the Credit Bid; and (v) the Credit Bid constitutes the highest

and best value for the Acquired Assets, and there was no other transaction available or presented

that would have yielded as favorable an economic result for the Acquired Assets.

I.      **Fair Consideration; Highest or Best Value.**  The consideration to be provided by

Buyer under the Purchase Agreement is fair and reasonable and constitutes (i) reasonably

equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair

consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent

value, fair consideration and fair value under any other applicable laws of the United States, any

state, territory or possession or the District of Columbia.

J.      **No Successor or Other Derivative Liability**.  The consummation of the sale and

transfer of the Acquired Assets to Buyer, including the assumption by the Seller and assignment,

transfer and/or sale to Buyer of the Transferred Contracts, will not subject Buyer to any liability

(including any successor liability) with respect to the Excluded Liabilities, *provided* that, upon

Closing, Buyer shall remain liable for the Assumed Liabilities.  Buyer (i) is not, and the

consummation of the Sale Transaction will not render Buyer, a mere continuation of the Seller or

its respective estate or operations (excluding, for the avoidance of doubt, the business of the

Transferred Entities), and there is no continuity or common identity between Buyer and the Seller

(excluding, for the avoidance of doubt, the business of the Transferred Entities); (ii) the Sale

Transaction does not amount to a consolidation, merger, or *de facto* merger of Buyer with the

Seller or its respective estate; and (iii) Buyer is not, and shall not be deemed to be, a successor to

Seller or its respective estate (excluding, for the avoidance of doubt, the business of the Transferred Entities) as a result of the consummation of the Sale Transaction.

K.    **Good Faith**.    The Transaction Documents and the Sale Transaction were negotiated, proposed, and entered into, and are being undertaken by the Debtors and Buyer in good faith, without collusion, and from arms'-length bargaining positions.    Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.    Among other things, (i) Buyer complied with the provisions of the Bidding Procedures Order, including compliance in all material respects with confidentiality obligations and restrictions under the Bidding Procedures and any applicable prepetition credit agreement, non-disclosure agreement, or confidentiality agreement; and (ii) all consideration to be paid by Buyer (including, without limitation, the Wind-down Payment) and all other material agreements or arrangements entered into by Buyer and the Debtors in connection with the Sale Transaction have been disclosed and are appropriate.    The Purchase Price in respect of the Acquired Assets was not controlled by any agreement among potential bidders.    Neither the Debtors nor Buyer have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.    Neither Buyer nor any of its members, partners, officers, directors, principals, or shareholders is an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code and no common identity of incorporators, directors, or controlling stockholders exists between Buyer and the Debtors.    The Transaction Documents were not entered into and the Sale Transaction is not being consummated for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors.    All payments and other consideration to be made by Buyer in connection with the Sale Transaction have been disclosed.    Neither the Debtors nor Buyer

is entering into the Transaction Documents, or proposing to consummate the Sale Transaction, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Colombia.

L.    **Notice**.  As evidenced by the certificates of service filed with this Court: (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the Bidding Procedures (including the bidding process and the deadline for submitting bids at the Auction), the Sale Hearing, the Sale Transaction, and the Proposed Sale Order was provided by the Debtors; (ii) such notice was good, sufficient, and appropriate under the particular circumstances and complied with the Bidding Procedures Order; and (iii) no other or further notice of the Sale Motion, the Sale Transaction, the Bidding Procedures, the Sale Hearing, or the Proposed Sale Order is required.  With respect to Persons whose identities are not reasonably ascertained by the Debtors, publication of the notice in the national editions of *The New York Times*, *The Financial Times*, and *Aviation Week* on December 28, 2018, January 3, 2019, and January 14, 2019, respectively, was sufficient and reasonably calculated under the circumstances to reach such Persons.

M.    **Cure Notice**.  As evidenced by the certificates of service filed with this Court, and in accordance with the provisions of the Bidding Procedures Order, the Debtors have served, prior to the Sale Hearing, the Cure Notice and Supplemental Cure Notice, which provided notice of the Debtors' intent to assume and assign the Transferred Contracts and of the related proposed Cure Costs upon each non-Debtor counterparty to the Transferred Contracts.  The service of the Cure Notice and Supplemental Cure Notice was timely, good, sufficient, and appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the assumption and assignment of the Transferred Contracts.  All non-Debtor counterparties to the

Transferred Contracts have had a reasonable opportunity to object both to the Cure Costs listed on the applicable Cure Notice and Supplemental Cure Notice and to the assumption and assignment of the Transferred Contracts to Buyer.  No defaults exist in the Seller's performance under the Transferred Contracts as of the date of this Order other than the failure to pay the Cure Costs, as may be required, or such defaults that are not required to be cured.

