**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                           :
In re                                      :        **Chapter 11**
                                           :
**WAYPOINT LEASING**                       :        **Case No. 18-13648 (SMB)**
**HOLDINGS LTD.,** *et al.*,               :
                                           :        **(Jointly Administered)**
                          Debtors.[1]      :
------------------------------------------------------------------x

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THIRD AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF WAYPOINT LEASING HOLDINGS LTD. AND ITS AFFILIATED DEBTORS

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), having:[2]

a.    commenced the above-captioned chapter 11 cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on November 25, 2018;

b.    continued to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.    filed, on April 8, 2019, (i) the *Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 696], which plan and related documents were subsequently amended, (ii) the *Disclosure Statement for Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 698], which disclosure statement and related documents were subsequently amended, and (iii) *Motion of Debtors for Entry of an Order (I) Approving (A) Proposed Disclosure Statement, (B) Solicitation and Voting Procedures, and (C) Notice and Objection Procedures for Confirmation of Debtors' Plan, and (II) Granting Related Relief* [ECF No. 699];

d.    filed, on April 26, 2019, (i) the *Amended Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 731] and

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are set forth on **Exhibit A** to the Plan.

[2] Unless otherwise noted, capitalized terms not defined in this *Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Third Amended Chapter 11 Plan of Liquidation for Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* (this "**Confirmation Order**") shall have the meanings ascribed to them in the Plan (as defined herein).  The rules of interpretation set forth in Article I.B of the Plan shall apply to this Confirmation Order.

(ii) the *Disclosure Statement for Amended Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 732];

e.  filed, on May 29, 2019, (i) the *Second Amended Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 802] and (ii) the *Disclosure Statement for Second Amended Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 803];

f.  filed, on June 4, 2019, (i) the *Second Amended Modified Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 802] (the "**Second Amended Plan**") and (ii) the *Disclosure Statement for Second Amended Modified Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 803] (the "**Disclosure Statement**");

g.  caused solicitation materials and notice of the deadline for objecting to confirmation of the Second Amended Plan to be distributed on or before June 11, 2019, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Disclosure Statement Order (as defined herein), which Disclosure Statement Order also approved, among other things, solicitation procedures (the "**Solicitation Procedures**") and related notices, forms, and Ballots (collectively, the "**Solicitation Packages**"), as evidenced by, among other things, the *Affidavit of Service* of Leticia Sanchez [ECF No. 838];

h.  caused notice of the Confirmation Hearing (the "**Confirmation Hearing Notice**") to be published in the *The New York Times* (National Edition), the *Financial Times*, and *Aviation Week & Space Technology* as evidenced by the *Affidavit of Publication* filed on July 18, 2019 [ECF No. 837];

i.  filed, on June 26, 2019, the *Plan Supplement for Second Amended Modified Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 845], which included the following documents: (i) Plan Oversight Board Bylaws (as amended, the "**Plan Oversight Board Bylaws**"); (ii) Plan Oversight Board Members; (iii) Plan Administrator Agreement (as amended, the "**Plan Administrator Agreement**"); (iv) List of Assumed Executory Contracts (as amended, the "**List of Assumed Executory Contracts**"); (v) Disclosure Regarding Directors, Managers & Officers (the "**Director Disclosure**"); and (vi) Proposed Director Agreement (the "**Proposed Director Agreement**") (collectively, the "**Initial Plan Supplement**");

j.  filed, on July 8, 2019, the *Certification of Leticia Sanchez with Respect to the Tabulation of Votes on the Second Amended Modified Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 861] (as may be amended, modified, or supplemented, the "**Voting Certification**");

k.  filed, on July 22, 2019, the *Third Amended Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 871] (as it

2

may be amended, and together with the Plan Supplement (as defined below) and all related documents, the "**Plan**");

l.      filed, on July 22, 2019, the *Amended Plan Supplement for Third Amended Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 873] (as amended, collectively, the "**Amended Plan Supplement**" and together with the Initial Plan Supplement, the "**Plan Supplement**");

m.     filed, on July 22, 2019, the *Declaration of William Transier in Support of Confirmation of Third Amended Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 874] (the "**Transier Declaration**");

n.      filed, on July 22, 2019, the *Declaration of Robert A. Del Genio in Support of Confirmation of Third Amended Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 875] (the "**Del Genio Declaration**");

o.      filed, on July 22, 2019, the *Debtors' Memorandum of Law in Support of Confirmation of the Debtors' Third Amended Chapter 11 Plan of Liquidation* [ECF No. 876] (the "**Confirmation Brief**");

p.      filed, on July 22, 2019, the *Notice of Filing of Proposed Findings of Fact, Conclusions of Law, and Order Confirming Third Amended Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* [ECF No. 877]; and

q.      filed, on July 25, 2019, the *Declaration Regarding Withdrawal of Vote to Accept the Plan* [ECF No. 884] (the "**Withdrawal Declaration**").

This Court having:

a.      entered the *Order (I) Approving (A) Proposed Disclosure Statement, (B) Solicitation and Voting Procedures, (C) Notice and Objection Procedures for Confirmation of Debtors' Plan, and (II) Granting Related Relief* [ECF No. 816] (the "**Disclosure Statement Order**");

b.      set July 3, 2019, at 4:00 p.m. prevailing Eastern Time, as the deadline for voting on the Second Amended Plan;

c.      set July 8, 2019, at 4:00 p.m. prevailing Eastern Time, as the deadline for filing objections to confirmation of the Second Amended Plan (as extended for certain creditors, the "**Confirmation Objection Deadline**");

d.      set July 25, 2019, at 10:00 a.m. prevailing Eastern Time, as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.      reviewed the Plan, the Plan Supplement, the Confirmation Brief, the Transier Declaration, the Del Genio Declaration, the Voting Certification, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

f.      held the Confirmation Hearing;

g.      heard the statements and arguments made by counsel in respect of confirmation; and

h.      considered all testimony, declarations, documents, filings, and other evidence admitted at confirmation.

NOW, THEREFORE, this Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation of the Plan has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of confirmation of the Plan and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, this Court hereby makes and issues the following Findings of Fact and Conclusions of Law and Orders:

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.      Findings and Conclusions.

1.      The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.**    **Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).**

2.    This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.**    **Chapter 11 Petitions.**

3.    On November 25, 2018 (the "**Petition Date**"), Waypoint Leasing Holdings Ltd., and its affiliated debtors (the "**Original Debtors**") each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  Following the Petition Date, the Chapter 11 Cases for certain Original Debtors were dismissed pursuant to various orders of the Bankruptcy Court, and the list of remaining Debtors is attached to the Plan as Exhibit A (the "**Debtors**").  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Further, in accordance with an order of this Court, the Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

**D.**    **Eligibility for Relief.**

4.    The Debtors are entities eligible for relief under section 109 of the Bankruptcy Code.

**E.**    **Judicial Notice.**

5.    This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of this Court.

**F.**    **Burden of Proof.**

6.    The Debtors, as the proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

5

G.     **Adequacy of Disclosure Statement.**

7.     Pursuant to the Disclosure Statement Order entered on June 28, 2019, this Court approved the Disclosure Statement and found, among other things, that the Disclosure Statement contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code and authorized the Debtors to solicit acceptances and rejections of the Plan.  Prior to the transmission of the Disclosure Statement, the Debtors did not solicit acceptances of the Plan by any holder of Claims or Interests.

H.     **Notice and Transmittal of Solicitation Materials; Adequacy of Solicitation Notices.**

8.     The Plan, the Disclosure Statement, the Disclosure Statement Order, the ballots for voting on the Plan (the "**Ballots**"), the Confirmation Hearing Notice, the Plan Supplement, and the other materials distributed by the Debtors in connection with Confirmation of the Plan (collectively, the "**Confirmation Materials**") were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002 and 3017, the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), and the procedures set forth in the Disclosure Statement Order.  Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases.  The transmittal and service of the Confirmation Materials complied with the approved Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations.  Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

I.    **Voting.**

9.    On July 8, 2019, the Debtors filed the Voting Certification with this Court [ECF

No. 861], certifying the method and results of the Ballots tabulated for the plan.  As set forth in

**Exhibits B, C,** and **D** to the Voting Certification:

(i)    100% in amount and 100% in number of the holders of WAC1 Secured Claims against the WAC1 Group (Class 1C) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

(ii)    100% in amount and 100% in number of the holders of WAC2 Secured Claims against the WAC2 Group (Class 2C) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

(iii)    100% in amount and 100% in number of the holders of WAC3 Secured Claims against the WAC3 Group (Class 3C) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

(iv)    70% in amount and 75% in number of the holders of WAC6 Secured Claims against the WAC6 Group (Class 6C) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

(v)    100% in amount and 100% in number of the holders of WAC7 Secured Claims against the WAC7 Group (Class 7C) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

(vi)    100% in amount and 100% in number of the holders of WAC8 Secured Claims against the WAC8 Group (Class 8C) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

(vii)    100% in amount and 100% in number of the holders of WAC10 Secured Claims against WAC10 (Class 10C) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

(viii)    100% in amount and 100% in number of the holders of General Unsecured Claims against WAC4 (Class 4D) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

7

(ix)    99% in amount and 67% in number of the holders of General Unsecured Claims against WAC5 (Class 5(i)D) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

(x)    100% in amount and 100% in number of the holders of General Unsecured Claims against MSN 2047 Trust, MSN 2057 Trust, MSN 14786 Trust, WLUK5A (Classes 5(ii)D through 5(v)D) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

(xi)    100% in amount and 100% in number of the holders of General Unsecured Claims against WAC10 (Class 10(i)D) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

(xii)    97% in amount and 96% in number of the holders of General Unsecured Claims against WLIL (Class 16D) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

(xiii)    97% in amount and 95% in number of the holders of General Unsecured Claims against LuxCo (Class 17D) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan;

(xiv)    91% in amount and 97% in number of the holders of General Unsecured Claims against Holdings (Class 19D) that voted on the Second Amended Plan by the Voting Deadline for the Debtors voted to accept the Second Amended Plan; and

(xv)    Only one holder of General Unsecured Claims against Services (Class 20D) voted by the Voting Deadline to accept the Second Amended Plan (the "**Insider Vote**"). The Insider Vote was cast by an insider and was later withdrawn pursuant to the Withdrawal Declaration.

10.    Withdrawal of the Insider Vote is approved pursuant to paragraph 18 of this Order. The Debtors solicited votes from six additional parties in Class 20D, but none returned a Ballot. Accordingly, pursuant to Section 3.6 of the Plan and Section V.E(1) of the Disclosure Statement, Class 20D is deemed to have accepted the Plan.

11.    Accordingly, pursuant to the requirements of section 1126 of the Bankruptcy Code, this Court finds Classes 1C, 2C, 3C, 6C, 7C, 8C, 10C, 4D, 5(i)D, 5(ii)D, 5(iii)D, 5(iv)D, 5(v)D,

8

10(i)D, 16D, 17D, 19D, and 20D (the "**Impaired Accepting Voting Classes**") accepted the Plan. Further, Classes 1E through 5(i)E, 6E through 10(i)E, 11(i)E, and 14E through 20E (collectively, the "**E Classes**" together with the Impaired Accepting Voting Classes, the "**Impaired Accepting Classes**") are Impaired, but are presumed to accept the Plan pursuant to paragraph III.G of the Disclosure Statement Order.

12.    As set forth in the Voting Certification and the Del Genio Declaration, there were no Claims in Classes 5(ii)E, 5(iii)E, 5(iv)E, 5(v)E, 10(ii)D, 10(ii)E, 10(iii)D, 10(iii)E, 10(iv)D, 10(iv)E, 11(i)D, 11(ii)D, 11(ii)E, 11(iii)D, 11(iii)E, 14(i)D, 14(ii)D, 15D, and 18D (collectively, the "**Vacant Classes**").  Accordingly, pursuant to Section V.D(5) of the Disclosure Statement and Section 3.5 of the Plan, the Vacant Classes are deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code.

13.    As evidenced by the Voting Certification none of the Classes entitled to vote on the Second Amended Plan voted to reject the Second Amended Plan.

14.    As evidenced by the Voting Certification, votes to accept or reject the Plan were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Solicitation Procedures.

**J.    Plan Supplement.**

15.    The filing and notice of the Plan Supplement were proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required.

**K.**     **Modifications to Plan.**

16.     Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Second Amended Plan that were incorporated into the Plan do not materially or adversely affect or change the treatment of Claims or Interests.  Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Second Amended Plan.

17.     The Plan attached to this Confirmation Order as **Exhibit 1** shall constitute the Plan submitted for confirmation.

**L.**     **Bankruptcy Rule 3016.**

18.     In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as Plan proponents.  The Debtors appropriately filed the Disclosure Statement and the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b).  The injunction provision of the Plan is set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**M.**     **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

19.     The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

a.     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  As required by section 1123(a)(1), in addition to Administrative Expense Claims (Section 2.1 of the Plan), Fee Claims (Section 2.2 of the Plan), and Priority Tax Claims (Section 2.3 of the Plan), which need not be classified, Section 3 of the Plan designates seven Classes of Claims and Interests.  As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of

10

Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b.  Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Sections 3 and 4 of the Plan specify that Classes 1A through 20A (Priority Non-Tax Claims), Classes 1B through 20B (Other Secured Claims), and Classes 1F through 18F and 20F (Other Interests) are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

c.  Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Sections 3 and 4 of the Plan designate Classes 1C, 2C, 3C, 6C, 7C, 8C, 10C, 1D, 2D, 3D, 4D, 5(i)D, 5(ii)D, 5(iii)D, 5(iv)D, 5(v)D, 6D, 7D, 8D, 10(i)D, 16D, 17D, 19D, 20D, the E Classes, and Class 19G as Impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

d.  No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the respective Debtors for each Claim or Interest in each respective Class except to the extent that a holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

e.  Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents and information included in the Plan Supplement provide adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including, without limitation: (i) the appointment of the Plan Administrator to administer the Plan and wind down the Debtors and their direct and indirect non-Debtor wholly owned subsidiaries; (ii) the appointment of the Plan Oversight Board to oversee the Plan Administrator's implementation of the Plan pursuant to the terms of the Plan Oversight Board Bylaws; (iii) appointment of certain directors pursuant to the initial list of post-Effective Date directors for the Debtors filed with the Plan Supplement; (iv) the deemed consolidation of the Debtors for certain limited purposes related to the Plan, including voting, confirmation, and distribution under the Plan; (v) the transfer of the title to the aircraft constituting the WAC10 Collateral to the WAC10 Administrative Agent, WAC10 Security Trustee and the WAC10 Lenders; and (vi) access to the funds reserved in the Winddown Account to fund the winddown and liquidation of the Debtors.

f.  Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). The Plan is a liquidating plan and the corporate charter of each Debtor will, as soon as practicable after the Effective Date, no longer be valid and existing, and so the requirement to amend such corporate charters is inapplicable. The Plan provides that the only new securities to be issued under the Plan pursuant to Section 4.39 of the Plan are voting securities in order to allow the Plan Administrator to control Holdings.

Accordingly, the requirements of section 1123(a)(6) are inapplicable in the Chapter 11 Cases.

g.    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).  Section 5.4 of the Plan discloses that William Transier shall serve as the Plan Administrator subject to the terms of the Plan Administrator Agreement.  On June 26, 2019, the Debtors filed with this Court (i) as Exhibit B to the Plan Supplement, the member representatives of the Plan Oversight Board in accordance with Section 5.3 of the Plan and (ii) the Director Disclosure and the Proposed Director Agreement regarding the directors of the Debtors and certain compensation information related thereto.  The Plan provisions concerning the selection or appointment of any officer, director, or manager under the Plan are consistent with the interests of creditors and equity security holders and with public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

h.    Additional Plan Provisions (11 U.S.C. § 1123(b)).  The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and, therefore, are consistent with section 1123(b) of the Bankruptcy Code.

(i)    Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1)).  Pursuant to the Plan, Classes 1C, 2C, 3C, 6C, 7C, 8C, 10C, 1D, 2D, 3D, 4D, 5(i)D, 5(ii)D, 5(iii)D, 5(iv)D, 5(v)D, 6D, 7D, 8D, 10(i)D, 16D, 17D, 19D, 20D, the E Classes, and Class 19G are Impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.  Classes 1A through 20A, Classes 1B through 20, and Classes 1F through 18F and 20F are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code.

(ii)    Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).  Consistent with section 1123(b)(2) of the Bankruptcy Code, Section 9.1 of the Plan provides that on the Effective Date, except as otherwise provided in the Plan, each Executory Contract not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract: (i) is identified in the List of Assumed Executory Contracts; (ii) as of the Effective Date is subject to a pending motion to assume such Executory Contract; (iii) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (iv) is a D&O Policy.

(iii)    Reservation of Causes of Action/Reservation of Rights (11 U.S.C. § 1123(b)(3)).  As permitted by section 1123(b)(3)(A) of the Bankruptcy Code, Section 11.5 of the Plan provides for a release of certain Claims and Causes of Action owned by the Debtors or the Debtors' Estates.  Moreover, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Section 11.9 of the Plan provides that, except as provided in the Plan, nothing

12

contained in the Plan or herein shall be deemed to be a waiver or the relinquishment of any Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of the Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtor, other than the Released Parties and the Debtor Released Parties. Following the Effective Date, the Plan Administrator shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

(iv)   <u>Modification of Rights (11 U.S.C. § 1123(b)(5))</u>.   In compliance with section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of holders of Claims or Interests in Classes 1C, 2C, 3C, 6C, 7C, 8C, 10C, 1D, 2D, 3D, 4D, 5(i)D, 5(ii)D, 5(iii)D, 5(iv)D, 5(v)D, 6D, 7D, 8D, 10(i)D, 16D, 17D, 19D, 20D, the E Classes, and Class 19G, and leaves unaffected the rights of holders of Claims in Classes 1A through 20A, Classes 1B through 20B, and Classes 1F through 18F and 20F.

(v)   <u>Other Appropriate Provisions (11 U.S.C. § 1123(b)(6))</u>.   The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

i.   <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>.   Section 9.2 of the Plan provides for the satisfaction of default claims under each Executory Contract to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. There are no defaults under the Executory Contracts to be assumed and, therefore, no cure amounts to be paid. Accordingly, the requirements of section 1123(d) are satisfied.

## N.   <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).</u>

20.   The Debtors have complied with ~~all~~ the applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code.**[SMB: 7/31/19]**

## O.   <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).</u>

21.   The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Plan was proposed

13

with the legitimate and honest purpose of maximizing the remaining value of the Debtors' Estates for the benefit of all holders of Claims and Interests and to effectuate an orderly wind down of the Debtors' Estates. The Plan (including all documents necessary to effectuate the Plan) and the documents contained therein were negotiated and formulated in good faith and at arm's length among the Debtors and certain of their key stakeholders.

**P.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

22.    Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**Q.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**

23.    The Debtors have disclosed the identity, affiliation, and compensation of the Plan Administrator and any individual proposed to serve as a director of the Debtors in the Director Disclosure. Further, the Debtors have disclosed the identity and affiliations of the three member representatives of the Plan Oversight Board in the Plan Supplement. The appointment of such directors and Plan Oversight Board members is consistent with the interests of creditors, equity security holders and with public policy. The Debtors have disclosed identity of any insider that will be employed by the Debtors after the Effective Date and the nature of any compensation for such insider in the Plan Supplement. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**R.    No Rate Changes (11 U.S.C. § 1129(a)(6)).**

24.    Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.

**S.**     **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

25.     Each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

26.     The liquidation analysis attached as Exhibit D to the Disclosure Statement (the "**Liquidation Analysis**") and the other evidence related thereto in support of the Plan: (i) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence were prepared, presented, or proffered; (ii) utilize reasonable and appropriate methodologies and assumptions; (iii) have not been controverted by other evidence; and (iv) establish that holders of Allowed Claims and Interests in every Class will recover as much or more under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.  Accordingly, the Plan satisfies the "best interest of creditors" test under section 1129(a)(7) of the Bankruptcy Code.