N.    **Satisfaction of Section 363(f) Standards**.  Subject to Buyer's satisfaction of the Wind-down Payment, the Seller is authorized to sell the Acquired Assets to Buyer free and clear of all liens, encumbrances, pledges, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), or other property interests against the Seller's interests in the Acquired Assets to the maximum extent available under applicable law arising under or out of, in connection with, or in any way related to the Seller, the Seller's interests in the Acquired Assets, the operation of the Seller's business before the Closing, or the transfer of the Seller's interests in the Acquired Assets to Buyer, all Excluded Assets and all Excluded Liabilities (collectively, all such liens, claims, interests and encumbrances described above in this paragraph N, but excluding any Assumed Liabilities and Permitted Liens, the "**Claims**"), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Claims who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction or the Sale Motion are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  All Persons having Claims of any kind or nature whatsoever against the Acquired Assets shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such Claims against the Acquired Assets.

O.    The total consideration to be provided under the Purchase Agreement reflects Buyer's reliance on this Order to provide it with title to and possession of the Acquired Assets free and clear of all Claims pursuant to sections 105(a) and 363(f) of the Bankruptcy Code.

P.    **Assumption and Assignment of Transferred Contracts**.  The assumption and assignment of the Transferred Contracts are integral to the Sale Transaction, are in the best interests of the Debtors and their estates, and represent the valid and reasonable exercise of the Debtors' sound business judgment.  Specifically, the assumption and assignment of the Transferred Contracts (i) is necessary to sell the Transferred Assets to Buyer, (ii) is an integral part of the Transferred Assets being purchased by Buyer; (iii) allow the Seller to sell such assets to Buyer as a going concern, (iii) limit the losses suffered by non-Debtor counterparties to the Transferred Contracts, and (iv) maximize the recoveries to other creditors of the Seller by limiting the amount of claims against the Seller's estate by avoiding the rejection of the Transferred Contracts; and, in light of the foregoing, such assumption and assignment of the Transferred Contracts are reasonable and enhance the value of the Seller's estate.

Q.    With respect to each of the Transferred Contracts, the Seller has met all requirements of section 365(b) of the Bankruptcy Code.  Further, the Seller or Buyer (as provided for herein) has cured or will cure on or before the Closing any monetary default required to be cured with respect to the Transferred Contracts under section 365(b)(1) of the Bankruptcy Code and Buyer has provided adequate assurance of future performance under the Transferred Contracts in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code to the extent that any such assurance is required.  The Supplemental Cure Notice provided by the Debtors is sufficient to advise the non-Debtor counterparties to the Transferred Contracts that, pursuant to the Purchase

Agreement, Buyer's decision on which executory contracts and unexpired leases will be assumed and assigned may not be made until five (5) days prior to Closing.

R.      The authority hereunder for the Seller to assume and assign any Transferred Contract to Buyer includes the authority to assume and assign a Transferred Contract, as amended.

S.      The assignments by the applicable Debtors of each of the Transferred Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

T.      **No Sub Rosa Plan**.  Entry into the Purchase Agreement and the transactions contemplated thereby neither impermissibly restructure the rights of the WAC2 Debtors' creditors, nor impermissibly dictate the terms of a chapter 11 plan of reorganization for the WAC2 Debtors. Entry into and performance under the Purchase Agreement and this Order does not constitute a sub rosa chapter 11 plan.

U.      **Intercompany Claims**.  The intercompany obligations between the Debtors other than any Transferred Entity, on the one hand, and the Transferred Entities, on the other hand, other than obligations that will be satisfied in connection with the Wind-down Payment, are worthless because there will be insufficient funds in the Debtors' estates, after taking into account monies received from the sale of substantially all of the Debtors' assets, for any distributions to be made on account of such obligations.

V.      **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets.  Therefore, the Seller and Buyer intend to close the Sale Transaction as soon as reasonably practicable.  The Seller has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction as contemplated by the Purchase Agreement.