**T.**     **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

27.     Holders of Claims or Interests in Classes 1A through 20A, Class 1B through 20B, and Classes 1F through 18F and 20F are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Claims or Interests in the Impaired Accepting Voting Classes have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, and no Classes have voted to reject the Plan, as established by the Voting Certification.  As provided in the Disclosure Statement Order, (i) holders of Claims in the E Classes are deemed to have accepted the Plan as

15

Plan Proponents and (ii) Class 20D is deemed to have accepted the Plan because no holders of Claims eligible to vote in Class 20D have voted to accept or reject the Plan.  As set forth below, pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that holders of Claims and Interests in Classes 1D, 2D, 3D, 6D, 7D, 8D, and 19G are Impaired and deemed to have rejected the Plan.

**U.**    **Treatment of Administrative Expense Claims, Fee Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).**

28.    The treatment of Administrative Expense Claims and Fee Claims pursuant to Sections 2.1 and 2.2, respectively, of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Priority Non-Tax Claims pursuant to Section 4.1 of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.  The treatment of Priority Tax Claims pursuant to Section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

**V.**    **Acceptance By at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

29.    The Impaired Accepting Classes are impaired and have accepted the Plan, without counting the votes of insiders.  Every Debtor has at least one Impaired Accepting Class.

**W.**    **Feasibility (11 U.S.C. § 1129(a)(11)).**

30.    The information in the Disclosure Statement (i) is persuasive and credible; (ii) has not been controverted by other evidence; and (iii) together with the record of the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, establishes that the Plan is feasible and provides adequate and appropriate means for its implementation and an orderly wind down and liquidation of the Debtors' Estates, as contemplated by the Plan, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

**X.**    **Payment of Fees (11 U.S.C. § 1129(a)(12)).**

31.    The Plan provides that all Statutory Fees, as required by the Bankruptcy Code, have been or will be paid on the Effective Date, or thereafter as may be required, pursuant to Section 2.4 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

**Y.**    **Retiree Benefits (11 U.S.C. § 1129(a)(13)).**

32.    The Debtors do not have any obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code).  Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

**Z.**    **Confirmation of Plan Over Non-Acceptance of Impaired Classes (11 U.S.C. § 1129(b)).**

33.    The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to Classes 1D, 2D, 3D, 6D, 7D, 8D, and 19G (the "**Rejecting Classes**").  The Plan does not discriminate unfairly with respect to the Rejecting Classes because no similarly situated holders of Claims or Interests are receiving a recovery under the Plan.  The Plan is "fair and equitable" with respect to the Rejecting Classes because (i) there are no holders of Claims or Interests that are junior to the Claims and Interests in the Rejecting Classes that can or will receive or retain property under the Plan on account of such Claims or Interests; and (ii) no holders of Claims or Interests in a senior Class to the Rejecting Class will receive a recovery in excess of 100% of the Allowed amount of its Claim or Interest.  The Holdings Interests (Class 19G) have no value and holders of the Holdings Interests shall neither receive nor retain any property or interest on account of such Holdings Interests.  Thus, the Plan may be confirmed notwithstanding the Rejecting Classes.

34.    The Plan is fair and equitable with respect to the Rejecting Classes pursuant to sections 1129(b)(1) and (b)(2)(B) of the Bankruptcy Code notwithstanding the fact that the

Interests in Classes 1F through 20F are Unimpaired under the Plan because (i) Impairment or cancellation of these Interests would (a) collapse the Debtors' carefully designed organizational structure, which was specifically created based on the Debtors' specific business and operational needs, and to comply with regulatory requirements and maintain tax efficiencies and (b) result in greater expense and cost for the Debtors' Estate during the winddown; (ii) the value of such Interests was taken into account when determining the value of the distributions to be made to creditors; and (iii) the Debtors are winding down and will be liquidated and a cancellation of these Interests would be detrimental to all stakeholders.

**AA.** **Only One Plan (11 U.S.C. § 1129(c)).**

35.    The Plan is the only plan filed in the Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

**BB.** **Principal Purpose of Plan (11 U.S.C. § 1129(d)).**

36.    No governmental entity has objected to confirmation of the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended. Therefore, the Plan complies with section 1129(d) of the Bankruptcy Code.

**CC.** **Satisfaction of Confirmation Requirements.**

37.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**DD.** **Implementation.**

38.    All documents and agreements necessary to implement the Plan, and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall,

upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

**EE.    Substantive Consolidation.**

39.    The evidence and pleadings in support of the Plan and the record established at the Confirmation Hearing demonstrate that the substantive consolidation of the WAC Groups to the extent set forth in the Plan is (i) in the best interests of the Debtors, the WAC Groups, and all holders of Claims; (ii) appropriate and equitable because no creditors will be prejudiced; (iii) fair, equitable, and reasonable in light of the nature and extent of the Secured Claims of the WAC Lenders; and (iv) effected after due notice and opportunity for a hearing.

**FF.    Executory Contracts.**

40.    The Debtors have exercised sound business judgment in determining whether to reject, assume, or assume and assign each of their Executory Contracts pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code and Section 9 of the Plan.  Section 9 of the Plan governing the assumption and rejection of Executory Contracts satisfies the requirements of all applicable provisions of sections 365 and 1123(b)(2) of the Bankruptcy Code.  The rejection of any Executory Contract pursuant to Section 9 of the Plan shall be legal, valid, and binding upon the Debtors and the Plan Administrator, and their successors and assigns and all non-Debtor parties and their successors and assigns to such Executory Contracts, all to the same extent as if such rejection had been effectuated pursuant to an order of this Court before entry of this Confirmation Order.  As part of the Plan Supplement, the Debtors filed the List of Assumed Executory Contracts.

**GG.    Release, Exculpation, and Injunction Provisions.**

41.    This Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpations, and injunctions set forth in Section 11 of the

Plan.  Sections 105(a) and 1123(b) of the Bankruptcy Code permit issuance of the injunctions and approval of the releases, exculpations, and injunctions set forth in Section 11 of the Plan.  Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Confirmation Hearing, this Court finds that the releases, exculpations, and injunctions set forth in Section 11 of the Plan are consistent with the Bankruptcy Code and applicable law.  Further, the releases, exculpations, and injunctions contained in Section 11 of the Plan are integral components of the Plan.  The releases, exculpations, and injunctions set forth in Section 11 of the Plan are hereby approved and authorized in their entirety.

**HH.**   **Debtor Releases.**

42.    The releases by the Debtors described in Section 11.5(a) of the Plan (the "**Estate Releases**") are an integral and necessary part of the Plan and represent a valid exercise of the Debtors' business judgment.  The Estate Releases are in the best interests of the Debtors, the Debtors' Estates, and all holders of Claims and Interests.  The Estate Releases are a key component of the efficient wind down of the Debtors' Estates and preservation of the funds in the Winddown Account.

**II.**   **Accepting Claimant Releases.**

43.    The releases by holders of Claims and Interests (the "**Accepting Claimant Releases**") described in Section 11.5(b) of the Plan are essential provisions of the Plan.  Such releases by holders of Claims and Interests provide for the release by (i) holders of Claims and Interests that vote in favor of the Plan; (ii) the Steering Committee; and (iii) the WAC Agents.[3]  The Ballots (in the form approved by the Disclosure Statement Order) explicitly

---

[3] The Required Lenders under each applicable WAC Facility have voted to accept the Plan; accordingly, the WAC Agents are deemed to be Releasing Parties under the Plan.

stated that a vote to accept the Plan constitutes an acceptance and consent to the releases set forth
in the Plan, included the language from the release provision in Section 11.5(b). In addition, the
Accepting Claimant Releases were conspicuously disclosed in boldface type in the Plan, the
Disclosure Statement, and on the Ballots, which provided parties in interest with sufficient notice
of the releases. Thus, those holders of Claims and Interests voting to accept the Plan were given
due and adequate notice that they would be granting the releases by acting in such a manner.

44.     Further, the Accepting Claimant Releases are: (i) in exchange for the good and
valuable consideration provided by the Released Parties; (ii) a good-faith settlement and
compromise of the claims and Causes of Action released by the Accepting Claimant Releases; (iii)
materially beneficial to, and in the best interests of, the Debtors, their Estates, and their
stakeholders, and are important to the overall objectives of the Plan to finally resolve certain
Claims among or against certain parties in interest in the Chapter 11 Cases; (iv) fair, equitable, and
reasonable; (v) given and made after due notice and opportunity for hearing; (vi) within the
jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (vii) an essential
means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (viii) are
an integral element of the transactions incorporated into the Plan; and (ix) consistent with sections
105, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

## JJ.    **Exculpation.**

45.     The exculpation provisions set forth in Section 11.6 of the Plan are appropriate
under applicable law because they were proposed in good faith and are essential to the Plan.
Further, the exculpations granted under the Plan are appropriately tailored and reasonable in scope
as the exculpation provisions do not relieve any party of liability for an act or omission to the

extent such act or omission is the result of fraud, gross negligence, or willful misconduct.  The record in the Chapter 11 Cases fully supports the exculpation provisions.

**KK.    Injunction.**

46.    The injunction provisions set forth in Section 11.7 of the Plan: (i) are within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (ii) are an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) are an integral element of the transactions incorporated into the Plan; (iv) confer material benefits on, and are in the best interests of, the Debtors, the Estates, and their creditors; (v) are important to the overall objectives of the Plan to resolve all Claims or Causes of Action among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (vi) are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law.  The injunction provisions are necessary to preserve the authority of the Debtors and the Plan Administrator, as applicable, to pursue retained claims and Causes of Action under the Plan, and to preserve and enforce the terms of the Plan.  The injunction provisions are also a key component of the efficient wind down of the Debtors' Estates.

**LL.    Retention of Jurisdiction.**

47.    This Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including the matters set forth in Section 13 of the Plan and section 1142 of the Bankruptcy Code.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

**A.    Findings of Fact and Conclusions of Law.**

1. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

**B.    Confirmation.**

2.    The Plan and each of its provisions shall be and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code.

**C.    Binding Effect.**

3.    Except as otherwise expressly provided in the Plan, confirmation of the Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code because the Debtors and their Estates will be wound down in accordance with the Plan.

4.    Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of this Confirmation Order, the provisions of the Plan shall bind every holder of a Claim against or Interest in any Debtor and inure to the benefit of and be binding on such holder's respective successors and assigns, regardless of whether the Claim or Interest of such holder is Impaired under the Plan and whether such holder has accepted the Plan.

**D.**    **Deemed Acceptance of Plan as Modified.**

5.    All changes, amendments, alterations and modifications to the Second Amended

Plan and incorporated into the Plan made after entry of the Disclosure Statement Order are hereby

approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. In

accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of

Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan

are deemed to accept the Plan, as altered, amended or modified subsequent to the entry of the

Disclosure Statement Order.

**E.**    **Plan Implementation.**

~~6.~~ Pursuant to, and in accordance with sections 1123(a)(5)(D) and 1142 of the Bankruptcy

Code, on or before the Effective Date, and after the Effective Date, as necessary, and without any

further order of this Court or other authority, the Debtors, or the Plan Administrator, as applicable,

are authorized to take any and all actions necessary or appropriate to implement, effectuate, and

consummate the Plan, this Confirmation Order, and any transactions contemplated thereby or hereby.

~~All such actions taken or caused to be taken consistent with the terms of this Confirmation Order and~~

~~the Plan shall be deemed to have been authorized and approved by this Court without further~~

~~approval, act or action under any applicable law, order, rule or regulation.  Upon the Effective Date,~~

~~the Plan Administrator is authorized to execute and deliver and to perform the terms of any~~

~~agreements, documents, and instruments contemplated by the Plan in the name of and on behalf of~~

~~the Debtors.~~**[SMB: 7/31/19]**

**F.**    **Winddown Account.**

7.    Subject to the Plan and the Plan Oversight Board Bylaws, the Plan Administrator

may use the funds in the Winddown Account in his business judgment to direct and control the

winddown, liquidation, sale and/or abandoning of the remaining assets of the Debtors~~ and their non-Debtor wholly-owned direct and indirect non-Debtor subsidiaries~~.   The funds in the Winddown Account shall be free of all liens, charges, or other encumbrances and shall not (i) be subject to any Intercompany Protection Liens, Intercompany Protection Claims, DIP Liens, DIP Superpriority Claims, Adequate Protection Claims, Adequate Protection Liens or any claim, liens or security interests granted to any other party (including the Non-Participating WAC Secured Parties); (ii) constitute DIP Collateral; (iii) constitute WAC Specific Collateral; (iv) constitute WAC Collateral (as defined in the DIP Order); or (v) constitute Cash Collateral. **[SMB: 7/31/19]**

G.      **Fee Reserve Account.**

8.      The funds in the Fee Reserve Account shall be free of all liens, charges, or other encumbrances and shall not (i) be subject to any Intercompany Protection Liens, Intercompany Protection Claims, DIP Liens, DIP Superpriority Claims, Adequate Protection Claims, Adequate Protection Liens or any claim, liens or security interests granted to any other party (including the Non-Participating WAC Secured Parties); (ii) constitute DIP Collateral; (iii) constitute WAC Specific Collateral; (iv) constitute WAC Collateral (as defined in the DIP Order); or (v) constitute Cash Collateral.

H.      **Winddown.**

9.      After the Effective Date, pursuant to the Plan, the Plan Administrator shall, as soon as practicable, commence steps to cause each Debtor to winddown, sell, and otherwise liquidate or abandon its assets, which steps shall be undertaken in a commercially reasonable manner and as expeditiously as practicable.  The Plan Administrator and his professionals are authorized to take any action consistent with the Plan and Plan Oversight Board Bylaws in connection with and

furtherance of the winddown activities described above, the implementation of the Plan, and the preservation of the funds in the Winddown Account.

**I.**    **Holdings Interests.**

10.    On the Effective Date, all of the Holdings Interests shall be surrendered, cancelled, redeemed, and/or transferred to the Plan Administrator (sufficient to give the Plan Administrator control over Holdings).  The Plan Administrator and the Debtors, as applicable, are authorized to take any action and execute any documents to give the Plan Administrator control over Holdings. Any holder of a Holdings Interest shall cooperate and take any reasonable action requested by the Debtors or the Plan Administrator to facilitate the surrender, cancellation, redemption and/or transfer of the Holdings Interest to give the Plan Administrator control over Holdings.

**J.**    **Vesting of Assets and Operation as of Effective Date**

11.    On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Estates shall vest in the Debtors free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided pursuant to the Plan and this Confirmation Order.

12.    Upon the occurrence of the Effective Date, the terms of the Plan, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Plan Administrator, and any and all holders of Claims against or Interests in the Debtors (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the releases and injunctions described in the Plan, and any and all non-Debtor parties to Executory Contracts with the Debtors.

**K.**    **Rejection of Executory Contracts.**

13.    Rejection of Executory Contracts, as set forth in Section 9.1 of the Plan, is hereby authorized and entry of this Confirmation Order shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

14.    Pursuant to Section 9.3 of the Plan, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts, if any, must be filed with this Court and served on the Plan Administrator no later than 14 days after the Effective Date ("**Rejection Damages Claim**"). The Plan Administrator may object to any Rejection Damages Claim on any basis, including that the Rejection Damages Claim was not timely filed.

**L.**    ~~**Releases, Injunction, Exculpation, and Related Provisions Under Plan.**~~

~~15.    The releases, injunctions, exculpations, and related provisions set forth in Section 11 of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and, on the Effective Date, shall be immediately effective on all persons and entities, to the extent provided therein, without further order or action on the part of this Court or any other party.~~ **[SMB: 7/31/19]**

**M.**    **Indemnification of Plan Administrator and Plan Oversight Board.**

16.    ~~As set forth in the Plan, the Plan Oversight Board Bylaws, and the Plan Administrator Contract, the Debtors and their Estates, to the extent still in existence, shall indemnify and hold harmless the Plan Administrator, the Plan Oversight Board Members, and the Plan Oversight Member Representatives for any losses incurred in such capacity, except~~ **I**n no event shall the Plan Administrator, Plan Oversight Board Members, or Plan Oversight Board Member Representatives be entitled to indemnification, contribution, exoneration, reimbursement of attorneys' fees or expenses, limitation on liability, or allocation or apportionment of damages

to the extent such losses were the result of bad faith, self-dealing, breach of fiduciary duty, fraud, gross negligence, willful misconduct or criminal conduct. **[SMB: 7/31/19]**

N.    **MSN 2905**

17.    The Plan Administrator is authorized to take all action in his business judgment to close the private sale of that certain Airbus Helicopter H225 aircraft with manufacturer's serial number MSN 2905, as approved in the *Order Authorizing Private Sale of Helicopter with Manufacturer's Serial Number 2905 Free of All Liens, Claims, Encumbrances, and Other Interests and Granting Related Relief* [ECF No. 869].

O.    **Withdrawal of Vote**

18.    As set forth more fully in Withdrawal Declaration, the request to withdraw the Insider Vote is approved pursuant to Bankruptcy Rule 3018.

P.    **Effect of Confirmation Order on Prior Orders.**

19.    Unless expressly provided for herein, nothing in the Plan or this Confirmation Order shall affect any orders entered in the Chapter 11 Cases pursuant to section 365 of the Bankruptcy Code or Bankruptcy Rule 9019.

Q.    **Documents, Mortgages, and Instruments.**

20.    This Order is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments to effectuate, implement, and consummate the transaction contemplated by the Plan  and this Order (all such entities being referred to as "**Recording**

28

**Officers**").  All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary, advisable or appropriate, and appropriate to consummate the transactions contemplated by the Plan and this Order subject to the payment of any filing or other fee imposed under non-bankruptcy law.

**R.    Applicable Nonbankruptcy Law.**

21.    Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**S.    Governmental Approvals Not Required.**

22.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan, any related documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

**T.    Notice of Confirmation Order and Occurrence of Effective Date.**

23.    Pursuant to Bankruptcy Rules 2002 and 3020(c), the Plan Administrator is directed to serve a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit 2** and incorporated by reference (the "**Notice of Confirmation**"), on all known creditors and interest holders, the U.S. Trustee, other parties in interest, and any identified entity subject to the Plan injunction, no later than 14 days after the Effective Date, to be delivered to such parties by first-class mail.  As soon as reasonably practicable after the entry of this Confirmation Order, the Debtors shall also post the

Notice of Confirmation on the website maintained by their claims and noticing agent, at http://www.kccllc.net/waypointleasing. The notice described herein is adequate under the circumstances, and no other further notice is necessary.

**U.      Post-Confirmation Modification of Plan.**

24.     The Debtors are hereby authorized to amend or modify the Plan at any time prior to the Effective Date, but only in accordance with section 1127 of the Bankruptcy Code, without further order of this Court. In addition, after the Confirmation Date, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

**V.      Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent.**

25.     The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

**W.      Conditions to Effective Date.**

26.     The Plan shall not become effective unless and until the conditions set forth in Section 10.1 of the Plan have been satisfied.

**X.      Final Order.**

27.     This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon the entry hereof.

**Y.      Inconsistency.**

28.     In the event of any inconsistency between the Plan (including the Plan Supplement) and this Confirmation Order, this Confirmation Order shall govern.

**Z.**    **Stay of Confirmation Order Waived.**

29.    The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.  This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), or 7062.