W.      **Legal and Factual Bases**.  The legal and factual bases set forth in the Sale Motion,
the Sale Declarations, and at the Sale Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS ORDERED THAT**:

1.      **Motion is Granted**.  To the extent not already approved pursuant to the Bidding
Procedures Order, the Sale Motion and the relief requested therein is granted and approved as set
forth herein.

2.      **Objections Overruled**.  All objections, if any, and any and all joinders thereto, to
the Sale Motion or the relief requested therein that have not been previously overruled, withdrawn
with prejudice, waived, or settled as announced to this Court at the Sale Hearing, by stipulation
filed with this Court, or as provided in this Order, and all reservations of rights included therein,
are hereby overruled on the merits and with prejudice.

3.      **Notice**.  Notice of the Sale Hearing was fair and equitable under the circumstances
and complied with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and
6006.

4.      **Approval of the Purchase Agreement**.  The Transaction Documents, the
transactions contemplated thereby, including the Sale Transaction, and all of the terms and
conditions thereof, are hereby approved.

5.      **Consummation of Sale Transaction**.  Pursuant to sections 105(a), 363(b), 363(f),
and 365 of the Bankruptcy Code, the Seller as well as its directors, officers, employees,
representatives and agents, are authorized to execute, deliver, and perform their obligations under
and comply with the terms of the Transaction Documents and to consummate the Sale Transaction.

6.      All Persons that are currently in possession of some or all of the Acquired Assets
are hereby directed to surrender possession of such Acquired Assets to Buyer upon the Closing

Date, *provided*, that (i) with respect to each Aircraft that is a Transferred Asset and is subject to an Aircraft Lease, such Aircraft will remain in the possession of the relevant Aircraft Lessee and no Debtor shall be required to effect physical delivery of such Aircraft to Buyer, and (ii) possession of each AOG Aircraft that is an Acquired Asset shall be delivered by such Persons to Buyer at the location of such AOG Aircraft.

7.      Wells Fargo Bank, N.A., in its capacity as depository bank where the Seller's collection account is maintained for the purposes of receiving lease payments, is hereby directed to transfer title to such account to Buyer upon the Closing Date.

8.      Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Transaction Documents subject to the payment of any filing or other fee imposed under non-bankruptcy law.

9.      **Transfer of Assets Free and Clear**.  Upon the Closing, the transfer of the Acquired Assets to Buyer shall: (i) be valid, legal, binding, and effective; (ii) vest Buyer with all right, title, and interest of the Seller in and to the Acquired Assets; and (iii) be free and clear of all Claims in accordance with section 363(f) of the Bankruptcy Code and subject to any claims and defenses the Debtors may possess with respect thereto, in each case immediately before the Closing.

10.     Except as otherwise provided in the Purchase Agreement or herein, all Persons (and their respective successors and assigns) including, without limitation, the Debtors, the Debtors' estates, all debt security holders, equity security holders and, with respect to Seller, all governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees and trade creditors, and any other creditors (or agent of

any of the foregoing) who may or do hold Claims against Seller, the Acquired Assets, and/or Seller's business, arising under or out of, in connection with, or in any way relating to, the Seller, the Acquired Assets, the ownership of the Transferred Equity Interests, the operation of the Transferred Assets prior to the Closing, or the Sale Transaction, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against Buyer, its Affiliates, successors, assigns, its property or the Acquired Assets, including, without limitation, taking any of the following actions with respect to any Claims: (i) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against Buyer, its Affiliates, successors, assigns, assets (including the Acquired Assets), and/or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Buyer, its Affiliates, successors, assigns, assets (including the Acquired Assets), and/or properties; (iii) creating, perfecting, or enforcing any Claim against Buyer, its affiliates, any of their respective successors, assigns, assets (including the Acquired Assets), and/or properties; (iv) asserting a Claim as a setoff, right of subrogation, or recoupment of any kind against any obligation due against Buyer, its affiliates, any of their respective successors or assigns; or (v) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof.

11.    Except as provided in paragraphs 27 and 28, this Order (i) shall be effective as a determination that all Claims have been unconditionally released, discharged and terminated as to the Acquired Assets, and that the conveyances and transfers described herein have been effected, and (ii) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars

of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that Buyer is the assignee and owner of the Acquired Assets free and clear of all Claims or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "**Recording Officers**").   All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, liens, pledges, and other interests against the Acquired Assets recorded prior to the date of this Order.   A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens, pledges, and other interests against the Acquired Assets recorded prior to the date of the Closing.   All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary, advisable or appropriate to consummate the transactions contemplated by the Purchase Agreement, subject to the payment of any filing or other fee imposed under non-bankruptcy law.