**AA.**    **No Waiver.**

30.    The failure to specifically include any particular section or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such section or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

Dated: **July 31st, 2019**
        New York, New York

                        **/s/ STUART M. BERNSTEIN**
                        HONORABLE STUART M. BERNSTEIN
                        UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Plan**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                   :

In re                              :        Chapter 11

                                   :

**WAYPOINT LEASING**        :        Case No. 18-13648 (SMB)
**HOLDINGS LTD.,** *et al.*,      :

                                   :        (Jointly Administered)

              Debtors.[1]      :
---------------------------------------------------------------x

## THIRD AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF
## WAYPOINT LEASING HOLDINGS LTD. AND ITS AFFILIATED DEBTORS

**WEIL, GOTSHAL & MANGES LLP**

Gary T. Holtzer
Robert J. Lemons
Kelly DiBlasi
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007


*Attorneys for the Debtors*
*and Debtors in Possession*


Dated: July 22, 2019
       New York, New York

---

[1] A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as **Exhibit A**.

# **Table of Contents**

**Page**

**ARTICLE I**      DEFINITIONS AND INTERPRETATION.................................................................. 1

    A.    Definitions. ........................................................................................................... 1
    B.    Interpretation; Application of Definitions and Rules of Construction. ................... 15
    C.    Reference to Monetary Figures. ........................................................................... 15
    D.    Controlling Document. ......................................................................................... 16

**ARTICLE II**     ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY CLAIMS, AND
STATUTORY FEES. ............................................................................................ 16

    2.1.    Administrative Expense Claims. ...................................................................... 16
    2.2.    Fee Claims. ...................................................................................................... 16
    2.3.    Priority Tax Claims. ......................................................................................... 16
    2.4.    Statutory Fees. ................................................................................................. 17

**ARTICLE III**    CLASSIFICATION OF CLAIMS AND INTERESTS. ........................................ 17

    3.1.    Classification in General. ................................................................................. 17
    3.2.    Formation of Debtor Groups for Convenience Only. ....................................... 17
    3.3.    Summary of Classification. .............................................................................. 19
    3.4.    Special Provision Governing Unimpaired Claims............................................ 22
    3.5.    Elimination of Vacant Classes......................................................................... 22
    3.6.    Voting Classes; Presumed Acceptance by Non-Voting Classes. ................... 22
    3.7.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of Bankruptcy
Code.................................................................................................................. 22

**ARTICLE IV**     TREATMENT OF CLAIMS AND INTERESTS. ............................................... 22

    4.1.    Priority Non-Tax Claims (Classes 1A through 20A).......................................... 22
    4.2.    Other Secured Claims (Classes 1B through 20B)............................................. 23
    4.3.    WAC1 Secured Claims against the WAC1 Group (Class 1C). ...................... 23
    4.4.    WAC2 Secured Claims against the WAC2 Group (Class 2C). ...................... 23
    4.5.    WAC3 Secured Claims against the WAC3 Group (Class 3C). ...................... 24
    4.6.    WAC6 Secured Claims against the WAC6 Group (Class 6C). ...................... 24
    4.7.    WAC7 Secured Claims against the WAC7 Group (Class 7C). ...................... 24
    4.8.    WAC8 Secured Claims against the WAC8 Group (Class 8C). ...................... 24
    4.9.    WAC10 Secured Claims against the WAC10 Group (Class 10C). ................. 25
    4.10.    General Unsecured Claims against the WAC1 Group (Class 1D). ............... 25
    4.11.    General Unsecured Claims against the WAC2 Group (Class 2D). ............... 25
    4.12.    General Unsecured Claims against the WAC3 Group (Class 3D). ............... 25
    4.13.    General Unsecured Claims against WAC4 (Class 4D). ............................... 26
    4.14.    General Unsecured Claims against WAC5 (Class 5(i)D)............................... 26
    4.15.    General Unsecured Claims against MSN 2047 Trust (Class 5(ii)D)............. 26
    4.16.    General Unsecured Claims against MSN 2057 Trust (Class 5(iii)D)............. 26
    4.17.    General Unsecured Claims against MSN 14786 Trust (Class 5(iv)D). ......... 27
    4.18.    General Unsecured Claims against WLUK5A (Class 5(v)D). ...................... 27

i

**Table of Contents**
**(continued)**

4.19. General Unsecured Claims against the WAC6 Group (Class 6D). .............................. 27
4.20. General Unsecured Claims against the WAC7 Group (Class 7D). .............................. 27
4.21. General Unsecured Claims against the WAC8 Group (Class 8D). .............................. 28
4.22. General Unsecured Claims against WAC10 (Class 10(i)D). ...................................... 28
4.23. General Unsecured Claims against MSN 2826 Trust (Class 10(ii)D)......................... 28
4.24. General Unsecured Claims against MSN 2879 Trust (Class 10(iii)D)......................... 28
4.25. General Unsecured Claims against MSN 2916 Trust (Class 10(iv)D)......................... 29
4.26. General Unsecured Claims against WAC11 (Class 11(i)D)........................................ 29
4.27. General Unsecured Claims against WAG (Class 11(ii)D). ........................................ 29
4.28. General Unsecured Claims against MSN 2905 Trust (Class 11(iii)D)......................... 29
4.29. General Unsecured Claims against WAC14 (Class 14(i)D)........................................ 30
4.30. General Unsecured Claims against WAC5B (Class 14(ii)D)...................................... 30
4.31. General Unsecured Claims against WAC15 (Class 15D). ......................................... 30
4.32. General Unsecured Claims against WLIL (Class 16D)............................................. 30
4.33. General Unsecured Claims against LuxCo (Class 17D)............................................ 30
4.34. General Unsecured Claims against LuxCo Euro (Class 18D)..................................... 31
4.35. General Unsecured Claims against Holdings (Class 19D). ....................................... 31
4.36. General Unsecured Claims against Services (Class 20D). ........................................ 31
4.37. Intercompany Claims against the Debtors (Class 1E through 20E). ........................... 31
4.38. Other Interests (Class 1F through 18F, and 20F). .................................................. 32
4.39. Holdings Interests (Class 19G). ......................................................................... 32

**ARTICLE V**    MEANS FOR IMPLEMENTATION................................................................... 32

5.1. Joint Chapter 11 Plan...................................................................................... 32
5.2. Severability..................................................................................................... 32
5.3. Plan Oversight Board....................................................................................... 33
5.4. Plan Administrator........................................................................................... 33
5.5. Corporate Action. ........................................................................................... 34
5.6. Effectuating Documents; Further Transactions. .................................................... 35
5.7. Withholding and Reporting Requirements. .......................................................... 35
5.8. Exemption from Certain Transfer Taxes. ............................................................. 35
5.9. Preservation of Rights of Action. ...................................................................... 36
5.10. Closing of Chapter 11 Cases. ........................................................................... 36
5.11. Notice of Effective Date................................................................................... 36
5.12. Deemed Substantive Consolidation of WAC Groups for Voting and Distribution
       Purposes......................................................................................................... 36
5.13. Cooperation and Access. .................................................................................. 37
5.14. Winddown Account.......................................................................................... 37
5.15. Fee Reserve Account........................................................................................ 37
5.16. Settlement of Certain Matters with Airbus Helicopters........................................... 38

**ARTICLE VI**    CORPORATE GOVERNANCE & WINDDOWN ............................................ 38

6.1. Corporate Form............................................................................................... 38

# Table of Contents
## (continued)

| | | | |
|---|---|---|---|
| 6.2. | Boards of Directors and Officers. | | 38 |
| 6.3. | Corporate Existence. | | 39 |
| 6.4. | Certificate of Incorporation and By-Laws. | | 39 |
| 6.5. | Winddown. | | 39 |

**ARTICLE VII** DISTRIBUTIONS. ........................................................................................ 39

| | | | |
|---|---|---|---|
| 7.1. | Distribution Record Date. | | 39 |
| 7.2. | Date of Distributions. | | 39 |
| 7.3. | Delivery of Distributions. | | 40 |
| 7.4. | Manner of Payment Under Plan. | | 40 |
| 7.5. | Minimum Cash Distributions. | | 40 |
| 7.6. | No Postpetition Interest on Claims. | | 41 |
| 7.7. | Setoffs and Recoupment. | | 41 |
| 7.8. | Distributions After Effective Date. | | 41 |
| 7.9. | Allocation of Distributions Between Principal and Interest. | | 41 |
| 7.10. | Payment of Disputed Claims. | | 41 |
| 7.11. | Claims Paid by Third Parties. | | 41 |
| 7.12. | Claims Payable by Third Parties. | | 42 |

**ARTICLE VIII** PROCEDURES FOR DISPUTED CLAIMS .............................................. 42

| | | | |
|---|---|---|---|
| 8.1. | Allowance of Claims. | | 42 |
| 8.2. | Objections to Claims. | | 42 |
| 8.3. | Estimation of Claims. | | 42 |
| 8.4. | No Distributions Pending Allowance. | | 43 |
| 8.5. | Resolution of Claims. | | 43 |
| 8.6. | Disallowed Claims. | | 43 |

**ARTICLE IX** EXECUTORY CONTRACTS. ........................................................................ 43

| | | | |
|---|---|---|---|
| 9.1. | Rejection of Executory Contracts. | | 43 |
| 9.2. | Cure of Defaults for Assumed Executory Contracts. | | 43 |
| 9.3. | Claims Based on Rejection of Executory Contracts. | | 44 |
| 9.4. | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | | 44 |
| 9.5. | Insurance Policies. | | 45 |
| 9.6. | Survival of Debtors' Indemnification Obligations. | | 45 |
| 9.7. | Reservation of Rights. | | 45 |

**ARTICLE X** CONDITIONS PRECEDENT TO THE EFFECTIVE DATE. ......................... 46

| | | | |
|---|---|---|---|
| 10.1. | Conditions Precedent to Effective Date. | | 46 |
| 10.2. | Effect of Failure of a Condition. | | 46 |

# Table of Contents
## (continued)

Page

**ARTICLE XI**  EFFECT OF CONFIRMATION OF PLAN. ................................................................ 46

    11.1.    Vesting of Assets. ................................................................................................ 46
    11.2.    Subordinated Claims. ......................................................................................... 46
    11.3.    Binding Effect. ................................................................................................... 46
    11.4.    Term of Injunctions or Stays. ............................................................................ 47
    11.5.    Releases. ............................................................................................................. 47
    11.6.    Exculpation. ....................................................................................................... 49
    11.7.    Injunction. .......................................................................................................... 49
    11.8.    Waiver of Statutory Limitation on Releases. ..................................................... 50
    11.9.    Retention of Causes of Action/Reservation of Rights. ...................................... 50

**ARTICLE XII** RETENTION OF JURISDICTION. ....................................................................... 51

    12.1.    Retention of Jurisdiction. ................................................................................... 51
    12.2.    Courts of Competent Jurisdiction. ..................................................................... 52

**ARTICLE XIII** MISCELLANEOUS PROVISIONS. ..................................................................... 52

    13.1.    Post-Confirmation Reporting. ........................................................................... 52
    13.2.    Request for Expedited Determination of Taxes. ................................................ 53
    13.3.    Amendments. ...................................................................................................... 53
    13.4.    Effectuating Documents and Further Transactions. .......................................... 53
    13.5.    WAC Agent Retainers. ...................................................................................... 53
    13.6.    Revocation or Withdrawal of Plan. .................................................................... 54
    13.7.    Severability of Plan Provisions. ......................................................................... 54
    13.8.    Governing Law. .................................................................................................. 54
    13.9.    Time. ................................................................................................................... 54
    13.10.    Additional Documents. ...................................................................................... 54
    13.11.    Dates of Actions to Implement the Plan. ........................................................... 55
    13.12.    Immediate Binding Effect. ................................................................................. 55
    13.13.    Deemed Acts. ..................................................................................................... 55
    13.14.    Successor and Assigns. ...................................................................................... 55
    13.15.    Entire Agreement. .............................................................................................. 55
    13.16.    Exhibits to Plan. ................................................................................................. 55
    13.17.    Notices. ............................................................................................................... 55

Waypoint Leasing Holdings Ltd. and those entities listed on **Exhibit A** (collectively, the "**Debtors**") hereto propose the following joint chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Article I.A.

## ARTICLE I        DEFINITIONS AND INTERPRETATION.

A.    **Definitions.** The following terms shall have the respective meanings specified below:

1.1    *Adequate Protection Claims* has the same meaning ascribed to it in the Final DIP Order.

1.2    *Administrative Expense Claim* means any Claim for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(a)(2) of the Bankruptcy Code, including, (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); and (ii) Fee Claims.

1.3    *Affiliates* means "Affiliates" as such term is defined in section 101(2) of the Bankruptcy Code.

1.4    *Allowed* means, (i) with respect to any Claim, (a) any Claim arising on or before the Effective Date (1) that is not Disputed, or (2) as to which all such challenges have been determined by a Final Order to the extent such challenges are determined in favor of the respective holder, (b) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors or Plan Administrator in a Final Order of the Bankruptcy Court, (c) any Claim expressly allowed by Final Order of the Bankruptcy Court (including the Claims of the WAC Lenders Allowed pursuant to and in the amounts set forth in the Final DIP Order), (d) any Claim expressly allowed under the Plan, (e) any Claim that is listed in the Schedules as liquidated, non-contingent and undisputed and with respect to which no proof of claim is timely filed, and (f) any Administrative Expense Claim (1) that was incurred by a Debtor in the ordinary course of business before the Effective Date to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (2) that is not otherwise Disputed; and (ii) with respect to any Interest, such Interest is reflected as outstanding in the stock transfer ledger or similar register of any of the Debtors on the Distribution Record Date and is not subject to any objection or challenge; provided that, no Claim shall be "Allowed" if it is subject to disallowance in accordance with section 502(d) of the Bankruptcy Code. If a Claim is Allowed only in part, any provisions under the Plan with respect to Allowed Claims are applicable solely to the Allowed portion of such Claim.

1.5    *Asset* means all of the right, title, and interest of the Debtors in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

1.6    *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.7    *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Southern District of New York.

1.8    *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local

Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.9     **Bar Date Order** means the *Order Pursuant to 11 U.S.C. § 502(B)(9) and Fed. R. Bankr. P. 3003(C)(3) Establishing Deadlines for Filing Proofs of Claim and Procedures Relating Thereto and Approving Form and Manner of Notice Thereof* (ECF No. 552).

1.10    **Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.11    **Carve Out** has the same meaning as set forth in the Final DIP Order.

1.12    **Cash** means legal tender of the United States of America.

1.13    **Causes of Action** means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws).  Causes of Action also includes: (i) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) the right to object to Claims or Interests; (iii) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (iv) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any state law fraudulent transfer claim.

1.14    **Chapter 11 Cases** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court and styled as *In re Waypoint Leasing Holdings Ltd.*, Case No. 18-13648 (SMB).

1.15    **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.16    **Class** means any group of Claims or Interests classified as set forth in Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.17    **Collateral** means any Asset of the Estate that is subject to a Lien securing the payment or performance of a Claim, which Lien is not invalid and has not been avoided under the Bankruptcy Code or applicable nonbankruptcy law.

1.18    **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.19    **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.20    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

2

1.21    *Cure* means the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtor, and (ii) permit the Debtors to assume such executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.22    *D&O Policy* means any insurance policy for directors, members, trustees, and officers liability maintained by the Debtors' Estates as of the Effective Date.

1.23    *Debtor or Debtors* has the meaning set forth in the introductory paragraph of the Plan.

1.24    *Debtor Released Party* means all holders of Claims who vote to accept the Plan, as well as all of the Released Parties; provided however, that the holder of a Claim (other than a Debtor or a wholly-owned direct or indirect subsidiary of a Debtor) who is deemed to have accepted the Plan, but does not actually vote to accept the Plan shall not be a Debtor Released Party.

1.25    *DIP Claims* has the same meaning ascribed to it in the Final DIP Order.

1.26    *Disallowed* means, with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.27    *Disclosure Statement* means the disclosure statement filed by the Debtors in support of the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.28    *Disputed* means a Claim or Interest that (i) is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, or (ii) the Debtors or any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.  If the Debtors dispute only a portion of a Claim, such Claim shall be deemed Allowed in any amount the Debtors do not dispute, and Disputed as to the balance of such Claim.

1.29    *Distribution* means any payment or transfer made to holders of Allowed Claims and Allowed Interests under the Plan.

1.30    *Distribution Date* means a date or dates, including the Initial Distribution Date, as determined by the Plan Administrator in accordance with the terms of the Plan, on which the Plan Administrator makes a distribution to holders of Allowed Claims.

1.31    *Distribution Record Date* means on or about the Effective Date.

1.32    *Effective Date* means the date on which all conditions to the effectiveness of the Plan set forth in section 10.1 hereof have been satisfied or waived in accordance with the terms of the Plan.

1.33    *Entity* means an individual, corporation, partnership, limited  partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, government unit (as defined in section 101(27) of the Bankruptcy Code) or any political subdivision thereof, or other person (as defined in section 101(41) of the Bankruptcy Code) or other entity.

1.34    *Estate* means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.35 **EURO7** means Debtor Waypoint Asset Euro 7A Limited.

1.36 **EURO9** means Debtor Waypoint Asset Euro 9A Limited.

1.37 **Exculpated Parties** means collectively and in each case in their capacity as such, (i) the Debtors; (ii) the WAC Agents; (iii) the WAC Lenders that vote to accept the Plan, (iv) the Steering Committee and (v) with respect to each of the foregoing (i) through (iv), their respective predecessors, successors and assigns, subsidiaries, and Affiliates, and its and their officers, directors, members, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, Estates, servants and nominees who served in such roles on or after the Petition Date.

1.38 **Executory Contract** means a contract or unexpired lease to which one or more Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.39 **Fee Claim** means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtors by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, or 503(b) of the Bankruptcy Code in the Chapter 11 Cases.

1.40 **Fee Reserve Account** shall have the same meaning as ascribed to it in the Final DIP Order.

1.41 **Final DIP Order** means the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014, and L. Bankr. R. 2002-1, 4001-2, 9013-1, 9014-1, and 9014-2 (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens And Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection; and (III) Granting Related Relief* (ECF No. 231).

1.42 **Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided that, no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.43 **Forbearance Agreements** means those certain *Forbearance Agreements* dated as of June 29, 2018 by and between certain of the WAC Lenders and the WAC10 Lender (and its affiliates), and certain of the Debtors pursuant to which certain WAC Lenders agreed to forbear any rights or remedies arising from or related to the occurrence and continuance under the WAC Lenders' respective credit agreements, as may be amended, modified or supplemented from time to time.

1.44 **General Unsecured Claim** means any Claim against a Debtor (other than an Administrative Expense Claim, WAC Lender Secured Claim, Intercompany Claim, Other Secured Claim,

4

Priority Tax Claim, or Priority Non-Tax Claim) as of the Petition Date that is neither secured by Collateral nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court. For the avoidance of doubt, a WAC Lender Deficiency Claim and the WAC2 Deficiency Claim shall be considered a General Unsecured Claim.

1.45    ***Holdback Amount*** shall mean, with respect to each applicable WAC Lender, the amount listed on Schedule 1 attached to the Macquarie Sale Order.

1.46    ***Holdings*** means Debtor Waypoint Leasing Holdings Ltd.

1.47    ***Holdings Interests*** means all Interests in Holdings, including common stock, preferred stock and any options, warrants or rights to acquire such Interests.

1.48    ***Impaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.49    ***Intercompany Claim*** means any Claim against a Debtor or non-Debtor Affiliate held by a Debtor.

1.50    ***Initial Distribution*** means the first distribution that the Plan Administrator makes to holders of Allowed Claims.

1.51    ***Initial Distribution Date*** means the date selected by the Plan Administrator as soon as reasonably practicable after the Effective Date.

1.52    ***Interests*** means any equity security (as defined in section 101(16) of the Bankruptcy Code) of the Debtors, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, and any option, warrant, or other right, including restricted stock units, contractual or otherwise, to acquire or receive consideration based on any such interest in the Debtors, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interests in the Debtors that existed immediately before the Effective Date.

1.53    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.54    ***Local Bankruptcy Rules*** means the local bankruptcy rules for the United States Bankruptcy Court for the Southern District of New York.

1.55    ***LuxCo*** means Debtor Waypoint Leasing (Luxembourg) S.à.r.l.