12.    Except as provided in paragraphs 27 and 28, following the Closing, no holder of any Claim shall interfere with Buyer's title to or use or enjoyment of the Acquired Assets based on or related to any Claim or based on any actions or omissions by the Seller, including any actions or omissions the Debtors may take in these chapter 11 cases.   **Nothing herein will prohibit any party from appealing from this order or seeking a stay pending appeal.  [SMB: 3/12/19]**

13.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets sold, transferred, or conveyed to Buyer on account of the

filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction contemplated by the Purchase Agreement and the Transaction Documents.

14.     Notwithstanding any provision of the Transaction Documents or any provision of this Order to the contrary, nothing in this Order or any Transaction Document releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations (including, but not limited to, environmental laws or regulations), and any associated liabilities for penalties, damages, cost recovery, or injunctive relief that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order.  Nothing contained in this Order or any Transaction Document shall in any way diminish the obligation of any entity, including the Debtors, to comply with environmental laws.

15.     Subject to Buyer's satisfaction of the Wind-down Payment, the WAC2 Secured Parties and each of the Seller's other creditors and any other holder of a lien, claim, encumbrance or other interest are deemed to have released any Claims held by such Person on the Acquired Assets and are authorized and directed to take any such actions as may be reasonably requested by Seller or Buyer to evidence the release of such Claims, including the execution, delivery and filing or recording of such releases as may be reasonably requested by Seller or Buyer or as may be required in order to terminate any related financing statements, mortgages, mechanic's liens, or *lis pendens*.  If any WAC2 Secured Party or any other Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Claims against the Acquired Assets shall not have delivered to Seller prior to the Closing, in proper form for filing and executed by the appropriate parties, as applicable, termination statements, instruments of satisfaction, or releases of all interests or Claims which the Person has with respect

to the Seller or the Acquired Assets, then (i) Seller is hereby authorized and directed to execute and file such statements, instruments, or releases on behalf of the Person with respect to the Acquired Assets and (ii) Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Acquired Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

16.     On the Closing Date, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets, transferring good and marketable, indefeasible title and interest in all of the Acquired Assets to Buyer with effect at Closing of the Sale Transaction in accordance with the Transaction Documents.

17.     To the maximum extent available under applicable law and to the extent provided for under the Purchase Agreement, Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Assets and, to the maximum extent available under applicable law and to the extent provided for under the Transaction Documents, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Buyer as of the Closing. All existing licenses or permits applicable to the business shall remain in place for Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.

18.     **No Successor or Other Derivative Liability**. The consummation of the sale and transfer of the Acquired Assets to Buyer, including the assumption by the Debtors and assignment,

18

transfer and/or sale to Buyer of the Transferred Contracts, will not subject Buyer to any liability (including any successor liability) with respect to the Excluded Liabilities, provided that, upon Closing, Buyer shall remain liable for the Assumed Liabilities.  By virtue of consummation of the Sale Transaction, neither Buyer nor its Affiliates shall be deemed to: (i) be a legal successor, or otherwise deemed to be a successor, to the Seller under any theory of law or equity; (ii) have, *de facto* or otherwise, merged with or into the Seller or its respective estate; (iii) have a common identity or a continuity of enterprise with Seller; or (iv) be a mere continuation or substantial continuation, or be holding itself out as a mere continuation, of Seller or any Debtor.

19.      **Assumption and Assignment of Transferred Contracts**.  The Seller is hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Transferred Contracts to Buyer free and clear of all Claims, and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Transferred Contracts to Buyer as provided in the Purchase Agreement.  Upon the Closing, Buyer shall be fully and irrevocably vested with all right, title, and interest of the Seller in, to, and under the Transferred Contracts and, pursuant to section 365(k) of the Bankruptcy Code, the Seller shall be relieved from any further liability with respect to the Transferred Contracts.   Buyer acknowledges and agrees that, from and after the Closing, it shall comply with the terms of each Transferred Contract ~~in its entirety~~, including, without limitation, any indemnification obligations expressly contained in such Transferred Contract that could arise as a result of events or omissions that occur from and after the Closing and any security deposit and/or maintenance reserve obligations pursuant to such Transferred Contracts.  For the avoidance of doubt, to the extent any Debtors other than the Seller are parties to any Transferred Contract, only the contractual rights of the Seller will be assumed and assigned to Buyer.  **[SMB: 3/12/19]**