1.56    ***LuxCo Euro*** means Debtor Waypoint Leasing (Luxembourg) Euro S.à.r.l.

1.57    ***Macquarie*** means Macquarie Rotorcraft Leasing Holdings Limited as the stalking horse purchaser.

1.58    ***Macquarie Purchase Agreement*** means that certain Stock and Asset Purchase Agreement (as amended, supplemented or otherwise modified, including all exhibits, schedules and other attachments) dated as of December 7, 2018 by and between certain of the Debtors and Macquarie.

1.59    *Macquarie Sale Order* means *Order (I) Approving Purchase Agreement Among Debtors and Macquarie, (II) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (IV) Granting Related Relief.* (ECF No. 444).

1.60    *MSN 2047 Trust* means Debtor MSN 2047 Trust.

1.61    *MSN 2057 Trust* means Debtor MSN 2057 Trust.

1.62    *MSN 2826 Trust* means Debtor MSN 2826 Trust.

1.63    *MSN 2879 Trust* means Debtor MSN 2879 Trust.

1.64    *MSN 2905 Trust* means Debtor MSN 2905 Trust.

1.65    *MSN 2916 Trust* means Debtor Waypoint 2916 Business Trust.

1.66    *MSN 14786 Trust* means Debtor MSN 14786 Trust.

1.67    *Other Interests* means an Interest in the Debtors other than the Holdings Interests.

1.68    *Other Secured Claim* means a Secured Claim, other than an Administrative Expense Claim, a Priority Tax Claim, a Non-Priority Tax Claim or a WAC Lender Secured Claim.

1.69    *Parent Guarantors* means Holdings, LuxCo, and WLIL, as guarantors of the obligations under each of the WAC Facilities.

1.70    *Person* means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other Entity.

1.71    *Petition Date* means November 25, 2018.

1.72    *Plan* means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.73    *Plan Administrator* means the Person who, as of the Effective Date, shall exercise the authority set forth in section 5.4(b) under the oversight of the Plan Oversight Board and pursuant to a contract that will be filed as part of the Plan Supplement.

1.74    *Plan Oversight Board* means the board consisting of three (3) members (two (2) to be selected by the WAC Lenders and one (1) to be selected by Macquarie) established on the Effective Date, to, among other things, oversee and direct the Plan Administrator and his implementation and administration of the Plan. A list of the members of the Plan Oversight Board and the terms of its oversight of the Plan Administrator shall be filed with the Plan Supplement.

1.75    *Plan Supplement* means a supplemental appendix to the Plan containing, among other things, forms of documents, schedules, and exhibits to the Plan to be filed with the Court, including, but

not limited to, the following:  (i) list of directors and officers for the Debtors after the Effective Date, (ii) list of Executory Contracts to be assumed by the Debtors, (iii) copy of the Plan Administrator contract; (iv) a list of members of the Plan Oversight Board; and (v) to the extent not contained in the Plan Administrator's contract, the terms of the Plan Oversight Board's supervision over the Plan Administrator; provided that, through the Effective Date, the Debtor shall have the right to amend the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan.  The Plan Supplement shall be filed with the Bankruptcy Court not later than seven (7) business days prior to the deadline to object to the Plan.

1.76    *Priority Non-Tax Claim* means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.77    *Priority Tax Claim* means any Secured Claim or unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.78    *Pro Rata* means the proportion that an Allowed Claim or Allowed Interests in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

1.79    *Purchase Agreements* means the Macquarie Purchase Agreement, the WAC2 Purchase Agreement, the WAC9 Purchase Agreement, and the WAC12 Purchase Agreement.

1.80    *Reinstate, Reinstated, or Reinstatement* means leaving a Claim or Interest Unimpaired under the Plan.

1.81    *Released Parties* means collectively and in each case in their capacity as such,  (i) the Debtors; (ii) the WAC Agents (except to the extent the Required Lenders under the applicable WAC Facility vote to reject the Plan); (iii) the WAC Lenders that vote to accept the Plan, (iv) the Steering Committee, and (v) with respect to each of the foregoing (i) through (iv), their respective current and former predecessors, successors and assigns, subsidiaries, and Affiliates, and its and their officers, directors, members, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, Estates, servants and nominees; provided, however, that former officers of the Debtors listed in clause (v) who are related to the Debtors and who have pending or threatened litigation (including Causes of Actions for breach of contract or breach of fiduciary duty, whether or not asserted in proofs of claim for rejection damages, but excluding claims related to indemnification, reimbursement, or other ordinary course obligations of the Debtors) against the Debtors, their Affiliates, officers, directors, principals, shareholders, members, managers, partners or employees shall not constitute Released Parties for any capacity in which they may have served the Debtors.

1.82    *Releasing Parties* means collectively and in each case in their capacity as such, (i) the WAC Agents (except to the extent the Required Lenders under the applicable WAC Facility vote to reject the Plan); (ii) the Steering Committee; and (iii) all holders of Claims who vote to accept the Plan; provided however that the holder of a Claim (other than a Debtor or a wholly-owned direct or indirect subsidiary of a Debtor) that is deemed to have accepted the Plan, but does not actually vote to accept the Plan shall not be a Releasing Party.

1.83    ***Sale Orders*** means the WAC2 Sale Order, the WAC9 Sale Order, the WAC12 Sale Order, and the Macquarie Sale Order.

1.84    ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.85    ***Secured Claim*** means any Claim to the extent (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtors or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.86    ***Services*** means Debtor Waypoint Leasing Services LLC.

1.87    ***Settled WAC10 Claims*** means all rights, Claims, and interests of the Debtors, the WAC10 Administrative Agent, the WAC10 Security Trustee, and the WAC10 Lender, arising under out of or related to (a) WAC10 continued possession and use of WAC10 Collateral, any alleged diminution of WAC10 Collateral value while in the possession of WAC10, and any alleged lack of direct benefit to WAC10 Lender from the WAC10 chapter 11 case, and (b) the Final DIP Order, including any and all claims of the Debtors against the WAC10 Lender and WAC10 Agent with respect to the purported surcharge of their collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise.

1.88    ***Statutory Fees*** means all fees for which the Debtors are obligated pursuant to 28 U.S.C. § 1930(a)(6), together with interest, if any, pursuant to 31 U.S.C. § 3717.

1.89    ***Steering Committee*** means the committee of certain agents, lenders, and noteholders to Holdings and its affiliates under the WAC1 Credit Agreement, WAC2 Credit Agreement, WAC3 Credit Agreement, WAC6 Credit Agreement, WAC7 Credit Agreement, WAC8 Note Purchase Agreement, WAC9 Credit Agreement, WAC12 Credit Agreement, and that certain Credit Agreement, dated as of May 6, 2016, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, by and among WAC11, as borrower, (i) Holdings, (ii) Waypoint Leasing (Ireland) Limited, and (iii) Waypoint Leasing (Luxembourg) S.à r.l., as guarantors, KeyBank, N.A., as Administrative Agent and Collateral Agent, and the lenders party thereto.

1.90    ***Transition Services Agreement*** means that certain *Transition Services Agreement* dated March 13, 2019 by and between WLIL and certain of its affiliates and Macquarie Rotorcraft Leasing Services (Ireland) Limited as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

1.91    ***Unimpaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.92    ***U.S. Trustee*** means the United States Trustee for Region 2 which includes the Southern District of New York.

1.93    ***Voting Deadline*** means the date by which all persons or Entities entitled to vote on the Plan must vote to accept or reject the Plan.

1.94     *WAC1* means Debtor Waypoint Asset Company Number 1 (Ireland) Limited.

1.95     *WAC1 Administrative Agent* means Macquarie PF Inc., as administrative agent under the WAC1 Credit Agreement.

1.96     *WAC1 Borrowers* means WAC1 and WACF1, as borrowers, under the WAC1 Credit Agreement.

1.97     *WAC1 Collateral Agent* means Wells Fargo Bank, National Association, as collateral agent under the WAC1 Credit Agreement.

1.98     *WAC1 Credit Agreement* means that certain *Amended and Restated Credit Agreement*, dated as of November 8, 2013, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and, together with all other WAC1 Credit Documents, among the WAC1 Borrowers, the Parent Guarantors, the WAC1 Lenders, the WAC1 Administrative Agent, and WAC1 Collateral Agent.

1.99     *WAC1 Credit Documents* means the WAC1 Credit Agreement together with all agreements and documents delivered pursuant thereto or in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

1.100     *WAC1 Group* means WAC1 and its Debtor subsidiaries.

1.101     *WAC1 Lenders* means the lenders from time to time party to the WAC1 Credit Agreement.

1.102     *WAC1 Secured Claim* means an Allowed Secured Claim arising under the WAC1 Credit Agreement.

1.103     *WAC2* means Debtor Waypoint Asset Company Number 2 (Ireland) Limited.

1.104     *WAC2 Agent* means Wells Fargo Bank, National Association, as both administrative agent and as collateral agent under the WAC2 Credit Agreement.

1.105     *WAC2 Borrowers* means WAC2 and WACF2, as borrowers, under the WAC2 Credit Agreement.

1.106     *WAC2 Deficiency Claim* means the Allowed unsecured Claim held by the WAC2 Lenders after taking into account the credit bid a portion of the WAC2 Secured Obligations (as defined in the WAC2 Credit Agreement) pursuant to the WAC2 Purchase Agreement.

1.107     *WAC2 Credit Agreement* means that certain *Credit Agreement*, dated as of April 16, 2014, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, together with all other WAC2 Credit Documents, between and among the WAC2 Borrowers, the Parent Guarantors, the WAC2 Lenders, and the WAC2 Collateral Agent.

1.108     *WAC2 Credit Documents* means the WAC2 Credit Agreement together with all agreements and documents delivered pursuant thereto or in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

1.109     *WAC2 Group* means WAC2 and WACF2.

9

1.110    **WAC2 Lenders** means the lenders from time to time party to the WAC2 Credit Agreement.

1.111    **WAC2 Purchase Agreement** means that certain *Asset Purchase Agreement* by and between WAC2 and the WAC2 Agent, dated March 19 2019.

1.112    **WAC2 Sale Order** means the *Order (I) (A) Approving Purchase Agreement Among Debtors and Successful Credit Bidder, (B) Authorizing Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (C) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (D) Granting Related Relief, and (II) Authorizing Debtors to Take Certain Actions with Respect to Related Intercompany Claims in Connection Therewith* (ECF No. 525).

1.113    **WAC2 Secured Claim** means an Allowed Secured Claim arising under the WAC2 Credit Agreement.

1.114    **WAC3** means Debtor Waypoint Asset Co 3 Limited.

1.115    **WAC3 Administrative Agent** means Glas Trust Company LLC, as administrative agent, under the WAC3 Credit Agreement.

1.116    **WAC3 Borrowers** means WAC3 and WACF3, as borrowers, under the WAC3 Credit Agreement.

1.117    **WAC3 Collateral Agent** means Wells Fargo Bank, National Association, as collateral agent under the WAC3 Credit Agreement.

1.118    **WAC3 Credit Agreement** means that certain *Credit Agreement*, dated as of August 6, 2014, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and, together with all other WAC3 Credit Documents, by and among the WAC3 Borrowers, the Parent Guarantors, the WAC3 Lenders, the WAC3 Administrative Agent, and the WAC3 Collateral Agent.

1.119    **WAC3 Credit Documents** means the WAC3 Credit Agreement together with all agreements and documents delivered thereto or in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

1.120    **WAC3 Group** means WAC3 and its Debtor subsidiaries.

1.121    **WAC3 Lenders** means the lenders from time to time party to the WAC3 Credit Agreement.

1.122    **WAC3 Secured Claim** means an Allowed Secured Claim arising under the WAC3 Credit Agreement.

1.123    **WAC4** means Debtor Waypoint Asset Co 4 Limited.

1.124    **WAC5** means Debtor Waypoint Asset Co 5 Limited.

1.125    **WAC5B** means Debtor Waypoint Asset Co 5B Limited.

1.126    **WAC5 Group** means WAC5 and its Debtor subsidiaries.

1.127    *WAC6* means Debtor Waypoint Asset Co 6 Limited.

1.128    *WAC6 Borrowers* means WAC6 and WACF6, as borrowers under the WAC6 Credit Agreement.

1.129    *WAC6 Agent* means Bank of Utah, as both administrative agent and collateral agent under the WAC6 Credit Agreement.

1.130    *WAC6 Credit Agreement* means that certain *Credit Agreement*, dated as of March 23, 2015, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and, together with all other WAC6 Credit Documents, by and among the WAC6 Borrowers, the Parent Guarantors, the WAC6 Lenders, and the WAC6 Collateral Agent.

1.131    *WAC6 Credit Documents* means the WAC6 Credit Agreement together with all agreements and documents delivered pursuant thereto in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

1.132    *WAC6 Lenders* means the lenders from time to time party to the WAC6 Credit Agreement.

1.133    *WAC6 Group* means WAC6 and its Debtor subsidiaries.

1.134    *WAC6 Secured Claim* means an Allowed Secured Claim arising under the WAC6 Credit Agreement.

1.135    *WAC7* means Debtor Waypoint Asset Co 7 Limited.

1.136    *WAC7 Agent* means SunTrust Bank, as both administrative agent and collateral agent under the WAC7 Credit Agreement.

1.137    *WAC7 Borrowers* means WAC7 and EURO7, as borrowers under the WAC7 Credit Agreement.

1.138    *WAC7 Credit Agreement* means that certain *Amended and Restated Credit Agreement*, dated as of April 28, 2017, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and, together with all other WAC7 Credit Documents, by and among, the WAC7 Borrowers, the Parent Guarantors, the WAC7 Lenders, and the WAC7 Collateral Agent.

1.139    *WAC7 Credit Documents* means the WAC7 Credit Agreement together with all agreements and documents delivered pursuant thereto or in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

1.140    *WAC7 Group* means WAC7 and its Debtor subsidiaries.

1.141    *WAC7 Lenders* means the lenders from time to time party to the WAC7 Credit Agreement.

1.142    *WAC7 Secured Claim* means an Allowed Secured Claim arising under the WAC7 Credit Agreement.

1.143    *WAC8* means Debtor Waypoint Asset Co 8 Limited.

11

1.144   **WAC8 Agent** means Wells Fargo Bank, National Association, as both administrative agent and collateral agent under the WAC8 Note Purchase Agreement.

1.145   **WAC8 Group** means WAC8 and its Debtor subsidiaries.

1.146   **WAC8 Issuers** means WAC8 and WACF8, as issuers under the WAC8 Note Purchase Agreement.

1.147   **WAC8 Note Purchase Agreement** means that certain *Note Purchase Agreement*, dated as of July 29, 2015, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and, together with all other WA8 Note Purchase Documents, by and among, the WAC8 Issuers, the Parent Guarantors, and the WAC8 Collateral Agent, pursuant to which the WAC8 Issuers issued the WAC8 Senior Secured Notes.

1.148   **WAC8 Note Purchase Documents** means the WAC8 Note Purchase Agreement together with all agreements and documents delivered pursuant thereto or in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

1.149   **WAC8 Noteholders** means the holders of WAC8 Senior Secured Notes issued pursuant to the WAC8 Note Purchase Agreement.

1.150   **WAC8 Secured Claim** means an Allowed Secured Claim arising under the WAC8 Note Purchase Agreement.

1.151   **WAC8 Senior Secured Notes** means the (i) 4.41% Series A Guaranteed Senior Secured Notes due 2022 in the aggregate principal amount of $125,000,000, (ii) 2.83625% Series B Guaranteed Senior Secured Notes due 2022 in the aggregate principal amount of €45,000,000, and (iii) 4.51% Series C Guaranteed Senior Secured Notes due 2022 in the aggregate principal amount of $25,000,000, each issued pursuant to the WAC8 Note Purchase Agreement.

1.152   **WAC9 Agent** means Lombard North Central Plc, as both administrative agent and collateral agent under the WAC9 Credit Agreement.

1.153   **WAC9 Borrower** means Debtor Waypoint Asset Co 9 Limited.

1.154   **WAC9 Collateral Agent** means Lombard North Central Plc, as both administrative agent and collateral agent under the WAC9 Credit Agreement.

1.155   **WAC9 Credit Agreement** means that certain *Credit Agreement*, dated as of March 24, 2016, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and, together with all other WAC9 Credit Documents, by and among the WAC9 Borrower, along with the Parent Guarantors, EURO9 and Waypoint Asset Sterling 9A Limited, as guarantors, the WAC9 Lender, and the WAC9 Collateral Agent.

1.156   **WAC9 Credit Documents** means the WAC9 Credit Agreement together with all agreements and documents delivered pursuant thereto or in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

1.157   **WAC9 Lender** means the lender from time to time party to the WAC9 Credit Agreement.

12

1.158   **WAC9 Purchase Agreement** that certain Equity and PPN Purchase Agreement among Waypoint Leasing (Ireland) Limited, Waypoint Leasing (Luxembourg) Euro S.à r.l., Waypoint Leasing (Luxembourg) S.à r.l., and Lombard North Central plc, dated January 25, 2019.

1.159   **WAC9 Sale Order** means the *Order (I) (A) Approving Purchase Agreement Among Debtors and Successful Credit Bidder, (B) Authorizing Sale of Certain Of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief, and (II) Authorizing Debtors to Take Certain Actions With Respect to Related Intercompany Claims in Connection Therewith* (ECF No. 440).

1.160   **WAC10 Administrative Agent** means Airbus Helicopters Financial Services Limited, as agent under the WAC10 Facility Agreement.

1.161   **WAC10 Borrower** means Debtor Waypoint Asset Co 10 Limited.

1.162   **WAC10 Cash Collateral** has the same meaning ascribed to it in the Final DIP Order.

1.163   **WAC10 Facility Agreement** means that certain *Facility Agreement*, dated as of February 21, 2017, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and, together with all other WAC10 Facility Documents, by and among the WAC10 Facility Agreement, the Parent Guarantors, with the financial institutions listed on Schedule 1 thereto, as lenders, the WAC10 Agent, and the WAC10 Security Trustee.

1.164   **WAC10 Facility Documents** means the WAC10 Facility Agreement together with all agreements and documents delivered pursuant thereto or in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

1.165   **WAC10 Lender** means the lender party to the WAC10 Facility Agreement.

1.166   **WAC10 Secured Claim** means an Allowed Secured Claim arising under the WAC10 Facility Agreement.

1.167   **WAC10 Security Trustee** means Airbus Helicopters Financial Services Limited, as security trustee under the WAC10 Facility Agreement.

1.168   **WAC10 Winddown Payment** means all of the remaining WAC10 Cash Collateral net of the return of all lease deposits to any lessee as of the Effective Date plus an additional $93,421 to be paid by the WAC10 Security Trustee on the Effective Date.

1.169   **WAC11** means Debtor Waypoint Asset Co 11.

1.170   **WAC12 Administrative Agent** means Sumitomo Mitsui Banking Corporation, Brussels Branch, as administrative agent under the WAC12 Credit Agreement.

1.171   **WAC 12 Borrowers** means Debtor Waypoint Asset Co 12 Limited.

1.172   **WAC12 Collateral Agent** means Sumitomo Mitsui Banking Corporation Europe Limited, as collateral agent under the WAC12 Credit Agreement.

1.173   **WAC12 Credit Agreement** means that certain *Credit Agreement*, dated as of August 2, 2017, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and, together with all other WAC 12 Credit Documents, by and among the WAC12 Borrowers, the WAC12 Lenders, the WAC 12 Administrative Agent, and the WAC12 Collateral Agent.

1.174   **WAC12 Credit Documents** means the WAC12 Credit Agreement together with all agreements and documents delivered pursuant thereto or in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

1.175   **WAC12 Lenders** means the lenders from time to time party to the WAC12 Credit Agreement.