20.     All Cure Costs that have not been waived shall be determined in accordance with the Bidding Procedures Order or other applicable order of this Court and paid by Buyer in accordance with the terms of the Purchase Agreement.  Payment of the Cure Costs shall be in full satisfaction and cure of any and all defaults under the Transferred Contracts and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code.  Upon the assumption by a Debtor and the assignment to Buyer of any Transferred Contract, and the payment of any applicable Cure Costs, each non-Debtor counterparty to the Transferred Contracts is forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer, their Affiliates, successors, or assigns, or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing, and (ii) exercising any rights or remedies against any Debtor or non-Debtor party to such Transferred Contract based on an asserted default that occurred on, prior to, or as a result of, the Closing, including the type of default specified in section 365(b)(1)(A) of the Bankruptcy Code. Buyer has provided adequate assurance of future performance under the Transferred Contracts within the meaning of sections 365(b)(1)(c) and 365(f)(2)(B) of the Bankruptcy Code. Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to Buyer, of each of the Transferred Contracts.

21.     To the extent a non-Debtor counterparty to the Transferred Contracts fails to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined and any such non-Debtor counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time.  Consistent with the Bidding Procedures Order, the non-Debtor counterparty to a Transferred Contract is forever bound by the applicable

Cure Cost and, upon payment of such Cure Cost as provided herein and in the Purchase Agreement, is hereby enjoined from taking any action against Buyer with respect to any claim for cure under the Transferred Contract.  To the extent no timely Cure Objection or Adequate Assurance Objection has been filed and served with respect to a Transferred Contract, the non-Debtor counterparty to such Transferred Contract is deemed to have consented to the assumption and assignment of the Transferred Contract to Buyer.

22.    The assignments of each of the Transferred Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

23.    **Ipso Facto Clauses**.  All non-Debtor counterparties to any Transferred Contract are forever barred and permanently enjoined from raising or asserting against the Debtors or Buyer any default, breach, termination, claim, penalty, pecuniary loss, rent or other acceleration of amount due thereunder, escalation, assignment fee, increase, or any other fee charged to Buyer or the Debtors as a result of (i) any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Transferred Contracts; or (ii) the assumption or assignment of the Transferred Contracts to the extent prohibited by the Bankruptcy Code.

24.    **Intercompany Claims**.  Each of the relevant Debtors (including, for the avoidance of doubt, the Transferred Entities) are authorized to (i) minimize, reduce or eliminate the amounts of the intercompany obligations between any Debtor other than a Transferred Entity, on the one hand, and the Transferred Entities, on the other hand, other than obligations that will be satisfied in connection with the Wind-down Payment; and (ii) take further actions as necessary to effectuate the minimization, reduction or elimination of such intercompany obligations, in each case, subject to the Debtors' (including, for the avoidance of doubt, the Transferred Entities') receipt of requisite approvals, without further notice, motion or application to, order of or hearing before, this Court.

25.    **Wind-down Payment**.  Pursuant to Section 3.01(a) of the Purchase Agreement, the Buyer shall pay the Wind-down Payment (as defined in the Purchase Agreement) in an amount equal to $2,706,500 (which amount includes, among other things, all Cure Costs payable in respect of the Transferred Contracts).  The Escrowed Funds will be applied, as set forth in Section 3.02 of the Purchase Agreement, to the Wind-down Payment to the extent applicable.  The funds constituting the Wind-down Payment shall not (i) be subject to the Intercompany Protection Liens, the Intercompany Protection Claims, DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, or any claims, liens or security interests granted to any other party (including the lenders and agents under the Non-Participating WAC Facilities) (each as defined in the DIP Order), (ii) constitute DIP Collateral (as defined in the DIP Order), (iii) constitute WAC Specific Collateral (as defined in the DIP Order), (iv) constitute WAC Collateral or (v) constitute Cash Collateral.

26.    The payment of the Wind-down Payment shall be in full and final satisfaction of (i) Buyer's obligation to pay the Wind-down Payment under section 3.01 of the Purchase Agreement, (ii) any and all claims of the Debtors against the WAC2 Lenders with respect to the surcharge of their collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, and (iii) Buyer's obligations in respect of Cure Costs.  Upon payment of the Wind-down Payment, the Debtors shall release any claim for any costs or expenses against the WAC2 Lenders with respect to the surcharge of their collateral pursuant  to section 506(c) of the Bankruptcy Code or otherwise.