1.176   **WAC12 Purchase Agreement** means that certain Credit Bid Equity Purchase Agreement among Waypoint Leasing (Ireland) Limited, Waypoint Leasing (Luxembourg) Euro S.à r.l., Waypoint Leasing (Luxembourg) S.à r.l., and the WAC12 Collateral Agent, dated February 1, 2019

1.177   **WAC12 Sale Order** means the *Order (I) (A) Approving Purchase Agreement Among Debtors and Successful Credit Bidder, (B) Authorizing Sale of Certain Of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief, and (II) Authorizing Debtors to Take Certain Actions With Respect to Related Intercompany Claims in Connection Therewith* (ECF No. 441).

1.178   **WAC14** means Debtor Waypoint Asset Co 14.

1.179   **WAC15** means Debtor Waypoint Asset Co 15.

1.180   **WACF1** means Debtor Waypoint Asset Funding 1 LLC.

1.181   **WACF2** means Debtor Waypoint Asset Funding 2 LLC.

1.182   **WAC Agents** means the WAC1 Administrative Agent, the WAC1 Collateral Agent, the WAC2 Agent, the WAC3 Administrative Agent, the WAC3 Collateral Agent, the WAC6 Agent, the WAC7 Agent, and the WAC8 Agent.

1.183   **WAC Credit Documents** means the WAC1 Credit Documents, the WAC2 Credit Documents, the WAC3 Credit Documents, the WAC6 Credit Documents, the WAC7 Credit Documents, and the WAC8 Note Purchase Documents.

1.184   **WAC Lenders** means the WAC1 Lenders, the WAC3 Lenders, the WAC6 Lenders, the WAC7 Lenders, and the WAC8 Lenders.

1.185   **WAC Lender Secured Claim** means any WAC 1 Secured Claim, WAC 3 Secured Claim, WAC 6 Secured Claim, WAC 7 Secured Claim, WAC 8 Secured Claim or WAC 10 Secured Claim.

1.186   **WAC Lender Deficiency Claim** means an Allowed unsecured Claim held by a WAC Lender in the amount of each WAC Lender's WAC Lender Secured Claim minus all Distributions made on account thereof, to such WAC Lender or the applicable WAC Agent on one or more WAC Lenders' behalf, including Distributions made pursuant to the Plan or an order of the Bankruptcy Court.

14

1.187  ***WAC Facilities*** means the WAC1 Credit Agreement, the WAC2 Credit Agreement, the WAC3 Credit Agreement, the WAC6 Credit Agreement, the WAC7 Credit Agreement, and the WAC8 Note Purchase Agreement.

1.188  ***WAC Groups*** means the WAC1 Group, the WAC2 Group, the WAC3 Group, the WAC6 Group, the WAC7 Group, and the WAC8 Group.

1.189  ***WACF1*** means Debtor Waypoint Asset Funding 1 LLC.

1.190  ***WACF2*** means Debtor Waypoint Asset Funding 2 LLC.

1.191  ***WACF3*** means Debtor Waypoint Asset Funding 3 LLC.

1.192  ***WACF6*** means Debtor Waypoint Asset Funding 6 LLC.

1.193  ***WACF8*** means Debtor Waypoint Asset Funding 8 LLC.

1.194  ***WAG*** means Debtor Waypoint Asset Co Germany Limited.

1.195  ***WLUK5A*** means Debtor Waypoint Leasing UK 5A Limited.

1.196  ***Winddown Account*** means the segregated account no. XXXX1288 with Barclays held by WAC14 that was created and funded pursuant to the terms of the Final DIP Order and the Sale Orders.

1.197  ***WLIL*** means Debtor Waypoint Leasing (Ireland) Limited.

B.  **Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (iv) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (v) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.  **Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America.

D.    **Controlling Document.**

In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document). The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

**ARTICLE II       ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY CLAIMS, AND STATUTORY FEES.**

2.1.    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that the Fee Claims shall receive the treatment provided in section 2.2 of the Plan; provided further that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of operating or liquidating the business by the Debtors shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

2.2.    *Fee Claims.*

All entities seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, and (ii) shall be paid in full from the Fee Reserve Account in such amounts as are Allowed by the Bankruptcy Court (a) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Fee Claim is entered or (b) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Plan Administrator. The Plan Administrator is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for such Allowed Priority Tax Claim, Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, (b) the first Business Day after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course.

16

2.4.    ***Statutory Fees.***

On the Effective Date and thereafter as may be required, the Debtors or the Plan Administrator (as applicable) shall pay all Statutory Fees when due and payable. The obligations under this section 2.4 shall remain for each Debtor until such time as a final decree is entered closing the Chapter 11 Case for such Debtor, a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's Chapter 11 Case is entered.

## ARTICLE III    CLASSIFICATION OF CLAIMS AND INTERESTS.

3.1.    ***Classification in General.***

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided that, a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2.    ***Formation of Debtor Groups for Convenience Only.***

The Plan groups the Debtors together solely for the purposes of (i) describing treatment under the Plan in respect of Claims against and Interests in the Debtors; (ii) tabulating votes; and (iii) making Distributions. Each Debtor or group of consolidated Debtors has been assigned a number below for these purposes. The Claims against and Interests in each Debtor or consolidated group of Debtors, in turn, have been assigned separate lettered Classes based on the type of Claim or Interest involved. Accordingly, the classification of any particular Claim against or Interest in any Debtor or consolidated group of Debtors depends on the particular Debtor against which such Claim is asserted (or in which such Interest is held) and the type of Claim or Interest in question. The number will denote which Debtor or consolidated group of Debtors against which a Claim or Interest has been asserted, and the letter will denote the Class of such Claim or Interest. The numbers applicable to the various Debtor groups are as follows:

| Number | Consolidated Debtor Group or Debtor Name |
| --- | --- |
| 1 | WAC1 Group |
| 2 | WAC2 Group |
| 3 | WAC3 Group |
| 4 | WAC4 |
| 5(i) | WAC5 |
| 5(ii) | MSN 2047 Trust |
| 5(iii) | MSN 2057 Trust |
| 5(iv) | MSN 14786 Trust |

17

| Number | Consolidated Debtor Group or Debtor Name |
|---|---|
| 5(v) | WLUK5A |
| 6 | WAC6 Group |
| 7 | WAC7 Group |
| 8 | WAC8 Group |
| Intentionally Omitted | Intentionally Omitted |
| 10(i) | WAC10 |
| 10(ii) | MSN 2826 Trust |
| 10(iii) | MSN 2879 Trust |
| 10(iv) | MSN 2916 Trust |
| 11(i) | WAC11 |
| 11(ii) | WAG |
| 11(iii) | MSN 2905 Trust |
| Intentionally Omitted | Intentionally Omitted |
| Intentionally Omitted | Intentionally Omitted |
| 14(i) | WAC14 |
| 14(ii) | WAC5B |
| 15 | WAC15 |
| 16 | WLIL |
| 17 | LuxCo |
| 18 | LuxCo Euro |
| 19 | Holdings |
| 20 | Services |

Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor

for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets; and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities after the Effective Date until liquidated, dissolved, or otherwise terminated.

### 3.3. *Summary of Classification.*

Claims against and Interests in each of the Debtors are divided into lettered Classes. Not all of the Classes apply to every Debtor or Debtor group, and consequently, not all of the lettered Classes appear in the case of each Debtor or group of consolidated Debtors. For purposes of voting, Claims within the Class shall be counted for each applicable Debtor or group of consolidated Debtors. Whenever such a Class of Claims or Interests is relevant to a particular Debtor, that class of Claims or Interests shall be grouped under the appropriate lettered Class from the following list:

| Class | Description |
|---|---|
| Class A | Class A consists of Priority Non-Tax Claims against the applicable Debtor or consolidated group of Debtors |
| Class B | Class B consists of the Other Secured Claims against the applicable Debtor or consolidated group of Debtors |
| Class C | Class C consists of WAC Lender Secured Claims against the applicable Debtor or consolidated group of Debtors |
| Class D | Class D consists of all General Unsecured Claims against the applicable Debtor or consolidated group of Debtors |
| Class E | Class E consists of Intercompany Claims against the applicable Debtor or consolidated group of Debtors |
| Class F | Class F consists of Other Interests |
| Class G | Class G consists of the Holdings Interests |

The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan; (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (iii) deemed to accept or reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in sections 2.1 and 2.3 of the Plan. All of the potential Classes for the Debtors are set forth in the Plan. Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in section 3.6 of the Plan.

19

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| Classes 1A through 20A | Priority Non-Tax Claims against the Debtors | Unimpaired | No (presumed to accept) |
| Classes 1B through 20B | Other Secured Claims against the Debtors | Unimpaired | No (presumed to accept) |
| Class 1C | WAC1 Secured Claims against the WAC1 Group | Impaired | Yes |
| Class 2C | WAC2 Secured Claims against the WAC2 Group | Impaired | Yes |
| Class 3C | WAC3 Secured Claims against the WAC3 Group | Impaired | Yes |
| Class 6C | WAC6 Secured Claims against the WAC6 Group | Impaired | Yes |
| Class 7C | WAC7 Secured Claims against the WAC7 Group | Impaired | Yes |
| Class 8C | WAC8 Secured Claims against the WAC8 Group | Impaired | Yes |
| Class 10C | WAC10 Secured Claims against WAC10 | Impaired | Yes |
| Class 1D | General Unsecured Claims against the WAC1 Group | Impaired | No (presumed to reject) |
| Class 2D | General Unsecured Claims against the WAC2 Group | Impaired | No (presumed to reject) |
| Class 3D | General Unsecured Claims against the WAC3 Group | Impaired | No (presumed to reject) |
| Class 4D | General Unsecured Claims against the WAC4 | Impaired | Yes |
| Class 5(i)D | General Unsecured Claims against WAC5 | Impaired | Yes |
| Class 5(ii)D | General Unsecured Claims against MSN 2047 Trust | Impaired | Yes |
| Class 5(iii)D | General Unsecured Claims against MSN 2057 Trust | Impaired | Yes |
| Class 5(iv)D | General Unsecured Claims against MSN 14786 Trust | Impaired | Yes |
| Class 5(v)D | General Unsecured Claims against WLUK5A | Impaired | Yes |
| Class 6D | General Unsecured Claims against the WAC6 Group | Impaired | No (presumed to reject) |

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 7D | General Unsecured Claims against the WAC7 Group | Impaired | No (presumed to reject) |
| Class 8D | General Unsecured Claims against the WAC8 Group | Impaired | No (presumed to reject) |
| Class 10(i)D | General Unsecured Claims against WAC10 | Impaired | Yes |
| Class 10(ii)D | General Unsecured Claims against MSN 2826 Trust | Impaired | Yes |
| Class 10(iii)D | General Unsecured Claims against MSN 2879 Trust | Impaired | Yes |
| Class 10(iv)D | General Unsecured Claims against MSN 2916 Trust | Impaired | Yes |
| Class 11(i)D | General Unsecured Claims against WAC11 | Impaired | Yes |
| Class 11(ii)D | General Unsecured Claims against WAG | Impaired | Yes |
| Class 11(iii)D | General Unsecured Claims against MSN 2905 Trust | Impaired | Yes |
| Class 14(i)D | General Unsecured Claims against WAC14 | Impaired | Yes |
| Class 14(ii)D | General Unsecured Claims against WAC5B | Impaired | Yes |
| Class 15D | General Unsecured Claims against WAC15 | Impaired | Yes |
| Class 16D | General Unsecured Claims against WLIL | Impaired | Yes |
| Class 17D | General Unsecured Claims against LuxCo | Impaired | Yes |
| Class 18D | General Unsecured Claims against LuxCo Euro | Impaired | Yes |
| Class 19D | General Unsecured Claims against Holdings | Impaired | Yes |
| Class 20D | General Unsecured Claims against Services | Impaired | Yes. |
| Classes 1E through 20E | Intercompany Claims against the Debtors | Impaired | No (presumed to accept as Plan proponents) |
| Classes 1F through 18F, and 20F | Other Interests in the Debtors | Unimpaired | No (presumed to accept) |
| Class 19G | Holdings Interests | Impaired | No (presumed to reject) |

3.4.   ***Special Provision Governing Unimpaired Claims.***

Nothing under the Plan shall affect the rights of the Debtors, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.5.   ***Elimination of Vacant Classes.***

Any Class of Claims against or Interests in the Debtors or a consolidated group of Debtors that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

3.6.   ***Voting Classes; Presumed Acceptance by Non-Voting Classes.***

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by such Class.

3.7.   ***Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of Bankruptcy Code.***

The Debtors shall seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with section 13.3 of the Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV   TREATMENT OF CLAIMS AND INTERESTS.

4.1.   ***Priority Non-Tax Claims (Classes 1A through 20A).***

(a)   *Classification*: Classes 1A through 20A consist of Priority Non-Tax Claims.

(b)   *Treatment*: Except to the extent that a holder of an Allowed Priority Non-Tax Claim has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim, payable on or as soon as reasonably practical after the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon as reasonably practical thereafter; provided, however, that Allowed Priority Non-Tax Claims that arise in the ordinary course of the Debtors' business and which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

(c)   *Voting*: Classes 1A through 20A are Unimpaired, and the holders of Allowed Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept

22

or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

4.2.    ***Other Secured Claims (Classes 1B through 20B).***

(a)    *Classification*:  Classes 1B through 20B consist of the Other Secured Claims.  To the extent that Other Secured Claims are secured by different Collateral or different interests in the same Collateral, such Claims shall be treated as separate subclasses of Class 1B through 20B.

(b)    *Treatment*:  Except to the extent that a holder of an Allowed Other Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors or the Plan Administrator, in full and final satisfaction of such Claim, payable on, or as soon as reasonably practical after, the later of the Effective Date and the date on which such Other Secured Claim becomes an Allowed Other Secured Claim (i) payment in full in Cash (from proceeds from the collateral securing such Allowed Other Secured Claim); or (ii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

(c)    *Voting*:  Classes 1B through 20B are Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

4.3.    ***WAC1 Secured Claims against the WAC1 Group (Class 1C).***

(a)    *Classification*:  Class 1C consists of WAC1 Secured Claims against the WAC1 Group.

(b)    *Treatment*:  The WAC1 Administrative Agent on behalf of the WAC1 Lenders shall receive on the Effective Date or as soon as reasonably practicable thereafter, but no later than the Initial Distribution Date, payment in Cash of all funds held by the members of the WAC1 Group (including the applicable Holdback Amount).

(c)    *Voting*:  Class 1C is Impaired, and the holders of WAC1 Secured Claims against the WAC1 Group are entitled to vote to accept or reject the Plan.

4.4.    ***WAC2 Secured Claims against the WAC2 Group (Class 2C).***

(a)    *Classification*:  Class 2C consists of WAC2 Secured Claims against the WAC2 Group.

(b)    *Treatment*:  The WAC2 Administrative Agent on behalf of the WAC2 Lenders shall receive on the Effective Date or as soon as reasonably practicable thereafter, but no later than the Initial Distribution Date, payment in Cash of all funds held by the members of the WAC2 Group.

(c)    *Voting*:  Class 2C is Impaired, and the holders of WAC2 Secured Claims against the WAC2 Group are entitled to vote to accept or reject the Plan.

4.5.    ***WAC3 Secured Claims against the WAC3 Group (Class 3C).***

(a)    *Classification*:  Class 3C consists of WAC3 Secured Claims against the WAC3 Group.

(b)    *Treatment*:  The WAC3 Administrative Agent on behalf of the WAC3 Lenders shall receive on the Effective Date or as soon as reasonably practicable thereafter, but no later than the Initial Distribution Date, payment in Cash of all funds held by the members of the WAC3 Group (including the applicable Holdback Amount).

(c)    *Voting*:  Class 3C is Impaired, and the holders of WAC3 Secured Claims against the WAC3 Group are entitled to vote to accept or reject the Plan.

4.6.    ***WAC6 Secured Claims against the WAC6 Group (Class 6C).***

(a)    *Classification*:  Class 6C consists of WAC6 Secured Claims against the WAC6 Group.

(b)    *Treatment*:  The WAC6 Administrative Agent on behalf of the WAC6 Lenders shall receive on the Effective Date or as soon as reasonably practicable thereafter, but no later than the Initial Distribution Date, payment in Cash of all funds held by the members of the WAC6 Group (including the applicable Holdback Amount).

(c)    *Voting*:  Class 6C is Impaired, and the holders of WAC6 Secured Claims against the WAC6 Group are entitled to vote to accept or reject the Plan.

4.7.    ***WAC7 Secured Claims against the WAC7 Group (Class 7C).***

(a)    *Classification*:  Class 7C consists of WAC7 Secured Claims against the WAC7 Group.

(b)    *Treatment*:  The WAC7 Administrative Agent on behalf of the WAC7 Lenders shall receive on the Effective Date or as soon as reasonably practicable thereafter, but no later than the Initial Distribution Date, payment in Cash of all funds held by the members of the WAC7 Group (including the applicable Holdback Amount).

(c)    *Voting*:  Class 7C is Impaired, and the holders of WAC7 Secured Claims against the WAC7 Group are entitled to vote to accept or reject the Plan.

4.8.    ***WAC8 Secured Claims against the WAC8 Group (Class 8C).***

(a)    *Classification*:  Class 8C consists of WAC8 Secured Claims against the WAC8 Group.

(b)    *Treatment*:  The WAC8 Administrative Agent on behalf of the WAC8 Lenders shall receive on the Effective Date or as soon as reasonably practicable thereafter, but no later than the Initial Distribution Date, payment in Cash of all funds held by the members of the WAC8 Group (including the applicable Holdback Amount).

(c)     *Voting*:  Class 8C is Impaired, and the holders of WAC8 Secured Claims against the WAC8 Group are entitled to vote to accept or reject the Plan.

4.9.    ***WAC10 Secured Claims against WAC10 (Class 10C).***

(a)     *Classification*:  Class 10C consists of WAC10 Secured Claims against WAC10.

(b)     *Treatment*:  The WAC10 Administrative Agent on behalf of the WAC10 Lender shall receive, on the Effective Date, or as soon as reasonably practicable thereafter, subject to the terms of the Plan, the WAC10 Collateral in full and final satisfaction of the WAC10 Secured Claims.

(c)     *Voting*:  Class 10C is Impaired, and the holder of the WAC10 Secured Claims against WAC10 is entitled to vote to accept or reject the Plan.

4.10.    ***General Unsecured Claims against the WAC1 Group (Class 1D).***

(a)     *Classification*:  Class 1D consists of General Unsecured Claims against the WAC1 Group.

(b)     *Treatment*:  Each General Unsecured Claim against the WAC1 Group shall receive no distribution on account of such General Unsecured Claim.

(c)     *Voting*:  Class 1D is Impaired, and the holders of General Unsecured Claims against the WAC1 Group are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.11.    ***General Unsecured Claims against the WAC2 Group (Class 2D).***

(a)     *Classification*:  Class 2D consists of General Unsecured Claims against the WAC2 Group.

(b)     *Treatment*:  Each General Unsecured Claim against the WAC2 Group shall receive no distribution on account of such General Unsecured Claim.

(c)     *Voting*:  Class 2D is Impaired, and the holders of General Unsecured Claims against the WAC2 Group are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.12.    ***General Unsecured Claims against the WAC3 Group (Class 3D).***

(a)     *Classification*:  Class 3D consists of General Unsecured Claims against the WAC3 Group.

(b)     *Treatment*:  Each General Unsecured Claim against the WAC3 Group shall receive no distribution on account of such General Unsecured Claim.

(c)     *Voting*:  Class 3D is Impaired and the holders of General Unsecured Claims against the WAC3 Group are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

25

4.13.    ***General Unsecured Claims against WAC4 (Class 4D).***

  (a) *Classification*:  Class 4D consists of General Unsecured Claims against WAC4.