27.    **Mutual Releases**.  Effective upon Closing, Buyer and the Secured Parties and, from and after Closing, each of the Transferred Entities, and each of their respective Representatives, partners, members, Affiliates, controlling persons, successors and assigns and each of their Representatives, partners, members, Affiliates, controlling persons, successors and assigns of any

of the foregoing (the "**Creditor Releasing Parties**") shall waive, release and discharge, absolutely, unconditionally, irrevocably and forever, any claim, interest or cause of action any of the Creditor Releasing Parties currently has or, in the future, may have against Seller, any Debtor or any Transferred Entity or any past, present or future equity holder, controlling person, Representative, Affiliate, member, manager, general or limited partner, stockholder, investor or assignee of Seller, any Debtor or any Transferred Entity, or any current (as of the Closing) or former, equity holder, controlling person, corporate parent, Representative, Affiliate, member, manager, general or limited partner, investor or assignee of any of the foregoing (the "**Seller Affiliates**") based on, in relation to or arising from, in whole or in part, (i) the Credit Documents, (ii) any guaranty issued by Seller or its Affiliates in connection with the Credit Documents, (iii) any of such Person's actions or omissions prior to the Closing with respect to the Transferred Entities and/or the Business, or (iv) the Purchase Agreement, the Transaction Documents or any sale transaction in the Bankruptcy Cases, including the negotiation, formulation, preparation, or consummation of the Purchase Agreement, the Transaction Documents and any such sale transaction, *provided*, that nothing in this paragraph shall be construed to release the Seller Affiliates from (A) gross negligence, willful misconduct or intentional fraud or (B)(1) the right of Buyer to object to any interim or final fee applications or the payment of any "success" or transaction fees, (2) any breach of any obligation of any Seller Affiliate arising from and after the Closing under the Purchase Agreement or any other Transaction Documents, or (3) any unsecured deficiency claim or unsecured guarantee claim that the Creditor Releasing Parties may have against the Debtors under the Credit Documents.

28.    Effective upon Closing, Seller, the other Seller Affiliates and, in each case, each of their respective Representatives, partners, members, Affiliates, controlling persons, successors and

assigns and the Representatives, partners, members, Affiliates, controlling persons, successors and assigns of any of the foregoing (the "**Seller Releasing Parties**"), shall waive, release and discharge, absolutely, unconditionally, irrevocably and forever, any claim, interest or cause of action any of the Seller Releasing Parties currently has or, in the future, may have against any Creditor Releasing Party based on, in relation to or arising from, in whole or in part, (i) the Credit Documents, (ii) any guaranty issued by Seller or its Affiliates in connection with the Credit Documents, (iii) any of Buyer or its Affiliates' actions or omissions prior to the Closing with respect to the Transferred Entities and/or the Business, (iv) any claims with respect to surcharge, whether arising under section 506(c) of the Bankruptcy Code or otherwise, or (v) the Purchase Agreement, the Transaction Documents or any sale transaction in the Bankruptcy Cases, including the negotiation, formulation, preparation, or consummation of the Purchase Agreement, the Transaction Documents and any such sale transaction, *provided*, that nothing in this paragraph shall be construed to release the Creditor Releasing Parties from (A) gross negligence, willful misconduct or intentional fraud or (B)(1) any intercompany obligation of any Transferred Entity set forth on Schedule 6.06 of the Purchase Agreement (to the extent not repaid at Closing), or (2) any breach of any obligation of any Creditor Releasing Party arising from and after the Closing under the Purchase Agreement or any other Transaction Documents; *provided further* that, notwithstanding the foregoing, nothing herein shall prevent the Seller Releasing Parties from asserting any claims or counterclaims (other than claims with respect to surcharge, whether arising under section 506(c) of the Bankruptcy Code or otherwise) against the Creditor Releasing Parties solely for the purposes of defending against, or asserting any offset, recoupment, or similar claim to reduce any unsecured deficiency claim or unsecured guarantee claim that the Creditor Releasing Parties may assert against the Debtors.