  (b) *Treatment*:  Only to the extent there is residual value available for distribution from WAC4 after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against WAC4 shall receive Cash in the amount of its Pro Rata share of any such residual value.

  (c) *Voting*:  Class 4D is Impaired, and holders of General Unsecured Claims against WAC4 are entitled to vote to accept or reject the Plan.

4.14.    ***General Unsecured Claims against WAC5 (Class 5(i)D).***

  (a) *Classification*:  Class 5(i)D consists of General Unsecured Claims against WAC5

  (b) *Treatment*:  Only to the extent there is residual value available for distribution from WAC5 after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against WAC5 shall receive Cash in the amount of its Pro Rata share of any such residual value.

  (c) *Voting*:  Class 5(i)D is Impaired, and holders of General Unsecured Claims against WAC5 are entitled to vote to accept or reject the Plan.

4.15.    ***General Unsecured Claims against MSN 2047 Trust (Class 5(ii)D).***

  (a) *Classification*:  Class 5(ii)D consists of General Unsecured Claims against MSN 2047 Trust.

  (b) *Treatment*:  Only to the extent there is residual value available for distribution from MSN 2047 Trust after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against MSN 2047 Trust shall receive Cash in the amount of its Pro Rata share of any such residual value.

  (c) *Voting*:  Class 5(ii)D is Impaired, and holders of General Unsecured Claims against MSN 2047 Trust are entitled to vote to accept or reject the Plan.

4.16.    ***General Unsecured Claims against MSN 2057 Trust (Class 5(iii)D).***

  (a) *Classification*:  Class 5(iii)D consists of General Unsecured Claims against MSN 2057 Trust.

  (b) *Treatment*:  Only to the extent there is residual value available for distribution from MSN 2057 Trust after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against MSN 2057 Trust shall receive Cash in the amount of its Pro Rata share of any such residual value.

  (c) *Voting*:  Class 5(iii)D is Impaired, and holders of General Unsecured Claims against MSN 2057 Trust are entitled to vote to accept or reject the Plan.

4.17.    ***General Unsecured Claims against MSN 14786 Trust (Class 5(iv)D).***

(a)    *Classification*: Class 5(iv)D consists of General Unsecured Claims against MSN 14786 Trust.

(b)    *Treatment*: Only to the extent there is residual value available for distribution from MSN 14786 Trust after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against MSN 14786 Trust shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*: Class 5(iv)D is Impaired, and holders of General Unsecured Claims against MSN 14786 Trust are entitled to vote to accept or reject the Plan.

4.18.    ***General Unsecured Claims against WLUK5A (Class 5(v)D).***

(a)    *Classification*: Class 5(v)D consists of General Unsecured Claims against WLUK5A.

(b)    *Treatment*: Only to the extent there any residual value available for distribution from WLUK5A after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against WLUK5A shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*: Class 5(v)D is Impaired, and holders of General Unsecured Claims against WLUK5A are entitled to vote to accept or reject the Plan.

4.19.    ***General Unsecured Claims against the WAC6 Group (Class 6D).***

(a)    *Classification*: Class 6D consists of General Unsecured Claims against the WAC6 Group.

(b)    *Treatment*: Each General Unsecured Claim against the WAC6 Group shall receive no distribution on account of such General Unsecured Claim.

(c)    *Voting*: Class 6D is Impaired, and the holders of General Unsecured Claims against the WAC6 Group are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.20.    ***General Unsecured Claims against the WAC7 Group (Class 7D).***

(a)    *Classification*: Class 7D consists of General Unsecured Claims against the WAC7 Group.

(b)    *Treatment*: Each General Unsecured Claim against the WAC7 Group shall receive no distribution on account of such General Unsecured Claim.

(c)    *Voting*: Class 7D is Impaired, and the holders of General Unsecured Claims against the WAC7 Group are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.21.    ***General Unsecured Claims against the WAC8 Group (Class 8D).***

(a)    *Classification*:  Class 8D consists of General Unsecured Claims against the WAC8 Group.

(b)    *Treatment*:  Each General Unsecured Claim against the WAC8 Group shall receive no distribution on account of such General Unsecured Claim.

(c)    *Voting*:  Class 8D is Impaired, and the holders of General Unsecured Claims against the WAC8 Group are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.22.    ***General Unsecured Claims against WAC10 (Class 10(i)D).***

(a)    *Classification*:    Class 10(i)D consists of General Unsecured Claims against WAC10.

(b)    *Treatment*:  Only to the extent there is residual value available for distribution from WAC10 after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against WAC10 shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*:  Class 10(i)D is Impaired, and the holders of General Unsecured Claims against WAC10 are entitled to vote to accept or reject the Plan.

4.23.    ***General Unsecured Claims against MSN 2826 Trust (Class 10(ii)D).***

(a)    *Classification*:  Class 10(ii)D consists of General Unsecured Claims against MSN 2826 Trust.

(b)    *Treatment*:  Only to the extent there is residual value available for distribution from MSN 2826 Trust after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against MSN 2826 Trust shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*:  Class 10(ii)D is Impaired, and the holders of General Unsecured Claims against MSN 2826 Trust are entitled to vote to accept or reject the Plan.

4.24.    ***General Unsecured Claims against MSN 2879 Trust (Class 10(iii)D).***

(a)    *Classification*:  Class 10(iii)D consists of General Unsecured Claims against MSN 2879 Trust.

(b)    *Treatment*:  Only to the extent there is residual value available for distribution from MSN 2879 Trust after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against MSN 2879 Trust shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*:  Class 10(iii)D is Impaired, and the holders of General Unsecured Claims against MSN 2879 Trust are entitled to vote to accept or reject the Plan.

4.25.    ***General Unsecured Claims against MSN 2916 Trust (Class 10(iv)D).***

(a)    *Classification*:  Class 10(iv)D consists of General Unsecured Claims against MSN 2916 Trust.

(b)    *Treatment*:  Only to the extent there is residual value available for distribution from MSN 2916 Trust after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against MSN 2916 Trust shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*:  Class 10(iv)D is Impaired, and the holders of General Unsecured Claims against MSN 2916 Trust are entitled to vote to accept or reject the Plan.

4.26.    ***General Unsecured Claims against WAC11 (Class 11(i)D).***

(a)    *Classification*:    Class 11(i)D consists of General Unsecured Claims against WAC11.

(b)    *Treatment*:  Only to the extent there is residual value available for distribution from WAC11 after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against WAC11 shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*:  Class 11(i)D is Impaired, and the holders of General Unsecured Claims against WAC11 are entitled to vote to accept or reject the Plan.

4.27.    ***General Unsecured Claims against WAG (Class 11(ii)D).***

(a)    *Classification*:  Class 11(ii)D consists of General Unsecured Claims against WAG.

(b)    *Treatment*:  Only to the extent there is residual value available for distribution from WAG after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against WAG shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*:  Class 11(ii)D is Impaired, and the holders of General Unsecured Claims against WAG are entitled to vote to accept or reject the Plan.

4.28.    ***General Unsecured Claims against MSN 2905 Trust (Class 11(iii)D).***

(a)    *Classification*:  Class 11(iii)D consists of General Unsecured Claims against MSN 2905 Trust.

(b)    *Treatment*:  Only to the extent there is residual value available for distribution from MSN 2905 Trust after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against MSN 2905 Trust shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*:  Class 11(iii)D is Impaired, and the holders of General Unsecured Claims against MSN 2905 Trust are entitled to vote to accept or reject the Plan.

4.29.    ***General Unsecured Claims against WAC14 (Class 14(i)D).***

(a)    *Classification*:  Class 14(i)D consists of General Unsecured Claims against WAC14.

(b)    *Treatment*:  Only to the extent there is residual value available for distribution from WAC14 after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against WAC14 shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*:  Class 14(i)D is Impaired, and the holders of General Unsecured Claims against WAC14 are entitled to vote to accept or reject the Plan.

4.30.    ***General Unsecured Claims against WAC5B (Class 14(ii)D).***

(a)    *Classification*:  Class 14(ii)D consists of General Unsecured Claims against WAC5B.

(b)    *Treatment*:  Only to the extent there is residual value available for distribution from WAC5B after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against WAC5B shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*:  Class 14(ii)D is Impaired, and the holders of General Unsecured Claims against WAC5B are entitled to vote to accept or reject the Plan.

4.31.    ***General Unsecured Claims against WAC15 (Class 15D).***

(a)    *Classification*:  Class 15D consists of General Unsecured Claims against WAC15.

(b)    *Treatment*:  Only to the extent there is residual value available for distribution from WAC15 after Statutory Fees, Allowed Administrative Claims and Priority Tax Claims are paid in full, each Allowed General Unsecured Claim against WAC15 shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*:  Class 15D is Impaired, and the holders of General Unsecured Claims against WAC15 are entitled to vote to accept or reject the Plan.

4.32.    ***General Unsecured Claims against WLIL (Class 16D).***

(a)    *Classification*:  Class 16D consists of General Unsecured Claims against WLIL.

(b)    *Treatment*:  Only to the extent there is residual value available for distribution from WLIL after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against WLIL shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)    *Voting*:  Class 16D is Impaired, and the holders of General Unsecured Claims against WLIL are entitled to vote to accept or reject the Plan.

4.33.    ***General Unsecured Claims against LuxCo (Class 17D).***

(a)    *Classification*:  Class 17D consists of General Unsecured Claims against LuxCo.

(b)  *Treatment*:  Only to the extent there is residual value available for distribution from the LuxCo after Statutory Fees, Allowed Administrative Claims and Allowed Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against LuxCo shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)  *Voting*:  Class 17D is Impaired, and the holders of General Unsecured Claims against LuxCo are entitled to vote to accept or reject the Plan.

4.34.  ***General Unsecured Claims against LuxCo Euro (Class 18D).***

(a)  *Classification*:  Class 18D consists of General Unsecured Claims against LuxCo Euro.

(b)  *Treatment*:  Only to the extent there is residual value available for distribution from the LuxCo Euro after Statutory Fees, Allowed Administrative Claims and Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against LuxCo Euro shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)  *Voting*:  Class 18D is Impaired, and the holders of General Unsecured Claims against LuxCo Euro are entitled to vote to accept or reject the Plan.

4.35.  ***General Unsecured Claims against Holdings (Class 19D).***

(a)  *Classification*:  Class 19D consists of General Unsecured Claims against Holdings.

(b)  *Treatment*:  Only to the extent there is residual value available for distribution from Holdings after Statutory Fees, Allowed Administrative Claims and Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against Holdings shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)  *Voting*:  Class 19D is Impaired, and the holders of General Unsecured Claims against Holdings are entitled to vote to accept or reject the Plan.

4.36.  ***General Unsecured Claims against Services (Class 20D).***

(a)  *Classification*:  Class 20D consists of General Unsecured Claims against Services.

(b)  *Treatment*:  Only to the extent there is residual value available for distribution from Services after Statutory Fees, Allowed Administrative Claims and Priority Tax Claims are paid in full, each holder of an Allowed General Unsecured Claim against Services shall receive Cash in the amount of its Pro Rata share of any such residual value.

(c)  *Voting*:  Class 20D is Impaired, and the holders of General Unsecured Claims against Services are entitled to vote to accept or reject the Plan.

4.37.  ***Intercompany Claims against the Debtors (Class 1E through 20E).***

(a)  *Classification*:  Classes 1E through 20E consists of Intercompany Claims against the Debtors.

(b)  *Treatment*:  holders of Intercompany Claims shall not receive or retain any property under the Plan on account of such Claims.

31

(c)    *Voting*:  Classes 1E through 20E are impaired.  As proponents of the Plan, the holders of Intercompany Claims in Classes 1E through 20E are conclusively presumed to accept the Plan.

4.38.    ***Other Interests (Class 1F through 18F, and 20F).***

(a)    *Classification*:  Classes 1F through 18F, and 20F consists of Other Interests.

(b)    *Treatment*:  Each Other Interest shall be Reinstated on the Effective Date and shall be entitled to any residual value of the applicable Debtor after such Debtor repays in full all Allowed Claims against such Debtor. Unless otherwise determined by the Plan Administrator, on the date that each  Debtor's case is closed in accordance with section 5.10 of the Plan, the Other Interests shall be deemed cancelled and of no further force and effect provided that such cancellation does not adversely impact the Debtors' Estates.

(c)    *Voting*:  Classes 1F through 18F, and 20F are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Other Interests are not entitled to vote to accept or reject the Plan.

4.39.    ***Holdings Interests (Class 19G).*** [2]

(a)    *Classification*:  Class 19G consists of Holdings Interests.

(b)    *Treatment*:  On the Effective Date, all the Holdings Interests shall be surrendered, cancelled, transferred and/or redeemed and new shares of Holdings' common stock shall be issued/transferred to the Plan Administrator (sufficient to give the Plan Administrator control over Holdings) who will hold such shares for the benefit of the former holders of Holdings Interests with their former economic entitlements.  Each holder of a Holdings Interest shall neither receive nor retain any property or interest in property on account of such Holdings Interest.

(c)    *Voting*:  Class 19G is Impaired by the Plan, and the holders of Holdings Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the holders of Holdings Interests are not entitled to vote to accept or reject the Plan.

## ARTICLE V          MEANS FOR IMPLEMENTATION.

5.1.    ***Joint Chapter 11 Plan.***

The Plan is a joint chapter 11 plan for each of the Debtors.

5.2.    ***Severability.***

The Plan for each Debtor shall be severable and independent from each other; provided however, that each of the WAC Groups' Plans may not be confirmed and the Effective Date shall not occur unless the Plan for each of the Parent Guarantors are confirmed and the Effective Date occurs

---

[2] Because Class G consists solely of Holdings Interests, there are no Classes 1G through 18G or Class 20G.

simultaneously with the Confirmation Date and Effective Date for the WAC Groups. For the avoidance of doubt, the Plans for each of the WAC Groups shall be severable and independent from each other.

5.3. ***Plan Oversight Board.***

(a) *Appointment*. The Plan Oversight Board members shall be listed in the Plan Supplement. If a member resigns from the Plan Oversight Board, the respective party that appointed such resigning member shall have the exclusive right to appoint a substitute member for the resigned member.

(b) *Authority.* The Plan Oversight Board shall be responsible for overseeing and directing the Plan Administrator and his implementation and administration of the Plan; provided that the Plan Administrator shall perform the day-to-day activities. The specific terms of the Plan Oversight Board's supervision of the Plan Administrator will be set forth in the Plan Supplement.

5.4. ***Plan Administrator.***

(a) *Appointment*. William Transier shall serve as Plan Administrator for each of the Debtors, as of the Effective Date.

(b) *Authority*. Subject to section 5.3, upon the Effective Date, the Plan Administrator shall have the authority and right on behalf of each of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i) subject to Bankruptcy Court approval when necessary, except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

(ii) make Distributions to holders of Allowed Claims in accordance with the Plan;

(iii) exercise his reasonable business judgment to direct and control the winddown, liquidation, sale and/or abandoning of the remaining assets of the Debtors under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(iv) exercise his reasonable business judgment to direct and control the dissolution, liquidation, striking off, or similar action to winddown each of the Debtors and their direct and indirect non-Debtor wholly owned subsidiaries;

(v) prepare, file, and prosecute any necessary filings and/or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administer as described herein;

(vi) subject to Bankruptcy Court approval when necessary, prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Debtors;

(vii)    make payments to existing retained professionals (consistent with the terms of any Bankruptcy Court order approving such retention and subject to any applicable Bankruptcy Court approval requirements), as well as other professionals who may be engaged after the Effective Date;

(viii)    retain professionals to assist in performing his duties under the Plan;

(ix)    maintain the books and records and accounts of the Debtors;

(x)    invest Cash of the Debtors, including any Cash proceeds realized from the liquidation of any assets of the Debtors, including any Causes of Action, and any income earned thereon;

(xi)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator; provided however, at least ten (10) business days prior to paying any professional invoice in excess of $50,000 from the Winddown Account, the Plan Administrator shall provide a copy of a summary invoice for such professional with the WAC Lenders;

(xii)    administer each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Petition Date through the liquidation of such Debtor as determined under applicable tax laws, and (iii) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xiii)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required hereunder, by any Governmental Unit or applicable law;

(xiv)    exercise any rights of the Debtors under the Transition Services Agreement and pay for such services;

(xv)    pay Statutory Fees and file reports in accordance with sections 2.4 and 13.1 of the Plan; and

(xvi)    perform other duties and functions that are consistent with the implementation of the Plan.

(c)    *Indemnification.*  Each of the Debtors shall indemnify and hold harmless William Transier solely in his capacity as the Plan Administrator for any losses incurred in such capacity, except to the extent such losses were the result of the Plan Administrator's fraud, gross negligence, willful misconduct or criminal conduct.

5.5.    ***Corporate Action.***

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by

34

the Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates.

5.6.    *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

5.7.    *Withholding and Reporting Requirements.*

(a)    *Withholding Rights.* In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)    *Forms.* Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Plan Administrator or such other Person designated by the Plan Administrator (which entity shall subsequently deliver to the Plan Administrator or such other Person any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt under the tax code and so notifies the Plan Administrator or such other Person. If such request is made by the Plan Administrator or such other Person designated by the Plan Administrator and the holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Debtors and any Claim in respect of such distribution shall be discharged and forever barred from assertion against any Debtor and its respective property.

5.8.    *Exemption from Certain Transfer Taxes.*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post Confirmation sale by any Debtor, or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any stamp tax, or similar tax, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and

accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.9.    ***Preservation of Rights of Action.***

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action. On and after the Effective Date, the Plan Administrator may pursue such Causes of Action, in consultation with the WAC Lenders prior to pursuit thereof. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Plan Administrator will not pursue any and all available Causes of Action against them. On and after the Effective Date, the Plan Administrator, shall have, including through its authorized agents or representatives, the exclusive right, and authority to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without further notice to or action, order, or approval of the Bankruptcy Court.

5.10.    ***Closing of Chapter 11 Cases.***

(a)    After the Chapter 11 Case of a Debtor has been fully administered, the Plan Administrator shall promptly seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

(b)    Unless the Bankruptcy Court orders otherwise, within fourteen (14) days after any Debtor is fully administered, the Plan Administrator will file and serve upon the U.S. Trustee a closing report substantially in the form available on the Bankruptcy Court's website in accordance with Local Rule 3022-1.

5.11.    ***Notice of Effective Date.***

On the Effective Date, the Plan Administrator shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

5.12.    ***Deemed Substantive Consolidation of WAC Groups for Voting and Distribution Purposes.***

(a)    On and after the Effective Date, solely for Distribution purposes (i) all assets and liabilities of each member of a WAC Group shall be treated as though they were pooled; (ii) each Claim filed or to be filed against any member of a WAC Group shall be deemed filed as a single Claim against, and a single obligation of, the WAC Group; (iii) any Claims on account of a guarantee provided by a Debtor within a WAC Group of the obligations of another member of a WAC Group shall be eliminated so that any Claim against any member of a WAC Group and any Claim based upon a guarantee thereof by any other member of a WAC Group shall be treated as one consolidated Claim against the WAC Group; and (iv) any joint or several liability of any of the members of a WAC Group shall be one obligation of the WAC Group and any Claims based upon such joint or several liability shall be treated as one consolidated Claim against the WAC Group.

(b)    The deemed substantive consolidation of the WAC Groups under the Plan shall not (other than for purposes related to funding Distributions under the Plan) affect (i) the legal and organizational structure of the Debtors; (ii) Executory Contracts that were entered into during the Chapter

36

11 Cases or that have been or will be assumed or rejected; (iii) the Debtors' ability to subordinate or otherwise challenge Claims on an entity-by-entity basis; (iv) any Causes of Action or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of the Estates of the WAC Groups; and (v) distributions to the Debtors from any insurance policies or the proceeds thereof. Notwithstanding the limited substantive consolidation called for herein, each and every Debtor shall remain responsible for the payment of the Statutory Fees until each Debtor's particular case is closed, dismissed or converted. For the avoidance of doubt, nothing in this section 5.12 shall impact any General Unsecured Claim against a Debtor that is not part of a WAC Group.

5.13.    *Cooperation and Access.*

From and after the Effective Date, in connection with any reasonable business purpose, or as is necessary in connection with implementing the Plan and administering the Chapter 11 Cases, the Plan Administrator will, (a) afford the Plan Oversight Board access to the Plan Administrator, and the Debtors, properties, books and records, and (b) furnish to the Plan Oversight Board financial and other information as may be reasonably necessary to assist the Plan Oversight Board

5.14.    *Winddown Account.*

(a)    The funds in the Winddown Account shall remain the property of the respective Debtors, subject to the WAC Lenders, WAC 9 Lenders, and WAC12 Lender's reversionary interest in the funds. The Plan Administrator may use the funds in the Winddown Account to fund the expenses of the respective Debtors and their non-Debtor wholly-owned direct and indirect non-Debtor subsidiaries incurred in conducting the activities described in section 6.5 of the Plan. Any funds remaining in the Winddown Account after the Debtors have completed the activities described in section 6.5 of the Plan shall be distributed by the Debtors to the WAC Lenders, WAC9 Lender and WAC12 Lenders in the proportion of funds each such lender contributed and/or agreed to allocate to the Winddown Account (including by contributing funds to the Winddown Account), as adjusted based on the actual direct costs and allocated costs (based on net book value) charged (or deemed to be charged) to the relevant Debtor entities in connection with amounts paid out of the Winddown Account.

(b)    Unless, otherwise agreed to between the WAC Lenders and the Plan Administrator, the Plan Administrator shall provide a monthly report to the WAC Lenders on the funds remaining in the Winddown Account and the recent disbursement activity from the Winddown Account.

5.15.    *Fee Reserve Account.*

Notwithstanding anything to the contrary in the Plan, funds in the Fee Reserve Account shall not be distributed on account of any Claims or Interests other than to pay Allowed Fee Claims to the extent covered by the Carve Out; provided however, that upon payment of all amounts that are properly paid from the Fee Reserve Account, the Debtors shall distribute to each WAC Lender, WAC9 Lender, and WAC12 Lenders in the proportion of funds each such lender contributed and/or agreed to allocate to the Fee Reserve Account, as adjusted based on the actual direct costs and allocated costs (based on net book value) charged (or deemed to be charged) to the relevant Debtor entities in connection with amounts paid out of the Fee Reserve Account. The funds in the Fee Reserve Account shall be free of all Liens, charges or other encumbrances and shall remain property of the respective Debtors.

5.16.    *Settlement of Certain Matters with Airbus Helicopters.*

(a)    Pursuant to Bankruptcy Code sections 1123(a)(5) and 1123(b)(3) and Bankruptcy Rule 9019, the Plan incorporates a comprehensive compromise and settlement by and among the Debtors, the WAC10 Administrative Agent, the WAC10 Security Trustee, and the WAC10 Lender of issues and disputes relating to the Settled WAC10 Claims.  In furtherance thereof, on the Effective Date of the Plan Airbus Helicopters Financial Services Limited, for itself as Lender, Administrative Agent and Security Trustee shall make or otherwise permit the Debtors to transfer (as applicable) WAC10 Winddown Payment into the Winddown Account in full and final satisfaction of the WAC10 Settled Claims.  Provided that on the Effective Date or as soon as reasonably practicable thereafter, title to the aircraft constituting the WAC10 Collateral, and related equipment or spare parts shall have been delivered to the WAC10 Administrative Agent, the WAC10 Security Trustee, and the WAC10 Lender free and clear of any interests of the Debtors.  Upon deposit of the WAC10 Winddown Payment, the Debtors shall release any claim for any costs or expenses against the WAC10 Administrative Agent, the WAC10 Security Trustee, and the WAC10 Lender with respect to the surcharge of their collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise. The funds constituting the WAC10 Winddown Payment shall not (i) be subject to the Intercompany Protection Liens, the Intercompany Protection Claims, DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, or any claims, liens or security interests granted to any other party (including the lenders and agents under the Non-Participating WAC Facilities) (each as defined in the Final DIP Order), (ii) constitute DIP Collateral (as defined in the Final DIP Order), (iii) constitute WAC Specific Collateral (as defined in the Final DIP Order), (iv) constitute WAC Collateral (as defined in the Final DIP Order), or (v) constitute Cash Collateral (as defined in the Final DIP Order).

(b)    The Plan accordingly represents a full, final, integrated, complete, and good faith compromise, settlement, release, and resolution of, among other matters, disputes and potential litigation among the Debtors, the WAC10 Administrative Agent, WAC10 Security Trustee and the WAC10 Lender regarding (x) the Settled WAC10 Claims, including: (i) the treatment under this Plan of the WAC10 Collateral, including WAC10 Cash Collateral and (ii) any Causes of Action arising out of  the Final DIP Order that the Debtors could potentially assert against the WAC10 Administrative Agent, the WAC10 Security Trustee, and the WAC10 Lender or any of their affiliates.  This comprehensive compromise and settlement concerning such Settled WAC10 Claims will be binding on the Debtors, the WAC10 Administrative Agent, the WAC10 Security Trustee, the WAC10 Lender, any successor Chapter 7 Trustee and the Plan Administrator.   This comprehensive compromise and settlement is a fundamental part of the Plan. As such, the releases and settlements effected under the Plan will be operative as of the Effective Date and subject to enforcement by the Bankruptcy Court from and after the Effective Date.

## ARTICLE VI    CORPORATE GOVERNANCE & WINDDOWN

6.1.    *Corporate Form.*

On the Effective Date, each of the Debtors shall maintain its current corporate form.

6.2.    *Boards of Directors and Officers.*

The initial directors and officers of the Debtors after the Effective Date shall be included as part of the Plan Supplement.  After the Effective Date, the Plan Administrator shall elect such additional directors and officers as the Plan Administrator deems necessary to implement the Plan and the actions contemplated herein.  The Plan Administrator shall also have the power to act by written consent to remove any director or officer at any time with or without cause.

6.3.    *Corporate Existence.*

After the Effective Date, the Plan Administrator shall take commercially reasonable actions as required, consistent with applicable non-bankruptcy law and consistent with the implementation of the Plan, to dissolve, liquidate, strike off or take such other similar action with respect to each Debtor (including the cancellation of all Interests in a Debtor pursuant to the Confirmation Order) and complete the winding up of such Debtor as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Debtor or its shareholders or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities or complying with the laws and procedures governing the winding down of any such Debtor that is organized under the laws of a jurisdiction outside of the United States; provided, however, that the foregoing does not limit the Plan Administrator's ability to otherwise abandon an Interest in a Debtor.  The Plan Administrator may, to the extent required by applicable non-bankruptcy law, maintain a Debtor as a corporation in good standing until such time as all aspects of the Plan pertaining to such Debtor and the winding up of such Debtor is complete.

6.4.    *Certificate of Incorporation and By-Laws.*

As of the Effective Date, the certificate of incorporation, operating agreement, by-laws, and any other organizational document, of the Debtors shall be amended to the extent necessary to carry out provisions of the Plan.

6.5.    *Winddown.*

After the Effective Date, pursuant to the Plan, the Plan Administrator shall, as soon as practicable, commence steps to cause each Debtor to winddown, sell, and otherwise liquidate or abandon its assets, which steps shall be undertaken in a commercially reasonable manner and as expeditiously as practicable.

## ARTICLE VII    DISTRIBUTIONS.

7.1.    *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents, shall be deemed closed, and there shall be no further changes in the record of holders of any of the Claims or Interests.  The Debtors or the Plan Administrator shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

7.2.    *Date of Distributions.*

(a)    Except as otherwise provided in the Plan, the Debtors shall make the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date and thereafter, the Plan Administrator shall from time to time determine the subsequent Distribution Dates.  The Initial Distribution Date shall be on or a reasonable time after the Effective Date. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

(b)    The Plan Administrator shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims.  In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Plan Administrator shall make a final distribution to all holders of Allowed Claims.

(c)    Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

(d)    Any  (i) Transfer Tax Refunds (as defined in the Macquarie Purchase Agreement) or (ii) remaining amounts in the Transfer Tax Escrow Account (as defined in the Macquarie Purchase Agreement) shall be distributed in accordance with this section 7.2 after taking into account whether such funds are allocated to a specific aircraft.

7.3.    *Delivery of Distributions.*

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtors or the Plan Administrator, as applicable, using commercially reasonable efforts, has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided that, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the applicable Distribution Date is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtors automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred.

7.4.    *Manner of Payment Under Plan.*

(a)    At the option of the Debtors or the Plan Administrator, any Cash payment to be made under the Plan may be made by a check or wire transfer.  The wire transfer fee will be deducted from the amount of the distribution to a holder of an Allowed Claim or Interest would otherwise receive.

(b)    In order to receive a Distribution under the Plan, a holder of an Allowed Claim must submit to the Plan Administrator both (a) the applicable Form W-9, or if the payee is a foreign person, Form W-8, unless such Person is exempt under the tax code and so notifies the Plan Administrator , and (b) a form certifying that neither the holder nor, to the best of their knowledge, any Person or Entity for whom they may be acting or who may be the beneficial owner of a Claim or Interest that is in their name or control is a person or entity with whom it is illegal for a U.S. Person to transact under (i) the Office of Foreign Assets Control sanctions regulations, or (ii) the list of Specially Designated Nationals and Blocked Persons. Unless the Plan Administrator receives original, properly completed copies of each form with an amount of time sufficient, in the Plan Administrator's sole discretion (as applicable), to process in advance of a scheduled Distribution Date, the holder of an Allowed Claim that would otherwise be entitled to a Distribution shall not receive any Distribution on the applicable Distribution Date.

7.5.    *Minimum Cash Distributions.*

The Plan Administrator shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100; provided that, if any distribution is not

made pursuant to this section 7.5 of the Plan, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim. If either (i) all Allowed Claims (other than those whose distributions are deemed undeliverable under the Plan) have been paid in full or (ii) the amount of any final distributions to holders of Allowed Claims would be $100 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $25,000, then no further distribution shall be made by the Plan Administrator and any surplus Cash shall be donated and distributed to an I.R.C. § 501(c)(3) tax-exempt organization selected by the Plan Administrator.

7.6.    *No Postpetition Interest on Claims.*

Except as otherwise specifically provided for in this Plan, the Confirmation Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

7.7.    *Setoffs and Recoupment.*

The Debtors and the Plan Administrator may, but shall not be required to, set off or recoup against any Claim, any claims of any nature whatsoever that the Debtors or the Plan Administrator may have against the holder of such Claim; provided that, neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Plan Administrator of any such claim the Debtors or the Plan Administrator may have against the holder of such Claim.

7.8.    *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

7.9.    *Allocation of Distributions Between Principal and Interest.*

Except as otherwise provided in the Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

7.10.    *Payment of Disputed Claims.*

As Disputed Claims are resolved pursuant to Article VIII of the Plan, the Plan Administrator shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Plan Administrator in the Plan Administrator's sole discretion.

7.11.    *Claims Paid by Third Parties.*

The Plan Administrator shall reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or the Plan Administrator. If a holder of a Claim receives

a Distribution from the Debtors or the Plan Administrator on account of such Claim and also receives payment from a third party on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtors or the Plan Administrator, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the total Allowed amount of such Claim as of the date of any such Distribution under the Plan. The failure of such holder to timely repay or return such Distribution shall result in the holder owing the Plan Administrator interest on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

7.12.    *Claims Payable by Third Parties.*

No Distributions shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy; provided that this section 7.12 shall not restrict Distributions on an Allowed Claim that is Allowed in an amount that does not exceed an applicable self-insured retention or deductible amount under one or more such insurance policies. To the extent that one or more of the Debtors' insurers agrees to satisfy a Claim in whole or in part, then immediately upon such insurers' satisfaction, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Plan Administrator without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VIII    PROCEDURES FOR DISPUTED CLAIMS.

8.1.    *Allowance of Claims.*

After the Effective Date, the Debtors or the Plan Administrator shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

8.2.    *Objections to Claims.*

As of the Effective Date, objections to, and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator. Such objections and requests for estimation shall be served and filed (i) on or before the 75th day following the later of (a) the Effective Date and (b) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim or (ii) such later date as ordered by the Bankruptcy Court upon a motion filed by the Plan Administrator.

8.3.    *Estimation of Claims.*

The Plan Administrator may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Plan Administrator previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the

Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or Plan Administrator, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.4.    ***No Distributions Pending Allowance.***

If an objection to a Claim is filed as set forth in section 8.2 of the Plan, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.5.    ***Resolution of Claims.***

Except as otherwise provided in the Plan, the Confirmation Order or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, without the approval of the Bankruptcy Court. The Plan Administrator or its successor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtors.

8.6.    ***Disallowed Claims.***

All Claims held by persons or entities against whom or which any of the Debtors or the Plan Administrator has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Plan Administrator from such party have been paid.

## ARTICLE IX    EXECUTORY CONTRACTS.

9.1.    ***Rejection of Executory Contracts.***

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract: (i) is identified for assumption in the Plan Supplement; (ii) as of the Effective Date is subject to a pending motion to assume such Executory Contract; (iii) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (iv) is a D&O Policy.

9.2.    ***Cure of Defaults for Assumed Executory Contracts.***

(a)    Any Cure due under each Executory Contract to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the

Effective Date, subject to the limitation described below, by the Debtors, or on such other terms as the parties to such Executory Contracts may otherwise agree.

(b)     In the event of a dispute regarding (i) the amount of the Cure; (ii) the ability of the Debtors or any other applicable assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease; or (iii) any other matter pertaining to assumption or assumption and assignment (as applicable), the obligations of section 365 of the Bankruptcy Code shall be deemed satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment (as applicable); provided, however, that the Debtors or the Plan Administrator (as applicable) may settle any dispute regarding the amount of any Cure without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(c)     Assumption of any Executory Contract pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract at any time before the Effective Date of assumption and/or assignment.

9.3.     ***Claims Based on Rejection of Executory Contracts.***

(a)     Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts pursuant to the Plan, must be filed with the Bankruptcy Court and served on the Plan Administrator no later than fourteen (14) days after the effective date of rejection of such Executory Contract; provided however that the effective date of any Executory Contracts rejected under this Plan shall be the Effective Date.

(b)     Any holders of Claims arising from the rejection of an Executory Contract for which Proofs of Claims were not timely filed as set forth in the paragraph above shall not (i) be treated as a creditor with respect to such Claim; (ii) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection; or (iii) participate in any distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Plan Administrator, the Estates, or the property for any of the foregoing without the need for any objection by the Plan Administrator or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a proof of claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

9.4.     ***Modifications, Amendments, Supplements, Restatements, or Other Agreements.***

(a)     Unless otherwise provided in the Plan, each Assumed Executory Contract shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract, and all Executory Contracts related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

(b)     Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract, or the validity, priority, or amount of any Claims that may arise in connection therewith.

9.5.    *Insurance Policies.*

(a)     Notwithstanding anything to the contrary in the Plan, each insurance policy, including any D&O Policies to which the Debtors are a party as of the Effective Date, shall be deemed executory and shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was assumed and assigned to Macquarie, was rejected by the Debtors pursuant to a Bankruptcy Court order, or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy.

(b)     In addition, after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions at or after the Effective Date, in each case, to the extent set forth in such policies.

9.6.    *Survival of Debtors' Indemnification Obligations.*

Subject to the applicable limits in the Debtors' D&O Policies, to the fullest extent permitted by applicable law, any obligations of the Debtors pursuant to their corporate charters, by-laws, limited liability company agreements, memorandum and articles of association, or other organizational documents and agreements to indemnify current and former officers, directors, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, agents, or employees based upon any act or omission for or on behalf of the Debtors shall not be discharged, impaired, or otherwise affected by the Plan; provided that, the Debtors shall not indemnify officers, directors, agents, or employees of the Debtors for any claims or Causes of Action arising out of or relating to any act or omission (i) that is a criminal act unless such officer, director, agent, or employee had no reasonable cause to believe its conduct was unlawful; (ii) that is determined by a Final Order to be the result of fraud, gross negligence, or willful misconduct; or (iii) for any other acts or omissions that are excluded under the terms of the foregoing organizational documents.  All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan unless such obligation previously was assumed and assigned to the Purchaser, was rejected by the Debtors pursuant to a Bankruptcy Court order, or is the subject of a motion to reject pending on the Effective Date.

9.7.    *Reservation of Rights.*

The exclusion nor inclusion of any contract or lease in the Plan Supplement or anything contained in the Plan, shall not constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or that the Estates have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator, as applicable, shall have sixty (60) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

### ARTICLE X        CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

10.1.    *Conditions Precedent to Effective Date.*

The following are conditions precedent to the Effective Date of the Plan:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay reversal or vacatur;

(b)    any unpaid DIP Claims and Adequate Protection Claims (to the extent Allowed) have been paid or otherwise satisfied in full; and

(c)    all actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto.

10.2.    *Effect of Failure of a Condition.*

If the conditions listed in section 10.1 of the Plan are not satisfied on or before the first Business Day that is more than sixty (60) days after the date on which the Confirmation Order is entered or by such later date as set forth by the Debtor in a notice filed with the Bankruptcy Court prior to the expiration of such period, upon filing a notice with the Bankruptcy Court, the Debtors may deem the Plan null and void in all respects and in such a case, nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against or any Interests in the Debtor; (ii) prejudice in any manner the rights of any Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors or any other Entity.

### ARTICLE XI        EFFECT OF CONFIRMATION OF PLAN.

11.1.    *Vesting of Assets.*

On the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code, all property of the Estates, including the Debtors' rights under the Purchase Agreements and the Transition Services Agreement, shall vest in the Debtors.

11.2.    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Plan Administrator to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

11.3.    *Binding Effect.*

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtor and their respective successors and assigns, notwithstanding whether any such holders were (i) Impaired or Unimpaired under the Plan; (ii) deemed to accept or reject the Plan; (iii) failed to vote to accept or reject the Plan; or (iv) voted to reject the Plan.

46

11.4.   *Term of Injunctions or Stays.*

Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

11.5.   *Releases.*

(a)   **Estate Releases**.

**As of the Effective Date, except as otherwise expressly provided in this Plan, the Macquarie Sale Order, or the Confirmation Order, and to the fullest extent authorized by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, any Debtor Released Party[3] is deemed released by the Debtors, each of the Debtors' current direct and indirect wholly-owned non-debtor subsidiaries (with respect to non-Debtors, to the extent permitted by applicable law), the respective Estates and any person or entity, seeking to exercise the rights of the Debtors or their Estates and their respective property (and each such Debtor Released Party shall be deemed released by each Debtor and its estate and their respective property) from any and all Claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, other rights, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws, avoidance actions, including any derivative claims, asserted or that could possibly have been asserted directly or indirectly, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, and any and all Causes of Action asserted or that could possibly have been asserted, based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, their Estates or their Affiliates, the conduct of the Debtors' business, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Forbearance Agreements, the Purchase Agreements, the Disclosure Statement or Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to, the Forbearance Agreements, the Purchase Agreements, the Disclosure Statement, this Plan, the filing and prosecution of the Chapter 11 Cases, the pursuit of consummation of this Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between the Debtors, their Estates or their Affiliates, on the one hand, and any Debtor Released Party, on the other hand, or any other act or omission, transaction, agreement, event, or other occurrence taking place before the Confirmation Date; provided that, to the extent that a Claim or Cause of Action is determined by a Final Order to have resulted from fraud, gross negligence or willful misconduct of a Debtor Released Party, such Claim or Cause of Action shall not be so released against such Debtor Released Party and a party alleging fraud, gross negligence or willful misconduct on the part of a Debtor Released Party shall not be prevented from pursuing such**

---

[3] Debtor Released Party means all holders of Claims who vote to accept the Plan, as well as all of the Released Parties (as defined in section 1.82 of the Plan and restated in footnote five herein); provided however, that the holder of a Claim (other than a Debtor or a wholly-owned direct or indirect subsidiary of a Debtor) who is deemed to have accepted the Plan but does not actually vote to accept the Plan shall not be a Debtor Released Party.

an action; provided further, that any Released Parties who served the Debtors in a role described in clause (v) of the definition of "Released Parties" shall only be released by this section 11.5(a) if such Released Party served in such role on or after the Petition Date; provided further, that the releases set forth in this section 11.5(a) shall not release any conduct, Causes of Actions, or claims arising on or before June 1, 2018; provided further, to the extent that the Debtors or the Plan Administrator (as applicable) holds a Cause of Action or claim not released by this section 11.5(a), the Debtors and the Plan Administrator may only seek to recover from any Released Party to the extent of any available D&O Policy proceeds.  Notwithstanding anything to the contrary in the foregoing, the releases above do not release the Debtors' Claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, other rights, and liabilities under any of the Purchase Agreements, the Transition Services Agreement or any  other agreements entered into by the Debtors after the Petition Date.

(b)      **Releases by Holders of Claims and Interests**.

Effective as of the Effective Date, the Releasing Parties[4] shall be deemed to provide a full release to the Released Parties[5], and their respective property, from any and all Claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, other rights, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws, avoidance actions, including any derivative claims, asserted or that could possibly have been asserted directly or indirectly, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, and any and all Causes of Action asserted or that could possibly have been asserted, based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, their estates or their Affiliates, the conduct of the Debtors' business, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Forbearance Agreements, the Purchase Agreements, the Disclosure Statement or Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Purchase

---

[4] Releasing Parties means collectively and in each case in their capacity as such, (i) the WAC Agents (except to the extent the Required Lenders under the applicable WAC Facility vote to reject the Plan); (ii) the Steering Committee; and (iii) all holders of Claims who vote to accept the Plan; provided however that the holder of a Claim (other than a Debtor or a wholly-owned direct or indirect subsidiary of a Debtor) that is deemed to have accepted the Plan, but does not actually vote to accept the Plan shall not be a Releasing Party.

[5] Released Parties means collectively and in each case in their capacity as such,  (i) the Debtors; (ii) the WAC Agents (except to the extent the Required Lenders under the applicable WAC Facility vote to reject the Plan); (iii) the WAC Lenders that vote to accept the Plan, (iv) the Steering Committee, and (v) with respect to each of the foregoing (i) through (iv), their respective current and former predecessors, successors and assigns, subsidiaries, and Affiliates, and its and their officers, directors, members, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, Estates, servants and nominees; provided, however, that former officers of the Debtors listed in clause (v) who are related to the Debtors and who have pending or threatened litigation (including Causes of Actions for breach of contract or breach of fiduciary duty, whether or not asserted in proofs of claim for rejection damages, but excluding claims related to indemnification, reimbursement, or other ordinary course obligations of the Debtors) against the Debtors, their Affiliates, officers, directors, principals, shareholders, members, managers, partners or employees shall not constitute Released Parties for any capacity in which they may have served the Debtors.

Agreements, Disclosure Statement, this Plan, the filing and prosecution of the Chapter 11 Cases, the pursuit of consummation of this plan, the subject matter of, or the transactions or events giving rise to, any claim or equity interest that is treated in this Plan, the business or contractual arrangements between the Debtors, their Estates or their Affiliates, on the one hand, and any Released Party, on the other hand, or any other act or omission, transaction, agreement, event, or other occurrence taking place before the Confirmation Date; provided that, to the extent that a Claim or Cause of Action is determined by a Final Order to have resulted from fraud, gross negligence or willful misconduct of a Released Party, such claim or Cause of Action shall not be so released against such Released Party and a party alleging fraud, gross negligence, or willful misconduct on the part of a Debtor Released Party shall not be prevented from pursuing such an action; provided further, that any Released Parties who served the Debtors in a role described in clause (v) of the definition of "Released Parties" shall only be released by this section 11.5(b) if such Released Party served in such role on or after the Petition Date; provided further, the releases set forth in this section 11.5(b) shall not release any conduct, Causes of Actions, or claims arising on or before June 1, 2018; provided further, to the extent that a Releasing Party holds a Cause of Action or claim not released by this section 11.5(b), such Releasing Party may only seek to recover from any Released Party to the extent of any available D&O Policy proceeds.  The releases set forth above (i) do not release any post-Effective Date obligations of any party or Entity under the Plan; (ii) are applicable only to the maximum extent permitted by law; and (iii) do not release any Releasing Party's Claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, other rights, and liabilities under any of the Purchase Agreements, the Transition Services Agreement, or any other agreements entered into by the Debtors after the Petition Date.

11.6.    *Exculpation.*

To the extent permitted by section 1125(e) of the Bankruptcy Code, notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for any Claim in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation, formulation, preparation, and pursuit of the Purchase Agreements, the Disclosure Statement, the Plan, and the solicitation of votes for, and confirmation of, the Plan; the funding and consummation of the Plan, and any related agreements, instruments, and other documents (in each case in furtherance of the foregoing); the solicitation of votes on the Plan; the making of Distributions under the Plan; the occurrence of the Effective Date; negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed under the Plan, except for actions determined by Final Order to constitute gross negligence, willful misconduct or fraud.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.  Notwithstanding anything to the contrary in the foregoing, the exculpation shall not release any party's Claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, other rights, and liabilities under any of the Purchase Agreements or the Transition Services Agreement or this Plan.  Nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

11.7.    *Injunction.*

(a)    <u>Injunction Against Asserting Claims of Debtors.</u> On and after the Effective Date, all persons and entities other than the Plan Administrator are permanently enjoined from

49

commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right, or Cause of Action of the Debtors for which a Debtor retains sole and exclusive authority to pursue in accordance with the Plan.

(b)    **Injunctions Against Interference with or Consummation or Implementation of the Plan. Except as provided herein, upon the Effective Date all Persons shall be enjoined from commencing or continuing any judicial or administrative proceeding, employing any process, or taking any action whatsoever against the Debtor, the Estate or the Plan Administrator that interferes with the consummation and implementation of this Plan, including the transfers, payments and Distributions to be made in accordance with the Plan. For the avoidance of doubt nothing in this section 11.7 shall act as a release of any claims or Causes of Action; provided however, the Bankruptcy Court shall retain the authority, after notice and hearing, to lift the injunction set forth in section 11.7 (to the extent necessary) upon request from any Person who holds a claim or Cause of Action not released, discharged, waived or otherwise satisfied under this Plan.**

11.8.    *Waiver of Statutory Limitation on Releases.*

Each Debtor and Releasing Party expressly acknowledges that although ordinarily a general release may not extend to Claims which a releasing party does not know or suspect to exist in its or their favor, which if known by it may have materially affected its settlement with the party released, such Debtor or Releasing Party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each Debtor or Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the Released Party, including the provisions of California Civil Code Section 1542. The releases contained in of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

11.9.    *Retention of Causes of Action/Reservation of Rights.*

Except as otherwise provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of the Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtor, other than the Released Parties and the Debtor Released Parties. Following the Effective Date, the Plan Administrator shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtor's legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

## ARTICLE XII        RETENTION OF JURISDICTION.

12.1.    *Retention of Jurisdiction.*

(a)        On and after the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(i)        to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(ii)        to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(iii)        to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(iv)        to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(v)        to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(vi)        to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(vii)        to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(viii)        to hear and determine all Fee Claims;

(ix)        to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(x)        to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(xi)        to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xii)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(xiii)    to hear, adjudicate, decide, or resolve any and all matters related to Article XI of the Plan, including, without limitation, the releases, exculpations, and injunctions issued thereunder;

(xiv)    to resolve disputes concerning Disputed Claims or the administration thereof;

(xv)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(xvi)    to enter a final decree closing the Chapter 11 Cases;

(xvii)    to recover all Assets of the Debtor and property of the Debtor's Estate, wherever located;

(xviii)    to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory; and

(xix)    to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code, other than defenses or limits that are asserted under non-bankruptcy law pursuant to section 502(b)(1) of the Bankruptcy Code.

(b)    To the extent that the Bankruptcy Court does not otherwise have jurisdiction over the non-Debtor affiliates, nothing in this Plan shall confer such jurisdiction.

### 12.2.    *Courts of Competent Jurisdiction.*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### ARTICLE XIII    MISCELLANEOUS PROVISIONS.

### 13.1.    *Post-Confirmation Reporting.*

Following the Effective Date, the Plan Administrator will provide such periodic post-confirmation reports as required by Rule 3021-1 of the Local Bankruptcy Rules for the Southern District of New York.  After the Effective Date, in accordance with the Guidelines established by the United States Trustee, the Plan Administrator will file quarterly operating reports with Bankruptcy Court.

13.2.    *Request for Expedited Determination of Taxes.*

The Debtors, the Plan Administrator, as applicable shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through dissolution.

13.3.    *Amendments.*

(a)    *Plan Modifications.*  The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and  after entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to this Plan, the Debtors, without the need for Bankruptcy Court approval, may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(b)    *Plan Treatment Modifications.*  Notwithstanding the treatment of Classes 1D, 3D, 6D, 7D, and 8D, in the event the Debtors identify any unencumbered distributable value at one or more Debtors within WAC Groups 1, 3, 6, 7, or 8, the Debtors shall amend the Plan to provide for a distribution to holders of Allowed General Unsecured Claims against the relevant Debtor entity that owns such distributable value, to the extent there is any residual value available for distribution after Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims are paid in full.

(c)    *Other Amendments.*  Before the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

13.4.    *Effectuating Documents and Further Transactions.*

Each individual with authority to act on behalf of the Debtors are authorized, in accordance with his or her authority under the resolutions of the Board to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.5.    *WAC Agent Retainers.*

Upon the occurrence of the Effective Date, the automatic stay applicable pursuant to section 362 of the Bankruptcy Code, shall be terminated with respect to any retainers received by the WAC Agents, and shall not preclude the applicable WAC Agent from taking any action it deems necessary or appropriate to realize upon such retainers received.

13.6. *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Estates, or any other Entity.

13.7. *Severability of Plan Provisions.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtor or the Plan Administrator (as the case may be); and (iii) subject to section 5.2 of the Plan, nonseverable and mutually dependent.

13.8. *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

13.9. *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.10. *Additional Documents.*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.11.  ***Dates of Actions to Implement the Plan.***

In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

13.12.  ***Immediate Binding Effect.***

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the holders of Claims and Interests, the Released Parties, the Exculpated Parties and each of their respective successors and assigns, including, without limitation, the Plan Administrator.

13.13.  ***Deemed Acts.***

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

13.14.  ***Successor and Assigns.***

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

13.15.  ***Entire Agreement.***

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.16.  ***Exhibits to Plan.***

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

13.17.  ***Notices.***

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)  If to the Debtors or the Plan Administrator:

William L. Transier
Email: bill@transieradvisors.com

     -and-

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn:   Gary Holtzer
       Robert J. Lemons
       Kelly DiBlasi


Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  gary.holtzer@weil.com
      robert.lemons@weil.com
      kelly.diblasi@weil.com


[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

After the Effective Date, the Debtors have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors and the Plan Administrator, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated:  July 22, 2019

Respectfully submitted,

By:    */s/ William Transier*
       Name:  William Transier
       Title:   Director

**<u>Exhibit A</u>**

**Debtors**

| Debtor | Last 4 Digits of Tax ID Number | Debtor | Last 4 Digits of Tax ID Number |
|---|---|---|---|
| Waypoint Leasing Holdings Ltd. | 2899 | MSN 760682 Trust | N/A |
| Waypoint Leasing (Luxembourg) S.à r.l. | 7041 | Waypoint 2916 Business Trust | N/A |
| Waypoint Leasing (Ireland) Limited | 6600 | MSN 920062 Trust | N/A |
| Waypoint Asset Co 10 Limited | 2503 | MSN 920125 Trust | N/A |
| MSN 2826 Trust | N/A | MSN 9229 AS | 7652 |
| MSN 2879 Trust | N/A | Waypoint Asset Co 3A Limited | 6687 |
| Waypoint Asset Co 11 Limited | 3073 | MSN 41371 Trust | N/A |
| MSN 2905 Trust | N/A | Waypoint Asset Euro 1A Limited | 9804 |
| Waypoint Asset Co 14 Limited | 1585 | Waypoint Asset Co 1K Limited | 2087 |
| Waypoint Asset Co 15 Limited | 1776 | MSN 4469 Trust | N/A |
| Waypoint Asset Co 3 Limited | 3471 | MSN 6655 Trust | N/A |
| AE Helicopter (5) Limited | N/A | Waypoint Leasing (Luxembourg) Euro S.à r.l. | 8928 |
| AE Helicopter (6) Limited | N/A | Waypoint Asset Co 1A Limited | 1208 |
| MSN 31141 Trust | N/A | Waypoint Leasing Labuan 1A Limited | 2299 |
| MSN 31492 Trust | N/A | Waypoint Asset Co 1C Limited | 0827 |
| MSN 36458 Trust | N/A | Waypoint Asset Co 1D Limited | 7018 |
| MSN 760543 Trust | N/A | Waypoint Asset Co 1F Limited | 6345 |
| MSN 760551 Trust | N/A | Waypoint Asset Co 1G Limited | 6494 |
| MSN 760581 Trust | N/A | Waypoint Asset Co 1H Limited | 7349 |
| MSN 760628 Trust | N/A | Waypoint Asset Co 1J Limited | 7729 |

| Debtor | Last 4 Digits of Tax ID Number | Debtor | Last 4 Digits of Tax ID Number |
|---|---|---|---|
| MSN 760631 Trust | N/A | MSN 20159 Trust | N/A |
| MSN 6658 Trust | N/A | Waypoint Asset Funding 6 LLC | 4964 |
| Waypoint 760626 Business Trust | N/A | Waypoint Asset Co 7 Limited | 9689 |
| MSN 7152 Trust | N/A | Waypoint Asset Euro 7A Limited | 2406 |
| MSN 7172 Trust | N/A | Waypoint Asset Co 8 Limited | 2532 |
| Waypoint Asset Funding 3 LLC | 4960 | MSN 31041 Trust | N/A |
| Waypoint Asset Malta Ltd | 5348 | MSN 31203 Trust | N/A |
| Waypoint Leasing Labuan 3A Limited | 8120 | MSN 31578 Trust | N/A |
| Waypoint Leasing UK 3A Limited | 0702 | MSN 760617 Trust | N/A |
| Waypoint Asset Co 4 Limited | 0301 | MSN 760624 Trust | N/A |
| Waypoint Asset Co 5 Limited | 7128 | MSN 760626 Trust | N/A |
| Waypoint Leasing Services LLC | 8965 | MSN 760765 Trust | N/A |
| MSN 14786 Trust | N/A | MSN 920063 Trust | N/A |
| MSN 2047 Trust | N/A | MSN 920112 Trust | N/A |
| MSN 2057 Trust | N/A | Waypoint 206 Trust | N/A |
| Waypoint Asset Co 5B Limited | 2242 | Waypoint 407 Trust | N/A |
| Waypoint Leasing UK 5A Limited | 1970 | Waypoint Asset Euro 1B Limited | 3512 |
| Waypoint Asset Co 6 Limited | 8790 | Waypoint Asset Euro 1C Limited | 1060 |
| MSN 31042 Trust | N/A | MSN 20012 Trust | N/A |
| MSN 31295 Trust | N/A | MSN 20022 Trust | N/A |
| MSN 31308 Trust | N/A | MSN 20025 Trust | N/A |

| Debtor | Last 4 Digits of Tax ID Number | Debtor | Last 4 Digits of Tax ID Number |
|---|---|---|---|
| MSN 920119 Trust | N/A | MSN 920113 Trust | N/A |
| Waypoint Asset Funding 8 LLC | 4776 | Waypoint Asset Co Germany Limited | 5557 |
| Waypoint Leasing UK 8A Limited | 2906 | MSN 31046 Trust | N/A |
| Waypoint Leasing US 8A LLC | 8080 | MSN 41511 Trust | N/A |
| Waypoint Asset Company Number 1 (Ireland) Limited | 6861 | MSN 760608 Trust | N/A |
| Waypoint Asset Euro 1D Limited | 1360 | MSN 89007 Trust | N/A |
| Waypoint Asset Co 1L Limited | 2360 | MSN 920141 Trust | N/A |
| Waypoint Asset Co 1M Limited | 5855 | MSN 920152 Trust | N/A |
| Waypoint Asset Co 1N Limited | 3701 | MSN 920153 Trust | N/A |
| Waypoint Asset Euro 1G Limited | 4786 | MSN 920273 Trust | N/A |
| Waypoint Asset Funding 1 LLC | 7392 | MSN 920281 Trust | N/A |
| Waypoint Leasing UK 1B Limited | 0592 | MSN 9205 Trust | N/A |
| Waypoint Leasing UK 1C Limited | 0840 | MSN 9229 Trust | N/A |
| Waypoint Asset Company Number 2 (Ireland) Limited | 7847 | Waypoint Asset Funding 2 LLC | 7783 |

## Exhibit 2

**Notice of Confirmation**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                                                 :

**In re**                                      :          **Chapter 11**
                                                 :

**WAYPOINT LEASING**             :          **Case No. 18-13648 (SMB)**
**HOLDINGS LTD.,** *et al.,*           :
                                                 :          **(Jointly Administered)**

                        **Debtors.**[4]        :
-----------------------------------------------------------x

**NOTICE OF (I) ENTRY OF ORDER**
**CONFIRMING THIRD AMENDED CHAPTER 11**
**PLAN OF LIQUIDIATION OF WAYPOINT LEASINGS HOLDINGS LTD.**
**AND ITS AFFILIATED DEBTORS AND (II) OCCURRENCE OF EFFECTIVE DATE**

**TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:**

      **PLEASE TAKE NOTICE** that an order [ECF No. [●]] (the "**Confirmation Order**") confirming the *Third Amended Chapter 11 Plan of Liquidation of Waypoint Leasing Holdings Ltd. and its Affiliated Debtors* (as may be modified, the "**Plan**"), was entered by the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, and docketed by the Clerk of the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on July [●], 2019. Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, the Plan, and the related documents, are available (i) on the Court's website at http://www.nysb.uscourts.gov — to access this Court's website, you will need a PACER password and login, which can be obtained at http://www.pacer.psc.uscourts.gov; (ii) during normal business hours at the office of the Clerk; (iii) by request to the Debtors' noticing and claims agent, Kurtzman Carson Consultants LLC, at (888) 733-1446 or WaypointInfo@kccllc.com; and (iv) for download at http://www.kccllc.net/waypointleasing.

      **PLEASE TAKE FURTHER NOTICE** that the Effective Date occurred on [●], 2019.

      **PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided by an order of this Court, any Proofs of Claim based upon the rejection of the Debtors' Executory Contracts pursuant to the Plan or otherwise, must be filed with the Court and served on the Plan Administrator **no later than 14 days after the Effective Date.**

---

[4] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are set forth on **Exhibit A** to the Plan.

34

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, the Plan Administrator, and any holder of a Claim against, or Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder or Entity voted to accept the Plan.

Dated: _____, 2019
        New York, New York

                                        _____

                                         WEIL, GOTSHAL & MANGES LLP
                                         767 Fifth Avenue
                                         New York, New York  10153
                                         Telephone:  (212) 310-8000
                                         Facsimile: (212) 310-8007
                                         Gary T. Holtzer
                                         Robert J. Lemons
                                         Kelly DiBlasi

                                         *Attorneys for Debtors*
                                         *and Debtors in Possession*