29.    **Sikorsky Lease**.  As of the date hereof, Debtor MSN 760734 Trust is party to a lease for a Sikorsky Helicopter with Serial No. 760734 (the "**Sikorsky Lease**"). The Buyer acknowledges that as of the Closing MSN 760734 Trust shall have continuing obligations with respect to the Sikorsky Lease under the terms of the Sikorsky Lease in accordance with the terms thereto. Further, notwithstanding anything in this Order or in the Purchase Agreement, the governing law and forum-selection clause set forth in the Sikorsky Lease shall control any disputes or other proceedings thereunder.

30.    **Severance of Joint Administration of Bankruptcy Cases**.  ~~Upon Closing, and subject to further order of the Court, the administration of the Bankruptcy Cases of the Transferred Entities shall be severed from the joint administration of the above captioned chapter 11 cases, and the Clerk shall make an appropriate docket entry.~~  Subsequent to Closing, the Transferred Entities shall not make any payments of prepetition claims pursuant to orders entered by the Court in the Bankruptcy Cases prior to Closing to the extent that any such payments would count towards any caps or limits on such payment amounts imposed in such orders.  **[SMB: 3/12/19]**

31.    **Aircraft Engines.**  Nothing in this order is intended to, nor shall it, modify the rights of any party, including the Milestone Aviation Group and its affiliates, under any applicable engine substitution, replacement or pooling provision under any lease of such party or change or otherwise affect title and ownership matters that are addressed in such lease.

32.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  The Seller and Buyer intend to close the Sale

Transaction as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal will be foreclosed as moot.

33.    **Binding Effect of this Order**.    The terms and provisions of the Purchase Agreement and this Order shall be binding upon, or shall inure to the benefit of, the Debtors, their estates and their creditors, Buyer and its Affiliates, successors, and assigns, and any affected third parties, including all Persons asserting Claims, notwithstanding any subsequent appointment of any trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, or receiver.  Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to (i) operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Transaction Documents and (ii) perform under the Transaction Documents without the need for further order of this Court.

34.    **Conflicts; Precedence**.  In the event that there is a direct conflict between the terms of this Order and the terms of (i) the Transaction Documents, (ii) the WAC2 Documents, or (iii) any other order of this Court, the terms of this Order shall control.  Nothing contained in any chapter 11 plan hereinafter confirmed in these chapter 11 cases, or any order confirming such plan, shall conflict with or derogate from the provisions of the Transaction Documents or the terms of this Order and, to the extent that there is any conflict among them, the terms of the Transaction Documents and/or this Order, as applicable, shall control.

35.     **Modification of Purchase Agreement**.  Subject to the terms of the Transaction Documents, including the Purchase Agreement, and any related agreements, documents, or other instruments, may be modified, amended, or supplemented by the parties thereto, in a writing signed by the party against whom enforcement of any such modification, amendment, or supplement is sought, and in accordance with the terms thereof, without further order of this Court; *provided* that (i) notwithstanding any such modification, amendment, or supplement, the sale of the Acquired Assets to Buyer will still comply with the requirements of section 363 of the Bankruptcy Code, and (ii) any such modification, amendment, or supplement does not have a material adverse effect on the Debtors or their estates.

36.     **Bulk Sales**.  No bulk sales law, bulk transfer law, or similar law of any state or other jurisdiction (including those relating to Taxes other than Transfer Taxes) shall apply in any way to the Sale Transaction.

37.     **Automatic Stay**.  Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Transaction Documents or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Order.

38.     **Provisions Non-Severable**.  The provisions of this Order are nonseverable and mutually dependent.

39.     **Discharge of Indebtedness**.  Any discharge of indebtedness that might otherwise be recognized for U.S. income tax purposes as income from discharge of indebtedness by the Debtors as a result of the performance of any obligation or taking of any other action contemplated

by the Purchase Agreement, and any discharge or release of indebtedness as result of the Purchase Agreement, is hereby granted by the Court.

40.    **Aid and Recognition of Foreign Courts**.  This Court hereby requests the aid and recognition of any court or administrative body of the competent courts of Ireland, the district of Luxembourg, Grand Duchy of Luxembourg, or any other foreign courts to act in aid of and to be complementary to this Court in carrying out the terms of this Order.

41.    **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among other things, (i) interpret, enforce, and implement the terms and provisions of this Order and the Purchase Agreement (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith) and (ii) adjudicate disputes related to this Order and the Purchase Agreement (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith).

Dated:
March 12, 2019
New York, New York

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge